## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, JUAN M. CORNEJO, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br>Plaintiffs, <br><br>v. <br><br>FEDERACION PUERTORRIQUEÑA DE FUTBOL, INC., IVAN RIVERA-GUTIERREZ, JOSE "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CAÑETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br>Defendants. | CIVIL ACTION NO.  23-1203(RAM) <br><br><br>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR SHERMAN ANTITRUST ACT AND RICO ACT VIOLATIONS, STATE LAW CLAIMS, AND DEMAND FOR JURY TRIAL |

### THIRD AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW the Plaintiffs, represented by the undersigned counsel and very respectfully

ALLEGE, SET FORTH and PRAY:

**Nature of the Case**

1.      Plaintiffs, all football soccer industry (from now on, referred to as the "industry" or "trade") professionals, complain of a scheme perpetrated by all Defendants, who are all part of football soccer's federative arm in Puerto Rico, Federación Puertorriqueña de Fútbol, Inc. ("Federation" or "FPF" or "Puerto Rico Soccer Federation"), and its governing bodies, Fédération Internationale de Football Association (hereinafter "FIFA") and Confederation of North, Central and Caribbean Association Football ("CONCACAF"), to conspire in restraint of trade and to conspire in violation of anti-racketeering laws, to exclude Plaintiffs from the "industry" with the purpose of maintaining control of the Federation and enriching themselves and their associates by benefitting from the football soccer infrastructure developed by others, not the Federation. Said pattern of conduct resulted in the exclusion of Plaintiffs from conducting football soccer operations, or business, in Puerto Rico, voting in federative affairs and elections, or holding federative positions that would have placed in jeopardy the Defendants' control of the Federation.

2.      Plaintiffs bring this civil action to rectify violations of the Sherman Act, 28 U.S.C. §§ 1331, 1337, for the Federation's, and its co-Defendants', restraint of trade of Plaintiffs, and its monopolization, attempted monopolization, conspiracy, or combination to monopolize, injuring Plaintiffs.

3.      Additionally, Plaintiffs bring this civil action to rectify Defendants' violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO") because Defendants are advancing a scheme to defraud Plaintiffs of money, property, and benefits of monetary value by making fraudulent misrepresentations of facts using the mail and wire. Defendants have also violated federal immigration labor laws, 18 U.S.C. § 1351 and federal laws regarding misuse of visas.

4.      Further, Defendants breached their fiduciary duties towards the Federation's affiliated members.

5.      Additionally, Plaintiffs also bring state law claims regarding abuse of power by the Defendants because of their control of the Disciplinary and Ethics Commission and Appeals Commission to further the above-mentioned scheme. Finally, Plaintiffs also bring state law tortious interference and negligence and/or fault claims regarding the same acts that constitute monopolistic and racketeering violations, which resulted in damages to Plaintiffs.

6.      All conditions precedent to the filing of this lawsuit have been met or are not applicable.

## **PARTIES**

**Plaintiffs**

7.      Plaintiff PUERTO RICO SOCCER LEAGUE NFP CORP. ("PRSL") is a Puerto Rico for profit corporation. In operation since 2008, it operated the island's top league until Defendants' interference in 2019.

8.      Plaintiff Joseph Marc "Joey" Serralta Ives is *sui juris* and owner, Chairman and President of PRSL, and domiciled in Houston, Texas. Joey Serralta is a former professional football soccer player from Puerto Rico, National Team member and Captain, member of the Puerto Rico Soccer Hall of Fame ("Salón de la Fama del Fútbol"), founder of the Puerto Rico Islanders F.C. and Houston Hurricanes, F.C. (precursor to the MLS's Houston Dynamo F.C.), member of the United Nations Sports for Climate Action since 2019 and United Nations Football for the Goals since 2023, advancing PRSL's goals in the island and worldwide, and implementing United Nations' climate action initiatives in Puerto Rico, through the massification of the sport via the construction of the SafeStadium model in ten (10) initial autonomous municipalities in Puerto Rico.

9.      Plaintiff Juan M. Cornejo ("Cornejo") was the longest tenured member of the Federation's Board of Directors (also known as the Executive Committee, EXCO, or "Consejo"), having served two four-year terms ending this March 2023. Plaintiff Cornejo also founded, owned, and operated the "Liga Elite, Inc." ("Liga Elite") which for the past decade has run the main amateur soccer leagues and tournaments in Puerto Rico comprising thousands of children of both sexes and all ages from all over Puerto Rico. Liga Elite historically has operated in the facilities of the Bayamon Soccer Club, Inc. ("Bayamon Soccer Club"), and is, therefore, commonly known as the "Liga de Bayamon". Although Plaintiff Cornejo sold the company, in 2021, he remained as League Director. Plaintiff Cornejo was also a coach for Bayamon Soccer Club before founding Liga Elite. Since January 2022, the Federation suspended him from all soccer related activities, including his position in the Board of Directors of the Federation and for a term of 4 years because he denounced Defendants' illegal acts. This meant that Plaintiff Cornejo was excluded from all corporate Board of Director's meetings and voting during 2022, which was the last year of his tenure, and the year immediately preceding the next FPF elections, and during this time, Defendants modified the FPF statutes to eliminate the provision that allows persons affected by their decisions to seek appellate review by Puerto Rico's Olympic Committee's ("COPUR") Arbitral Tribunal, or, in Spanish, "Tribunal de Arbitraje Deportivo" ("TAAD").

10.     Plaintiff Maria Larracuente is a member of Bayamon Soccer Club's Board of Directors and administrative staff, as well as past member of the Federation's Board of Directors, past Director of Competition for PRSL, and CONCACAF[1] game commissioner and venue manager. She was

---

[1] The Confederation of North, Central America and Caribbean Association Football (CONCACAF) was founded in 1961 and serves as the organizing body for 41 national associations, including the United States, and spans from Canada in the north to Suriname in the south.

the leading candidate for the FPF presidency in the March 2023 federative elections, yet the Defendants illegally blocked her candidacy for President.

11.    Plaintiff Jose R. Olmo-Rodriguez ("Olmo") was the President of Pumas de Roosevelt Futbol Club, Inc. ("Pumas") which is the oldest FPF member club and serves a mostly indigent population. Since Hurricane Maria, in 2017, and then the COVID pandemic, Pumas had no earnings. During 2021, Plaintiff Olmo took charge of restructuring the club using his own funds. Pumas' teams also participate in Liga Elite. Plaintiff Olmo also formed part of the FPF, as player in all categories, and as licensed coach and occupied positions within the FPF, such as Secretary General, during 2003, and President of the Disciplinary Commission, during Defendants' beginnings at the helm of FPF. Plaintiff Olmo also occupied the position of Vice President of Federative Affairs within PRSL. Plaintiff Olmo is also a lawyer and, as such, represented Plaintiff Cornejo and other persons before the Federation's Disciplinary and Ethics Commission[2] and Appellate Commission (collectively, referred to as the "Commissions"). Plaintiff Olmo also represented Plaintiff Cornejo in the process before the TAAD, that ended in the disaffiliation of the FPF from COPUR. In early 2023, he was excluded from the Federation for providing legal representation to Plaintiff Cornejo and others before FPF's Commissions and TAAD.

12.    Plaintiff Futbol Boricua ("FBNET"), Inc., is a non-profit corporation registered in Puerto Rico and the island's top football soccer media source since 2011, responsible for publishing soccer news, scores, opinions, interviews, and editorials, some critical of Defendants FPF and Rivera, as would be expected of a free and unbiased press. In 2018, it entered into an agreement with PRSL to transmit live all its games when the LigaPro would resume in 2019, invested in

---

[2] On March 2023, the Ethics Commission and the Disciplinary Commission were merged into the Disciplinary and Ethics Commission.

audiovisual equipment and personnel, and spent a significant number of manhours planning. These plans ended with Defendants' illegal interference with Plaintiff PRSL in 2019.

**Defendants**

13.     Defendant Federación Puertorriqueña de Fútbol ("Federation" or "FPF" or "Puerto Rico Soccer Federation"), is a corporation created and registered under the laws of Puerto Rico and the island's football soccer federative body which is an affiliate of FIFA[3], also known as a "National Association".

14.     Defendant Ivan E. Rivera-Gutiérrez (Rivera) is the President of the Federation since March 2019. Before becoming President, he was the President of the Jaguares de Corozal Soccer Club, Inc. and Executive Director of the "Liga Central", an amateur league in Puerto Rico. As President of the Federation, he communicated via email and mail with FIFA and CONCACAF, back and forth, as well as with FPF's members and affiliates, and COPUR, to advance the fraudulent conspiracy and unlawful monopolistic practices.

15.     Defendant José "Cukito" Martinez ("Martinez") is Vice President of the Federation since March 2019. Before becoming Vice President, he operated Escuela de Futbol Taurinos de Cayey, Inc., and, in late 2018 and early 2019, met with members of PRSL and the Mayor of Cayey to discuss his role in managing one of the ten clubs that PRSL was going to operate in the 2019-2020 season, and discussed with PRSL its SafeStadium concept and business plan of expansion and massification. Instead, he stopped contact with Plaintiffs PRSL and Serralta, in the midst of finalizing new season plans, joined Defendant Rivera, and together won President and Vice President roles within the Federation, and once they achieved power, sabotaged Plaintiffs PRSL

---

[3] Founded in 1904 to provide unity among national football soccer associations, the Federation Internationale de Football Association (FIFA) has 209 members and Puerto Rico is one. It oversees all regional and national associations, as well, as its members, affiliates and their respective staff and players.

and Serralta and blocked their League and plans, without notice, without due process, and in violation of their fiduciary duties of care, loyalty, and good faith towards its members.

16.    Defendant Gabriel Ortiz ("Ortiz") is the Secretary General of the Federation ("FPF") who sent most of the email communications made throughout this racketeering and antitrust conspiracy to Plaintiffs, FPF's members and affiliates, and others, to advance the racketeering and monopoly schemes.

17.    Defendant Luis Mozo Cañete ("Mozo") is the Auxiliary Secretary of the Federation who advises the co-Defendants and writes the official formal communications for the President and Secretary General, who later sign and email them.

18.    Defendant, Fédération Internationale de Football Association a/k/a FIFA (hereinafter "FIFA"), is a private international membership-based association, which identifies itself as "an association registered in the Commercial Register of the Canton of Zurich in accordance with Art. 60 ff. of the Swiss Civil Code."[4] It is a self-declared, international governing body for soccer. Its voting members are the 211 affiliated National Federations that FIFA authorizes to act on its behalf in countries around the world, including Defendant, Federación Puertorriqueña de Futbol, in Puerto Rico, and according to the Defendants in Puerto Rico, an indispensable party to the litigation.

19.    Defendant, Confederation of North, Central and Caribbean Association Football ("CONCACAF"), is one of the six regional bodies of FIFA. To help adopt, enforce and effectuate FIFA rules and policies, FIFA's affiliated National Federation members belong to a network of six regional governing bodies (known as "Confederations"). The regional Confederations assist FIFA in enforcing its policies and rules within their regions. The Confederation that covers Puerto

---

[4] FIFA STATUTES, at 10, Art. I.1(1) (June 2019).

Rico is the Confederation of North, Central and Caribbean Association Football ("CONCACAF"). Defendant FPF has been a member of CONCACAF since 1964. CONCACAF is a non-profit company registered in Nassau, Bahamas, and headquartered in Miami, Florida, at 161 NW 6th Street, Miami, FL 33166, and according to the Defendants in Puerto Rico, an indispensable party to the litigation.

