## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., *et al.*, | Civil No. 23-01203 (RAM) |
| Plaintiffs, | |
| v. | Re: CIVIL RICO; ANTITRUST |
| FEDERACION PUERTORRIQUEÑA DE FUTBOL, INC., *et al.*, | |
| Defendants. | |

## MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COME NOW** defendants Federación Puertorriqueña de Futbol, Inc. ("FPF"), and Iván Rivera-Gutierrez, José "Cukito" Martínez, Gabriel Ortiz, and Luis Mozo Canete (the "Directors," and together with FPF, the "FPF Defendants"), by and through their undersigned counsel, submit this motion and memorandum of law to dismiss the *Third Amended Complaint* (**ECF No. 33**) (the "Complaint") filed by plaintiffs[1] ("plaintiffs") pursuant to Fed. R. Civ. P 12(b)(6) & 9(b).

## I. INTRODUCTION

Acting through counsel, plaintiffs filed this civil action making claims under the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and

---

[1] Plaintiffs in the instant action are: (i) Puerto Rico Soccer League NFP Corp ("PRSL"), (ii) Joseph Serralta ("Mr. Serralta"), (iii) Juan M. Cornejo ("Mr. Cornejo"), (iv) María Larracuente ("Mrs. Larracuente"), (v) José R. Olmo Rodríguez ("Mr. Olmo"), and (vi) Futbol Boricua ("FBNET").

Commonwealth law; namely, tortious interference with contract, abuse of power, and breach of fiduciary duties.

This case arises out of a grievance from co-plaintiff PRSL, an alleged organizer and promoter of football soccer tournaments, matches and events in Puerto Rico. The *Complaint* describes that in the year 2019, PRSL sought to organize a superior soccer league on the Island, under the name *LigaPro*. (**ECF No. 33,** ¶32). However, plaintiffs themselves concede that Féderation Internationale de Football Association ("FIFA")[2] rules establish that all league tournaments must be sanctioned ("avalados") by the "National Association" in whose territory the match will be played in. (*Id.,* ¶28). In Puerto Rico, the FIFA representative body, or National Association, is co-defendant FPF. (*Id.,* ¶13).

Plaintiffs' Sherman Act claim boils down to this: PRSL had plans to develop LigaPro in 2019 but FPF did not sanction ("avaló") the league. Specifically, plaintiffs theorize that by not sanctioning *LigaPro*, FPF entered into an "agreement" with FIFA that constitutes an antitrust conspiracy in violation of Section 1 of the Sherman Act. (*Id.,*¶162). This claim is not legally viable. Indeed, plaintiffs' quarrel is not with FPF's decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative. (*Id.,*¶31). FPF, however, is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (*Id.,*¶30).

---

[2] FIFA is the international governing body for association football.

Plaintiffs' antitrust claim cannot survive a Fed. R. Civ. P 12(b)(6) motion. First, the *Complaint* fails to allege a plausible "agreement" or "concerted action" between FIFA and FPF. The *Complaint* does not contain the most minimal attempt to establish the "who, what, where, when" of an antitrust conspiracy. Plaintiffs likewise fail to plead any viable antitrust cause of action because they do not plead essential facts to those claims: namely, that defendants engaged in anticompetitive conduct and that defendants' alleged conduct injured competition as a whole. Plaintiffs also allege RICO violations against the FPF Defendants. Plaintiffs contend defendants orchestrated a RICO scheme to use email and the U.S. mail to defraud plaintiffs by sending them false documentation, which deprived plaintiffs of money and property. (*Id.,*¶3). However, plaintiffs' RICO claims are legally bankrupt because (a) plaintiffs lack standing, (b) the allegations fail to articulate any viable predicate act of fraud, and (c) the allegations fail to allege necessary elements of a RICO violation.

The *Complaint* also seeks relief for tortious interference with contract under Puerto Rico tort law. This claim also fails because plaintiffs have not (a) alleged an underlying contract with a fixed period of time, (b) alleged any intentional and wrongful act by defendants leading to any of the alleged harms; and (c) shown that plaintiffs were actually harmed by any conduct of the FPF Defendants. Plaintiffs' remaining pendent claims under Puerto Rico law are also doomed. Plaintiffs cannot state a viable abuse of process claim because the *Complaint* does not, and cannot, allege that any of the plaintiffs have been subject to a criminal or civil action filed by defendants. They also do not have standing to assert a claim for breach of fiduciary duty against the directors of FPF.

In short, plaintiffs' *Complaint* fails as a matter of law. And since plaintiffs have already amended the complaint **three (3) times**, and no additional facts could cure the claims' legal deficiencies, this Honorable Court should dismiss the *Complaint* with prejudice. [3]

## II. STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6) & 9(b)

Traditionally, Fed. R. Civ. P, 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). Plaintiffs must offer well-pleaded facts that permit the court to infer "more than the mere possibility of misconduct." *Montero-Rivera v. Puerto Rico*, 2010 WL 455001, at *1 (D.P.R. Feb. 4, 2010).

Moreover, a plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible [but] the court is not bound to accept as true a legal conclusion masquerading as a factual allegation." *Iqbal*, 556 U.S. at 678; *see, also, García-Parra v. Puerto Rico*, 616 F. Supp. 2d 206, 208 (D.P.R. 2009). Accordingly, in order to avoid dismissal, the plaintiff must offer more than "labels and conclusions or formulaic recitation of elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1,

---

[3] *Agnew v. National Collegiate Athletic Ass'n*, 2011 WL 3878200, *9 -10 (S.D. Ind. Sept. 1, 2011).

12 (1st Cir.2011); *Montero-Rivera*, 2010 WL 455001, at *1 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. **Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice**.")(Emphasis ours).

Plaintiffs' fraud and RICO claims, however, are also subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *Norfe Group Corp. v. R.J. Espinosa Inc.*, 2021 WL 1845329, *2 (D.P.R. May 7, 2021). Rule 9(b) requires that the circumstances constituting fraud be pled with particularity. *Puerto Rico Medical Emergency Group Inc. v. Ig. Episcopal Puertorriqueña*, 118 F. Supp. 3d 447, 456 (D.P.R. 2015). In other words, to satisfy this standard, plaintiffs' allegations must "go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud" *Id*. at 257 (quoting *Cordero-Hernández v. Hernández-Ballestero*, 449 F. 3d 240, 244 (1st Cir. 2006)). In *Alejandro-Martínez v. Ortiz Vázquez*, 2011 WL 4807714, *3 (D.P.R. October 11, 2011), this Court explained that to comply with Rule 9(b) a complaint must (i) specify the statements it claims were false or misleading, (ii) give as to the respect in which plaintiffs contend the statements were fraudulent, (iii) state when and where the statements were made, and iv) identify those responsible for the statements. *Id* (quoting *Morre v. Painewebber*., 189 F.3d 165, 173 (2nd Cir. 1998). Additionally, "plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent." *Id*. Factual allegations that allege only the content of mail and wire communications do not meet this threshold. *Hernández v. Ballesteros*, 333 F. Supp.2d 6, 11-12 (D.P.R. 2004)(Casellas, J).

Where *multiple* defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*,

476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *Id.* at 765. More specifically, in cases in which the 'predicate acts' are mail fraud and wire fraud, courts require "specific allegations as to which defendant caused what to be mailed ... and when and how each mailing ... furthered the fraudulent scheme." *Alejandro-Martínez*, 2011 WL 4807714 at *3 (<u>quoting</u> *Gotham Print, Inc. v. Am. Speedy Printing, Ctrs., Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994)).

### III. DISCUSSION AND ANALYSIS

**A. Plaintiffs Fail to Adequately Plead an Antitrust Violation.**

Plaintiffs claim that defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits "contracts, combinations, and conspiracies in restraint of trade among the several States or with foreign nations."  As will be shown, this claim is legally deficient and without merit.

