## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, JUAN M. CORNEJO, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACION PUERTORRIQUENA DE FUTBOL, INC., IVAN RIVERA-GUTIERREZ, JOSE "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CANETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL ACTION NO. 23-1203-RAM |

## FIFA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

FERRAIUOLI, LLC
Roberto A. Cámara-Fuertes
Suleicka Tulier-Vazquez
P.O. Box 195168
San Juan, PR 00919-5168
Tel:  (787) 766-7000
Fax:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
         stulier@ferraiuoli.com

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
H. Christopher Boehning (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
Email:  cboehning@paulweiss.com

*Attorneys for Defendant FIFA*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.     Plaintiffs' Claims Against FIFA, a Swiss Non-Profit, Should Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction ................................................................ 7

     A.    The Court Lacks General Jurisdiction over FIFA................................................. 8

     B.    The Court Lacks Specific Jurisdiction over FIFA ................................................ 8

II.    Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6)........................................ 12

     A.    Plaintiffs' Antitrust Claims Should Be Dismissed Because Plaintiffs Fail to Allege Facts Showing that FIFA Joined the Alleged Conspiracy ................... 12

     B.    Plaintiffs' RICO and Other Claims Should Be Dismissed Because Plaintiffs Fail to Plead Facts Connecting FIFA to Those Claims........................ 15

III.   FIFA Is Not a Necessary and Indispensable Party to this Action.................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Biomedical and Diagnostic Corp.* v. *Philips Med. Sys. Netherland BV*,
  828 F. Supp. 2d 425 (D.P.R. 2011)........................................................17

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)..................................................................................12

*Aulson* v. *Blanchard*,
  83 F.3d 1 (1st Cir. 1996)............................................................................6

*Bacardi Int'l Ltd.* v. *Suarez & Co.*,
  719 F.3d 1 (1st Cir. 2013)....................................................................18, 19

*Barrett* v. *Lombardi*,
  239 F.3d 23 (1st Cir. 2001)........................................................................7

*Bayshore Cap. Advisors, LLC* v. *Creative Wealth Media Finance*,
  667 F. Supp. 3d 83 (S.D.N.Y. 2023) .......................................................16

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)............................................................................12, 13

*Boit* v. *Gar-Tec Prods., Inc.*,
  967 F.2d 671 (1st Cir. 1992)......................................................................6

*Burger King Corp.* v. *Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................11

*Carreras* v. *PMG Collins, LLC*,
  660 F.3d 549 (1st Cir. 2011)....................................................................11

*Cayo, Inc.* v. *Swiss Reinsurance Am. Corp.*,
  2023 WL 4744196 (D. Colo. May 2, 2023)..............................................13

*Cellustar Corp.* v. *Sprint Solutions, Inc.*,
  2021 WL 666867 (D.P.R. Feb. 18, 2021) ................................................12

*Concepcion* v. *Office of Commissioner of Baseball*,
  2023 WL 4110155 (D.P.R. May 31, 2023)...............................................11

*Daigle* v. *Stulc*,
  2010 WL 147807 (D. Me. Jan. 11, 2010), *report and recommendation
  adopted*, 694 F. Supp. 2d 30 .................................................................10

ii

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) .................................................................................7, 8

*DM Research, Inc.* v. *College of American Pathologists*,
170 F.3d 53 (1st Cir. 1999) ...........................................................................14

*Doe* v. *Myers*,
2019 WL 4060068 (D.N.H. Aug. 28, 2019) ...........................................18

*Donatelli* v. *Nat'l Hockey League*,
893 F.2d 458 (1st Cir. 1990) .........................................................................7

*Donnelly* v. *Boston College*,
558 F.2d 634 (1st Cir. 1977) .......................................................................15

*Friendly Hotel Boutique Corp.* v. *ME & A Cap., LLC*,
2012 WL 4062795 (D.P.R. Sept. 14, 2012) ...........................................16, 17

*Garcia-Parra* v. *Puerto Rico*,
616 F. Supp. 2d 206 (D.P.R. 2009) ...............................................................6

*Gonzalez-Camacho* v. *Banco Popular de Puerto Rico*,
318 F. Supp. 3d 461 (D.P.R. 2018) ...............................................................8

*Greater Newburyport Clamshell Alliance* v. *Pub. Serv. Co. of New Hampshire*,
1983 WL 489274 (D. Mass. May 25, 1983) .............................................12

*Guiliano* v. *Fulton*,
399 F.3d 381 (1st Cir. 2005) .......................................................................16

*Helicopteros Nacionales de Colombia* v. *Hall*,
466 US. 408 (1984) .....................................................................................11

*Marjorie Webster Junior College, Inc.* v. *Middle States Ass'n of Colleges &
Secondary Schools, Inc.*,
432 F.2d 650 (D.C. Cir. 1970) .....................................................................15

*McLeod* v. *Fifth Judicial District of Pa.*,
2022 WL 13986832 (D.N.J. Oct. 24, 2022) ...............................................13

*Mehr* v. *Federation Internationale de Football Association*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) .........................................................8

*Microsoft Corp.* v. *Computer Warehouse,*
  83 F. Supp. 2d 256 (D.P.R. 2000)........................................................17

*Monsanto Co.* v. *Spray–Rite Serv. Corp.,*
  465 U.S. 752 (1984).....................................................................2, 13

*Negron-Torres* v. *Verizon Commc'ns, Inc.,*
  478 F.3d 19 (1st Cir. 2007)...............................................................7

*Nieto-Vicenty* v. *Valledor,*
  984 F. Supp. 2d 17 (D.P.R. 2013).........................................................6