20.    Defendants John Doe 1-18 are individuals, or corporate entities, whose identities remain undetermined at this moment, who conspired with Defendants in their illegal schemes and/or are also liable to the Plaintiffs. Defendants FPF, Rivera, Martinez, Ortiz, and Mozo, nevertheless, assert in their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint, that FIFA and CONCACAF are indispensable parties. Accordingly, FIFA and CONCACAF take the place of John Doe 1-2.

21.    Insurance companies A, B, and C are companies that issued insurance policies that provide coverage for the claims presented and their identities are unknown at this moment.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over Plaintiffs' antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337 because Plaintiffs' claims arise under laws of the U.S. that regulate commerce and protect commerce against restraints and monopolies: Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs' RICO claims also present federal questions (18 U.S.C. § 1964). Therefore, the Court has jurisdiction under 28 U.S.C. § 1331.

23.    This Court has *in personam* jurisdiction over Defendant FPF because it (a) transacts substantial business in this District; (b) is incorporated in this District under Commonwealth of Puerto Rico law; (c) engages in antitrust and racketeering violations in substantial part in this District; (d) organizes and holds matches in this District; (e) sanctions entities in this District and

receives fees for FIFA sanctioned soccer events played in this District; (f) engages in a conspiracy and group boycott that is intended to have, and has had, an anticompetitive effect on commerce in this District; and (g) has substantial aggregate contacts with the U.S., generally, including in this District. All Defendants work for Defendant FPF and reside in Puerto Rico, except Defendants CONCACAF and FIFA, which are registered and headquartered outside of Puerto Rico and the United States.

24.    This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332, since Plaintiffs and Defendants are not citizens of the same state, in this case the Commonwealth of Puerto Rico, and as such there is diversity of citizenship amongst plaintiffs and defendants.

25.    Venue is proper in the District of Puerto Rico. The Federation is located geographically within the territory of Puerto Rico. A substantial part of the events, or omissions, giving rise to Plaintiffs' claims occurred in Puerto Rico. 28 U.S.C. §1391(a)(2). All Defendants transacted their affairs in Puerto Rico. 18 U.S.C. §1965(a).

26.    Plaintiffs further invoke the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising from the same nucleus of operative facts, that arise under the Constitution and laws of the Commonwealth of Puerto Rico.

## FACTUAL BACKGROUND

**FIFA and the football soccer world**

27.    A football soccer club affiliated with a FIFA-sanctioned league, its staff and players, are subject to disciplinary action from both FIFA and from the applicable regional Confederation, such as CONCACAF, and National Association, such as FPF, if it violates FIFA's rules. Moreover, football soccer players participating in any unsanctioned match may also face discipline, including a group boycott through ineligibility to participate in the FIFA World Cup and other prestigious

FIFA-affiliated competitions, as well as a prohibition on being transferred, i.e., traded to or signed by another FIFA-affiliated club. Because of the FIFA penalties and threats involved, a League tournament in the Commonwealth of Puerto Rico not sanctioned by Defendant FPF cannot be successful, as it cannot attract the participation of the highest quality teams and players, nor attract investors and sponsors. The result is that Defendant FPF, as the FIFA-affiliated sanctioning authority in Puerto Rico, has monopoly power to control access to the relevant market for League tournaments in the Commonwealth of Puerto Rico.

28.    To be affiliated with FIFA, all Confederations, National Associations, leagues, clubs, referees, game commissioners, venue managers, and players must comply with FIFA's rules, as implemented and enforced by the Confederations and National Associations, including the rule that all league tournaments must be sanctioned by the National Association in whose territory the match will be played, Puerto Rico in this case.

29.    All FIFA and CONCACAF competitions are run by game commissioners, venue managers, and referees, who work for the different national associations and who receive particular training and experience, and are, therefore, recognized as FIFA, or CONCACAF qualified. All FIFA, and CONCACAF's requests to national associations to make their personnel available for FIFA, and CONCACAF, competitions are channeled through the particular national association, in our case FPF.

30.    Any violation of FIFA rules is subject to discipline.[5] For example, a National Association that sanctions a League tournament in violation of FIFA rules may be subject to expulsion from FIFA.[6] A player who competes in an unsanctioned game or match risks being deemed ineligible to

---

[5] FIFA STATUTES at 17, Art. II.14(2).

[6] Art. II.17(1)(b) ("The Congress may expel a member association if it seriously violates the Statutes, regulations, or decisions of FIFA.."); FIFA DISCIPLINARY CODE, 14-15, tit. II.15(1) (2019)

participate in prestigious FIFA-sanctioned competitions, including the FIFA World Cup, or to be transferred to a FIFA-affiliated team-which makes it impossible, as a practical matter, for any FIFA-affiliated league or club to participate in an unsanctioned event in Puerto Rico.[7]

31.     Accordingly, by virtue of its agreements with FIFA and others, Defendant FPF maintains monopoly sanctioning power and exclusive control over access to the relevant market for League tournaments in Puerto Rico.  Defendant FPF utilizes this monopoly power, since 2019, to restrict output in the relevant market and to enhance the value of events promoted by it, despite the Defendant Federation not having organized or operated the island's top league before 2019, and despite Defendant FPF not having afforded Plaintiffs PRSL and Serralta due process and notified them in advance, or at any time, that it would not be able to operate its LigaPro, in the future, because Defendant FPF would be operating a competing league, in the future, even more so considering Defendant FPF knew of Plaintiffs PRSL's and Serralta's plans in advance, and knew Plaintiff PRSL had been in operation since 2008.

**PRSL's *LigaPro* (*ProLeague*) and Joseph Marc Serralta-Ives**

32.     Plaintiff PRSL's business centers on organizing and promoting its LigaPro (*ProLeague*) football soccer tournaments, matches and events in Puerto Rico and around the world since its founding in 2008. It had been Puerto Rico's top soccer league ("Liga Superior") since 2008, until Defendant FPF caused its unwarranted and unforeseen interruption in 2019. **Plaintiff PRSL**

---

https://resources.fifa.com/image/upload/fifa-disciplinary-code-2019-edition.pdf?cloudid=eukqwuptuclcddzqjdlu ("[A]nyone who fails to comply with another final decision passed by a body, a committee, or an instance of FIFA.[is subject to discipline].").

[7] *See generally* FIFA STATUTES at 10-11, Art. I.2(g) ("The objectives of FIFA" include "to promote integrity, ethics and fair play with a view to preventing all methods or practices . . . which might jeopardize the integrity of matches, competitions, players, officials and member associations or give rise to abuse of association football"); FIFA DISCIPLINARY CODE at 7, tit. I.2(c) (players may be banned from "taking part in any football-related activity").

operated with the authorization of Defendant FPF, which annually issued its "aval" (in Spanish) or affiliation.

33.    The collapse of Puerto Rico's economy, starting in 2004, and the additional collapse of Puerto Rico's infrastructure, as a consequence of Hurricane Maria on September 17th, 2017[8], which left the island without electrical power for one year, caused Plaintiff PRSL to see its 2018-2019 season disrupted and suspended, while management addressed the lack of availability of football soccer fields (pitches) where to play due to the devastation caused by the storm, the human exodus that followed, with over 300,000 islanders moving to the continental U.S., and once it could resume its LigaPro for the 2019-2020 season, published it far and wide since on or about August 29th, 2018. [9]

34.    Following Hurricane Maria and its destruction of most if not all soccer venues in Puerto Rico, Plaintiff PRSL designed the SafeStadium model and became Signatory to the United Nations Sports for Climate Action initiative[10], and since 2018 has been advancing its SafeStadium project, within the United Nations and outside with investors in climate action and sports, so it may build soccer stadia, that convert to community shelters, in Puerto Rico, since Puerto Rico's football soccer cannot progress and become world class unless it can practice and play in safe and modern venues that can host domestic and international FIFA-sanctioned matches and events.

---

[8] Hurricane Maria. *See* https://www.climate.gov/news-features/understanding-climate/hurricane-marias-devastation-puerto-rico

[9] Puerto Rico's economic challenges are well documented. Annual economic growth fell by roughly 12.5 percent overall between 2004 and 2020, while Puerto Rico's population shrunk by more than 16 percent. It has also struggled under a large public debt in recent years, totaling about $70 billion—or 68 percent of gross domestic product (GDP)—in 2020. Puerto Rico's downward spiral has been compounded by natural disasters, government mismanagement and corruption, and the COVID-19 pandemic. *See* https://www.cfr.org/backgrounder/puerto-rico-us-territory-crisis

[10] https://unfccc.int/climate-action/sectoral-engagement/sports-for-climate-action/participants-in-the-sports-for-climate-action-framework#Sports-for-Climate-Action-signatories

35.     Accordingly, Plaintiff PRSL organized its 2019-2020 season to highlight to its investors and sponsors, and United Nations colleagues, Puerto Rico's climate change issues and challenges, and PRSL's climate action solutions possible through football soccer, so it could start building stadia in 2020. By then, PRSL had retained world-renowned sports venue architectural firms, including Pesquera y Asociados (Madrid, Spain)[11], which partook in the design of the Madrid stadium where Atletico Madrid plays, Centro Deportivo Wanda Alcalá de Henares, PSD Pro Sports Developments (San Antonio, Texas)[12], builders of multiple soccer-specific stadia, and Sadurni Architects + Engineers (San Juan, Puerto Rico)[13], to act as the local architects. PRSL also retained engineers, experts in new building materials and materials testing, experts in environmental issues, land surveyors, attorneys, accountants, lobbyists, and secured land in several Puerto Rico municipalities, where to build its first two SafeStadium soccer venues, in the municipalities of Isabela and Dorado.

36.     In the Municipality of Isabela, its Legislature entered Ordinance No. 18 on April 11, 2018, awarding PRSL twelve (12) acres, at Carr. 112, Km. 0.4. In the Municipality of Dorado, Mayor Carlos Lopez Rivera allowed PRSL, on March 7, 2019, to build a SafeStadium and sports complex at its Gran Parque public property comprising almost 1,000 acres. These properties are appraised at over $100 million, and allowed PRSL to seek, and obtain, investment, financing, and sponsorship commitments. However, PRSL's disaffiliation by Defendant FPF brought these projects to a halt, since it is practically impossible to obtain financing, investment, and sponsorships for a League that is not FIFA-sanctioned.

---

[11] http://www.pesquerayasociados.com/

[12] http://prosportsdevelopments.com/

[13] http://sadurnipr.com/

37.    On August 29th, 2018 the Puerto Rico Soccer League ("PRSL") held a Gala and Presentation of its PRSL 2.0 Business Plan at Vivo Beach Club, in San Juan.[14] Hundreds attended, including FPF members of the administration that preceded the current administration, and also including members of the present administration.