(i) <u>The *Complaint* fails to allege the required antitrust injury.</u>

Plaintiffs also have failed to plead the "threshold requirement" of antitrust injury — competitive harm. *Abarca Health, LLC v. PharmaPix Corp.*, 915 F.Supp.2d 210, 215 (1st Cir. 2012). A plaintiff must allege an "injury of the type that the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Sterling Merchandising, Inc. v. Nestle, S.A.*, 724 F. Supp. 2d 245, 258 (D.P.R. 2010) (<u>quoting</u> *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The antitrust laws . . . were enacted for 'the protection of *competition,* not *competitors*.'" *Brunswick Corp..,* 429 U.S. at 488 (quoting *Brown Shoe Co., Inc. v. United States,* 370 U.S. 294, 320 (1962)). Thus, an "injury to competition" occurs when a defendant's challenged conduct is "unreasonably disruptive of market functions such as price setting, resource allocation, market entry, or output

designation." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n.*, 884 F.2d 504, 508 (9th Cir. 1989).

As a general matter, the "factual support needed to show injury to competition must include proof of the relevant geographic and product markets and demonstration of the [challenged conduct's] anticompetitive effects within those markets." *Id.* at 508. "**Mere injury to [the plaintiff] as a market competitor is not sufficient.**" *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 Fed App'x 380, 381 (9th Cir. 2018)(emphasis ours); *see*, also, *E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n*, 357 F.3d 1, 4 (1st Cir. 2004) ("antitrust claims are not concerned with wrongs directed against the private interest of an individual business but with conduct that stifles competition"). Restraints that have the effect of reducing the importance of consumer preferences in determining prices and output are "not consistent" with the fundamental goals of the Act. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 107 (1984).

Here, plaintiffs fail to plead any facts demonstrating an injury to competition. The *Complaint* ventures a single theory of antitrust injury, which does NOT satisfy the standing requirement. Plaintiffs contend that the disputed FIFA policy is a restrain in interstate commerce as it "restricts competition" and "limits output of League tournaments and events in Puerto Rico". (**ECF No. 33, ¶¶**162, 163, 164, 165, 168). Beyond this conclusory statement, plaintiffs do not allege any facts indicating that the purported policy underlying their antitrust claim had a negative impact on competition overall in any relevant market. In fact, there can be no injury to actual competition simply by FPF's executive decision to deny the required "aval" to *LigaPro*.

Vague references to damages directed at others are insufficient. The *Complaint's* references to "damages" to "similarly situated competing promoters" (¶168) is a mere conclusion. Formulaic recitations do not support a claim of antitrust injury. Rather, plaintiffs' allegations show only they have been harmed because of the institutional practices at issue, not that those actions are anticompetitive. When boiled to its core, plaintiffs' claim is not that FIFA or FPF's sanctioning requirements are anticompetitive, but rather that co-plaintiff PRSL should be somehow blessed with the "aval" by FPF. Such individual injury does **not** constitute actionable antitrust injury.  In short, plaintiffs' gripe is that FPF decided, in its discretion, to deny the "aval" and not allow *LigaPro* to be FPF-FIFA affiliated. This alleged injury is plaintiffs alone—not a harm to the competitive process. Accordingly, it is not actionable under the antitrust laws. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) ("[A]s a general matter, the Sherman Act does not restrict the long-recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." (internal quotation marks omitted).

### (i) The *Complaint* does not sufficiently allege a plausible conspiracy.

To properly allege an antitrust conspiracy, the pleader must provide, whenever possible, some details of the time, place, and alleged effect of the conspiracy; it is not enough merely to state that a conspiracy has taken place. *Evergreen Partnering Group, Inc. v. Pactiv Corp*., 720 F. 3d 33, 44 (1st Cir. 2013). "The naked statement that the defendant 'conspired' with other entities is not sufficient without some factual allegation as to what constituted the conspiracy." *Beyer Farms Inc. v. Elmhurst Dairy, Inc*., 142 F. Supp. 2d 296, 301 (E.D.N.Y. 2001)

In this case, the <u>only</u> allegation of conspiracy is the naked allegation that FPF's *agreed* to comply with FIFA policies and rules, which they characterize as anticompetitive. (**ECF No. 33**, ¶162). Plaintiffs, however, cannot establish a plausible conspiracy by merely using the phrase "agreement to comply".

According to the *Complaint*, FIFA charges that "all league tournaments *must* be sanctioned by the National Association in whose territory the match will be played, Puerto Rico in this case". (*Id.*,¶28)(Emphasis added.). The Puerto Rico FIFA authorized National Association is codefendant FPF. (*Id.*,¶13). FPF as well as CONCACAF, as the FIFA confederation that covers Puerto Rico, implement, and are entrusted with the enforcement of FIFA rules. (*Id.*,¶28). Plaintiffs further admit that violation to FIFA rules are subject to disciplinary action. (*Id.*,¶13). Illustratively, the *Complaint* underscores that a "National Association [like FPF] that sanctions a League tournament in violation of FIFA rules may be subject to expulsion from FIFA". (*Id.*) Likewise, "a player who competes in an unsanctioned game or match runs the risks of being deemed ineligible to participate in [] FIFA sanctions competitions […]" (*Id.*) Because of FIFA rules and consequential disciplinary action, plaintiffs maintain that its "impossible, as a practical matter" for a league or team to participate in an event not sanctioned by FPF in Puerto Rico. (*Id.* ¶30).

Plaintiffs allege that in 2019 co-plaintiff PRSL sought to establish and promote a *LigaPro*, a series of football matches, but the league was not sanctioned by FPF, which in turn caused damages including economic losses to plaintiffs. (*Id.*,¶¶31, 32 36, 46, 57). However, the gist of plaintiffs' Sherman Act claim is that FPF uses its sanctioning power under FIFA rules to maintain "exclusive control over access to the relevant market for League tournaments in Puerto Rico" and to "to restrict output". (*Id.*, ¶¶31, 162-165).

The fundamental flaw with plaintiffs' Section 1 Sherman Act claim is that it is not premised in a <u>plausible agreement</u>, necessary to assert a <u>conspiracy</u>. A conspiratorial agreement under Section 1 ultimately requires "circumstantial evidence that reasonably tends to prove that the [defendant] and others had a <u>conscious</u> commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)(emphasis ours). So, there must be an "agreement", which is some "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Am. Tobacco Co., v. United States*, 328 U.S. 781, 809–10 (1946). That is an insurmountable hurdle for plaintiffs that dooms the Sherman Act claim.

As a preliminary matter, an international federation (FIFA), its regional bodies (CONCAFAC), and its respective national association (FPF) are *not* horizontal competitors. (**ECF No. 33**, ¶¶13, 18-19, and 28). Notably, there is not a single factual allegation in the *Complaint* about a conspiratorial agreement made between FIFA, FPF, or any of the defendants. What plaintiffs claim is a conspiratorial "agreement" is merely FPF's "compl[iance] with the FIFA Policy" requiring the sanctioning or "aval" of FPF, as FIFA's representative body in Puerto Rico, for all league tournaments in the Island. (*Id.*,¶31). This is not enough considering that FPF was acting in accordance with FIFA rules. Beyond that, FPF joined FIFA over 50 (*Id.*,¶19) years ago and agreeing to abide by FIFA's rules has always been inherent in becoming and maintaining FPF's membership in FIFA. (*Id.*,¶30).

In sum, the only allegation of conspiracy in the *Complaint* is FPF's agreement to abide to FIFA rules. (*Id.*,¶162). There are no allegations of the time or place of any a conspiratorial act, and perhaps most importantly, there are no facts alleged that demonstrate that any of the defendants had a conscious commitment to the purported scheme to oust PRSL and reduce

competition in the market. Consequently, because no concerted action is alleged, plaintiffs fail to sufficiently allege conspiracy.