*Phillips Exeter Academy* v. *Howard Phillips Fund,*
  196 F.3d 284 (1st Cir. 1999)...........................................................8, 10

*Phillips* v. *Prairie Eye Center,*
  530 F.3d 22 (1st Cir. 2008)............................................................8, 10

*Relevent Sports, LLC* v. *United States Soccer Federation, Inc.,*
  61 F.4th 299 (2d Cir. 2023) ...............................................................11

*S. Shore Hellenic Church, Inc.* v. *Artech Church Interiors, Inc.,*
  2015 WL 846533 (D. Mass. Feb. 26, 2015) ............................................18

*Santini Rivera* v. *Santon,*
  118 F. Supp. 2d 159 (D.P.R. 2000)........................................................6

*Sawtelle* v. *Farrell,*
  70 F.3d 1381 (1st Cir. 1995)...........................................................9, 10

*Spinelli* v. *Nat'l Football League,*
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ......................................................18

*Ticketmaster-N.Y., Inc.* v. *Alioto,*
  26 F.3d 201 (1st Cir. 1994)............................................................6, 10

*In re Treasury Secs. Auction Antitrust Litig.,*
  595 F. Supp. 3d 22 (S.D.N.Y. March 31, 2022) .......................................13

*United Elec., Radio & Mach. Workers of Am.* v. *163 Pleasant St. Corp.,*
  960 F.2d 1080 (1st Cir. 1992).............................................................8

*U.S.S. Yachts, Inc.* v. *Ocean Yachts, Inc.,*
  894 F.2d 9 (1st Cir. 1990)..............................................................7, 9

*Vazquez-Baldonado* v. *Domenech*,
   847 F. Supp. 2d 281 (D.P.R. 2012)..........................................................................16

**Statutes**

18 U.S.C. § 1961...................................................................................................................3

15 U.S.C. § 1...............................................................................................................11, 14

**Other Authorities**

Fed. R. Civ. P. 12.....................................................................................5, 6, 11, 17

Fed. R. Civ. P. 19.......................................................................................3, 17, 18

Defendant Fédération Internationale de Football Association ("FIFA"), *by special appearance and without submitting to the jurisdiction or venue of this Honorable Court nor waiving any defense*, through its undersigned counsel, hereby submits this motion to dismiss the Third Amended Complaint (Dkt. 33) ("TAC") of Plaintiffs Puerto Rico Soccer League NFP Corp. ("PRSL"), Joseph Marc Serralta Ives, Juan M. Cornejo, Maria Larracuente, Jose R. Olmo-Rodriguez, and Futbol Boricua (FBNET), Inc., (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

This case has nothing to do with FIFA. It concerns a dispute between the Puerto Rico Soccer League and the Federación Puertorriqueña de Fútbol, Inc. ("FPF") along with certain of its directors (collectively with FPF, the "FPF Defendants") regarding FPF's decision to deny accreditation to the PRSL. As the Third Amended Complaint discloses, that decision was made solely by FPF—not FIFA—and exclusively affects the operations of the "market for [soccer] League tournaments in the Commonwealth of Puerto Rico." Recognizing the local nature of the dispute, Plaintiffs did not name FIFA as a defendant in any of their three prior complaints. Plaintiffs only added FIFA and the Confederation of North, Central America and Caribbean Association Football ("CONCACAF") as defendants in the Third Amended Complaint in an attempt to neutralize the (incorrect) assertion by the FPF Defendants that FIFA is a necessary and indispensable party.

Plaintiffs were right the first three times they filed their complaint: FIFA should not be a defendant in this litigation. Plaintiffs' late-contrived claims against FIFA should be dismissed for several reasons:

*First*, FIFA is not subject to personal jurisdiction in Puerto Rico. The Third Amended Complaint does not allege facts that establish the minimum contacts required by Constitutional due process for FIFA to be haled into this Court. Nor could it. FIFA is a Swiss

association headquartered in Zurich, which does not conduct business in Puerto Rico, and is plainly not "at home" in Puerto Rico. Plaintiffs similarly do not allege that FIFA directed any conduct towards Puerto Rico that concerns this dispute. Indeed, the only allegation in the Third Amended Complaint that even arguably involves FIFA is the claim that one of the FPF Defendants fraudulently induced a FIFA employee to write a letter, and then—without FIFA's knowledge— misrepresented the contents of that letter to further an alleged conspiracy exclusively among the FPF Defendants. That plainly does not suffice to establish jurisdiction over FIFA here. Plaintiffs' total failure to connect FIFA to either Puerto Rico or to the controversy at issue is fatal to their claims.

*Second*, Plaintiffs fail to sufficiently plead an antitrust claim against FIFA, because they do not allege that FIFA joined the alleged conspiracy that is at the heart of the Third Amended Complaint. To state a claim against FIFA for participating in the alleged conspiracy to suppress competition in Puerto Rico, Plaintiffs would have to allege facts showing that FIFA made a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.* v. *Spray–Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Plaintiffs plead the exact opposite, claiming the FPF Defendants made fraudulent misrepresentations *to FIFA* about the situation in Puerto Rico (TAC ¶¶ 49, 51), *lied* to others about FIFA's rules, regulations, and positions (*id.* ¶¶ 53, 109, 111), and *violated* FIFA's rules, in order to deny accreditation to a competitor (*id.* ¶¶ 61–62). Plaintiffs do not allege a single fact from which the Court could reasonably infer FIFA was connected to the FPF Defendants' alleged pattern of fraud and corruption in any way, let alone facts suggesting FIFA was "consciously committed" to their alleged conspiracy. Plaintiffs' antitrust claim against FIFA should therefore be dismissed.