38.    PRSL's Business Plan was announced to the island's soccer community, covered by the island's sports media, and soon thereafter, the 2019-2020 Season Itinerary was published. It would commence Saturday, October 12th, 2019; it would conclude Sunday, May 31st, 2020. Seven clubs, twenty-eight dates, to bring back top soccer to Puerto Rico, after a calamitous recovery period following Hurricane Maria.[15]

39.    On October 16th, 2018, Defendant Jose "Cukito" Martinez communicated with Plaintiffs Joey Serralta and Puerto Rico Soccer League in 2018-2019, in person, via telephone, text messages and WhatsApp, in an effort for him to own and operate the Cayey franchise. More specifically, Plaintiffs Puerto Rico Soccer League and Joey Serralta met with the Municipality of Cayey's Mayor Rolando Ortiz Velazquez on or about July 2018, and on August 2nd, 2018, the Mayor issued a letter to Plaintiffs Serralta and Puerto Rico Soccer League, agreeing to grant Plaintiff Puerto Rico Soccer League ("PRSL") approximately 60 (sixty) acres (60 cuerdas) in Barrio Rincon, and Plaintiff build and operate a SafeStadium for the City's football soccer needs, which club was operated by Defendant Jose "Cukito" Martinez. However, Defendant Martinez did not intend to be a part of Plaintiff Puerto Rico Soccer League, but instead, to learn its business plans, share them

---

[14] PRSL introduced its Master Plan – PRSL 2.0 – for the massification of soccer; its plan for the design and construction of SafeStadium; its investors and Mayors of Municipalities that alongside PRSL were working together as public private partnerships; the owners, General Managers, coaches, trainers and members of PRSL's Superior Level soccer clubs; PRSL sponsors; and the architects, engineers and developers of the proposed stadia. Puerto Rico's soccer community attended, including many FPF members. The island's sports media provided coverage.

[15] 2017 saw Hurricane Maria crumble Puerto Rico's economy.

with co-Defendant Ivan Rivera, and run for President and Vice President together, and if victorious, eliminate Plaintiff Puerto Rico Soccer League and incorporate its clubs onto the Defendant Federation's new league, LPR.

40.    Consequently, on October 25th, 2018, after Jose "Cukito" Martinez had obtained Plaintiff's Puerto Rico Soccer League's business plan for 2019 forward, and taken part in meetings between Plaintiff PRSL and the Mayor of Cayey, he bailed out under a series of excuses, i.e., that the infrastructure was deficient, clearly part of the business plan being the buildout of SafeStadium venues.

**2019 Defendant Rivera elected as President**

41.    By early 2019, the Federation did not own or operate any soccer league or tournament.

42.    By early 2019, PRSL and Liga Elite owned and operated the main soccer leagues and tournaments.

43.    By early 2019, Defendant Rivera was running for President of the Federation against Alberto Santiago, who was President of the Bayamon Soccer Club, Inc.

44.    On March 2019, after a very intense electoral campaign, in which Defendant Rivera had misrepresented himself as a licensed engineer while running for the federative presidency, which misidentifications were made by mail and wire, even using an email address with the "Ing." misidentification in same, Defendant Rivera was elected President, and the rest of the Defendants were elected to the Board of Directors of the Federation and/or employed in director positions that respond directly to the President, Defendant Rivera. Plaintiff Cornejo ran for a position in the Board of Directors and was elected. Plaintiff Olmo was one of several candidates for the Presidency and lost. Finally, Plaintiff Larracuente ran for the position of ordinary member and also lost.

45.    Defendant Jose "Cukito" Martinez conspired with Defendant Rivera, Martinez, Mozo, Ortiz, FIFA, CONCACAF, and John Doe 1-18, during on or about August 2018 to September 2019, and beyond, to sabotage PRSL's LigaPro and its business plan including its stadium-building plans, after Defendant Martinez learned Plaintiffs' PRSL and Serralta's business plan by agreeing to own and operate PRSL's club in the Municipality of Cayey, and after he accompanied Plaintiffs PRSL and Serralta to meetings with the Municipality of Cayey's Mayor Rolando Ortiz Velazquez, to build a small SafeStadium in said municipality, in similar manner to what PRSL had arranged with other municipalities in Puerto Rico. The municipality would grant the land, PRSL would build the stadium and operate it for a long-term period for sports and entertainment, and the public and private sector would share in the revenues generated, a blessing for these municipalities that had been ravaged by a hurricane and did not have enough funds to support a hurricane recovery plus a football soccer movement in their communities.

46.    Upon information and belief, from that moment on, or thereabout, the Defendants engaged in conduct designed to maintain control of the Federation and the business associated to football soccer to enrich themselves at the expense of the existing leagues and the Plaintiffs, employing monopolistic practices, fraud and deceit, which according to the Defendants in Puerto Rico (Federation, Rivera, Ortiz, and Mozo), in conformance with newly added Defendants FIFA and CONCACAF direction, causing these Defendants to plea that FIFA and CONCACAF are indispensable parties to the litigation.

47.    Defendants Rivera, Martinez, Ortiz, Mozo, FIFA, CONCACAF, and John Doe 1-18, devised a scheme to create leagues that the Federation would own and operate after eliminating the existing leagues. The scheme was twofold. One of the purposes of the scheme was to eliminate the existing leagues and replace them with leagues owned by the Federation, and, in that manner,

take the money that the leagues generate, for the Federation to pay salaries and other benefits of monetary value to Defendants and their associates, thereby maintaining control of the FPF, and enriching themselves and their associates, while causing damages to the business of the leagues that the Federation would refuse to affiliate, such as PRSL and others that are not named plaintiffs herein due to their fear of retaliation from Defendants. Second, as FPF club members who participate in the Superior league have a direct vote for the President, and the rest of the members of the Board of Directors, in the elections, by eliminating PRSL's Superior league, the Defendants eliminated the prospect of having about ten (10) teams that would not vote for them in future elections.

48.     Upon information and belief, from that moment on, Defendants repeatedly met, conferred, discussed, and agreed, on the acts to further the conspiracy to violate antitrust and racketeering laws. To accomplish this purpose, Defendants used the wire and mail systems. Defendants also used Defendant Mozo to prepare the communications containing fraudulent misrepresentations of fact and used Defendants Rivera and Ortiz to disseminate the communications, through the wire and mail. All Defendants conspired to disseminate the communications through the wire and mail and agreed on the contents of said communications.

49.     On September 20th, 2019 FPF's President, Defendant Rivera, communicated with FIFA, via email, fraudulently misrepresenting to FIFA that a number of clubs in Puerto Rico were going to participate in a competition (the PRSL LigaPro 2019-2020 Season) that was not "avalada" or affiliated to FPF.

50.     That was a fraudulent misrepresentation of fact because, at the moment, PRSL was affiliated to FPF, as it had been since 2008, and two weeks away from the start of its 2019-2020 Season, programmed to commence Saturday, October 12, 2019.

51.    On that same date of September 20th, 2019, FPF sent a communication ("Circular #2019-16) notifying affiliated persons of the upcoming General Assembly to be held on September 28th, 2019, in which it recognized PRSL as a member, which is evidence of PRSL's affiliation to FPF on the same date that Defendant Rivera fraudulently misrepresented to FIFA that PRSL was not affiliated, or did not have FPF's "aval". During that same date, PRSL's legal representative, attorney Ivellisse Quiñones Ocasio, was also recognized by FPF as PRSL's delegate with the Federation. Additionally, during that time, FPF listed PRSL in its web page as one of its members in good standing.

52.    On September 27th, 2019 Mr. Mattias Grafström, of FIFA, responded to FPF, with copy to CONCACAF, informing FPF that it can take action against members that participate in a tournament that was not authorized by the Federation and that the Federation was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes.

53.    On or about September 27th, 2019, Defendant Rivera sent an email to members of the Federation fraudulently misrepresenting that they could not participate in the PRSL because it was not affiliated to Defendant FPF, or did not have its "aval" and that FIFA and CONCACAF had instructed that only the Federation could operate a "Superior" league. Said statement constituted a fraudulent misrepresentation of fact because FIFA representative only stated that Defendant FPF could take action when its members participated in competitions that Defendant FPF did not authorize and Plaintiff PRSL was an affiliate, or had the "aval", of Defendant FPF. Notwithstanding, the Defendants in Puerto Rico allege that their acts and conduct are sanctioned (permitted) by FIFA and CONCACAF, and thus, FIFA and CONCACAF are indispensable parties to the litigation.

54.    Additionally, following receipt of said letter from FIFA, Defendant Rivera met, and/or had other FPF officers, or agents, meet with the clubs that were going to play in the PRSL's LigaPro, and advised them that PRSL was not affiliated, or had no "aval", to the FPF, could not operate its LigaPro, and any club or player who played in its 2019-2020 season would not be considered by the Federation for awards or membership in the National Team.

55.    Club managers and players contacted Plaintiff PRSL, in late September-early October 2019, and advised it that they were being prevented from playing in its LigaPro. Notwithstanding, the Defendant Federation never contacted Plaintiff PRSL to advise it that, despite its proper affiliation with Defendant FPF, it would no longer be authorized, i.e., sanctioned by FIFA, to conduct the League it had operated since 2008. Plaintiff PRSL had to learn that its 2019-2020 season had been sabotaged by Defendant FPF when clubs called to let it know that they had been threatened with sanctions if they played in Plaintiff PRSL's LigaPro.

56.    The original Defendants assert in their Answer that Plaintiffs' allegations in the Second Amended Complaint "*unequivocally confirm plaintiffs' awareness that the Fédération Internationale de Football Association (FIFA) and the Confederation of North, Central American, and Caribbean Association Football (CONCACAF) are indispensable parties to the litigation.*" Accordingly, Defendants FPF, Rivera, Martinez, Ortiz, Mozo, FIFA, CONCACAF, and John Doe 1-18, acted in concert with FIFA and CONCACAF, and all unlawful acts attributed to FPF and its coconspirators, per Defendants, shall also be attributed to new co-Defendants, FIFA and CONCACAF.

57.    This unlawful conduct caused the interruption of Plaintiff PRSL's operations, and caused Plaintiff PRSL, Plaintiff Serralta, and Plaintiff Futbol Boricua, to suffer serious economic losses that are ongoing and accruing in nature.

58.    Plaintiff PRSL's 2019-2020 season was sabotaged and blocked, and Plaintiff PRSL has not been able to obtain the Federation's affiliate status since, affecting its League, clubs, owners, investors, partners, and sponsors, interfering with Plaintiff PRSL's private-public arrangements, and legislative acts, for the construction of two (2) initial SafeStadium soccer venues that convert to community shelters, in the municipalities of Dorado (agreement) and Isabela (legislative act). Towards that, Plaintiff PRSL, Plaintiff Serralta, and other owners and investors retained architects, engineers, general contractors, attorneys, accountants, lobbyists, environmental experts, economic impact experts, branding firms, public relations and advertising firms, land surveyors, and climate action consultants, to no avail, since without Defendant FPF's certification, unlawfully withheld, a league and its clubs lack the ability to finance and build stadia. The lack of FIFA-recognition is fatal.

59.    This allowed the Defendant Federation to create its own Superior league, which is called "Liga Puerto Rico" ("LPR"), using, as its main operational resources, several of the players and clubs that would otherwise have participated in PRSL's LigaPro. It also allowed the FPF to collect substantial funds that would have been earned by Plaintiff PRSL.

**Defendants' violations of Federation's rules to enrich themselves**

60.    On May 15th, 2019, with control of the budget and disposal of funds, Defendant Rivera and his brother Erick Rivera, through the use of the internet portal of the Puerto Rico State Department Division of Corporations, incorporated *Sports and Vacation Travel Agency of Puerto Rico LLC*, named no officers, and named third party Yarlin Rivera as resident agent. The purpose of creating the entity, was to deceive the FPF members and affiliates to hide the fact that Defendant Rivera was illegally incurring in a conflict of interest by purchasing thousands of dollars on airfare for the National Team competitions trips, through his and his brother's agency. Thereafter, Defendant

Rivera gave written instructions, using telecommunications, particularly WhatsApp chats, to key staff to coordinate and purchase Federation-related travel airfare through the Rivera-Gutierrez travel agency, i.e., *Sports and Vacation Travel Agency of Puerto Rico LLC.*

61.    Particularly, on or about September 13th, 2021 and September 21st, 2021, Defendant Rivera, using WhatsApp, instructed Defendant FPF staff to purchase the National Team's airfare from his and his brother's corporation. This was not the only occasion that this occurred, and Defendant Rivera has admitted that Defendant FPF paid more than $70,000.00 to said corporation.