Notwithstanding the above, it's worth mentioning that in a recent, and much criticized decision, the 2nd Circuit Court of Appeals in *Relevant Sports, LLC v. U.S. Soccer Federation, Inc.*, 61 F. 4th 299 (2nd Cir. 2022) concluded that allegation that members previously agreed to be bound by an association's rules is enough, standing alone, to plead concerted action in a suit challenging the legality of a rule promulgated by the association, regardless of whether the member defendant was involved with, assented to, or even agreed with the rule at issue. However, this decision is not **final** as it currently stands before review by the U.S. Supreme Court. Furthermore, it starkly departs from the U.S. Supreme Court, Third, Fourth, and Ninth Circuits' precedent. Thus, this Court should decline any reliance on *Relevant Sports, LLC,* as an outlier, and instead adhere to well-established precedent.

Specifically, in the landmark decision of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) the Supreme Court held that parallel conduct is not independently actionable. Thus, an entity's agreement to abide to a membership association's rules cannot, by themselves, plausibly establish concerted action among the entity and others, because such allegations are consistent with "merely parallel conduct that could just as well be independent action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Moreover, in *Monsanto Co. v. Spray-Rite Serv. Corp.* the Supreme Court explained that a plaintiff must bring direct or circumstantial evidence of "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.,* 465 U.S. at 764. Here, membership association rules and a commitment to abide by those rules occurring over 50 years before the purported anticompetitive conduct fails to meet the threshold.

*Relevant Sports, LLC* is also contrary to *Kendall v. Visa U.S.A., Inc.*, where the 9th Circuit Court concluded that allegations that the defendant banks merely "adopt[ed]" a rule governing fees were "insufficient as a matter of law" to plead a Section 1 conspiracy, even where defendants allegedly agreed to "follow" the rule. 518 F.3d 1042, 1045-46 (9th Cir. 2008). Therein, the 9th Circuit Court held that "membership in an association does not render an association's members automatically liable for antitrust violations committed by the association." *Id.*

The 2nd Circuit Court also breaks with 4th Circuit's decision in *SD3, LLC v. Black & Decker (U.S.) Inc. ("SawStop")*, 801 F.3d 412 (4th Cir. 2015). There, members of a power tool manufacturing association adopted certain safety standards, which plaintiffs alleged were anticompetitive. The Court of Appeals found no concerted action because simply asserting that "a collective decision was made" by parties with purportedly anticompetitive aims did <u>not</u> establish conspiracy among all members. *Id.* at 437.

Another conflicting decision with the 2nd Circuit Court ruling is *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010). Like here, plaintiffs asserted that defendant's participation in a trade association and exercise of control of the association's affairs by adopting a new policy plausibly alleged a conspiracy.  The 3rd Circuit Court dismissed for failure to plead concerted action. What's more, the Court of Appeals held that an allegation that defendants "collaborated in crafting" the association's rule was "insufficient to show a horizontal agreement not to disclose one another's contingent commissions." *Id.* Thus, the 3rd Circuit requires more than a bare allegation of "collaborate effort" through an association to plead an individual member's conscious commitment to "a conspiracy among all industry participants." *Id.* at 350.

12

Here, labelling FPF's compliance with a FIFA directive an "agreement" to comply, adhere to, or follow (*id.,* ¶162) does not make it a conspiratorial agreement. Plaintiffs' do not even bother to elaborate how mere compliance with FIFA rules is a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Evergreen Partnering Group, Inc.,* 720 F. 3d at 43. In other words, there is no indication how FIFA, CONCACAF, and FPF, made a commitment to engage in the challenged conduct "in an *individual* capacity". *Kendall*, 518 F.3d at 1048. Simply put, plaintiffs do not plausibly connect the individual association member defendants' own actions to the allegedly anticompetitive association rule or policy. *See Twombly*, 550 U.S. at 556-57. Consequently, plaintiffs fail to state a Section 1 claim.

In all events, on this factual record, FPF cannot possibly conspire to "comply" with FIFA's rules to violate Section 1. As asserted by plaintiffs, to be a member of FIFA, FPF must comply with FIFA rules. (**ECF No. 33**, ¶30). Thus, with respect to the application of FIFA's rules there are **no** independent or divergent economic interests between FPF, FIFA or CONCACAF. This means the vertical conspiracy alleged by plaintiffs fails under *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752 (1984). Under the *Cooperweld* doctrine, agreements between separate legal entities are exempt from Section 1 if those entities have a "unity of purpose or a common design" by virtue of ownership or design. *Id*.

In *Copperweld* the U.S. Supreme Court concluded that a "conspiracy of one" does <u>not</u> create a legally cognizable claim under the antitrust laws. *Id*. at 771. It further described that there can be no Section 1 claim based on concerted action among a corporation and its officers, nor among officers themselves, so long as the officers are not acting to promote an interest, from which they would directly benefit, that is independent from the corporation's success. *Id*.

at 770. Here, the allegations themselves make clear that, at all relevant times, FPF was acting as the national *representative* of FIFA and under its structure, rules, and regulations and, thus, not promoting any conflicting interests. (**ECF No. 33**, ¶¶13, 18, 19, 27, 28, 30).

Thus, for purposes of this analysis and on then basis of the factual allegations, these defendants must be considered a "single entity", which by affiliation and common design, are incapable of conspiring with each other for Section 1 purposes.

### B. Plaintiffs Fail to Adequately Plead RICO Violations.

Plaintiffs claim RICO violations have been committed by the Directors. (**ECF No. 33**, ¶¶178-217). Specifically, a violation to 18 U.S.C. §1962(a), (b), (c) and (d). They generally posit that the Directors have accomplished this fraudulent scheme by acts of mail, and wire fraud, thereby violating RICO. (*Id.* ¶¶ 183-84, and 190).

Title 18 provides a private civil action to recover damages for injuries resulting from a defendant "racketeering activities in violation of RICO provisions. 18 U.S.C. §1962. Pursuant to Section 1962, RICO makes it unlawful for a person "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c). A party advancing a civil RICO claim must allege the following elements: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

"Racketeering activity" is defined as any act indictable under specified provisions of Title 18 of the United States Code, "and includes the predicate acts of mail fraud [and] wire fraud." *Giuliano v. Fulton*, 399 F. 3d 381, 386 (1st Cir. 2005); *see, also* 18 U.S.C. §1961. To allege a violation of mail or wire fraud under 18 U.S.C. §§ 1341 or 1343, respectively, a plaintiff must show: (1) there was a scheme to defraud; (2) the defendants used the mail (or

wire, radio, or television) in furtherance of the scheme; and (3) the defendants acted with the specific intent to deceive or defraud.

To amount to a "pattern" of racketeering activity, there must have been "at least two [predicate] acts of racketeering activity" within ten years of each other. 18 U.S.C. §1961(5). Where, as here, a plaintiff alleges RICO claims against <u>multiple</u> defendants, "the plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc*. 865 F. Supp. 2d 1002, 1035 (C.D. Cal 2011). Another inherent in the requirement for a pattern of racketeering activity is the requirement of <u>continuity</u>. *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 237 (1989). "[T]o prove a pattern of racketeering activity a plaintiff [ ] must show that the racketeering predicates are related, and that they amount to or pose a threat of continued activity." *Id.* at 239.

Ultimately, plaintiffs' RICO claims fail because of lack of standing, the allegations lack particularity, fail to satisfy the relatedness plus continuity prongs, and inadequately plead predicate acts of mail or wire fraud.

### (i) Plaintiffs lack standing to make RICO claims.

The *Complaint* fails to plead facts that could establish plaintiffs' standing to assert claims under RICO. 18 U.S.C. §1964 imposes a standing requirement. Specifically, to seek a civil remedy for a RICO violation, a plaintiff must show that the RICO violation proximately caused an <u>*injury to his business or property*</u>. *Nodine v. Textron, Inc.*, 819 F. 2d 347, 348 (1st Cir. 1987). To have standing under §1964(c) a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property, and (2) causation - some direct relation between the injury asserted and the injurious conduct. *Gabovitch v. Shear,* 70 F. 3d 1252 (1st Cir. 1995).