*Third*, Plaintiffs also assert a smorgasbord of flawed tag-along claims under RICO and the Puerto Rico Civil Code.  To the extent these claims are meant to be directed against FIFA, they should also be dismissed.  As with their antitrust claim, Plaintiffs do not plead any facts connecting FIFA to any of the alleged racketeering, fraud, or fiduciary duty breaches as would be required to sustain those claims against FIFA (claims which are, in any event, legally defective).

*Finally*, contrary to the FPF Defendants' assertion (which Plaintiffs now adopt in the TAC), FIFA is not a necessary and indispensable party.  This Court may "accord complete relief" to Plaintiffs by giving them the equitable and monetary relief they seek without any involvement from FIFA.  Fed. R. Civ. P. 19.  And merely labeling a party "necessary and indispensable" does not absolve Plaintiffs of pleading plausible claims for relief, which Plaintiffs have not done and cannot do.  Moreover, even if FIFA were an indispensable party, the sole result would be that the entire action should be dismissed as to *all Defendants* because Plaintiffs cannot sustain their claims against FIFA.

## BACKGROUND[1]

FIFA is an association registered in Switzerland that serves as "the international governing body for soccer."  (TAC ¶ 18.)  FIFA promulgates rules governing FIFA-accredited soccer, but the implementation and enforcement of those rules occurs independently and locally by each of the 211 member associations that are FIFA voting members (here, FPF), as well as the regional confederations (here, CONCACAF).  (*Id.* ¶¶ 18, 27–29.)  FIFA is a "separate economic actor" from FPF and CONCACAF.  (*Id.* ¶ 160.)  FIFA does not maintain an office, mailing

---

[1] This Motion and factual summary rest on the allegations in the Third Amended Complaint and facts subject to judicial notice.  The declaration of Emily Devlin, FIFA's Deputy Legal and Compliance Officer and Director of Commercial and Corporate Legal ("Devlin Decl."), is also provided in connection with FIFA's 12(b)(2) Motion, and sets forth undisputed facts that confirm FIFA is not subject to personal jurisdiction in this Court.

address, or phone number in Puerto Rico. (Devlin Decl. ¶ 5.) FIFA does not own or lease any real estate in Puerto Rico, pay income or property taxes in Puerto Rico, or maintain bank accounts, books, or records in Puerto Rico. (*Id.* ¶¶ 6–7.) FIFA is not registered to do business in Puerto Rico. (*Id.* ¶ 8.) The Third Amended Complaint does not dispute or contradict these facts.

Plaintiffs' Third Amended Complaint concerns an alleged scheme by the FPF Defendants and certain unnamed persons and insurance companies to exclude PRSL from the soccer "industry" in Puerto Rico. (TAC ¶ 1.) Plaintiffs allege that Defendant FPF utilized its "monopoly sanctioning power and exclusive control" to suppress competition in Puerto Rico (*id.* ¶ 31), and that FPF and its affiliated Defendants did so to "enrich[] themselves and their associates by benefitting from the football soccer [*sic*] infrastructure developed by others" (*id.* ¶ 1).

According to Plaintiffs, after Plaintiff PRSL and its affiliates developed a soccer infrastructure in Puerto Rico, the FPF Defendants allegedly took action to suspend and exclude Plaintiffs from FIFA accreditation, which prevented Plaintiffs from operating in Puerto Rico. (*Id.* ¶¶ 1, 7–12.) Plaintiffs allege the FPF Defendants accomplished this scheme through a series of fraudulent misrepresentations, the abuse of FPF's accrediting authority, and the violation of federal immigration labor laws. (*Id.* ¶¶ 1, 3.) These actions allegedly included fraudulently securing a majority on FPF's Board of Directors (*id.* ¶ 44), sabotaging Plaintiffs' stadium-building plans (*id.* ¶ 45), engaging in mail and wire fraud (*id.* ¶¶ 48–51, 53), misusing FPF funds (*id.* ¶ 60), and improperly hiring non-U.S. citizens to sit on a Disciplinary and Ethics Commission (*id.* ¶ 69). Plaintiffs do not allege FIFA participated in or knew about *any* of these activities.

The *only* allegations that even arguably involve FIFA concern statements by the FPF Defendants *to* FIFA, or *about* FIFA to others. Recognizing as much, Plaintiffs slapdashedly added "FIFA" to a list of the parties that supposedly participated in the alleged conspiracy, without

adding a single fact supporting FIFA's purported involvement.  (*See, e.g.*, *id.* ¶¶ 45–47.)  To the contrary, Plaintiffs allege that the scheme involved the FPF Defendants lying *to* (and about) FIFA, and *circumventing* FIFA rules, all without FIFA's knowledge:  Plaintiffs allege that the FPF Defendants lied to FIFA about the PRSL's eligibility status and conduct (*id.* ¶¶ 49–51); that the FPF Defendants lied to third parties about FIFA's rules, authorizations, and dispute resolution procedures (*id.* ¶¶ 53–55, 109); and that the FPF Defendants violated FIFA's conflicts of interest policies and misused FIFA funds (*id.* ¶¶ 62, 132).

The closest Plaintiffs come to alleging action *by* FIFA is their contention that, on September 27, 2019, a FIFA employee sent a letter informing FPF that FPF could "take action against members that participate in a tournament that was not authorized by [FPF] and that [FPF] was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes." (*Id.* ¶ 52.)  But Plaintiffs allege that Defendant Rivera, the President of FPF, procured this letter by "fraudulently misrepresent[ing] *to FIFA* that PRSL was not affiliated" with FPF.  (*Id.* ¶ 51 (emphasis added).)  Plaintiffs further allege that, after receiving this letter, Defendant Rivera then "fraudulently misrepresent[ed]" the contents of FIFA's letter to members of FPF.  (*Id.* ¶ 53.)  Plaintiffs do not allege FIFA knew that its correspondence would be misrepresented by Rivera, and essentially allege misconduct by FPF *against* FIFA.  (*See id.* ¶¶ 49–53.)