62.    This action violated the Defendant Federation and FIFA's statutory prohibition of conflict of interest which prohibits the conflict of interest that obviously arises when one brother's unethical actions benefit both brothers, to the exclusion of others, and provides for penalties that can result in exclusion from the FPF and FIFA. This action also violated the Puerto Rico law of corporation's fiduciary duty of the President, Defendant Rivera, Vice President Defendant Martinez, Secretary General, Defendant Ortiz, and Deputy Secretary, Defendant Mozo, towards the FPF members.

63.    Upon information and belief, Defendants have committed other acts to enrich themselves and/or their associates, in violation of FPF's statutes, and Plaintiffs herein reserve the right to amend the complaint and add additional parties and/or causes of action, as discovery uncovers other coconspirators and other crimes.

**Violation of Immigration Laws**

64.    Upon information and belief, Defendants, in violation of federal immigration laws, employed illegal aliens to conduct the affairs of the Federation from Puerto Rico and from outside of the United States. Some of these persons are the judges of the Disciplinary and Ethics Commission.

65.     Upon information and belief, in order to sideway immigration procedures, Defendants Rivera, Martinez, Mozo and Ortiz, opted to funnel all foreign nationals' contracts and payments through a foreign company, property of Mozo, and registered in the *Registro de Comercio en Bolivia* (SEPREC) (Bolivia's corporation registry), allowing the contractors to enter, or work, in US territories with tourist VISAS. Upon information and belief, Defendants have used mail, or wire, to further this violation.

**Abuse of Power by controlling and using FPF's Commissions**

66.     Defendant FPF's statutes create the Disciplinary Commission and the Ethics Commission (now merged into one Disciplinary and Ethics Commission) and the Appeals Commission, and provide that the Board of Directors chooses the members which are then presented to the Assembly for ratification.

67.     The Defendants in Puerto Rico have disassembled commissions that rule against their interest, disobeyed unfavorable resolutions, and installed new commissions to assure control of the resolutions taken by said bodies.

68.     Upon information and belief, some members of the commissions have provided remunerated professional services to Defendants, which created a conflict of interest, requiring disqualification of those members from the commissions and the nullification of all resolutions taken by said members.

69.     Defendants have arbitrarily and deliberately retained persons that are not United States citizens to form part of the Disciplinary and Ethics Commission, who sign the resolutions, fraudulently misrepresenting that they are being made in San Juan, Puerto Rico, when they are being made outside of Puerto Rico and the United States. In the alternative that these persons are

making the resolutions in Puerto Rico, then they would be working without work permits, in violation of federal immigration laws.

70.    Defendants have used said commissions to further their illegal schemes. The commissions are controlled by Defendants, and its members have intentionally fraudulently misrepresented facts and misapplied the statutes, that are clear and unambiguous, to favor Defendants by dismissing serious and substantiated claims against them, and to sanction Plaintiffs and others, who do not agree with their illegal conduct, by presenting fraudulent and unsubstantiated claims to exclude them from the industry.

71.    Particularly, the commissions have dismissed serious complaints against Defendant Rivera for conflict of interest, as previously described, by fraudulently misrepresenting that Plaintiff Larracuente was not an official of an affiliate of FPF, and therefore had no standing to present the claims. However, the Ethics Code clearly states that officials of member clubs have standing, and Plaintiff Larracuente submitted substantial objective documentary evidence to the effects that she has been an official of Bayamon Soccer Club, which is one of the oldest club members, for more than a decade, hence exposing the federative sham to manipulate and control those who could have oversight over their unlawful acts and conduct.

72.    The Defendants have abused the Federation processes by filing frivolous and fraudulent complaints before the Disciplinary and Ethics Commission and Appellate Commission to exclude Plaintiff Cornejo from the Board of Directors and from the industry to maintain control of the enterprise.

**Breach of fiduciary duties towards its members**

73.    Plaintiffs Puerto Rico Soccer League, Cornejo, Larracuente, and Olmo, were all members in good standing of the Federation, in different capacities.

74.    Defendants owed fiduciary duties of care to these Plaintiffs.

75.    Instead, Defendants acted against its member Plaintiffs' interests, failing to exercise reasonable care and skill in the performance of their duties and responsibilities as officers of the Federation, as well as the duties of loyalty, good faith and candid disclosure.

76.    These federative leaders' actions against the Plaintiffs members of the Federation, as stated in this complaint, were willful, malicious and ill intentioned, and in breach of the duties of care, loyalty, and good faith towards the referenced Plaintiffs.

**Juan M. Cornejo and the amateur leagues**

77.    On, July 2nd, 2021, the Federation announced that, on September 2021, it would begin to operate its own amateur league, called "Liga Juvenil de Puerto Rico" ("LJPR").

78.    On August 7th, 2021, Plaintiff Cornejo became concerned about the operations of Liga Elite and held a meeting with the representatives of all of the clubs that participate in Liga Elite. During said meeting, Plaintiff Cornejo advocated for Liga Elite and pointed out the flaws of the Federation's league, LJPR. Plaintiff Cornejo stated that FPF had deceived the leagues and clubs by offering the LJPR tournament, because its only purpose was to compete with the existing leagues, to take their space, with the intention of harming them. Plaintiff Cornejo also stated that the FPF should not be organizing competitions, because the leagues and clubs are the ones that should organize competitions, and questioned the amounts that the FPF was charging clubs to participate in LJPR.

79.    Around the same time, Plaintiff Cornejo had presented to Defendant FPF's Board of Directors, during its meetings, several complaints about the manner in which the Defendants in Puerto Rico were running the Federation, including but not limited to issues affecting the referees and the obstruction by the Federation of the Liga Elite's operations.

80.    On August 9th, 2021, a member of the FPF's Board of Directors, Pedro Lopez, wrote a letter notifying the FPF's Secretary General at the moment, about the Liga Elite meeting and about Plaintiff Cornejo's statements. Upon information and belief, Lopez was named to the Board of Directors without meeting the statutory requirements.

81.    On September 2nd, 2021, the Federation entered into an agreement with the existing amateur leagues, including Liga Elite, through its new owner[16]. As part of said agreement, Defendant Rivera fraudulently misrepresented, and repeated during the press conference, that its intention was to collaborate with the existing leagues, when in reality Defendant Rivera's intention was to use LJPR to compete, or obstruct, the operations of the existing leagues, to take their space and earnings to himself and his coconspirators.

82.    As with the case of PRSL and the Superior League, the Federation did not bring in new players, nor new fields, nor new referees, and created its LJPR using the same players and teams that were already participating in the existing leagues, because the intention of Defendants was to eliminate the existing amateur leagues and take over their business. Therefore, it was a matter of time before a conflict would arise. Soon enough, among other bad faith actions, the Federation began to schedule LJPR games on the same dates that Liga Elite had scheduled games, which caused logistical problems to Liga Elite.

83.    On December 2nd, 2021, Defendant Ortiz notified Plaintiff Cornejo by email that an ethical complaint had been filed, by Defendant Ortiz, against Plaintiff Cornejo for his statements during the Liga Elite meeting. The ethical complaint charged Plaintiff Cornejo with violations of articles that were clearly inapplicable to the situation, such as the one that requires FPF affiliates and their staff to avoid political postures, to be loyal to FPF, its leagues and clubs, to avoid conflict of

---

[16] On April 23rd, 2021, Plaintiff Cornejo sold Liga Elite but remained employed by the new owner as League Director.

interest, and to avoid defamation. No reasonable person could interpret Plaintiff Cornejo's statements to amount to such alleged violations.

84.    On January 13th, 2022, the Ethics Commission found against Plaintiff Cornejo and imposed an extraordinarily severe punishment of two (2) years suspension from his position in the Board of Directors of the Federation, and from his participation in general in the sport of football soccer in Puerto Rico. This meant that Plaintiff Cornejo could not attend to FPF Board meetings and vote on important matters, and could not perform his job, as the Director of Liga Elite, during the time period immediately before the 2023 FPF elections. It also eliminated Plaintiff Cornejo's access to a vast majority of the persons affiliated to clubs with voting rights who participated in Liga Elite, and who assisted to Liga Elite meetings with whom Plaintiff Cornejo would discuss Defendants' illegal acts and conduct, and the candidates for the 2023 elections. This situation negatively affected Plaintiff Cornejo's finances.

85.    Although FPF's statutes provide that Plaintiff Cornejo could only be suspended from his position on the Board of Directors during a General Assembly by the vote of the FPF's members, he was suspended unlawfully, by and through the referenced decision, without due process. This eliminated the only opposition in the Board of Directors to Defendants' deceitful plans, which was Plaintiff Cornejo who, at the time, had been a member of such body for seven years and had seniority over all other members and was an open critic of the illegal and detrimental conduct of the Defendants.

86.    Plaintiff Cornejo was not only associated to Defendant Rivera's main electoral challenger, Mr. Alberto Santiago, because his league operates in the facilities of Mr. Santiago's club, Bayamon Soccer Club, but also publicly supported Mr. Santiago against Defendant Rivera in the elections.

87.     On January 19th, 2022, Defendant Ortiz sent an email to all Defendant FPF members, fraudulently misrepresenting that Plaintiff Cornejo incurred in grave violations of the Ethics Code. Defendant Ortiz's statement constitutes a fraudulent misrepresentation of fact because he represented to FPF members and affiliates that Plaintiff Cornejo had in fact incurred in the violations, as the decision of the Ethics Commission was not final and the appeal process was still available to Plaintiff Cornejo and Plaintiff Cornejo was ultimately acquitted of the violations. The email also conveyed that Plaintiff Cornejo was suspended for such violations and that any member who had any relation to him soccer wise would be sanctioned. By making these fraudulent misrepresentations, Defendant Ortiz intended to intimidate all club members, to avoid challenges to the Defendants' control of the enterprise during the next elections.

88.     On January 27th, 2022, Plaintiff Cornejo appealed the sanction to the Appeals Commission, but now with the assistance of legal representation provided by Plaintiff Olmo. In the appeal, Plaintiff Cornejo argued that his statements did not amount to ethical violations.

89.     Even though the Federation's statutes provide that the Appeals Commission must resolve the appeal within fifteen (15) days of filing, Plaintiff Cornejo waited in excess of the 15 days without receiving a decision on his appeal and, on March 15th, 2022, Plaintiff Cornejo, through Plaintiff Olmo, filed an appeal to the COPUR, which COPUR referred to its "Tribunal de Arbitraje Deportivo del Comité Olímpico de Puerto Rico" ("TAAD"), informing that he had been unlawfully suspended, and that the FPF had violated its own statutes to keep him indefinitely suspended by failing to consider and decide the appeal.

90.     The Federation failed to comply with the TAAD's several requests to comply with FPF statutes and notify the resolution of the Appeals Commission. Upon information and belief, the resolution of the Appeals Commission was favorable to Plaintiff Cornejo and Defendants decided

to not disclose it, thereby forcing the resignations of the members of the Appeals Commission from their positions or ordering their dismissal of the Commission by Defendants.