Plaintiffs have not alleged injury to their business or property. Instead, they rely on <u>conclusory</u> allegations devoid of any factual heft. *See*, e.g., **ECF No. 33**, ¶¶168,182,184,191,193-195,200,201, and 210). Plaintiffs here have suffered **no** concrete recoverable losses. At best, they allege loss earnings due to their inability to launch PRLS or to do business with defendants. (*Id.* ¶¶57,59, and 142). However, it is well settled that allegations involving speculative loss of business opportunities are not sufficient injuries to confer RICO standing. *See In Re Taxable Mun. Bond Sec. Litig.*, 51 F. 3d 518, 523 (5th Cir. 1995) (speculative "lost opportunity" damages by themselves "do not constitute an injury that confers standing to bring a RICO cause of action.").[4]

Additionally, plaintiffs do not have a viable causation theory. At best, it is built on conjecture and speculation not factual allegations. There is not a single factual allegation that any of the plaintiffs, nor anyone for that matter, relied on the purported misleading statements. Instead, the allegations reveal that the purported misrepresentations were delivered directly to plaintiffs who discussed their dissatisfaction with defendants, and openly aired their grievances. Absent such specific allegations, any connection between defendants purported fraudulent statements and economic harm to plaintiffs, is pure conjecture.[5]

(ii) The *Complaint* fails to plead predicate acts of racketeering.

Here, the so-called predicate acts that plaintiffs allege to support their RICO claim involve <u>fraud</u>. Fraud claims are subject to a <u>heightened</u> pleading standard under Fed. R. of Civ.

---

[4] *See*, *also*, *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998)("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *Steele v. Hospital Corp. of Am.*, 36 F. 3d 69, 70 (9th Cir. 1994) (holding that, for RICO standing, the plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and "not mere 'injury to a valuable intangible property interest'".)

[5] Plaintiffs also vaguely suggest that the RICO scheme involved defendants' violation to federal immigration labor laws (**ECF No. 33**, ¶3), but the *Complaint* makes no effort to show that these purported violations were the proximate cause of any of plaintiffs' cognizable economic injuries.

P. 9(b). *New Egland Data Services, Inc. v. Becher*, 829 F. 2d 286, 290 (1ˢᵗ Cir. 1987).

Although the *Complaint* recites a handful of purported fraudulent misrepresentations, they fall far short of the heightened pleading standards of Rule 9(b) -– the who, what, when and where details are utterly lacking. As a general observation, all predicate acts alleged in the *Complaint* involve email communications sent by either co-defendant Iván Rivera-García ("Mr. García"), FPF's President or co-defendant Gabriel Ortiz, Secretary General for FPF ("Mr. Ortiz"). But the *Complaint* fails to describe other co-defendants' purported role in the RICO scheme. (**ECF No. 33**, ¶185a). In other words, plaintiffs improperly "lump" defendants together, and allege, generally, that they are members of the enterprise. *Nightingale v. Nat'l Grid USA Serv. Co.*, No. CV 19-12341-NMG, 2020 WL 4506167, at *3 (D. Mass. Aug. 4, 2020) ("To provide the notice required under Rule 8(a), a plaintiff cannot 'lump' defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring.") (quotations omitted).  Plaintiffs fail to allege what role each defendant purportedly played in the enterprise or how their roles differed from the roles played by the other defendants and non-defendants. *In re Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994) (Alito, J.) (Generally, a "member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members.").

Furthermore, plaintiffs' allegations are insufficient to plead a predicate act of mail or wire fraud. ***First,*** they assert that "[d]efendant Rivera published on the website of the Federation information that discredited the Plaintiff PRSL and deceived members and affiliates about COPUR's disaffiliation and about FIFA's jurisdiction to handle appeals". (*Id.,*¶185a). There is **not** a *single* factual allegation pertaining to these purported publications

on FPF's website, NONE. There is no indication as to when the publications occurred, and more importantly what was the fraudulent content, and how it contributed to the RICO scheme. **Second,** plaintiffs assert that co-defendant Mr. Rivera perpetrated a fraud in its emails to "FIFA, CONCAFAF, PRSL and FPF's members prohibiting participation in PRSL's league and discrediting PRLS". (*Id.,* ¶185b). To that end, they crow that "[o]n September 20th, 2019 FPF's President Defendant Rivera, communicated with FIFA via email, fraudulently misrepresenting to FIFA that a number of clubs in Puerto Rico were going to participate in a competition (the PRSL *LigaPro* 2019-2020 Season) that was not "avalada" or affiliated to FPF." (*Id.,* ¶ 49). Plaintiffs maintain this was a fraudulent misrepresentation because at that moment PRSL was affiliated to FPF. (*Id.,*¶50). However, considering plaintiffs' other allegations, this alleged fraudulent predicate act is implausible. PRLS itself has alleged that it operated with the authorization of FPF but needed to annually seek FPF's sanction ("aval") or affiliation. (*Id.,* ¶32). Paragraphs 50 and 58 of the *Complaint* further demonstrate that in 2019, PRLS was **not** able to obtain the FPF's authorization or "aval" to carry out its 2019-2020 season, which was scheduled to start October 12, 2019. Thus, plaintiffs' allegations fail to show any deceitful statement by FPF or a strong inference of fraudulent intent.

Plaintiffs also mention that on "September 27th, 2019, Mr. Rivera sent an email to members of FPF fraudulently misrepresenting that they could not participate in the PRSL because it was not affiliated to FPF, or did not have its "aval", and that FIFA and CONCACAF had instructed that only the Federation could operate a "Superior" league. (*Id.,* ¶53). Plaintiffs allege this email was somehow fraudulent because FPF could only act "when its members participated" in the non-sanctioned competition. (*Id.,*¶53). This email, however, also fails to plausibly show any fraudulent intent on behalf of defendants. The *Complaint* alleges at ¶28

that pursuant to FIFA rules, all league tournaments must be sanctioned by the National Association, which for Puerto Rico is no other than FPF. (*Id.,* ¶¶13 and 28). The *Complaint* also states that players who participate in an unsanctioned game could be subject to discipline and penalty. (*Id.,*¶30).  Notably, plaintiffs fail to adequately allege a misrepresentation of fact, or that this act was part of defendants' overall scheme to defraud.

**Next**, plaintiffs allege that Mr. Ortiz's "emails to Plaintiff Cornejo excluding him from the Federation's affair and from his employment" and "fraudulent representations of fact contained in three fraudulent complaints filed against Mr. Cornejo" are also predicated acts of RICO violations. (*Id.*, ¶¶185c and d). Plaintiffs allege at ¶87 of the *Complaint* that on "January 19th, 2022, Defendant Ortiz sent an email to all Defendant FPF members, fraudulently misrepresenting that Plaintiff Cornejo incurred in grave violations of the Ethics Code." (*Id.*,¶87). Plaintiffs contend this communication was deceptive because the decision of the Ethics Commission was not final since the appeal process was still available. (*Id.*) Any fraudulent intent, however, is implausible considering ¶¶84 and 88 of the *Complaint*, which clearly provide that on January 13th, 2022, "the Ethics Commission **found against Plaintiff Cornejo** and imposed an extraordinary severe punishment of two (2) years suspension […]. (*Id.*, ¶84) and that Mr. Cornejo **did not initiate the appeal** process <u>until January 27, 2022</u>. (*Id.*,¶88) (emphasis included). Clearly, plaintiffs fail to plead any fraudulent or misleading information with Mr. Ortiz's January 19th communication.

The same occurs with plaintiffs' allegation at ¶95 involving Mr. Ortiz's emails of June 27th and July 13th, 2022, respectively, to the Ethics Commission. These emails related to the pending ethical complaint against Mr. Cornejo for sexual harassment. Again, there are no factual allegations on the content of said complaint and how or why it was fraudulent or

deceitful. Instead, ¶97 shows a sexual harassment complaint against Mr. Cornejo was in fact pending up until August 24th, 2022, when the Ethics Commission issued its resolution dismissing the claims.