Indeed, Plaintiffs did not add FIFA to this litigation because they had evidence that FIFA had engaged in any misconduct.  As the Third Amended Complaint makes crystal clear, the sole reason Plaintiffs added FIFA as a defendant is that the FPF Defendants have asserted that FIFA is an indispensable party:

> [T]he Defendants in Puerto Rico allege that their acts and conduct are sanctioned (permitted) by FIFA and CONCACAF, and thus, FIFA and CONCACAF are indispensable parties to this litigation.

(*Id.* ¶ 53; *see also id.* ¶¶ 18, 46, 53, 56, 109, 156 (referring to FIFA as an indispensable party).)

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the burden of proof to establish that the forum has jurisdiction over defendant is on the Plaintiff." *Santini Rivera* v. *Santon*, 118 F. Supp. 2d 159, 161 (D.P.R. 2000) (citations omitted). A plaintiff must make a "prima facie showing of personal jurisdiction," which "must be based on evidence of specific facts set forth in the record," and cannot be based on "unsupported allegations in their pleadings." *Boit* v. *Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). In determining whether a plaintiff has met its burden, the court "draws the facts from the pleadings and the parties' supplementary filings, including affidavits," but does "not credit conclusory allegations or draw farfetched inferences." *Ticketmaster-N.Y., Inc.* v. *Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a "plausible entitlement to relief" based on "factual allegations sufficient to raise a right to relief above the speculative level." *Garcia-Parra* v. *Puerto Rico*, 616 F. Supp. 2d 206, 208 (D.P.R. 2009) (quotations omitted). The Court must accept "all well-pleaded factual allegations as true" and "draw all reasonable inferences" in the plaintiff's favor, *id.*, but the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like," *Aulson* v. *Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). The Court may also consider "implications from documents attached to or fairly incorporated into the complaint" and "facts subject to judicial notice." *Nieto-Vicenty* v. *Valledor*, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (quotation omitted).

## ARGUMENT

### I. Plaintiffs' Claims Against FIFA, a Swiss Non-Profit, Should Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction

Personal jurisdiction must "comport[] with the strictures of the Constitution"—namely, due process. *Barrett* v. *Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001).[2] Constitutional due process requires that "the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court" and that the "exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" *U.S.S. Yachts, Inc.* v. *Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990) (quotations omitted). The exercise of personal jurisdiction may be: (1) "general," where a defendant's connection to the forum is "so continuous and systematic as to render [it] essentially at home in the forum state," *Daimler AG* v. *Bauman*, 571 U.S. 117, 119 (2014) (quotation marks omitted); or (2) "specific," where "a suit arises directly out of the [defendant's] forum-based activities," *Donatelli* v. *Nat'l Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990).

The Third Amended Complaint does not articulate either basis for personal jurisdiction over FIFA.[3] FIFA is headquartered and incorporated in Switzerland, and is not "at home" in Puerto Rico. And FIFA did not engage in *any* conduct that is directed at Puerto Rico and related to Plaintiffs' claims.

---

[2] Courts also require that a plaintiff establish a statutory basis for personal jurisdiction. *Barrett*, 293 F.3d at 26. However, because the "reach of Puerto Rico's long-arm statute stretches up to the point allowed by the Constitution," the two modes of analysis merge into one. *Negron-Torres* v. *Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007). Thus, FIFA addresses both possible bases for jurisdiction in discussing the Constitutional requirements here.

[3] Indeed, Plaintiffs' jurisdictional statement tacitly *disclaims* jurisdiction over FIFA, as it only alleges jurisdiction over Defendant FPF and its employees. (*See* TAC ¶ 23 ("This Court has *in personam* jurisdiction *over Defendant FPF* . . . . All Defendants work for Defendant FPF and reside in Puerto Rico, *except Defendants CONCACAF and FIFA*, which are registered and headquartered outside of Puerto Rico and the United States." (emphasis added).))

## A. The Court Lacks General Jurisdiction over FIFA

General jurisdiction over an entity is appropriate where that entity is "at home,"—*i.e.*, where the entity is headquartered or where it is organized. *Daimler AG*, 571 U.S. at 137–39. An entity can only be considered "at home" in another location in the "exceptional case" that Plaintiffs demonstrate "continuous and systemic" contact with that forum. *Id.* at 139 n.19. Plaintiffs have not even come close to making such a demonstration. Plaintiffs expressly concede that FIFA is a Swiss not-for-profit association registered in and headquartered in Zurich. (TAC at ¶¶ 18, 23; Devlin Decl. ¶ 3.) FIFA does not maintain a place of business or office in Puerto Rico, is not registered to do business in Puerto Rico, and does not have a mailing address or phone number in Puerto Rico—and the Third Amended Complaint does not dispute these facts. (*See generally* TAC; Devlin Decl. ¶¶ 5–7.) Plaintiffs similarly have not alleged any other continuous and systematic contact between FIFA and Puerto Rico. Simply put, there is no basis whatsoever for general jurisdiction over FIFA. *See Mehr* v. *Federation Internationale de Football Association*, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015) (finding no general personal jurisdiction over FIFA on materially identical facts).

## B. The Court Lacks Specific Jurisdiction over FIFA

Specific jurisdiction is also unavailable. "Specific jurisdiction over a nonresident defendant only exists 'where the cause of action arises directly out of, or [is] related to, the defendant's forum-based contacts.'" *Gonzalez-Camacho* v. *Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 491 (D.P.R. 2018) (quoting *United Elec., Radio & Mach. Workers of Am.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1089–91 (1st Cir. 1992)). "The First Circuit divides specific jurisdiction into a tripartite analysis: relatedness, purposeful availment, and reasonableness." *Id.* An "affirmative finding on *each* of the three elements" is required. *Id.* (emphasis added).