**Defendants refuse to recognize Pumas' affiliation**

91.     On February 14th, 2022, Plaintiff Olmo submitted a formal petition to FPF to reactivate its affiliation, because although the Assembly had never disaffiliated Pumas, due to economic constraints, Puma had not been paying its federative dues.

92.     The next day, February 15th, 2022, Defendant Ortiz sent an email fraudulently misrepresenting that Pumas was not an affiliate and that had to start affiliation procedures from scratch, which required a larger payment than reactivation procedures. This statement was a fraudulent misrepresentation because Pumas is the longest active member club and has never been disaffiliated. Plaintiff Olmo was forced to pay this $350.00 amount and to start affiliation proceedings for Pumas. If Defendant Ortiz had recognized Pumas' affiliation, the process would have been shorter, and Pumas would have had a vote in the regional association, which association in turn would vote for the President and Board of Directors.

**TAAD revokes the Ethics Commission**

93.     On June 5th, 2022, the TAAD issued a resolution concluding that the sanctions imposed on Plaintiff Cornejo were extremely severe, disproportionate to the facts alleged against him, and that the FPF's Ethics Commission had exceeded its powers and had acted in an "ultra vires" manner by excluding Plaintiff Cornejo from the FPF's Board of Directors, and revoked all of the sanctions imposed on Plaintiff Cornejo.

94.     On June 27th, 2022, Defendant Ortiz sent an email to COPUR in which he included a formal official resolution of FPF's Board of Directors, including Defendant Rivera and Defendant Martinez, adopting and acquiescing with the TAAD's decision and, therefore, acquiescing to

reinstate Plaintiff Cornejo. Said resolution was another fraudulent misrepresentation of fact because, even though Defendants Rivera, Martinez and Ortiz represented to COPUR that FPF would accept its order and reinstate Plaintiff Cornejo, on that same date, Defendant Ortiz notified Plaintiff Cornejo, by email, that his suspension was still in effect, after a second fraudulent and unfounded ethical complaint had been filed by Defendant Ortiz against Plaintiff Cornejo. It was a 2019 complaint that had been closed and was now being recycled to keep Plaintiff Cornejo out of the Board of Directors, and out of the football soccer fields, where other members with votes frequented and talked to Plaintiff Cornejo about Defendants' illegal and detrimental acts and conduct.

**Second fraudulent complaint against Cornejo**

95.    Between June 27th, 2022 and July 13th, 2022, Defendant Ortiz fraudulently misrepresented, via email, to the Ethics Commission that there was a pending ethical complaint for sexual harassment of an FPF employee against Plaintiff Cornejo when the complaint had been closed years ago and the complainant was not even working at FPF anymore.

96.    On July 13th, 2022, Defendant Ortiz notified Plaintiff Cornejo by email of the complaint that was allegedly pending in the Ethics Commission. Plaintiff Cornejo answered the complaint through his attorney, Plaintiff Olmo.

97.    On August 24th, 2022, Defendant Ortiz notified Plaintiff Cornejo by email of the Ethics Commission's resolution dismissing the charges for insufficiency of evidence.

98.    The Federation and Defendant Ortiz had ten (10) days, or until September 3rd, 2022, to appeal the Resolution, but did not do so.

99.    After several days had passed and the time to appeal had expired, Plaintiff Cornejo requested Defendant Ortiz to reinstate him.

100.    On September 28th, 2022, Defendant Ortiz sent an email to Plaintiff Cornejo, including a resolution signed by Defendant Rivera and Defendant Ortiz, indicating that they were in disagreement with the resolution and with the attitude assumed by the members of the commission, that after the issuance of the resolution dismissing the second fraudulent complaint, two of the members of the Ethics Commission had resigned and, therefore, a new Ethics Commission would be formed to decide the Federation's appeal to the dismissal, and, therefore, the suspension would remain in effect indefinitely until the new members of the Ethics Commission were appointed by Defendants. But that was another fraudulent misrepresentation of fact, because the appeal had to be done within ten days, which time had already lapsed, and any appeal had to be filed before the Appeals Commission and not before the Ethics Commission.

101.    Upon information and belief, the members of the Ethics Commission resigned, or were dismissed, because they refused to follow instructions from Defendants as to how to decide the complaint.

102.    As Plaintiff Cornejo was not reinstated, as previously ordered by TAAD, he filed a motion for contempt with the TAAD through his attorney, Plaintiff Olmo.

103.    On November 9th, 2022, after affording the FPF time to oppose the motion, the TAAD stated that, in light of the FPF's failure to object, it was ordering, for the second time, the immediate reinstatement of Plaintiff Cornejo.

**Pumas' children suffer the consequences**

104.    On November 16th, 2022, TAAD referred FPF to COPUR for disaffiliation proceedings.

105.    On that same date, with three weeks remaining of the Liga Elite tournament, Defendant Ortiz sent an email to Pumas de Roosevelt Futbol Club ("Pumas"), through Plaintiff Olmo, fraudulently misrepresenting that because the club had not completed the affiliation process, the

club's four underage teams would not be able to complete the few remaining weeks of competition. This was a fraudulent misrepresentation because Plaintiff Olmo had personally begun, and undertaken the affiliation process, on February 14th, 2022, by paying $350.00 from his own pocket as affiliation fee, submitting extensive documentation and notifying that its four teams of children ranging from 5 to 13 years of age, which comprised around 50 players, would participate in Liga Elite competition without receiving any notice of noncompliance from FPF, in more than nine months. During those nine months, Plaintiff Olmo took steps to get five of Pumas' coaches to undergo FPF's new licensing requirements, including himself, and paying most of the expenses with his own funds. Some of the courses were offered by Defendant Mozo, who was aware of Plaintiff Olmo's efforts towards safeguarding Pumas' affiliation to FPF. The statement was also a fraudulent misrepresentation because FPF's statutes provide that clubs can participate in competitions during the affiliation process, which was the case at the moment.

106.    After several communications, by email, between Defendant Ortiz and Plaintiff Olmo and massive inquiries from the players' parents directly to the Federation, the players were allowed to complete the tournament. This situation affected Plaintiff Olmo in his soccer business and in his personal finances. It also affected the sixty children and their parents who experienced anxiety and suffering by the prospect of not being able to complete the tournament. It also affected PUMAS economically.

**FPF's Extraordinary Assembly to eliminate TAAD's appellate jurisdiction.**

107.    On November 5th, 2022, with the exclusion of Plaintiff Cornejo, FPF held an extraordinary assembly and approved a modification to FPF's statutes to eliminate the appellate jurisdiction of TAAD. This action constituted a violation of COPUR's and FPF's 2018 agreement to recognize TAAD's jurisdiction.

108.    On, or around, said date, Defendant Rivera fraudulently misrepresented that from then on, appeals from the resolutions of the Commissions had to be taken to the Court of Arbitration of Sports ("CAS"), located in Switzerland. Knowing that appealing to the CAS costs a substantial amount of funds, which is prohibitive to members and affiliates, Defendants forced members and affiliates to present any appeal to CAS, which obviously resulted in no appeals being filed by any member, or affiliate of FPF, to CAS.

109.    Defendants fraudulently misrepresented to members and affiliates that from then on, appeals from the resolutions of the Commissions had to be taken to the Court of Arbitration of Sports ("CAS"), when they knew that FIFA has administrative, and legal, procedures available to appeal the resolutions of FPF's Commissions. Defendants have deceived their members, and affiliates, to prevent them from using FIFA procedures to complain about Defendants. Notwithstanding, the Defendants in Puerto Rico allege that their acts and conduct are sanctioned (permitted) by FIFA and CONCACAF, and thus, FIFA and CONCACAF are indispensable parties to the litigation.

**Third fraudulent complaint against Plaintiff Cornejo**

110.    On December 14th, 2022, COPUR notified FPF of its intention to disaffiliate FPF from the Olympic movement because of Defendants' failure to reinstate Plaintiff Cornejo.

111.    On December 19th, 2022, Defendant Ortiz emailed to FPF's affiliates a document titled "Comunicado," fraudulently misrepresenting that FPF had complied with COPUR requests, and that Defendant FPF had followed its rules for resolution of conflicts, when in fact, Defendant FPF had not complied with COPUR's requests for the Defendant FPF to issue, or notify, the resolution of the Appeals Commission and opted to disobey the TAAD and did not reinstate Plaintiff Cornejo, and had not followed the statutory rule that appeals had to be resolved within 15 days. In the same

email, Defendant Ortiz also fraudulently misrepresented that FIFA supported the amendment of FPF's statutes to eliminate the jurisdiction of the TAAD for appellate matters, when FIFA, upon information and belief, did not support said amendment. Defendants fraudulently misrepresented that FIFA supported the elimination of the TAAD's jurisdiction when the fact is that such a clause is left to the discretion of each national association. The purpose of these misrepresentations of facts was to hide the fact that Defendant FPF was about to be disaffiliated from COPUR because Defendants refused to reinstate Plaintiff Cornejo, and because they eliminated TAAD's jurisdiction from the statutes. Defendants wanted to hide said fact to maintain the loyalty of members with voting rights who would have voted for a different President and Board of Directors had they known the truth.

112.     On December 20th, 2022, Defendant Ortiz notified, by email, of a third complaint filed by Defendant Ortiz against Plaintiff Cornejo, in which Defendant Ortiz fraudulently misrepresented that Plaintiff Ortiz violated ethical rules, once again, for making use of his right to free speech to denounce the illegal conduct of Defendants by speaking in private media. Plaintiff Cornejo was again assisted by his attorney, Plaintiff Olmo, and answered the complaint admitting his statements, which were not in violation of any ethical rules.

113.     On December 29th, 2022, Defendant Ortiz notified Plaintiff Cornejo, by email, that he had been sanctioned, by a newly formed Ethics Commission, now named the Disciplinary and Ethics Commission (after the Disciplinary Commission and the Ethics Commission were merged into this one entity by Defendants), for having exercised his right to freedom of expression, i.e., free speech, to denounce the Defendants' actions and omissions, but this time he was suspended for four (4) years (double the initial sanction dismissed by TAAD with the approval of the FPF). The new Disciplinary and Ethics Commission fraudulently misrepresented that Plaintiff Cornejo's

statements during the interview constituted ethical violations. The members of the commission acted illegally, following instructions from Defendants. Plaintiff Cornejo appealed the resolution, once again assisted by Plaintiff Olmo.

114.    On January 30th, 2023, Defendant Ortiz notified Plaintiff Cornejo, by email, of the Appeals Commission's resolution ratifying the sanction against him. To sustain such a drastic punishment, in the Resolution, the Appeals Commission falsely misrepresented that Plaintiff Cornejo had committed the violations, and also that he had incurred in the same kind of offense previously by making reference to the facts of the initial complaint brought against Plaintiff Cornejo, even though the FPF never notified the resolution of the Appeals Commission, and had expressly acquiesced in the TAAD's order dismissing the initial complaint.

115.    Plaintiff Cornejo filed another motion for contempt with the TAAD, as this third complaint and sanction were just as fraudulent and unfounded as the first complaint and sanction, and a pretext to disobey the TAAD's order of reinstatement. Once again, the Federation did not comply with the TAAD's orders and the Puerto Rico Olympic Committee began proceedings to disaffiliate Defendant FPF and suspend Defendant Rivera.