In many instances, plaintiffs rely on wholly conclusory statements merely alleging that defendants committed some sort of fraudulent misrepresentation. (*See id.,* at ¶¶112, 113, 114, 115). Such conclusory statements are not enough. As a matter of fact, some of these acts were not even committed by RICO defendants - the Directors - but by the Ethics Commission, later named the Discipline and Ethics Commission, and the Appeals Commission, without adequately identifying the Directors' involvement. *Cochran Firm PC v. McMurray*, 2014 WL 12564355, *11 (C.D.Cal. August 29, 2014) ("bare allegation Dunn made the misrepresentations "under direction of Cherry" is too conclusory to amount to a predicate act by Cherry and entirely insufficient to show a predicate act by Givens.").

Plaintiffs further allege that emails to plaintiff Mrs. Larracuente "excluding her candidacy and denying her standing to file complaint against Defendants Rivera and Ortiz" are also predicated acts of RICO violations. (*Id.*, ¶185d). Paragraph 117 alleges that when co-defendant Rivera assumed the presidency, he fraudulently represented to CONCACAF that Mrs. Larracuente was not available to participate as game commissioner in the 2022 World Cup. (*Id.*, ¶117). However, there is no indication as to the time, place, and content of the alleged fraud. Other allegations involving Mrs. Larracuente are equally deficient. For example, ¶119 notes that on January 19th, 2023, FPF sent an email to members of FPF fraudulently misrepresenting that candidates would need to meet additional requirements. Again, there is no indication this communication was made with the specific intent to defraud, nor who was deceived. In fact, it shows that FPF made the candidacy requirements for the upcoming

election open and notorious to all, not clandestine and duplicitous. Overall, what the allegations involving Mrs. Larracuente's candidacy struggles at ¶¶119-127 do show is that parties openly aired their protests. At best, these are badges of an open power struggle, **not** a scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

Additionally, plaintiffs allege that "emails to Pumas and Plaintiff Olmo excluding Plaintiff Olmo from the FPF from acting as lawyers for Plaintiff Cornejo and Torres and hindering his work at Pumas" is another infringing offence. (*Id.*, ¶185f). The only factual allegation in support is that on February 23rd, 2023, Mr. Olmo set an email to Pumas with the fraudulent misrepresentation that he was engaged in a conflict of interest in its simultaneous representation of Mr. Cornejo, José R. Torres and the Pumas' affiliation process. (*Id.*, ¶139). This allegation is insufficient because it totally lacks particularity. It does not specifically identify whether the purported fraudulent misrepresentation intended to deceive anyone nor how it furthered the fraudulent scheme.

In sum, plaintiffs fail to adequately plead a <u>single</u> predicate act by defendants.

(iii) <u>The *Complaint* fails to establish a pattern of racketeering.</u>

Even if the mail and wire fraud allegations are sufficiently pleaded, and they are not, they still do not salvage plaintiffs' claims. Beyond multiple predicate offenses, a "pattern of racketeering activity" requires two additional essential elements: (i) relatedness and (ii) continuity. *H.J. Inc.*, 492 U.S. at 239. "The term pattern itself requires the showing of a relationship between the predicates and the threat of continuing activity. It is this factor of *continuity plus relationship* which combines top produce a pattern." *Id.* at 239 (internal

citations omitted). As will be shown, the allegations in the *Complaint* do not pass the required continuity plus relationship muster.

To prove continuity, it must be "shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id*. at 240 (emphasis in original). The Supreme Court has established that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id*. at 242. More importantly, RICO liability "depends on whether the threat of continuity is demonstrated." *Id.* "Continuity", refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241 (emphasis added).

To show relatedness, a plaintiff must show that the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.* at 240. For the predicated acts to be related under RICO, they must relate to both each other ("horizontal relatedness") and the enterprise as a whole (vertical relatedness"). *Reich v. López*, 858, F3d 55, 60-61 (2nd Cir. 2017). Predicates acts are horizontally related "when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 61. Vertical relatedness requires "that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control of the enterprises' affairs, or because the offense related to the activities of the enterprise." *Id.*

Plaintiffs purported predicate acts have no relatedness. The events described in the *Complaint* are isolated in nature, involve different plaintiffs, had different results, and

purportedly harmed different victims. Indeed, the allegedly fraudulent representations made in communications to Mr. Olmo involving his conflict of interest, are in no way related to defendants' purported misrepresentations against Mrs. Larracuente involving her candidacy in the elections, nor with those concerning Mr. Cornejo's disciplinary complaints. Therefore, plaintiffs have failed to plead that the predicate acts are sufficiently related to establish a "pattern."

As to the element of continuity, plaintiffs have made mere **conclusory allegations**. *See*, e.g., ¶¶187, 193, 195, 204. Plaintiffs have not pled a closed-ended pattern – that is, a series of related acts extending over a substantial period of time. The *Complaint* merely details *few* misrepresentations made in electronic communications occurring *randomly*, at different times, which plaintiffs assume were made with the single purpose of excluding plaintiffs from the federation. At most, plaintiffs' allegations establish a situation where defendants wrested control of the FPF and its assets away from plaintiffs, excluding plaintiffs from governing positions within FPF. Thus, even taking plaintiffs' allegations as true, the *Complaint,* at best, shows a single scheme that entails a single discrete injury suffered by a small number of victims. The First Circuit has declined to find continuity in such circumstances. *Efron v. Embassy Suites (P.R.), Inc*., 223 F. 3d 12, 19 (1st Cir. 2000) ("[C]ombination of single scheme, single injury, and few victims ... makes it virtually impossible for plaintiffs to state a RICO claim.") (internal quotation marks omitted); *see,* also, *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) ("[W]here the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find closed-ended pattern of racketeering even when the scheme took place over longer periods of time".

Likewise, the *Complaint* fails to allege an open-ended continuity. A close look shows that the *Complaint* does not allege a specific threat of repetition extending indefinitely into the future, nor that the alleged racketeering acts are a part of the defendants' regular way of doing business. Again, taking the allegations as true, the pleading shows that the purported scheme **ended** when defendants lost elections or were removed, for cause, from the FPF leadership. More notably, plaintiffs here have alleged no continuing acts of wire or mail fraud, nor identify other reasons to believe that the specter of RICO violations remains. *Efron*, 223 F. 3d at 21 ("Taken together, the acts as alleged comprise a single effort, over a finite period of time, to wrest control of a particular [business venture] from a limited number of [victims]. This cannot be a RICO violation.").

Accordingly, the *Complaint* should be dismissed because it fails to allege the two analytically distinct prongs of the pattern requirement.

> (iv) <u>Plaintiffs fail to establish that defendants conspired, invested in or acquired, maintained control of the alleged enterprise.</u>

The various other RICO offenses alleged in the *Complaint* are all deficient and equally doomed. Plaintiffs' claims under sections 1962(a) and (b) should be dismissed because the *Complaint* fails to plead injuries caused by defendants' purported violations of those subsections.

"A claim brought pursuant to Section 1962(a) is premised on injury by means of [a] defendant['s] *investment* of racketeering income." *Roman Rivera v. Puerto Rico Elec. Power Auth.*, 2012 WL 13170557, at *5 (D.P.R. Sept. 25, 2012) (emphasis added) (quotations omitted). "To state a claim under Section 1962(a), Plaintiffs must plead that they were '[1] harmed by reason of . . . [Defendants'] use or investment of income from [2] a pattern [3] of

racketeering activity [4] in some enterprise . . . [5] engaged in interstate or foreign commerce.'" *Id.* (quoting *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995)). Critically, "[t]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves." *Compagnie De Reassurance D'Ile de France*, 57 F.3d at 91 (quotations omitted). Here, there are simply **no** *factual* allegations to satisfy the pleading standard. Allegations with respect to Section 1962(a) are conclusory and insufficient. *See*, for example, **ECF No. 33**, ¶204.