To satisfy the relatedness prong, "the action must directly arise out of the specific

contacts between the defendant and the forum state." *Phillips Exeter Academy* v. *Howard Phillips Fund*, 196 F.3d 284, 291 (1st Cir. 1999) (quotation omitted). Alleged contact that is ancillary to the claims at issue does not suffice, nor does an allegation that an "extra-forum breach" caused an "in-forum effect." *Id.* at 291. To satisfy the purposeful availment prong, the plaintiff must show that the defendant "purposefully availed itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Phillips* v. *Prairie Eye Center*, 530 F.3d 22, 28 (1st Cir. 2008) (quotation omitted). The contact must be "deliberate" and cannot be "based on the unilateral actions of another party." *Id.* (quotation omitted). Finally, even if the "requisite contacts exist" to satisfy relatedness and purposeful availment, to satisfy the reasonableness prong the court must make an additional finding that the "exercise of jurisdiction . . . 'comport[s] with fair play and substantial justice.'" *Id.* at 29 (quoting *U.S.S. Yachts, Inc.*, 894 F.2d at 11). Failure to demonstrate the first two elements "eliminates the need even to reach the issue of reasonableness." *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).

Plaintiffs allege only *one* "contact" between FIFA and Puerto Rico, and that contact is neither "related" to Plaintiffs' claims, nor sufficient to show that FIFA "purposefully availed" itself of this forum. There is therefore no specific jurisdiction over FIFA.[4]

The purported "conduct" by FIFA that is alleged in the Third Amended Complaint is that *Defendant Rivera*: (1) allegedly fraudulently induced a FIFA representative to send a letter to FPF, and then (2) purportedly "misrepresented" that letter to others to further the FPF

---

[4] Because the relatedness and purposeful availment elements are not met, there is no need to reach reasonableness. If the Court were to reach reasonableness, however, that element is not satisfied either. It would not comport with fair play or substantial justice to subject FIFA to jurisdiction in this District solely because FPF fraudulently induced FIFA to write a letter which, as discussed *infra*, is the sole basis for Plaintiffs' allegation of "contact" between FIFA and Puerto Rico.

Defendants' anticompetitive scheme.  (TAC ¶¶ 49–53.)  That allegation is plainly insufficient.  A defendant's action within the forum (here, sending a letter written in Switzerland to Puerto Rico) is not "related" to a plaintiff's claim if the claimed injury results not from the defendant's action, but from the "intervening act[] of [a] third part[y]" (Defendant Rivera's conduct) that unforeseeably "distort[s]" the defendant's action.  *See TicketMaster-N.Y.*, 26 F.3d at 207.  Indeed, Plaintiffs do not even attempt to allege that FIFA's letter was wrongful; instead they claim that Defendant Rivera's unilateral misrepresentation of FIFA's letter caused Plaintiffs' injury.  *See, e.g.*, *Daigle* v. *Stulc*, 2010 WL 147807, at *7 (D. Me. Jan. 11, 2010) (no jurisdiction over defendant whose sole contact with the forum was sending a letter to an entity in the district, where theory of liability "depend[ed] entirely on the unilateral intervening conduct of other parties" following the receipt of that letter), *report and recommendation adopted*, 694 F. Supp. 2d 30.  Moreover, in all events, merely mailing a letter to Puerto Rico cannot establish purposeful availment of Puerto Rico's laws.  *See, e.g.*, *Prairie Eye Center*, 530 F.3d at 29 ("It stretches too far to say that [defendant], by mailing a contract . . . to Massachusetts . . . should have known that it was rendering itself liable to suit in Massachusetts."); *see also Sawtelle*, 70 F.3d at 1391 (finding no purposeful availment where defendants' contacts with the forum were "limited, primarily consisting of written and telephone communications . . . in the state" where plaintiff "happened to live").[5]

The remaining allegations fare no better.  Plaintiffs repeatedly allege that FPF and its employees made fraudulent misrepresentations *to and about FIFA*, but do not allege conduct *by FIFA* towards Puerto Rico.  (*See* TAC ¶¶ 14, 49–53, 109, 111.)  The "unilateral activity of

---

[5] FIFA's only other alleged contact with the forum—that FPF is one of FIFA's 211 "voting members" which is "authorize[d] to act on its behalf," (TAC ¶ 18), similarly does not support specific jurisdiction because Plaintiffs' allegation that the FPF Defendants conspired to misuse FIFA's rules, without FIFA's knowledge, does not "directly relate[] to or arise[] out of" that contact.  *Phillips Exeter Academy*, 196 F.3d at 288.

another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts . . . to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia* v. *Hall*, 466 US. 408, 417 (1984); *see also Burger King Corp*. v. *Rudzewicz*, 471 U.S. 462, 474 (1985). Plaintiffs' allegations reflect neither relatedness, nor purposeful availment, because they do not allege contact between FIFA and Puerto Rico *at all*, much less "purposeful" contact that is "related" to the claims at issue.