**Electoral Fraud and Maria Larracuente**

116.    During the past presidency of Eric Labrador, Plaintiff Larracuente was a CONCACAF venue manager and commissioner. She earned this distinction, that few possess in Puerto Rico, after several decades of hard work with leagues, such as PRSL, and clubs affiliated to FPF, as coach and director of competitions, among other positions, after working within the FPF, as member of the FPF's Board of Directors, and later with CONCACAF, as venue manager and game commissioner of important regional competitions that were significant for the 2022 World Cup qualification. This meant that CONCACAF would frequently contact the FPF and request her

services, by email, to act as venue manager, or commissioner, which represented substantial earnings for Plaintiff Larracuente. Plaintiff Larracuente had been gradually ascending in CONCACAF's ranks with the expectation of participating in the 2022 World Cup, as game commissioner.

117.    However, when Defendant Rivera assumed the Presidency, he replied to CONCACAF's email communications, also by email, by fraudulently misrepresenting to CONCACAF that Plaintiff Larracuente was not available, and was able to persuade its coconspirator CONCACAF to make the job offers to Defendant Rivera's associates, not to Plaintiff Larracuente. This allowed Defendant Rivera to reward his associates, and assure their votes in his favor in the upcoming elections. As a result, Plaintiff Larracuente lost earnings of at least $1,500.00 each year since 2019.

118.    On January 18th, 2023 the Federation sent an email communication with a memorandum (Circular No. 2023-04) to its affiliates announcing the opening of electoral procedures and the calendar for the regional assemblies and filings for candidacies.

119.    On January 19th, 2023 the Federation sent another email with the memorandum (Circular No. 2023-05), in which Defendants fraudulently misrepresented to its members, and potential electoral candidates, that now they have to meet additional requirements that are not expressly required by FPF's statutes (which expressly lists the requirements), by requiring that candidates obtain a certification from the FPF's registry department evidencing the candidate's participation at the administrative, or executive level, of a member or affiliate, during, at least, three of the last five years. Although the statutes require that the candidate have participated at the administrative, or executive level of a member or affiliate, during, at least, three of the last five years, now the Defendants were adding the requirement of obtaining a certification from the FPF's registry department. Due to years of mishandling, the registry department does not have adequate

information to make such certifications. At this moment, Plaintiffs do not know the identity of the person who originated the communication but will proceed to request authorization to amend the pleadings after discovery is conducted.

120.    On January 31st, 2023, Plaintiff Larracuente requested said certification because she wanted to run for President.

121.    On February 1st, 2023, FPF's registry department sent an email to Plaintiff Larracuente, fraudulently misrepresenting that she had not been part of the executive, or administrative, staff of a member or affiliate, during, at least, three of the last five years, which was a requisite for the approval of her candidacy, and, therefore, her request was rejected. Plaintiff Larracuente replied to this communication, disclosing and explaining her credentials, of which the Defendants in Puerto Rico were previously aware of but ignored.

122.    On February 3rd, 2023, via email, Defendant Ortiz fraudulently misrepresented to Plaintiff Larracuente that only the evidence in FPF's official files was taken into consideration to determine if a candidate met the requirement of having formed part of the managerial, or executive, staff of any affiliate when the fact is that those files have not been kept regularly, the FPF statutes do not impose that requirement and FPF, has historically relied on information provided by members, affiliates and candidates to evaluate requests for candidatures and Plaintiff Larracuente had submitted overwhelming documentary evidence to sustain her request.

123.    On February 7th, 2023 Plaintiff Maria Larracuente filed her candidacy to the presidency of the Federation, notwithstanding the denial of the Registry Department to qualify her as a candidate.

124.    On February 9th, 2023, once again, using the internet, Defendant Ortiz fraudulently misrepresented to Plaintiff Larracuente that only the evidence in FPF's official files was taken into

consideration to determine if a candidate met the requirement of having formed part of the managerial or executive staff of any affiliate, and rejected her candidacy.

125.    Plaintiff Larracuente followed the due process of appealing her case to the Federation's electoral commission, but the Secretary General, Defendant Ortiz, assumed the role of said body and, once again, used the email to deny Plaintiff Larracuente of an objective and just outcome. When she complained about Defendant Ortiz's usurpation of powers belonging to the electoral commission and appeals commission, the complaint was then forwarded to those bodies.

126.    On February 17th, 2023, the Electoral Commission fraudulently misrepresented that Plaintiff Larracuente did not meet the requirements to be candidate to President.

127.    On February 26th, 2023, the Appeals Commission fraudulently misrepresented that Plaintiff Larracuente did not meet the requirements to be candidate for President, in spite of the overwhelming evidence that she submitted, showing that she did meet the necessary requirements.

128.    Plaintiff Larracuente complied with the statutory requirements and was denied participation, while at least one person who did not meet the requirements had been previously made a member of the Board of Directors by the Defendants, in clear violation of Plaintiff Larracuente's constitutional rights to due process and equal protection under the law.

129.    Upon information and belief, several member clubs with vote are not in compliance with FPF's statutes, as to Department of State corporate regulations, Department of Recreation and Sports of Puerto Rico (DRD) regulations, and FPF's regulations, and, therefore, voted illegally in the March 2023 elections. Additionally, several members of the Board of Directors have been illegally named to their positions without meeting statutory requirements. Defendants have engaged in this conduct to maintain control of FPF and reward themselves and their associates.

130.    On February 2022, Plaintiff Olmo attempted to register Pumas' superior category team to play in LPR, but was told by Defendant Rivera that it was not possible because it had to comply with several requirements that would take over a year to meet. This was a fraudulent misrepresentation of fact because, Pumas could comply with all of the requirements to participate on that competition.

131.    Additionally, before the 2023 LPR tournament, Defendant FPF dramatically increased the price of participation, to exclude member clubs that would not vote for Defendant Rivera and his syndicate. However, after the March 2023 elections, Defendant FPF suddenly allowed clubs that did not meet requirements to participate in the LPR and dramatically lowered the price to participate. Nevertheless, even though Plaintiff Olmo had expressly requested authorization from FPF officials for Pumas to participate, it was not even invited. In sum, as clubs that participate in the LPR have a direct vote in the elections, Defendants manipulated the admission process to exclude persons that would not vote for them, or that they considered adversarial.

132.    Moreover, upon information and belief, Defendant Rivera favored several members with substantial amounts of discretionary FIFA funds, preceding the March 2023 elections, further denying Plaintiff Larracuente and the other Plaintiffs' hopes and expectations, when those who voted for Defendants would be rewarded financially at Christmastime.

133.    To prevail in the upcoming elections, Defendants also illegally reorganized the metropolitan region to exclude the persons that were not part of their group and ensure that the metropolitan region's vote would go to the Defendants.

**Defendants reject Pumas petition and exclude Plaintiff Olmo from the Federation**

134.    On January 24th, 2023, after several fundraisers conducted by the parents of the players,

Pumas was able to purchase insurance and Plaintiff Olmo emailed to FPF the evidence of Pumas' insurance which was the only requirement left for Puma to complete the affiliation process and be presented to the next Assembly for ratification. On that same date Plaintiff Olmo paid the $350.00 affiliation fee for a second time.

135.    Although Plaintiff Olmo expected to have completed Pumas forced reaffiliation process with the submission of the insurance, on January 24th, 2023 Defendant Ortiz notified Pumas that its affiliation process that begun on February 14th, 2022, almost a year earlier, was being declared null and void, and that Pumas needed to start the process again, which meant more economic expenses for Pumas and Plaintiff Olmo, who was in charge of Pumas' administration and used his own funds for that purpose.

136.    On February 1st, 2023 Plaintiff Olmo sent a petition for reaffiliation with the corresponding documentation.

137.    On February 6th, 2023, after Jose R. Torres ("Torres"), who is one of the most experienced and FIFA recognized referees in Puerto Rico, expressed to the Federation, as unofficial leader of the referees, the referees' concerns for situations that were affecting all the referees, Defendant Ortiz notified by email to Torres that there was a complaint against him that had been filed by the Director of Referees.

138.    On February 16th, 2023, Plaintiff Olmo represented Torres before the new Disciplinary and Ethics Commission on that matter.

139.    On February 24th, 2023, Defendant Ortiz sent an email to Pumas, fraudulently misrepresenting that Plaintiff Olmo was immersed in legal controversies against the FPF when the fact was that Plaintiff Olmo's representation of Plaintiff Cornejo, Torres and others before FPF's commissions and COPUR, were not controversies against the FPF and had nothing to do with

Pumas' affiliation process and, therefore, Plaintiff Olmo had no conflict of interest that prevented him from representing the club before the FPF, and particularly in the affiliation process. Defendant Ortiz further stated that, therefore, said process would be halted until another person was named to represent the club before the FPF, because Plaintiff Olmo, who, as club President had submitted the club's documentation for affiliation to the Federation, was not legally able to do so. This was another fraudulent misrepresentation, as there is no statutory provision that disqualifies Plaintiff Olmo from his position as President of a club and representative before the FPF for providing legal representation before the FPF's commissions.  In fact, it is a violation of Plaintiff Olmo's clients' right to counsel of choice under the Constitution.

140.    Consequently, a Resolution was issued by the board of directors, or "Consejo", which includes Defendant Rivera and Defendant Martinez, fraudulently misrepresenting that Plaintiff Olmo violated the statutes and Ethics Code and, therefore, the affiliation process could not continue until another club officer was named to represent the club in the process.

141.    In violation of its own statutes, Defendant FPF excluded Plaintiff Olmo without following the statutory procedure of filing a complaint before the new Disciplinary and Ethics Commission.

142.    This caused Plaintiff Olmo to resign as Pumas president to avoid further harm and damages to the club and the children who play in the club, and as a result, the club's operational and restructuring plans were paused, to the economic detriment of the club and Plaintiff Olmo. As a result, Plaintiff Olmo's soccer business and personal finances have been negatively affected. Also, as a result, Pumas' affiliation has not been recognized and, therefore, Defendants are assured that Pumas will not have a vote in the Federation anytime soon.

**Chilling Effect**

143.    As most members are in the football soccer business, a suspension, like the one imposed on Plaintiffs PRSL, Cornejo, Larracuente and Olmo, to any of them would mean substantial economic damages and the closing of their businesses.

144.    Defendants made sure that FPF members were on notice of the draconian sanctions imposed on Plaintiffs and others who disagreed with their conduct by providing notice via emails, thereby, causing fear on members, and a chilling effect that led to their reelection with 27 unanimous votes.

145.    On March 12th, 2023, the Defendants won the elections and kept control of the Federation.

146.    The exclusion of Plaintiffs PRSL from FPF's activities, the exclusion of Plaintiff Cornejo from the Board of Directors and from the Liga Elite for over a year, the denial of Larracuente's candidacy, and the exclusion of Plaintiff Olmo, illegally benefitted the Defendants to win the elections and/or to maintain control of the Federation and/or to enrich themselves and their associates.

147.    On March 27th, 2023, the Federation was disaffiliated by COPUR for failing to reinstall Plaintiff Cornejo, and for violating the agreement with COPUR by not recognizing TAAD's jurisdiction.

**Futbol Boricua (FBNET), Inc.**

148.    Edwin Jusino, as Executive Director of Plaintiff Futbol Boricua (FBNET), Inc., entered into an agreement with PRSL in 2018 to transmit live its weekly games, starting October 2019. Plaintiff Futbol Boricua invested in coordinating logistics, purchased audiovisual equipment and retained and trained personnel to cover these games and tournaments, between 2 and 4 games every weekend, for a minimum three (3) year period and option for extension, making this endeavor part of Plaintiff Futbol Boricua's future revenue generator.