To state a claim under § 1962(b), plaintiffs must plead "that they were harmed by reason of [Defendants'] *acquisition or maintenance of control* of an enterprise through a pattern of racketeering activity." *Compagnie De Reassurance D'Ile de France* 57 F.3d at 92 (emphasis added). Again, however, plaintiffs fail to allege "a harm beyond that resulting from the fraud which constituted the predicate act." *Id.* There are simply no factual allegations to support when, how or why they were harmed apart from the alleged fraud which comprise the predicate act itself.

Beyond that, to state a RICO claim on conspiracy grounds under § 1962(d), the complaint must plausibly allege, among other things, that plaintiffs knowingly joined the purported RICO conspiracy. *U.S. v. Velázquez-Fontanez*, 6 F. 4th 205, 212 (1st Cir. 2021). The *Complaint* fails miserably to establish this required element. While plaintiffs have alleged the conclusory allegation that the defendants "conspired," (**ECF No. 33,** ¶208-214) nowhere do they allege facts implying any agreement to commit predicate acts of racketeering occurred, nor the specific involvement of each of the Directors in the scheme. Therefore, plaintiffs' claim under 1962(d) are deficient, and must be dismissed.

### C. The Tortious Interference Claim Is Legally Insufficient.

Plaintiffs' sixth cause of action alleges tortious interference with contract under Puerto Rico Law, 31 P.R. Laws Ann. §5141. (**ECF No. 33** at p. 56). The *Complaint* describes three (3) instances of purported tortious interference: in the contractual relation (i) between Mr. Olmo and Pumas, (ii) between Mrs. Larracuente and CONCACAF, and (iii) between FBNET, "LAI and others." (*Id.* ¶219). However, the cause of action must be dismissed because it is time-barred and, alternatively, because it is devoid of facts that, even if taken as true, establish a claim for relief.

Tortious interference is rooted in Article 1536 of Puerto Rico's Civil Code (2020). P.R. Laws Ann. tit. 31 §10801. Article 1204(a) of the Puerto Rico Civil Code (2020) establishes that tort claims are subject to a **one-year** statute of limitations. *See* P.R. Laws Ann. tit. 31 §9496. "It is also established that "the limitations period will not stop running because the injured party does not "know the full impact and all the possible consequences of the injury." *Guzmán-Camacho v. State Ins. Fund Corp.*, 418 F. Supp. 2d. 3, 8 (D.P.R. 2006).

In a tortious interference action, a plaintiff must allege with sufficiency (1) the existence of a contract between two or more parties with which a third person interferes; (2) intentional acts or fault by the defendant inducing the breach of the contract; (3) that the plaintiff suffered damages as a result of defendant's actions; and (4) that defendant's acts constitute the proximate cause of the breach. *Jusino Figueroa v. Walgreen's of San Patricio, Inc.,* 155 D.P.R. 560 (2001).[6]

---

[6] *See,* also, *Dolphin Int'l of P.R. v. Ryder Truck Lines,* 127 D.P.R. 869 (1991); *and Gen. Office Products v. A. M. Capen's Sons,* 115 D.P.R. 553, 558-59 (1984).

Accordingly, to sustain a claim of tortious interference, the *existence* of a contract is essential. Furthermore, the defendant must be a third party or a "stranger" to the contractual relationship which was allegedly interfered with. *Jusino Figueroa*, 155 D.P.R. at 587. A plaintiff must also prove that the stranger or third party had actual knowledge of the contract he or she allegedly helped to breach. *Gen. Office Products*, 115 D.P.R. at 557. More essentially, however, there will be no liability for interference unless the act in question was committed with the intent to interfere and cause damage. To that end, actual damages must be proved, as well as a direct relationship between the defendant's acts and the alleged damages. *Id.*

       (i) <u>FBNET and LAI</u>

With regards to the tortious interference claims of FBNET against FPF Defendants, the *Complaint* alleges that PRLS and FBNET's entered into an agreement in 2018 to transmit games of its *LigaPro* events starting October 2019, which the FPF Defendants interfered with by not sanctioning PRHL's *LigaPro* in year <u>2019</u>. (**ECF No. 33,** ¶7) ("[PRSL] operated the island's top league until Defendants' interference in 2019."); (*Id.,*¶12) ("[i]n 2018, [FBNET] entered into an agreement with PRSL to transmit live all its games when the LigaPro would resume in 2019, […] These plans ended with Defendants' illegal interference with Plaintiffs PRSL in 2019.") Notably, this claim, as well as any other tort claims rooted in FPF's decision not to grant the "aval" to  PRSL's *LigaPro* in **<u>2019,</u>** is foreclosed by the applicable one-year statute of limitations. Thus, the abuse of process claim can be easily dispatched. *See General Motors Corp. v. Alberic Colón Auto Sales, Inc*., 2007 WL 9760471, *2 (D.P.R. 2007).

The *Complaint* also alleges that defendants employed unlawful tactics to cause sponsors of FBNET to boycott the company, "thereby causing the loss of at least one sponsor

agreement". (**ECF No. 33,** ¶150). This sort of generalized allegation cannot survive a motion to dismiss. To survive a motion to dismiss for failure to state a claim, plaintiffs' complaint must at minimum, allege the who, what, when, where, and why. *See Jiménez-Tapia v. Santander Bank PR.*, 257 F. Supp. 3d. 193 (DPR 2017).

Here, FBNET's generalized assertion that it had entered into "one sponsorship agreement", without more is certainly insufficient to satisfy the pleading standard. There are no allegations that defendants were aware of the existence of the alleged sponsorship agreement. Indeed, the *Complaint* does not even describe the existence of the contract interfered with[7], nor the parties involved. *See Conforming, Inc. v. Aetna, Inc.*, 58 F.4[th] 517, 538 (1st Cir. 2023) ("Even under the lenient plausibility standard, a plaintiff must furnish enough detail about the obligations of the alleged contracts to allow a reasoned determination as to whether the second element — breach of contract — is alleged"). The allegations also fail to describe when the purported interference and resulting loss took place. This initial omission is fatal to plaintiffs' tortious interference claim.

Plaintiffs also fail to plead whether the purported underlying contract had a <u>fixed</u> period.[8]  The Puerto Rico Supreme Court has emphasized, that the first element—the existence of a contract for a fixed period of time—is "indispensable." *Dolphin Int'l v.  Ryder Truck Lines, Inc.,* 27 P.R. Offic. Trans 869, 1991 WL 735928 (1991); *see, also, Alpha Biomedical & Diagnostic Corp., v. Philips Med. Sys. Netherland BV.*, 828 F. Supp. 2d 425, 430 (D.P.R. 2011)

---

[7] *See Future Development of Puerto Rico v. E.L.A.*, 276 F. Supp. 2d 228, 242 (D.P.R. 2003) ("existence of a contract is an indispensable requirement in tortious interference actions.").

[8] Whether the contract was terminable at will or for a fixed period is crucial because under this doctrine, "for fundamental constitutional and strong public policy reasons, there can be no tortious interference when the contract at issue has no[ ] expiration date and is terminable at will…" *A.M. Capen's Co., Inc., v. Am. Trading & Prod. Corp*., 200 F. Supp. 2d 34, 43 (D.P.R. 2002).

("Regarding the first element requiring the existence of a contract, the Supreme Court of Puerto Rico has stated that a fixed time period in the contract is essential to a tortious interference claim."). Because this indispensable element was not plead, the claim fails as a matter of law.

The *Complaint* also unsuccessfully alleges tortious interference in FBNET's contractual relation with LAI. It describes that in April 2023 "[d]efendants attempted to inflict additional damages [to FBNET] by conditioning the use of its facilities by the Liga Atlético Universitario ("LAI") to the exclusion of Plaintiff [FBNET] from the activity." (**ECF No. 33,** ¶152). However, even taking the allegations as true, for the sake of the analysis, the claim fails. In fact, the allegation is implausible in its face considering other contradictory allegations which describe the lack of breach stemming from defendants' purported conduct and no resulting injury to FBNET. *See*, e.g., ¶152 as it clearly states that because of defendants' actions, "LAI decided to conduct the match elsewhere **to honor the contract with FBNET**." (Emphasis added).