To the extent Plaintiffs argue that personal jurisdiction exists based on an agency relationship between FIFA and FPF, such a claim fails.[6] "An agency relationship would exist only if [FIFA] had manifested its assent to have [FPF] act on its behalf and subject to its control." *Carreras* v. *PMG Collins, LLC*, 660 F.3d 549, 556 (1st Cir. 2011). Plaintiffs do not allege that FIFA exercised "control" over FPF or its employees. To the contrary, Plaintiffs allege that "FPF is a separate economic actor from FIFA," (TAC ¶ 160), and that FPF's allegedly unlawful conduct was *in contravention of* FIFA's rules and occurred *without FIFA's knowledge*. (TAC ¶¶ 49–53, 62, 109, 111.)[7]

Finally, to the extent Plaintiffs seek to invoke "conspiracy jurisdiction," that also fails. "[C]onspiracy jurisdiction has not clearly been recognized in" the First Circuit. *Concepcion* v. *Office of Commissioner of Baseball*, 2023 WL 4110155, *6 (D.P.R. May 31, 2023) (collecting sources) (explaining that conspiracy jurisdiction has "all the earmarks of a frivolous albeit

---

[6] To be clear, the TAC describes FPF as an "affiliate" of FIFA, not an agent. (TAC ¶ 13.)

[7] Plaintiffs have previously submitted a notice of supplemental authority concerning the Second Circuit's decision in *Relevent Sports, LLC* v. *United States Soccer Federation, Inc.*, 61 F.4th 299 (2d Cir. 2023). (Dkt. 75.) There, the Second Circuit found personal jurisdiction over FIFA in New York based on the plaintiff's allegations that the U.S. Soccer Federation ("USSF") acted as FIFA's agent in New York with respect to the specific transactions challenged in the case. *Id.* at 305. The court limited its holding to "the record before [it]," which consisted solely of the Plaintiff's allegations that *USSF* acted as FIFA's agent in those transactions. *Id.* Plaintiffs make no such allegations here. Moreover, a petition for certiorari has been filed in that case, and the United States Supreme Court has requested the views of the Solicitor General. 144 S. Ct. 391 (Mem) 2023 WL 7475127 (Nov. 13, 2023).

ingenious attempt to expand" personal jurisdiction). Regardless, the sole court in this Circuit to apply conspiracy jurisdiction (more than forty years ago) required that "the co-conspirator knew or should know that the acts would be performed" within the forum state. *Greater Newburyport Clamshell Alliance* v. *Pub. Serv. Co. of New Hampshire*, 1983 WL 489274, at *2 (D. Mass. May 25, 1983). Plaintiffs do not plead facts suggesting FIFA was aware of the alleged conspiracy—much less that FIFA directed such a conspiracy at Puerto Rico. Indeed, they expressly *disclaim* any knowledge or participation by FIFA. (*See* TAC ¶¶ 49–53.) *See also infra* Section II.A.

## II. Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6)

### A. Plaintiffs' Antitrust Claims Should Be Dismissed Because Plaintiffs Fail to Allege Facts Showing that FIFA Joined the Alleged Conspiracy

Plaintiffs alleging an unlawful conspiracy under Section 1 of the Sherman Act must plausibly plead "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007). Plaintiffs may not rest on conclusory assertions rather than facts, and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557; *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and not "mere conclusory statements"); *Cellustar Corp.* v. *Sprint Solutions, Inc.*, 2021 WL 666867, at *3 (D.P.R. Feb. 18, 2021) ("[A] complaint must at least allege the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible.").

A corollary of *Twombly*'s requirement that plaintiffs plead actual *facts* rather than conclusions is that group pleading—*i.e.*, a generalized statement that a group of defendants

conspired without identifying the particular facts evidencing that each of them joined the conspiracy—is insufficient to state a conspiracy claim. As another court recently explained:

> An antitrust complaint that fails to connect *each* or any *individual* entity to the overarching conspiracy . . . cannot ordinarily survive a motion to dismiss. . . . [C]laims as to the motivations or actions of defendants as a general collective bloc, or generalized claims of parallel conduct, must also be set aside . . . as impermissible group pleading. Post-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the specific defendants named in the complaint fails to state a claim.

*In re Treasury Secs. Auction Antitrust Litig.*, 595 F. Supp. 3d 22, 32 (S.D.N.Y. March 31, 2022) (cleaned up) (emphasis added); *see also Cayo, Inc.* v. *Swiss Reinsurance Am. Corp.*, 2023 WL 4744196, at * 9 (D. Colo. May 2, 2023) ("[T]he complaint [must] make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" (citation omitted)); *McLeod* v. *Fifth Judicial District of Pa.*, 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) ("[G]roup pleading is impermissible because it fails to put each [d]efendant on notice of their specific actions which render them liable to [p]laintiff." (citation omitted)).

   *Twombly*'s prohibition on asserting conclusions rather than facts and the related prohibition on group pleading render ineffective Plaintiffs' mere addition of the name "FIFA" into their existing list of parties who supposedly conspired, without asserting *any facts* showing what FIFA supposedly did to join the alleged conspiracy. (*See, e.g.*, TAC ¶¶ 45–47.)

   Furthermore, to show that a defendant joined an antitrust conspiracy, plaintiffs must plead facts establishing that the defendant made a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.*, 465 U.S. at 764. Plaintiffs allege just the opposite—that FPF deliberately obscured the alleged conspiracy from FIFA and went so far as to prevent third parties from availing themselves of the proper channels for FIFA to be informed

of FPF's alleged misconduct so as to prevent FIFA from taking corrective action. (*See, e.g.*, *id.* ¶ 109.)