149.    Defendants learned of the plan, and copied it, retaining another entity to cover the Federation's Liga PR games, while leaving Plaintiff Futbol Boricua (FBNET), Inc. without a league to cover.

150.    Due to Plaintiff Futbol Boricua's coverage of FPF's affairs, it was the target of several unlawful actions. After suffering economic losses due to the actions of an associate of the Defendants, who contacted Plaintiff Futbol Boricua's sponsors and threatened to conduct a boycott of their products if they continued sponsoring Futbol Boricua, thereby causing the loss of at least one sponsorship agreement.

151.    On November 20th, 2022, General Counsel for Plaintiff Futbol Boricua had to write a letter to said person demanding a cease and desist of said conduct.

152.    On April 17th, 2023, the Defendants attempted to inflict additional economic damages to Plaintiff Futbol Boricua, by conditioning the use of its facilities by the Liga Atlética Universitaria ("LAI") to the exclusion of Plaintiff Futbol Boricua from the activity. As Plaintiff Futbol Boricua was in charge of LAI's dissemination of the competition, LAI decided to conduct the match elsewhere and honor the contract with Plaintiff Futbol Boricua. However, the Defendants have employed these same tactics before, thereby, excluding Plaintiff Futbol Boricua from soccer business possibilities and causing economic damages.

153.    Plaintiff Futbol Boricua's economic losses are estimated at more than $84,000.00.

154.    Plaintiffs sue to recover their out-of-pocket losses, compensatory damages, nominal damages, punitive damages, and attorneys' fees and expenses, and all damages permitted under the Sherman Act and RICO Act.

**Interstate business**

155.    The business of football soccer in Puerto Rico is intricately connected to interstate commerce as most, if not all, of the equipment used, including but not limited to shoes, balls, uniforms, video cameras, cement, rebar, turf, components and appliances, and other materials to construct stadiums, are imported from the United States. Additionally, the use of wire and mail communications, which are facilities of interstate commerce, was an essential part of Defendants' schemes and served to further their plans. Particularly, FPF conducts substantial interstate commerce activities, consisting of travels to soccer matches and trainings to the United States, or to other countries, but traveling by and through United States airports.

**Additional Facts Derived from Defendants' Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint**

156.    Defendants, FPF, Ivan Rivera-Gutierrez, Jose "Cukito" Martinez, Gabriel Ortiz, and Luis Mozo Cañete, answered Plaintiffs' Second Amended Complaint, and asserted, at ¶¶ 46, 49, and 50, that "plaintiffs' awareness that the Fédératione Internationale de Football Association (FIFA) and the Confederation of North, Central American, and Caribbean Association Football (CONCACAF) are indispensable parties to the litigation."

157.    Defendants also asserted, at ¶ 55 of their Answer and Affirmative Defenses, that Defendant FPF established its Liga de Puerto Rico (LPR) in compliance with FIFA and CONCACAF regulations and based on an initiative from FIFA for the expansion of permanent federative national leagues.

158.    In light of Defendants' position that their conduct, as alleged in Plaintiffs' Second Amended Complaint, was caused by FIFA's initiative, and was established in compliance with directives from FIFA and CONCACAF, Plaintiffs hereby include additional Defendants FIFA and

CONCACAF, and assert that all allegations made against Defendants FPF, Rivera, Martinez, Ortiz, and Mozo, are also made against FIFA and CONCACAF.

## FIRST CLAIM FOR RELIEF:

### Violation of section 1 of the Sherman Act, 18 U.S.C. § 1962(c)

159.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint, and further state:

160.    Defendant FPF is a separate economic actor from FIFA and each FIFA-affiliated Confederation and FIFA-affiliated National Association.  In addition, the constituent members of each Confederation and National Association are separate economic actors.

161.    The actions of Defendant FPF and FIFA in concert with each Confederation (CONCACAF) and National Association (FPF) and their respective constituent members constitutes action by separate economic actors engaged in concerted action and agreements to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico.

162.    This unlawful conduct includes Defendant FPF's anticompetitive agreement to comply with the FIFA Policy that prohibits the sanctioning of any League tournament in Puerto Rico not conducted by Defendant FPF; the anticompetitive agreement by FIFA and its affiliates, Defendant FPF herein, to boycott and punish professional soccer leagues, clubs and players that participate in League tournaments in Puerto Rico without a Defendant FPF sanction, or permit, ("aval" in Spanish); and the anticompetitive agreement between Defendant FPF and FIFA to exercise its sanctioning authority in a manner that restricts output in the relevant market and enhances the competitive market position of Defendant FPF and its economic partners, which include a travel agency owned and operated by Defendant Rivera's family.

163.    The anticompetitive agreements between Defendant FPF and FIFA and their constituent member entities have been imposed and applied in interstate commerce and have unreasonably restrained interstate commerce.

164.    The anticompetitive agreements between Defendant FPF and FIFA and their constituent member entities constitute inherently suspect group boycotts, which on their face would always, or almost always, tend to restrict competition and decrease output, are plainly anticompetitive, and obviously lacking any redeeming procompetitive values.  Accordingly, Defendant FPF's participation in these agreements to limit the output of League tournaments and events in Puerto Rico is a *per se* violation of Section 1 of the Sherman Act.

165.    These anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities are also a naked restraint under the antitrust laws that cannot be justified on procompetitive grounds.  Accordingly, in the alternative, Defendant FPF's participation in these agreements to limit the output of League tournaments and events in Puerto Rico is a violation of Section 1 of the Sherman Act under an abbreviated rule of reason analysis, *i.e.*, the "quick look" test.

166.    The anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities have had significant anticompetitive effects on the relevant market for League tournaments and events in Puerto Rico, including causing antitrust injury to consumers, sponsors and competitors in the market as alleged herein.

167.    The anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities serve no procompetitive purpose and have instead served to restrict output in the relevant market for League tournaments and events in Puerto Rico.  Reasonable, less restrictive

means also exist to achieve any claimed procompetitive purpose of these agreements, which also renders them in violation of Section 1 of the Sherman Act under a full rule of reason analysis.

168.    The anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities have directly and proximately caused antitrust injury and damages to the business and property of Plaintiffs, to similarly situated competing promoters, and to consumers in the form of cancelled League tournaments and events that were to be held in Puerto Rico, precluded the ability to schedule future League tournaments and events in Puerto Rico, and thus prevented PRSL's SafeStadium plans and projects to be funded and built, after PRSL had already secured the land, building materials, and retained the professionals to design and build said stadia. Plaintiffs, competing promoters, and consumers will continue to suffer antitrust injury and damages unless Defendant FPF is enjoined from continuing to participate in these anticompetitive agreements with FIFA and others to exercise Defendant FPF's sanctioning authority to restrict output and unreasonably restrain competition in violation of Section 1 of the Sherman Act through group boycotts and other *per se* unlawful behavior.

169.    The exclusion of Plaintiffs, PRSL, Cornejo, Olmo, Larracuente, and Futbol Boricua, from the industry, and the FPF activities, violated antitrust laws because Defendants conspired to restrain trade by excluding Plaintiffs from the industry.

**Prayer for relief for Sherman Act claims**

170.    Accordingly, Plaintiffs pray for judgment with respect to their Complaint as follows:

171.    That the unlawful contracts, conspiracies, or combinations alleged herein, and the acts done in furtherance thereof by Defendant FPF and its co-conspirators, be adjudged and decreed a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

172.    That the Court enjoin Defendant FPF from continuing to adhere to its unlawful agreements with FIFA and others to unreasonably restrain trade in Puerto Rico, to cease withholding its

sanctioning of League tournaments and events in Puerto Rico from Plaintiff PRSL, and excluding Plaintiff Cornejo, Plaintiff Larracuente, Plaintiff Olmo, Futbol Boricua, and other soccer professionals, and to cease exercising its sanctioning authority to restrict output and protect the competitive position of Defendant FPF and its coconspirators, all in violation of Section 1 of the Sherman Act;

173.    That the Court award compensatory and treble damages to Plaintiffs resulting from Defendant FPF's violation of Section 1 of the Sherman Act in an amount to be determined at trial;

174.    That the Court award nominal damages to Plaintiffs resulting from Defendant FPF's violation of Section 1 of the Sherman Act in an amount to be determined at trial;

175.    That the Court award pre-judgment and post-judgment interest at the maximum legal rate;

176.    That the Court award Plaintiffs' costs, expenses, and reasonable attorneys' fees in this action; and

177.    That the Court award such other relief as it may deem just and proper.

## SECOND CLAIM FOR RELIEF:

### Violations of Federal Civil RICO—Conduct of a RICO Enterprise, 18 U.S.C. § 1962(c)

178.    The Plaintiffs incorporate herein each of the aforementioned paragraphs, and further state:

179.    At all relevant times, Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

180.    Defendants each violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs above and below.

### Enterprise

181.    At all relevant times, the Federation constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, the Federation was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, Defendants Rivera, Martinez, Ortiz, and Mozo, held a position in the Federation, as well as participated in the operation, management, and directed the affairs of the Federation. The Federation, as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. The Federation exists separate and apart from the pattern of racketeering activity. Defendants have had and do have legitimate business plans outside the pattern of racketeering activity related to the Federation.

**Use of the Mails and Wires to Defraud, in violation of 18 U.S.C. §§ 1341 and 1343**

182.    Defendants devised, or intended to devise, a scheme to defraud Plaintiffs of money, property, and other benefits of monetary value by excluding Plaintiffs from the FPF's affairs by means of false or fraudulent pretenses and representations, and deception.

183.    For the purposes of executing their scheme, Defendants delivered or caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. For the purposes of executing their scheme, Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

184.    In furtherance of their scheme, Defendants used the wires and/or U.S. mails or private or commercial carriers to deliver documents and things to Plaintiffs, or the Enterprise, for the purposes of defrauding Plaintiffs, including, but not limited to the following:

a.    Emails and website postings incorporating false, fraudulent and misleading statements regarding: the authority of the Federation, FIFA and CONCACAF; the purported exclusion of Plaintiffs from the affairs of the Federation;

b.    Wirings and/or mailings between and among Defendants concerning the scheme to defraud Plaintiffs of money and property as well as other benefits;

c.    Funds transferred between Defendants with the intent that those funds be used to promote the carrying on of Defendants' scheme to defraud Plaintiffs of money and property as well as other benefits.

185.    The Defendants also used wire and mail communications in furtherance of their scheme to defraud Plaintiffs, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to, the following instances:

a.    Defendant Rivera published in the website of the Federation information that discredited the Plaintiff PRSL and deceived members and affiliates about COPUR's disaffiliation and about FIFA's jurisdiction to handle appeals;

b.    Defendant Rivera emails to FIFA, CONCACAF, Plaintiff PRSL and to Federation members prohibiting participation in PRSL's league and discrediting PRSL;

c.    Defendant Ortiz emails to Plaintiff Cornejo excluding him from the Federation's affairs and from his employment;

d.    Defendant Ortiz emails to Plaintiff Larracuente excluding her candidacy and denying her standing to file complaint against Defendants Rivera and Ortiz;

e.    Defendant Ortiz fraudulent representations of facts contained in the three fraudulent complaints that he filed against Plaintiff Cornejo and his emails sending the resolutions of the

complaints and appeals and the resolutions of the Executive Committee containing fraudulent misrepresentations of facts.

f.      Defendant Ortiz emails to Pumas and Plaintiff Olmo excluding Plaintiff Olmo from the Federation for acting as lawyer for Plaintiff Cornejo and Torres and hindering his work at Pumas.