### (ii) Mrs. Larracuente and CONCACAF

Plaintiffs allege that prior to 2019 and co-defendant Mrs. Rivera's presidency of FPF, Mrs. Larracuente had worked for CONCACAF, as venue manager and game and had "been gradually ascending in CONCACAF's ranks with the expectation of participating in the 2022 World Cup, as game commissioner." (*Id.,*¶116). But plaintiffs assert that Mr. Rivera fraudulently persuaded CONCACAF to "make the job offers to Defendant Rivera's associates, not to Plaintiff Larracuente", which resulted in "Plaintiff Larracuente lost earnings of at least $1,500.00 each year since 2019. (*Id.,*¶117). This allegation is implausible on its face. First, a contract must exist in which a third party intervenes. The *Complaint* does not allege the existence of *any* contract between Mrs. Larracuente and CONCACAF.  Second, it is well

settled that if the affected matter is merely an expectation of economic gain in the absence of a contract, the action is not legally viable. *Caribe Industrial Systems, Inc. v. National Starch & Chemical Co.,* 36 F. Supp. 2d 448, 451 (DPR 1999). Plaintiffs' claim is defeated by their own allegations which, at best, disclose that defendants' actions interfered with Mrs. Larracuente's "expectation of participating in the 2022 World Cup" as game commissioner for CONCACAF, <u>nothing else</u>. (*Id.,* ¶116).

   (iii) <u>Mr. Olmo and Club Puma</u>

  With regards to Mr. Olmo, the *Complaint* alleges that he initiated the affiliation process before FPF on behalf of Club Pumas but was informed by FPF that he was "not legally able to do so" due to other purportedly conflicting matters he was handling at the time and thus "the affiliation process could not continue until another club officer was named to represent the club in the process." (**ECF No. 33,** ¶136, 139, and 140). Plaintiffs allege this conduct constitutes tortious interference because "[t]his caused Plaintiff Olmo to resign as Puma's president to avoid further harm and damages to the club and the children who play in the club" and as a result his "soccer business and personal finances have been negatively affected". (*Id.,* ¶142). These allegations fail to describe a breach of contract. There was no breach of Mr. Olmo and Club Puma's contractual relation, if any, instead these allegations describe a voluntary decision by Mr. Olmo to resign as club president rooted in the fact that his role with Club Puma was terminable *at will*. Furthermore, courts have held that there is no liability for interference unless the act in question was committed with the intent to interfere and cause damages. To that end, actual damages must be proved, as well as a direct relationship between the defendant's acts and the alleged damages. *Gen. Office Products*, 115 D.P.R. at 557. Here, there is no proximate relation between the alleged conduct and purported injuries. Defendants'

actions were limited to informing that the "the affiliation process could not continue until another club officer was named to represent the club in the process." (**ECF No. 33,** ¶140). Mr. Olmo's decision to voluntarily resign as president and the alleged consequential damages in the soccer industry and monetary loss are self-inflicted or, at the very least, not plausibly the proximate cause of defendants' February 24th, 2023, communication/Resolution. (*Id.,* ¶¶139-140).

**D. The Claim for Abuse of Process is Meritless.**

Next, the *Complaint* alleges abuse of process by pleading that: an alleged exclusion of plaintiffs from organized football by means of filing "unfounded" complaints before the FPF commissions. (*Id.,*¶¶220-22). This theory is not well-plead, lacks foundation, to the extent that guesswork is required to determine what is the relief sought.

However, drawing all possible reasonable inferences in favor of plaintiffs, it seems they are asserting that defendants have engaged in malicious prosecution of Mr. Cornejo. The *Complaint* alleges that defendants have notified various "unfounded" complaints filed against Mr. Cornejo in the FPF. These complaints were premised on purported violations to ethical rules (*Id.*, ¶¶83 and 112) and sexual harassment conduct (¶95) of Mr. Cornejo. Plaintiffs further allege that as a result of the administrative proceedings arising from these complaints, Mr. Cornejo was suspended and sanctioned, thereby interfering with his position in FPF's Board of Directors and participation in the sport of football in Puerto Rico. (*Id.,*¶¶84, 110, 113). As a result, paragraph 221 alleges that under Article 1536 of the P.R. Civil Code, P.R Laws Ann. Tit. 31 § 10801, defendants are liable for their damages. (*Id.,*¶ 221).

Article 1536 of the Civil provides the principle regarding causes of action based in negligence, which includes the tort of malicious prosecution. *Bonilla v. Trebol Motors Corp.*,

913 F. Supp. 665, 661 (D.P.R. 1995). To establish malicious prosecution and seek redress for damages thereof, plaintiffs must establish that: 1) they have been subject to a criminal or civil action filed by defendants; 2) that the case ended favorably for plaintiff (defendant in the original case); 3) that the case was instigated maliciously and without probable cause, and that 4) plaintiff suffered damages as a result. *Id.* The cause of action of malicious prosecution is only available in a case involving extreme circumstances. *Id.* at 661(citing *Jiménez v. Silén*, 92 J.T.S., 9725 (1992)).

The allegations do not aver conduct which could possibly constitute malicious conduct. *First*, the predicate cause of actions on which plaintiffs base their claim – the filing of administrative complaints and proceedings before the FPF- are **not** a criminal or civil lawsuits, but an administrative proceeding subject only to sanctions within the FPF. Plaintiff fails to meet the first prong of the standard, since the complaint alleges no civil or criminal case adjudicated in defendants' favor. *General Motors Corp. v. Alberic Colón Auto Sales, Inc.*, 2007 WL 9760471, p. 2 (D.P.R. April 23, 2007). *Second*, plaintiffs fail to show exceptional circumstances, as required in order to recover under this tort. *Bonilla,* 913 F. Supp. at 661. Plaintiffs have failed to assert any specific facts regarding defendants' conduct which would support a contention that defendants' conduct was malicious and without probable cause. *Id.* at p. 663. Here, the *Complaint* states that "frivolous and fraudulent complaints before the Disciplinary and Ethics Commission and Appellate Commission (*Id.*, ¶72)", but it does not even allege who initiated the complaints or what was the basis for such claims. (*Id.,*¶83) In fact, pursuant to plaintiffs' allegations, some of these complaints were filed by persons who are not even parties to this action. *See* for example, ¶95, ("there was a pending ethical complaint for sexual harassment of an FPF employee").

The *Complaint* also alleges that these complaints against Mr. Cornejo accused him of violation to ethical rules that were "inapplicable to the situation." (*Id.,* ¶83). These, however, do not plausibly show malice. "Malice, []requires more than the negligent filing of a complaint." *See Bonilla,* 913 F. Supp. at 662 (citing *Commonwealth Loan Corp. v. García,* 96 P.R.R. 755 (1968)).  Thus, even assuming that plaintiffs' factual allegations are true, the purported actions cannot be the basis for plaintiffs' malicious prosecution claim.

**E. The Claim for Breach of Fiduciary Duties Is Also Without Merit.**

Laslty, plaintiffs fail to plausibly plead a breach of fiduciary duties claim under the Puerto Ricos's General Law of Corporations, P.R. Laws Ann. Tit. 14 § 3501, *et seq.* In order to press their claims, plaintiffs, generally, and without factual support, assert that the facts alleged in the entire complaint constitute a violation of Puerto Rico's corporate law. (**ECF No. 33**, ¶223) Indeed, plaintiffs lump together all defendants and make no distinction as to the individual actions constituting breach of law. (*Id.,* ¶225-226). They further state, generally, that plaintiffs failed to act in good faith, or kept loyalty and care towards the corporation. (*Id.*) Such scant allegations suffer from two fatal shortcomings: 1) plaintiff's lack standing to press such claims under Puerto Rico corporate law, and 2) plaintiffs' allegations fail to state a claim upon which relief may be granted pursuant to the Puerto Rico General Law of Corporations, *supra*.