As noted above, the *only* thing Plaintiffs allege FIFA did is send a letter stating the generic principle that FPF could "take action against members that participate in a tournament that was not authorized by [FPF]," in response to Defendant Rivera allegedly "*fraudulently mispresent[ing] to FIFA* that PRSL was not affiliated, or did not have FPF's 'aval.'" (*Id.* ¶¶ 51–52 (emphasis added).) It was *Defendant Rivera* (not FIFA) who then allegedly "fraudulently misrepresent[ed]" and misused FIFA's letter—without FIFA's knowledge—to assert in an email "to members of [FPF] . . . that they could not participate in the PSRL because it was not affiliated to Defendant FPF . . . and that FIFA and CONCACAF had instructed that only [FPF] could operate a 'Superior' league." (*Id.* ¶ 53.) Simply put, by Plaintiffs' own allegations, FPF fraudulently induced FIFA to write a letter that contained only generic facts that Plaintiffs do not contend are untrue, which FPF then fraudulently misrepresented by falsely claiming that the letter contained statements that FIFA had not made or intended, and that were not true. (TAC ¶¶ 51–53.) Under Plaintiffs' own theory, the problem was not FIFA's letter, but FPF's alleged fraudulent inducement and misuse of it. As a result, none of these allegations support an inference that FIFA joined a conspiracy against Plaintiffs.

Nowhere in the Third Amended Complaint do Plaintiffs assert that they are challenging FIFA's accreditation regulations themselves as anticompetitive, or allege any facts that would support such a theory. Nor could they. As a general matter, accreditation rules do not raise antitrust issues even though the denial of accreditation can have the effect of reducing the number of competitors in a market. *DM Research, Inc.* v. *College of American Pathologists*, 170 F.3d 53, 58 (1st Cir. 1999) (affirming dismissal of antitrust claims against accreditation

organization because plaintiffs failed to show that accreditation rules were motivated by suppression of competition); *Donnelly* v. *Boston College*, 558 F.2d 634, 635 (1st Cir. 1977) (rejecting antitrust claims concerning law school accreditation standards that did not have "commercial objectives"); *Marjorie Webster Junior College, Inc.* v. *Middle States Ass'n of Colleges & Secondary Schools, Inc.*, 432 F.2d 650, 655 (D.C. Cir. 1970) (holding that accrediting institution's refusal to recognize a proprietary school did not come within the Sherman Act because "[a]bsent [commercial motives] . . . the process of accreditation is an activity distinct from the sphere of commerce"). Plaintiffs have alleged no facts showing that FIFA's accreditation rules are meant to suppress competition or that FIFA has any commercial motivation to do so. Indeed, Plaintiffs' challenge is not to FIFA's accreditation rules, but rather to FPF's allegedly fraudulent, ill-motivated misuse of FIFA's accreditation rules for its own benefit, without the knowledge or support of FIFA.

### B.    Plaintiffs' RICO and Other Claims Should Be Dismissed Because Plaintiffs Fail to Plead Facts Connecting FIFA to Those Claims

Counts 2 through 5 of the Third Amended Complaint arise under RICO. Count 6 is for tortious interference, and Count 7 is for abuse of process, both arising under the Puerto Rico Civil Code. While these counts refer generically to "Defendants," FIFA is scarcely mentioned at all, and none of the conduct identified in connection with those claims could possibly be related to FIFA. For example, Count 2 alleges that "Defendants devised, or intended to devise, a scheme to defraud Plaintiffs of money, property, or other benefits of monetary value by excluding Plaintiffs from FPF's affairs by means of false or fraudulent pretenses and representations, and deception." (TAC ¶ 182.) But not a single word of the Third Amended Complaint connects FIFA to fraud, financial manipulation, or taking anything of value from Plaintiffs. So too for all of the other counts.

As a result, Plaintiffs do not appear to have intended to name FIFA in any of these tack-on counts.[8]  Nonetheless, to the extent Plaintiffs did intend to name FIFA here, each count should be dismissed:

**RICO (Counts 2–5):**  A RICO claim requires multiple predicate acts of "racketeering activity." *Guiliano* v. *Fulton*, 399 F.3d 381, 386 (1st Cir. 2005). Here, all of the purported predicate acts were committed exclusively by the FPF Defendants, not FIFA.  (TAC ¶¶ 182–190.)  Plaintiffs allege that the communications at issue were made "in compliance with FIFA and CONCACAF regulations and based on an initiative from FIFA,"[9] and that those acts are therefore "attributable to all Defendants." (*Id.* ¶ 190.)  Plaintiffs are wrong.  To establish a RICO claim here, Plaintiffs must allege, among other things, that *each* defendant participated in the operation of the enterprise, *Friendly Hotel Boutique Corp.* v. *ME & A Cap., LLC*, 2012 WL 4062795, at *2–3 (D.P.R. Sept. 14, 2012), and engaged in *at least* two predicate acts of "racketeering activity," *Bayshore Cap. Advisors, LLC* v. *Creative Wealth Media Finance*, 667 F. Supp. 3d 83, 129 (S.D.N.Y. 2023); *see also Vazquez-Baldonado* v. *Domenech*, 847 F. Supp. 2d 281 (D.P.R. 2012) (emphasis added) (to establish a RICO conspiracy claim against multiple defendants, Plaintiffs must prove that "*each* defendant knowingly joined the enterprise" and "agreed to commit, or in fact committed, two or more predicate acts").  As described above, Plaintiffs allege *one* act by FIFA—getting tricked into writing a letter that merely stated FIFA's rules—and expressly disclaim that FIFA had any knowledge of the purported scheme.  (*See supra* Section I.B.)  Plaintiffs' RICO claims therefore fail.

---

[8] FIFA does not address Plaintiffs' breach of fiduciary duty claim in Count 8, which is explicitly limited to Defendants FPF, Rivera-Gutierrez, Martinez, Ortiz, and Mozo-Cañete. (TAC ¶ 226.)

[9] Plaintiffs offer no factual allegations about any FIFA "initiative" that led to FPF Defendants' conduct, and only refer to it in two conclusory paragraphs stating that the FPF Defendants' "conduct . . . was caused by FIFA's initiative." (TAC ¶¶ 157–58.)