186.    Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity.

187.    Defendants' racketeering activities were multiple, continuous, and ongoing from about 2019, and remain ongoing.

188.    Defendants participated in the schemes, or artifices, knowingly, willfully, and with the specific intent to advance their scheme to deceive, or defraud, Plaintiffs. Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, letters, notices, and other documents, and then knowingly and with the intent to deceive Plaintiffs, caused those documents to be sent to Plaintiffs, FPF affiliates, or entities to further Defendants' scheme to defraud.

189.    Defendants have exerted undue pressure on the members of the commissions to control the outcome of the resolutions to decide against Plaintiffs.

190.    Even though Defendant Rivera and Defendant Ortiz have generated the email communications and phone communications in furtherance of the schemes, all Defendants conspired and agreed to do so. All communications in furtherance of the schemes were the result of the conspiracy and, therefore, attributable to all Defendants. Notably, Defendants FPF, Rivera, Martinez, Ortiz, and Mozo, asserted in their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint that their acts, which Plaintiffs described as RICO Act and Sherman

Act violations, were done "in compliance with FIFA and CONCACAF regulations and based on an initiative from FIFA for the expansion of permanent federative national leagues."

191.    Defendants have, on multiple occasions, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343. Defendants have, therefore, violated 18 U.S.C § 1956(a)(1)(A)(i).

192.    Each Defendant has engaged in multiple predicate acts, as described in paragraphs 23-136, *supra*. The conduct of each Defendant described in paragraphs 23-134, *supra*, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C.§ 1961(5).

193.    Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money and property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

194.    Plaintiffs were injured in their money and property by reason of Defendants' violation of 18 U.S.C. § 1962(c).

195.    Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962. Plaintiffs are the ultimate victims of Defendants' unlawful enterprises. Plaintiffs have been and will continue to be injured in their money and property in an amount to be determined at trial.

196.    Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

### THIRD CLAIM FOR RELIEF:

### Violations of Federal Civil RICO—Taking Control of an Enterprise, 18 U.S.C. § 1962(b)

197.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint, as if fully set forth herein, and further state:

198.    At all relevant times, Defendants each were "person[s]" pursuant to 18U.S.C. §§ 1961(3) and 1962(d). At all relevant times, the Federation constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, the Federation was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, Defendants each held a position in or were otherwise affiliated with the Federation as well as participated in the operation, management, and directed the affairs of the Federation. The Federation, as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. The Federation exists separate and apart from the pattern of racketeering activity. Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the Federation.

199.    Through a pattern of racketeering activity alleged herein, including without limitation the Defendants' violations of 18 U.S.C. §§ 1341 and 1343, Defendants took control of the Federation during the March 2023 elections, including but not limited to excluding Plaintiff PRSL and its 10 teams with direct vote for the Board positions, excluding Plaintiff Cornejo from Board meetings and from the industry. Therefore, the elections must be vacated and a new election must be held

to reorganize the Federation. Additionally, the Defendants must be excluded from any participation in the FPF affairs.

200.    By controlling the Federation, Defendants were able to cause this Enterprise to take actions to defraud Plaintiffs of money, property, and benefits of monetary value.

201.    As a direct and proximate result of Defendants' taking control of the Federation, in violation of 18 U.S.C. § 1962, Plaintiffs were injured in their monies, property, and benefits of monetary value.

202.    Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

## FOURTH CLAIM FOR RELIEF:

### Violations of Federal Civil RICO- Use of the Enterprise's income - 18 U.S.C. § 1962(a)

203.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein, and further state:

204.    Defendants invested the income derived from a pattern of racketeering activity in the Federation to continue their illegal conduct.

## FIFTH CLAIM FOR RELIEF:

### Violations of Federal Civil RICO—Conspiracy to Violate § 1962(a), (b) and (c) of RICO - 18 U.S.C. § 1962(d)

205.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein, and further state:

206.    At all relevant times, Defendants each were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

207.    At all relevant times, the Federation constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), (b) and (c). At all relevant times, the Federation was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(a), (b) and (c). At all times relevant hereto, Defendants each held a position in or were otherwise affiliated with the Federation as well as participated in the operation, management, and directed the affairs of the Federation. The Federation, as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. The Federation exists separate and apart from the pattern of racketeering activity. Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the Federation.

208.    Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

209.    The conspiracy commenced at least as early as 2019, and remains ongoing.

210.    The conspiracy's purpose was to defraud Plaintiffs of money, property, and benefits of monetary value by fraudulently excluding Plaintiffs from the FPF and/or depriving Plaintiffs of their membership, or affiliation, in the Federation.

211.    Each Defendant committed at least one overt act in furtherance of such conspiracy.

212.    These acts in furtherance of the conspiracy include, but are not limited to, the acts set forth in paragraphs 23-154, *supra.*

213.    Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of Defendants was necessary to allow the commission of this pattern of

racketeering activity. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

214.    Each Defendant knew about and agreed to facilitate the scheme to defraud Plaintiffs of their money, property, and other benefits of monetary value by fraudulently excluding Plaintiffs from the FPF and/or depriving them of their rights and/or Federation membership. It was part of the conspiracy that Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the Federation, including the acts of racketeering set forth in paragraphs 23-136, *supra*.

215.    As a direct and proximate result of Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their money and property, in an amount to be determined at trial.

216.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

**Prayer for relief for RICO claims**

217.    Wherefore, Plaintiffs, respectfully, request that the Court:

a.    Award Plaintiffs such equitable injunctive and ancillary relief as may be necessary to avert the likelihood of Plaintiffs' irreparable injury or prohibit the illicit conduct described herein during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, a temporary restraining order and preliminary injunctions;

b.    Order the reorganization of the Federation through a new election;

c.    Order the permanent exclusion of Defendants Rivera, Martinez, Ortiz, and Mozo, from the affairs of the Federation;

d.      Award Plaintiffs a declaratory judgment;

e.      Order Defendants to cease and desist from violating 18 U.S.C. § 1964;

f.      Enter judgment against Defendants in an amount equal to three times the amount of damages sustained because of Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1964;

g.      Restitution to Plaintiffs of all money, property, and benefits Plaintiffs were unlawfully defrauded and deprived of by Defendants;

h.      Award attorneys' fees and costs to Plaintiffs;

i.      Award damages to Plaintiffs in an amount to be determined at trial; and,

j.      Grant to Plaintiffs whatever other relief the Court may deem just and proper, including treble damages.

k.      Award nominal damages.

## SIXTH CLAIM FOR RELIEF: Damages for tortious interference and fault or negligence

218.    The Plaintiffs incorporate herein each of the preceding paragraphs, and further state:

219.    The facts stated above give rise to a state tort action. The Defendants are, therefore, also liable to the Plaintiffs under Article 1536 the Civil Code of Puerto Rico ("CCPR"), for all damages that their negligent actions have caused and continue to cause upon the Plaintiffs, as aforementioned. Defendants' interference with the contractual relation between Plaintiff Olmo and Pumas, Plaintiff Larracuente and CONCACAF, and between Plaintiff Futbol Boricua, LAI and others constitutes tortious interference.

## SEVENTH CLAIM FOR RELIEF: Damages for Abuse of Process

220.    The Plaintiffs incorporate herein each of the preceding paragraphs, and further state:

221.    CCPR's article 18 prohibits the abuse of process ("abuso del derecho") that the

Defendants have engaged by illegally closing PRSL's business and by filing unfounded complaints against Plaintiffs in the commissions that they control, and by excluding Plaintiffs from soccer business activities. Therefore, pursuant to Article 1536, Defendants are liable to Plaintiffs for their damages.

### EIGHTH CLAIM FOR RELIEF: Breach of Fiduciary Duties

222.    The Plaintiffs incorporate herein each of the preceding paragraphs, and further state:

223.    Defendants have violated their fiduciary duty to the corporation named FPF and to its members and affiliates by incurring in the above-described acts. These acts constitute violations of the law of corporations of Puerto Rico.

224.    Particularly, Art. 2.03, Puerto Rico's General Law of Corporations, provides:

*Article 2.03. — Exercise of management for the benefit of the corporation. (14 L.P.R.A. § 3523)*
*The authority and powers vested in any corporation organized under the laws of the Commonwealth of Puerto Rico or the directors and officers thereof, by law or in the certificate of incorporation or instrument of equal force and force, or in the corporate statutes, shall be enjoyed and shall be exercised by the Corporation or by the directors or officers, as the case, for the benefit of the shareholders of the corporation and for the prudent management of its business and affairs, as well as for the promotion of its aims and purposes.* (Emphasis supplied).

225.    Similarly, Art. 4.04 provides:

*Article 4.04. — Duty of loyalty of directors, officers and majority shareholders. (14 L.P.R.A. § 3564)*
*Directors, officers and majority shareholders, when they have a personal interest in matters that affect the corporation, will be subject to the duty of loyalty that obliges them to act in a fair manner in relation to corporate affairs.* (Emphasis supplied).

226.    Herein, officers of the Defendant Federation, Defendants Rivera-Gutierrez, Martinez, Ortiz, and Mozo-Cañete, entered into self-dealing activities, as referenced, in violation of their fiduciary duties towards other corporation members, including Plaintiffs Puerto Rico Soccer

League, Cornejo, Larracuente, and Olmo, by not acting in good faith, not being loyal and not caring about their interests, as required of fiduciaries.

### Prayer for relief for state law claims

227.    As a direct and proximate result of the negligent actions of the co-Defendants, as above described, the Plaintiffs have suffered damages. Therefore, the Defendants are jointly liable to the Plaintiffs for the payment of compensatory damages consequent to their actions.

228.    Judgment is sought for compensatory damages in the amount of $25,000,000.00 ($25 million dollars) for Plaintiff Puerto Rico Soccer League, $1,500,000.00 for Plaintiff Serralta, $1,000,000.00 for Plaintiff Cornejo, $500,000.00 for Plaintiff Larracuente, $250,000.00 for Plaintiff Olmo, and $100,000.00 for Plaintiff Futbol Boricua, plus costs of this action, attorneys' fees, and such other relief as the Court deems fair and appropriate under the circumstances.

229.    Plaintiffs also demand nominal damages, and all other damages allowed, including but not limited to treble damages, punitive damages, sanctions, attorney's fees and costs, prejudgment and post judgment interest.

230.    All codefendants are jointly liable for Plaintiffs' damages.

### DEMAND FOR JURY TRIAL

231.    Plaintiffs hereby demand a trial by jury.

**DATED** this September 5th, 2023.

Respectfully submitted,

*S/José R. Olmo-Rodríguez*
José R. Olmo-Rodríguez
USDC PR 213405
261 Ave. Domenech, SJ PR 00918
787.758.3570/jrolmo1@gmail.com

By: */s/Ibrahim Reyes*
Ibrahim Reyes Gándara

Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com
(Admitted *Pro hac vice*)
*Counsel for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed this document with the Clerk of Court using

CM/ECF/PACER, which will send a notice of such filing to all attorneys of record in this case.

*/s/ Jose R. Olmo-Rodríguez*
José R. Olmo-Rodríguez, Esquire

*/s/ Ibrahim Reyes*
Ibrahim Reyes, Esquire