As a threshold matter, plaintiffs lack standing to raise the claims. Officers of a corporation only hold duties of care and loyalty towards the corporation, and not to third parties. *Rivera-Sanfeliz v. Junta Dir. FirstBank*, 193 DPR 38, 54 (2015). It has been firmly established that, under Puerto Rico corporate law, only the corporation itself may be agrieved by a breach of the fiduciary duties that a director or officer holds towards the entity, and

33

therefore only the corporation itself and its members have standing to allege such a breach. *Id.*, p.60. Moreover, in order for a stockholder or member of a corporate entity to press a claim alleging breach of fiduciary duties they must do so on behalf of the corporation *through* a **derivative action** and not a personal or direct action. *Id.*, at p. 54-55; *see also*, *Multinational Ins. v. Benítez, et al.*, 193 DPR 67, 78-79 (2015).

This claim must be dismissed for lack of standing.  Plaintiffs have filed a direct complaint against FPF and the Directors, which is not a *derivative* action in nature, as mandated under Puerto Rico law. Furthermore, plaintiffs are not owners of the corporation, nor claim to have a membership reationship with FPF. Indeed, **only players, coaches, referees, clubs, and regional associations, can hold an FPF membership**.[9]  Plaintiffs failed to establish their membership status under any of these categories or with FPF. As non-members, they lack standing under Puerto Rico corporate law to claim damages on their own behalf nor on behalf of the corporation for alleged breach of fiduciary duties by the directors and officers of FPF. *Rivera-Sanfeliz*, 193 D.P.R. at 55-56 (citing *Schoon v. Smith,* 953 A.2d 196 (Del. 2008))[10].

Alternatively, the claim must be dismissed because they fail to state a claim upon which relief may be granted. Plaintiffs, generally, allege that defendants violated alleged fiduciary duties towards the members FPF, and against Plaintiffs, by incurring in "sealf-dealing activities [. . .] by not acting in good faith, not being loyal and not caring about their interests". (**ECF No. 33, ¶226**). Notably, the plaintiffs' claim merely invokes a few sacramental phrases,

---

[9] *See* Estatutos de la Federación Puertorriqueña de Futbol, Art. 11, p. 7-8, https://www.fpfpuertorico.com/wp-content/uploads/2023/02/Estatuto-FPF-enmendado-Nov-2022-.pdf (hereinafter, "FPF Statutes")

[10] *See*, also, *Omnicare, Inc. v. NCS Healthcare, Inc.,* 809 A.2d 1163, 1169 (Del. Ch. 2002); *Prudential-Bache Sec., Inc. v. Franz Mfg. Co.*, 531 A.2d 953, 955 (Del. Super. 1987)).

but is devoid of factual substance and merit. In order to establish that the FPF Defendants are liable for certain breach of their fiduciary duties, plaintiffs must allege <u>concrete</u> facts that point to a violation of the directors and officer's duty of care and loyalty towards the corporation. Plaintiffs vague assertions cannot survive a moton to dismiss.

## SUPPLEMENTAL JURISDICTION

If the Court determines that dismissal of defendants' Sherman Act and RICO claims is appropriate, but not the causes of action under Puerto Rico law (claims Sixth, Seventh and Eight), it should decline to exercise supplemental jurisdiction due to the lack of diversity jurisdiction in this case. In the *Complaint*, plaintiffs proffer that this Court has jurisdiction over the subject matter of this case based on three separe and distinct types of federal jurisdiction: 1) federal question;[11] 2) diversity jurisdiction,[12] and 3) supplemental jurisdiction.[13] (**ECF No. 33, ¶**22, 24, 26). While plaintiffs' main contention for access to this District Court is predicated on foundational claims arising under a law of the United States, *i.e.*, the RICO and Sherman Act, and the supplemental jurisdiction that purportedly accompanies it, they also pretend to rely on an alleged *diversity* jurisdiction. However, this alleged diversity jurisdiction is totally incorrect, a mere illusion intended to safeguard plaintiffs' access to federal court should their federal law causes of action be dismissed.

It is known that, under 28 U.S.C. § 1367, a federal court exercising original jurisdiction over federal law claims may also exercise supplemental jurisdiction over state law claims that are so related to the federal law claims that they form part of the same common nucleus of the

---

[11] 28 U.S.C. § 1331
[12] 28 U.S.C. § 1332
[13] 28 U.S.C. § 1367

case or controversy before the Court. "If, however, the court dismisses the foundational federal claims, it must reassess its jurisdiction." *Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998). "Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity." *Id.* In these type cases the 1st Circuit has adopted the Supreme Court's calling in *United Mine Workers v. Gibbs*:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. **Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.**

*Id.*, (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)) (emphasis added).

In light thereof, the consistent position in the 1st Circuit and this Court has been to dismiss all remaining state law claims once the federal foundational law claims have been defeated. *Id.*; *see, also*, *Ruíz-Lugo v. Municipality of San Juan*, 382 F.Supp.3d 173, 176 (D.P.R. 2019). Thus, should the Court determine that dismissal of the federal claims is warranted, then it should decline to exercise its supplemental jurisdiction over the rest of the state law claims.

Dismissal is further warranted because in the instant case there is simply no diversity jurisdiction under 28 U.S.C. § 1332. For diversity jurisdiction to exist, there must be complete diversity – that is, no plaintiff can be a citizen of the same state as any of the defendants. E. Chemerinsky, *Federal Jurisdiction*, p. 325 (7th Ed. 2016) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *see, also Casas Office Machines v. Mita Copystar America, Inc.,* 42 F.3d 668, 673 (1st Cir. 1994). Pursuant to 28 U.S.C. § 1332(a)(1)-(a)(3) a person is a citizen of his state of residence, and a corporation is a citizen of the state in which it was incorporated and of every state where it is authorized to do business. However, for purposes of diversity jurisdiction, a

corporation is held to be domiciled at its nerve center or principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Furthermore, subjects of foreign countries ("aliens") may be accumulated as a party to a case with diversity jurisdiction, but the original parties must have had complete diversity to begin with. *See*, *Dresser Industries, Inc. v. Underwriter's at Lloyd's of London*, 106 F.3d 494 (3rd Cir. 1997). Therefore, diversity cannot be claimed by adding foreigners on either side of a case, without the underlying parties already being completely diverse.

In the instant case it is evident from the face of plaintiffs' own allegations that there has never been complete diversity in this case. Save for plaintiff Mr. Serralta (**ECF No. 33**, ¶8), all other plaintiffs are domiciled in Puerto Rico (*Id*., ¶¶7, 9, 10, 11, and 12), much the same way as defendants FPF, Rivera, Ortiz, Martínez, and Mozo are all domiciled in Puerto Rico. Therefore, the joinder of FIFA and CONCACAF, both alien corporations, does not cure the problem of diversity as the parties lack complete diversity.

For the foregoing reasons, should the Court find that the federal foundational claims are to be dismissed, then it should also dismiss the rest of the claims under Puerto Rico law due to the Court's lack of subject-matter jurisdiction.

**WHEREFORE,** Defendants respectfully requests that this Honorable Court grant the instant motion and, consequently, enter judgment dismissing the *Complaint* (**ECF No. 33**) and all causes of action, **<u>with prejudice</u>**, with costs, and an award of attorney's fees.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 29th day of September 2023.

**CERTIFICATION:** An electronic copy of the foregoing motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, PR 00936-8294
Tel.: 787.756.9000/Fax: 787.756.9010

*/s/Edwin Seda-Fernández*
Edwin J. Seda-Fernández
USDC-PR No. 205212
Email: seda@amgprlaw.com

*/s/Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR No. 206314
Email: epo@amgprlaw.com

*/s/Alexandra C. Casellas Cabrera*
Alexandra Casellas Cabrera
USDC-PR No. 301010
Email: acasellas@amgprlaw.com

*Attorneys for the FPF Defendants*