**Tortious Interference (Count 6):** To establish a claim for tortious interference, Plaintiffs must show that FIFA *was aware of* and *intentionally* induced a breach of a contract between two third parties, and that FIFA's acts were the proximate cause of the breach. *Alpha Biomedical and Diagnostic Corp.* v. *Philips Med. Sys. Netherland BV*, 828 F. Supp. 2d 425, 430 (D.P.R. 2011). There is no allegation that FIFA was aware of any contract to which any of the Plaintiffs were parties, much less that FIFA took any intentional steps to cause the breach of that contract. The tortious interference claim thus fails.

**Abuse of Process (Count 7):** Plaintiffs allege that "Defendants" engaged in abuse of process by "illegally closing PRSL's business and by filing unfounded complaints against Plaintiffs in the commissions that they control, and by excluding Plaintiffs from soccer business activities." (TAC ¶ 221.) But Plaintiffs do not allege that FIFA participated in (or was even aware of) those actions. Moreover, the "commissions" to which Plaintiffs refer were created by FPF under its own statutes. (*See* TAC ¶¶ 66–72.) Abuse of process, by contrast, requires both "a bad motive, and the use of a *legal* process for an improper, collateral objective." *Microsoft Corp.* v. *Computer Warehouse*, 83 F. Supp. 2d 256, 261 (D.P.R. 2000) (emphasis added). The alleged complaints to FPF's commissions referenced by Plaintiffs simply are not part of a "legal" process, let alone one in which FIFA participated. Plaintiffs' abuse of process claim fails.

## III.    FIFA Is Not a Necessary and Indispensable Party to this Action

There is no mystery as to why Plaintiffs dragged FIFA into this case at this late stage without any evidence that FIFA had anything to do with the alleged conspiracy. Once the FPF Defendants asserted that FIFA is necessary and indispensable, Plaintiffs decided to cover their bases by naming FIFA as a defendant. Both the FPF Defendants and Plaintiffs are wrong: FIFA is not a necessary and indispensable party. Even if it were, that would not confer personal jurisdiction over FIFA or excuse Plaintiffs' failure to plead facts showing that FIFA conspired

with the FPF or other Defendants. Plaintiffs cannot bootstrap FIFA into this case and circumvent Rule 12(b) merely by averring that FIFA is necessary and indispensable. *See Doe* v. *Myers*, 2019 WL 4060068, at \*4–5 (D.N.H. Aug. 28, 2019) (dismissing purportedly "necessary" party because "Rule 19 does not create a cause of action [] and does not allow joinder of parties when they have committed no wrong and are joined solely so that the plaintiffs can obtain complete relief"); *S. Shore Hellenic Church, Inc.* v. *Artech Church Interiors, Inc.*, 2015 WL 846533, at \*17-18 (D. Mass. Feb. 26, 2015) ("An absent person who did not engage in the wrongdoing is not a necessary party.").

Rule 19 makes necessary a party in whose absence the court cannot grant complete relief or who claims an interest relating to the subject matter of the action. The rule "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case" in deciding whether a party is necessary. *Bacardi Int'l Ltd.* v. *Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013). It is hornbook law that "alleged co-conspirators are not necessary parties" because "a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy." *Spinelli* v. *Nat'l Football League*, 96 F. Supp. 3d 81, 104 (S.D.N.Y. 2015) (collecting sources) (citations omitted). Moreover, the Court can award all of the relief that Plaintiffs seek against FPF without implicating FIFA—it could declare the alleged conspiracy unlawful, enjoin FPF from continuing to deny Plaintiffs accreditation, and award all of the monetary relief Plaintiffs are seeking, all without any participation by FIFA. (TAC ¶¶ 171–77.)

Furthermore, even if FIFA were "indispensable" as Plaintiffs repeatedly allege (*see* TAC ¶¶ 18, 46, 53, 56, 109, 156), that fact would simply require dismissing the entire case as to *all* defendants, because Plaintiffs do not and cannot establish personal jurisdiction over FIFA and fail to plead facts sufficient to state a claim against FIFA. *See* Fed. R. Civ. P. 19(b); *Bacardi Int'l*

*Ltd.*, 719 F.3d at 9 (Rule 19 requires "dismissal of suits when joinder of a required party is not feasible and that party is indispensable").

## <u>CONCLUSION</u>

For the reasons set forth above, FIFA respectfully requests that the Court dismiss the Third Amended Complaint for lack of personal jurisdiction or, alternatively, for failure to state a claim on which relief can be granted.

Dated: March 8, 2024
San Juan, Puerto Rico

**FERRAIUOLI, LLC**

By: **_/s/ Roberto A. Cámara-Fuertes_**

Roberto A. Cámara-Fuertes
USDC-PR 219002
Suleicka Tulier-Vázquez
USDC-PR 305111
PO Box 195168
San Juan, PR 00919-5168
Phone: (787) 766-7000
Fax: (787) 766-7001
Email: rcamara@ferraiuoli.com
stulier@ferraiuoli.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

H. Christopher Boehning (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
Email: cboehning@paulweiss.com

*Attorneys for Defendant FIFA*

## **CERTIFICATION**

I hereby certify that I filed the within document via the CM/ECF system on March 8, 2024, which will send notification of filing to all parties.

**_/s/_ Roberto A. Cámara-Fuertes**
Robert A. Cámara-Fuertes
USDC-PR 219002
Ferraiuoli LLC
PO Box 195168
San Juan, PR 00919-5168
rcamara@ferraiuoli.com
Phone: (787) 766-7000
Fax: (787) 766-7001