| | |
|---|---|
| Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Juan M. Cornejo, Jose R. Olmo-Rodriguez, Futbol Boricua (FBNET), Inc., <br><br> *Plaintiffs,* <br><br> v. <br><br> Federación Puertorriqueña de Futbol, Inc., Iván Rivera-Gutiérrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete, Fédération Internationale de Football Association (FIFA), Confederation of North, Central America and Caribbean Association Football (CONCACAF), John Doe 1-18, and Insurers A, B, C, <br><br> *Defendants.* | CIVIL ACTION NO. 23-1203(RAM) |

**PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FIFA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

José R. Olmo-Rodríguez
USDC PR 213405
261 Ave. Domenech, SJ PR 00918
787.758.3570/jrolmo1@gmail.com

Ibrahim Reyes Gándara
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com
Admitted *pro hac vice*

*Counsel for Plaintiffs Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Juan M. Cornejo, Jose R. Olmo-Rodriguez, Futbol Boricua (FBNET), Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 4

LEGAL STANDARD................................................................................................. 9

I.     Motion to dismiss standard................................................................................. 9

ARGUMENT ............................................................................................................ 10

I.     Plaintiffs' Claims Against FIFA Establish General and Specific Personal Jurisdiction Over

Defendant FIFA ......................................................................................................10

A. The Court Has General Jurisdiction over FIFA ...................................................... 15

B. The Court Has Specific Jurisdiction over FIFA ..................................................... 16

II. Plaintiffs Claims Against FIFA State Sufficient Facts and Predicate Acts and Should Not Be

Dismissed Under Rule 12(b)(6) ............................................................................... 18

A. Plaintiffs Show that FIFA Joined the Conspiracy and Caused the Local Federation to

Interfere with Plaintiffs to Monopolize the Market to Themselves ............................................ 21

B. Plaintiffs Show that FIFA Caused the Local Federation to Interfere with Plaintiffs to

Monopolize the Market to Themselves by Engaging in Multiple Racketeer Influenced and

Corrupt Practices that Connect FIFA to the Conspiracy .............................................................. 25

III. FIFA Is a Necessary and Indispensable Party to this Action .................................................. 27

IV. FIFA Was Aware of the Tortious Interference and Intentionally Induced a Breach

of Contract Between FPF and PRSL ............................................................................. 29

V. Defendants Engaged in Abuse of Process ...................................................................... 29

Conclusion .......................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)................................................ 18, 19

*Associated Press v. United States*, 326 U.S. 1, 19 (1945)............................. 20, 26

*Bacardi Int'l Ltd.* v. *Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013)..................... 28

*Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001).......................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)..................................... 18

*Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) ............................. 9, 10, 15

*Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990) .............................. 11

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 225 (2d Cir. 2004).............................. 26

*FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986) ....................................... 27

*Garcia-Parra v. Puerto Rico*, 616 F. Supp. 2d 206, 208 (D.P.R. 2009) .............................10

*Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).......................................... 18

*Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)................................... 19

*Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.2005) ........................... 11, 17, 14

*Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ......................................................................... 15

*Int'l Shoe Co. v. Wash., Off. of Unemployment*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ..................................................................................... 11

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 244-45 ................................................................................... 27

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212-213 (1959)........................ 27

ii

# TABLE OF AUTHORITIES (cont'd.)

**Cases**                                                                 **Page(s)**

*Microsoft Corp. v. Computer Warehouse*, 83 F. Supp. 2d 256, 261 (D.P.R. 2000) .............. 29

*Montero-Rivera v. Puerto Rico, 2010 WL 455001, at \*1 (D.P.R. Feb. 4, 2010)* .................. 19

*Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007) ............... 16

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*,

883 F.2d 1101 (1st Cir. 1989) ............................................................................ 26

*Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir.1999) ........... 16

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir.2006) ........................ 16

*Relevent Sports, LLC v. U.S. Soccer Federation, Inc., et al.*, 61 F. 4th 299

(2nd Cir. 2022) ..................................................................................... 17, 18, 20

*Ríos-Campbell v. U.S. Dep't. of Commerce*, 927 F.3d 21 (1st Cir. 2019) ........................ 19

*Rodríguez v. Fullerton Tires Corp.,* 937 F.Supp. 122, 124 (D.P.R. 1996) ........................ 11

*Santini Rivera v. Santon*, 118 F. Supp. 2d 159, 161 (D.P.R. 2000) ............................... 9

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994) .............................. 9

*United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp. (Pleasant Street I)*,

960 F.2d 1080, 1088-89 (1st Cir.1992) ....................................................... 15, 16, 17

*United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir. 2001) ....................... 11

*U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990) ....................... 10

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 73 (2d Cir. 1988) ........ 26

# TABLE OF AUTHORITIES (cont'd.)

**Statutes**

15 U.S.C. § 1.................................................................................................15

18 U.S.C. § 1341 ...................................................................... 9

18 U.S.C. § 1343 ...................................................................... 9

18 U.S.C. § 1956 ...................................................................... 9

18 U.S.C. § 1961 ...................................................................... 9

18 U.S.C. § 1962 ...................................................................... 9

18 U.S.C. §1965(a) ................................................................. 29

28 U.S.C. § 1367 ................................................................... 29

28 U.S.C. §1391(a)(2) ............................................................ 29

P.R. Laws Ann. tit. 32, App. III, R. 4.7(a)(1)……………………..…………………… 11

**Other Authorities**

Fed.R.Civ.P. 8(a)(2) ……………………………………………………… 18

Fed. R. Civ. P. 12(b)(6) ...................................................... 9, 10, 18

Fed. R. Civ. P. 19.................................................................. 28

COME NOW the Plaintiffs, Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Jose R. Olmo-Rodriguez, and Futbol Boricua (FBNET), Inc., by and through undersigned counsel, and hereby submit and file their Response and Memorandum of Law in opposition to Defendant's, Fédération Internationale de Football Association (FIFA), Motion to dismiss their Third Amended Complaint, and state as follows:

## PRELIMINARY STATEMENT

FIFA claims "This case has noting to do with FIFA", and moves to dismiss Plaintiffs' lawsuit against it, on the basis that (1) FIFA is not subject to personal jurisdiction in Puerto Rico; (2) Plaintiffs fail to sufficiently plead an antitrust claim against FIFA, Plaintiffs do not allege a single fact from which the Court could infer FIFA was connected to the FPF Defendants' alleged pattern of fraud and corruption in any way; (3) Plaintiffs do not plead any facts connecting FIFA to any of the alleged racketeering, fraud, or fiduciary duty breaches; and (4) FIFA is not an indispensable party.

Contrarywise, Plaintiffs complain of a "scheme perpetrated by all Defendants, who are all part of football soccer's federative arm in Puerto Rico, Federación Puertorriqueña de Fútbol, Inc. ("Federation" or "FPF" or "Puerto Rico Soccer Federation"), and its governing bodies, Fédération Internationale de Football Association (hereinafter "FIFA") and Confederation of North, Central and Caribbean Association Football ("CONCACAF"), to conspire in restraint of trade and to conspire in violation of anti-racketeering laws, to exclude Plaintiffs from the "industry" with the purpose of maintaining control of the Federation and enriching themselves and their associates by benefitting from the football soccer infrastructure developed by others, not the Federation. Said pattern of conduct by these Defendants resulted in the exclusion of Plaintiffs from conducting football soccer operations, or business, in Puerto Rico, voting in federative affairs and elections,

or holding federative positions that would have placed in jeopardy the Defendants' control of the Federation." (TAC ¶ 1). Furthermore, Plaintiffs Puerto Rico Soccer League and Joseph "Joey" Serralta advised Defendant FIFA of the ongoing misconduct of its federative body, Defendant FPF, and its four codefendant federative officers, and its reliance on the FIFA letter of September 27, 2019 to illicitly block Puerto Rico Soccer League's 2019-2020 season, multiple times (December 4, 2019; February 5, 2020; May 8, 2020), FIFA ignored the correspondence, did not respond to Plaintiff Puerto Rico Soccer League, and allowed its codefendants' fraudulent misconduct to proceed. This is still the case today in relation to FPF and its four codefendant officers sued herein, and FIFA and CONCACAF, as Plaintiff Puerto Rico Soccer League is still unable to operate its LigaPro as a FIFA sanctioned league, Joseph Marc Serralta Ives is still losing on his investment, and Maria Larracuente, Jose R. Olmo-Rodriguez, Juan M. Cornejo and Futbol Boricua (FBNET), Inc., are still being prejudiced by the unlawful conduct of all defendants, including Defendant FIFA.

Also contrary to Defendant FIFA's assertions, Plaintiffs do not just allege a conspiracy between the Federación Puertorriqueña de Futbol ("FPF" or "Federation") and FIFA. Instead, Plaintiffs allege that FIFA is participating in anticompetitive schemes with the FPF and various horizontally competing FIFA-affiliated Confederations (CONCACAF herein), National Associations, leagues, and teams, "to conspire in restraint of trade and to conspire in violation of anti-racketeering laws, to exclude Plaintiffs from the "industry" with the purpose of maintaining control of the Federation and enriching themselves and their associates by benefitting from the football soccer infrastructure developed by others, not the Federation." (TAC ¶ 1).

Furthermore, Plaintiffs pled and alleged conduct that directly connects the Federation and its four codefendant officers' racketeering, monopolistic and corrupt practices to FIFA and

2

CONCACAF. Particularly, Plaintiffs pled that FIFA "is a self-declared, international governing body for soccer. Its voting members are the 211 affiliated National Federations that FIFA authorizes to act on its behalf in countries around the world, including Defendant, Federación Puertorriqueña de Futbol, in Puerto Rico, and according to the Defendants in Puerto Rico, an indispensable party to the litigation." (TAC ¶ 18). Plaintiffs further pled that "Defendant FPF, as the FIFA-affiliated sanctioning authority in Puerto Rico, has monopoly power to control access to the relevant market for League tournaments in the Commonwealth of Puerto Rico." (TAC ¶ 27). Also, "To be affiliated with FIFA, all Confederations, National Associations, leagues, clubs, referees, game commissioners, venue managers, and players must comply with FIFA's rules, as implemented and enforced by the Confederations and National Associations, including the rule that all league tournaments must be sanctioned by the National Association in whose territory the match will be played, Puerto Rico in this case." (TAC ¶28). Further, "Any violation of FIFA rules is subject to discipline. For example, a National Association that sanctions a League tournament in violation of FIFA rules may be subject to expulsion from FIFA. A player who competes in an unsanctioned game or match risks being deemed ineligible to participate in prestigious FIFA-sanctioned competitions, including the FIFA World Cup, or to be transferred to a FIFA-affiliated team-which makes it impossible, as a practical matter, for any FIFA-affiliated league or club to participate in an unsanctioned event in Puerto Rico." (TAC ¶ 30). Footnotes 5-7 in Plaintiffs' Third Amended Complaint reference the applicable FIFA Statutes and Disciplinary Code that allows FIFA to penalize leagues, clubs, and players in Puerto Rico.

Thus, Defendant FIFA's argument that it is not subject to personal jurisdiction in Puerto Rico because it "did not engage in *any* conduct that is directed at Puerto Rico and related to Plaintiffs' claims" is simply not factual or accurate. (MTD P. 7).

Lastly, FIFA insists it is not an indispensable party, despite its national federative body in Puerto Rico, the Federation, funded by FIFA to organize and promote FIFA-sanctioned events in Puerto Rico, raising in its Answer and Affirmative Defenses [DE 22] that Plaintiffs' allegations "unequivocally confirm that plaintiffs' awareness that the Fédération Internationale de Football Association (FIFA) and the Confederation of North, Central American, and Caribbean Association Football (CONCACAF) are indispensable parties to the litigation." (FPF Answer ¶¶ 46, 49, 50, and Seventh Defense). Plaintiffs amended their complaint and added indispensable parties FIFA and CONCACAF, and the Federation moved to dismiss. In its Motion to dismiss, the Federation raises that "plaintiffs' quarrel is not with FPF's decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative." (FPF MTD P. 2). Further, the Federation alleges that it "is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (FPF MTD P. 2). Thus, according to FIFA's agent in Puerto Rico – FPF – it is an indispensable party as it is the entity that causes FPF to follow FIFA's rules, or face expulsion. Hence, every act of misconduct attributable to the FPF Defendants is also attributable to Defendant FIFA.

## FACTUAL BACKGROUND

Football, or soccer, is governed worldwide by FIFA. (MTD P. 3). FIFA promulgates rules governing FIFA-accredited soccer, but the implementation and enforcement of those rules occurs independently and locally by each of the 211 member associations that are FIFA voting members (here, FPF), as well as the regional confederations (here, CONCACAF). (MTD P. 3). While FIFA advances in its arguments, and in the Declaration of Emily Devlin, that it does not have a physical

presence in Puerto Rico, in fact, it is present in Puerto Rico, since but for the role FIFA plays worldwide in relation to its 211 member federations, including FPF, FPF would have no reason to exist. FPF exists solely to represent FIFA and CONCACAF in Puerto Rico, and should it not do it according to FIFA's rules, face expulsion. (MTD P. 2).

FIFA asserts that "[T]he only allegations that even arguably involve FIFA concern statements by the FPF Defendants *to* FIFA, or about FIFA *to* others." (MTD P. 4). FIFA later admits that it sent a letter to FPF on the issue that led to this lawsuit, and states that "[T]he closest Plaintiffs come to alleging action *by* FIFA is their contention that, on September 27, 2019, a FIFA employee sent a letter informing FPF that FPF could "take action against members that participate in a tournament that was not authorized by [FPF] and that [FPF] was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes." (MTD P. 5). FIFA then tries to qualify and minimize its involvement in the fraudulent racketeering and corrupt practices with FPF by alleging that "Defendant Rivera, the President of FPF, procured this letter by "fraudulently misrepresent[ing] *to FIFA* that PRSL was not affiliated" with FPF." (MTD P. 5).

FIFA avoids acknowledging that it did much more than support the FPF's fraudulent racketeering and corrupt practices, and wishes to have this Court believe that its participation in the unlawful scheme is limited to a September 27, 2019 letter that FPF obtained by deceit.

Plaintiff PRSL operated with the authorization of Defendant FPF, which annually issued its "aval" (in Spanish) or affiliation. (TAC at ¶ 32.) Plaintiff PRSL organized its 2019-2020 season to highlight to its investors and sponsors, and United Nations colleagues, Puerto Rico's climate change issues and challenges, and PRSL's climate action solutions possible through football soccer, so it could start building stadia in 2020. (TAC at ¶ 35.) Plaintiff PRSL, in addition to being a league affiliated with the Federation (Defendant FPF) as a league, informed the Federation and

others in the soccer industry in Puerto Rico of its upcoming 2019-2020 season on August 29, 2028. (TAC at ¶ 37.) Plaintiff PRSL informed the Federation and the island's soccer community that its 2019-2020 season would commence Saturday, October 12th, 2019; it would conclude Sunday, May 31st, 2020. Seven clubs, twenty-eight dates, to bring back top soccer to Puerto Rico. (TAC ¶ 38.)

Defendants Rivera, Martinez, Ortiz, Mozo, FIFA, CONCACAF, and John Doe 1-18, devised a scheme to create leagues that the Federation would own and operate after eliminating the existing leagues. (TAC ¶ 47.) On September 20th, 2019 FPF's President, Defendant Rivera, communicated with FIFA, via email, fraudulently misrepresenting to FIFA that a number of clubs in Puerto Rico were going to participate in a competition (the PRSL LigaPro 2019-2020 Season) that was not "avalada" or affiliated to FPF. (TAC ¶ 49.) On September 27th, 2019 Mr. Mattias Grafström, of FIFA, responded to FPF, with copy to CONCACAF, informing FPF that it can take action against members that participate in a tournament that was not authorized by the Federation and that the Federation was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes. (TAC ¶ 52.) Following receipt of said letter from FIFA, Defendant Rivera met, and/or had other FPF officers, or agents, meet with the clubs that were going to play in the PRSL's LigaPro, and advised them that PRSL was not affiliated, or had no "aval", to the FPF, could not operate its LigaPro, and any club or player who played in its 2019-2020 season would not be considered by the Federation for awards or membership in the National Team. (TAC ¶ 54.) This unlawful conduct caused the interruption of Plaintiff PRSL's operations, and caused Plaintiff PRSL, Plaintiff Serralta, and Plaintiff Futbol Boricua, to suffer serious economic losses that are ongoing and accruing in nature. (TAC ¶ 57.)

FIFA and CONCACAF were notified as early as November 19, 2019, almost four years before filing suit, about Plaintiff Puerto Rico Soccer League's situation and plan in Puerto Rico,

and yet, they allowed the fraudulent conduct of its federative body in Puerto Rico to continue, as it does to this day. (**Exhibit "A"**, Dec. Serralta ¶ 18.)

With FIFA and CONCACAF having been notified, in 2019, of their national federative body's unlawful activities in Puerto Rico, the FPF Defendants, and FIFA and CONCACAF, have abused the federative processes to infringe on the rights of the other plaintiffs, including Plaintiff Cornejo. (TAC ¶¶ 72, 81, 82, 84, 85, 87, 89, 90, 94, 95, 100, 101, 107, 108, 109, 112, 113, 114.)

Similarly, with FIFA and CONCACAF having been notified, in 2019, of their national federative body's unlawful activities in Puerto Rico, the FPF Defendants, and FIFA and CONCACAF, have abused the federative processes to infringe on the rights of the other plaintiffs, including Plaintiff Olmo. (TAC ¶¶ 92, 135, 139, 140, 141, 143.)

Similarly, with FIFA and CONCACAF having been notified, in 2019, of their national federative body's unlawful activities in Puerto Rico, the FPF Defendants, and FIFA and CONCACAF, have abused the federative processes to infringe on the rights of the other plaintiffs, including Plaintiff Larracuente. (TAC ¶¶ 117, 119, 121, 122, 124, 125, 126, 127, 128, 129.)

Similarly, with FIFA and CONCACAF having been notified, in 2019, of their national federative body's unlawful activities in Puerto Rico, the FPF Defendants, and FIFA and CONCACAF, have abused the federative processes to infringe on the rights of the other plaintiffs, including Plaintiff Futbol Boricua (FBNET), Inc. (TAC ¶¶ 148, 149, 150, 152.)

The FPF Defendants asserted in their Answer to Plaintiffs' Second Amended Complaint, at ¶ 55, that Defendant FPF established its Liga de Puerto Rico (LPR) in compliance with FIFA and CONCACAF regulations and based on an initiative from FIFA for the expansion of permanent federative national leagues.

Plaintiffs moved against Defendants under the Sherman Antitrust Act because the actions of Defendant FPF and FIFA in concert with each Confederation (CONCACAF) and National Association (FPF) and their respective constituent members constitutes action by separate economic actors engaged in concerted action and agreements to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico. (TAC ¶ 161.)

Plaintiffs also moved against the Defendants under the RICO Act for their racketeering activity that includes the predicate acts of mail and wire fraud, fraud, conspiracy, all affecting interstate commerce and involving all defendants.

Defendants participated in the schemes, or artifices, knowingly, willfully, and with the specific intent to advance their scheme to deceive, or defraud, Plaintiffs. Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, letters, notices, and other documents, and then knowingly and with the intent to deceive Plaintiffs, caused those documents to be sent to Plaintiffs, FPF affiliates, or entities to further Defendants' scheme to defraud. (TAC ¶ 188.)

All communications in furtherance of the schemes were the result of the conspiracy and, therefore, attributable to all Defendants. Notably, Defendants FPF, Rivera, Martinez, Ortiz, and Mozo, asserted in their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint that their acts, which Plaintiffs described as RICO Act and Sherman Act violations, were done "in compliance with FIFA and CONCACAF regulations and based on an initiative from FIFA for the expansion of permanent federative national leagues." (TAC ¶ 190.)

Defendants have, on multiple occasions, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity

8

with the intent to promote the carrying on of specified unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343. Defendants have, therefore, violated 18 U.S.C § 1956(a)(1)(A)(i). (TAC ¶ 191.)

Each Defendant has engaged in multiple predicate acts, as described in paragraphs 23-136, *supra*. The conduct of each Defendant described in paragraphs 23-134, *supra*, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C.§ 1961(5). (TAC ¶ 192.)

Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962. Plaintiffs are the ultimate victims of Defendants' unlawful enterprises. (TAC ¶ 195.)

## LEGAL STANDARD

### I.     Motion to Dismiss Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the burden of proof to establish that the forum has jurisdiction over defendant is on the Plaintiff." *Santini Rivera v. Santon*, 118 F. Supp. 2d 159, 161 (D.P.R. 2000) (citations omitted). A plaintiff must make a "prima facie showing of personal jurisdiction," which "must be based on evidence of specific facts set forth in the record," and cannot be based on "unsupported allegations in their pleadings." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). In determining whether a plaintiff has met its burden, the court "draws the facts from the pleadings and the parties' supplementary filings, including affidavits," but does "not credit conclusory allegations or draw farfetched inferences." *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a "plausible entitlement to relief" based on "factual allegations sufficient to raise a right to relief above the

speculative level." *Garcia-Parra v. Puerto Rico*, 616 F. Supp. 2d 206, 208 (D.P.R. 2009) (quotations omitted).

A district court deciding a motion to dismiss for want of personal jurisdiction should apply the *prima facie* standard, under which the district court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). However, "[t]he *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." *Id.* In other words, "[t]he plaintiff must go beyond the pleadings and make affirmative proof." *Id.* (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a "plausible entitlement to relief" based on "factual allegations sufficient to raise a right to relief above the speculative level." *Garcia-Parra v. Puerto Rico*, 616 F. Supp. 2d 206, 208 (D.P.R. 2009) (quotations omitted).

## ARGUMENT

### I. Plaintiffs' Claims Against FIFA Establish General and Specific Personal Jurisdiction Over Defendant FIFA

Personal jurisdiction must "comport[] with the strictures of the Constitution"— namely, due process. *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). Constitutional due process requires that "the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court" and that the "exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990) (quotations omitted). The exercise of personal jurisdiction may be: (1) "general," where a defendant's connection to the

forum is "so continuous and systematic as to render [it] essentially at home in the forum state," *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quotation marks omitted); or (2) "specific," where "a suit arises directly out of the [defendant's] forum-based activities," *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990).

Where the district court considers defendant's motion to dismiss for lack of personal jurisdiction under the *prima facie* standard, "it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

Puerto Rico's long-arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant if the action arises because that person: (1) "[t]ransacted business in Puerto Rico personally or through an agent"; or (2) "participated in tortuous acts within Puerto Rico personally or through his agent." P.R. Laws Ann. tit. 32, App. III, R. 4.7(a)(1); *see also Rodríguez v. Fullerton Tires Corp.*, 937 F.Supp. 122, 124 (D.P.R. 1996).

Due process requires the plaintiff to prove the existence of either general or specific jurisdiction. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.2005). The critical factor in the personal jurisdiction calculus—both general and specific—is the existence of "minimum contacts" between the nonresident defendant and the forum. It is axiomatic that a court asserting jurisdiction over a nonresident defendant must find that the defendant maintains sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Off. of Unemployment*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted).

Defendant FIFA asserts it "did not engage in *any* conduct that is directed at Puerto Rico and related to Plaintiffs' claims." (MTD P. 7.) However, Plaintiffs properly pled how FIFA is part

of a scheme with the other Defendants, to conspire in restraint of trade and to conspire in violation of anti-racketeering laws, to exclude Plaintiffs from the "industry" with the purpose of maintaining control of the Federation and enriching themselves and their associates by benefitting from the football soccer infrastructure developed by others, not the Federation. (TAC ¶1). Plaintiffs also pled that FIFA is the "self-declared, international governing body for soccer. Its voting members are the 211 affiliated National Federations that FIFA authorizes to act on its behalf in countries around the world, including Defendant, Federacion Puertorriquena de Futbol, in Puerto Rico, and according to the defendants in Puerto Rico ( ), an indispensable party to the litigation." (TAC ¶18). Notably, Defendants FPF and its co-defendant federative officers, President Iván Rivera-Gutiérrez, Vice-President José "Cukito" Martinez, Secretary General Gabriel Ortiz, and Adjunct Secretary General Luis Mozo Cañete, agree with Plaintiffs that Defendant FIFA that the Federation "is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (FPF MTD P. 2). Thus, according to FIFA's agent in Puerto Rico – FPF – FIFA is an indispensable party, and but for its directions to Puerto Rico's federative body and its officers, the FPF Defendants, they would not have acted towards Plaintiffs, and particularly Puerto Rico Soccer League, as they did in 2019, and since.

Suitably, Plaintiffs pled that all defendants, including FIFA, conspired during on or about August 2018 to September 2019, and beyond, to sabotage PRSL's LigaPro and its business plan including its stadium-building plans. (TAC ¶ 45). Plaintiffs also pled that all defendants devised a scheme to create leagues that the Federation would own and operate after eliminating the existing leagues. (TAC ¶ 47). The FPF Defendants with FIFA and CONCACAF did just that.

Consistently, the Declaration of Joseph Marc Serralta Ives (**Exhibit "A"**) shows that FIFA has historically conducted, and continues to conduct, business in Puerto Rico. Exhibit "A" refers to FIFA's removal of a federative president, Luis Russi Dilan, in Puerto Rico in 2002. It refers to FIFA installing a Normalizing Commission in Puerto Rico afterwards, including an Executive Committee implemented by FIFA. It refers to FIFA's financial investments in Puerto Rico, through FIFA Forward Development. It refers to FIFA's actual knowledge of the fraudulent nature of the FPF September 20, 2019 correspondence, which in turn had FIFA tell FPF on September 27, 2019, that "it can take action against members that participate in a tournament that was not authorized by the Federation and that the Federation was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes." (TAC ¶ 52). In short, FIFA informed FPF in a correspondence dated September 27, 2019, that it could interfere and interrupt the Puerto Rico Soccer League's business plan. FIFA was notified as early as November 19, 2019, almost four years before filing suit, about Plaintiff Puerto Rico Soccer League's situation and plan in Puerto Rico, and yet, FIFA allowed the fraudulent conduct of its federative body in Puerto Rico to continue, as it does to this day. Plaintiffs have pled, and supported their pleadings, that FIFA has purposely established 'minimum contacts' with Puerto Rico in a continuous and systematic manner, over many decades, and that its continuous and systematic presence in Puerto Rico continues to this day, despite claiming to be an isolated body in Switzerland.

Further, the Declaration of Edwin Jusino[1] (**Exhibit "B"**) also shows that FIFA has historically conducted, and continues to conduct, business in Puerto Rico, in a continuous and systematic manner. On November 12, 2023, FIFA communicated with the Federation via facsimile

---

[1] Edwin R. Jusino Aldarondo, Ph.D., is founder and President of Plaintiff FutbolBoricua (FBNET), Inc., which began operations in 2008 and is the island's top football soccer online media destination for live game transmissions of football soccer and rugby, sports news and scores, interviews, and the like.

to the Federation's fax number +1 787 767 2288, addressing Leagues and other groups not recognized by the Federation. *Id.* at ¶ 6. In said correspondence, FIFA refers to the meetings held by FIFA, CONCACAF, and the Federation, on October 30-31, 2023, in San Juan, Puerto Rico, and urged the Federation to "take measures to ensure the fulfillment of its obligations, as set out in the FIFA Statutes, and in particular to supervise, organize, and control all football leagues and groups in its territory." *Id.* at ¶ 7. FIFA also asks the Federation to keep it "updated on any developments in this regard, as both FIFA and CONCACAF will continue to monitor the situation closely." *Id.* at ¶ 8. Further, FIFA advises the Federation that "on November 4 [2013] we [FIFA] proposed a new version of the FPF Statutes and we hope to receive your comments on it as soon as possible." *Id.* at ¶ 9.

Plaintiff Maria Larracuentes's Declaration also shows that FIFA and CONCACAF have historically conducted, and continue to conduct, business in Puerto Rico, in a continuous and systematic manner. See **Exhibit "C"** - Decl. Larracuente.

As another example, on August 16, 2021, FIFA communicated with the Federation's president, Ivan Rivera Gutierrez, via email to ing.riveragutierrez@gmail.com. *Id.* at ¶ 11. In same, FIFA's Director of Member Associations, Kenny Jean-Marie, advises the Federation that they have reviewed the Federation's new statutes, and tells the Federation that its next elections should be held in March 2023. *Id.* at ¶ 12.

In another example, on November 11, 2022, FIFA communicated with the Federation's Secretary General, via email, to secretarioadministrativo@fpfpuertorico.com. *Id.* at ¶ 13. In same, FIFA's Director of Member Associations, Kenny Jean-Marie, advises the Federation that they have reviewed the Federation's new statutes, how they will influence Puerto Rico's football soccer. *Id.* at ¶ 14.

As another example, during the times leading to the Federation's disaffiliation by Puerto Rico's Olympic Committee ("COPUR") in March 2023, on December 19, 2022, the Federation issued a Communiqué defending its conduct vis-à-vis Plaintiff Juan M. Cornejo, and "reiterating at the same time that we have the **FULL SUPPORT from FIFA and CONCACAF**, to face any decision of COPUR, so we will be attentive to the final decisions that are taken in this regard, which if it is unfavorable, we advocate the right to initiate legal actions…" *Id.* at ¶ 15. That FIFA, and CONCACAF, determine and control what the Federation does in Puerto Rico could not be made clearer; the conduct evidences a purposeful availment of the privilege of conducting business in the forum, year after year, decade after decade.

### A. The Court Has General Jurisdiction over FIFA

A court has general jurisdiction when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Pleasant Street I,* 960 F.2d at 1088; *see also Helicópteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In order to oppose a defendant's motion to dismiss for lack of jurisdiction, the plaintiff must present evidence that, if credited, would support a finding of jurisdiction. *Boit,* 967 F.2d at 675.

As *Pleasant Street I, and Daimler AG,* require, Plaintiffs have presented evidence that Defendant FIFA has engaged in continuous and systematic activity, unrelated to the suit, in Puerto Rico, for decades. See Declaration of Joseph Mark Serralta Ives (**Exhibit "A"**), Declaration of Edwin Jusino (**Exhibit "B"**), Declaration of Maria E. Larracuente (**Exhibit "C"**), in addition to Plaintiffs' Third Amended Complaint allegations, as referenced herein.

This District Court has general jurisdiction over Defendant FIFA, as FIFA has engaged in continuous and systematic activity, unrelated to the suit, in Puerto Rico, for decades.

## B. The Court Has Specific Jurisdiction over FIFA

A court may assert specific jurisdiction over an out-of-state defendant "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp. (Pleasant Street I)*, 960 F.2d 1080, 1088-89 (1st Cir.1992). To determine whether plaintiff has alleged facts sufficient to support a finding of specific personal jurisdiction, "this circuit divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir.2006) (internal quotation marks omitted). Critically, "[a]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir.1999).

In the relatedness inquiry, "causation is central." *Harlow*, 432 F.3d at 62. As we have explained, [t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect . . . . A broad 'but-for' argument is generally insufficient. *Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007).

Herein, Plaintiffs Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Jose R. Olmo-Rodriguez, Juan M. Cornejo, and Futbol Boricua (FBNET), Inc., and five defendants, namely, Federación Puertorriqueña de Futbol, and four of its Directors, its President Ivan Rivera-Gutierrez, its Vice-President Jose "Cukito" Martinez, its Secretary General

Gabriel Ortiz, and its Adjunct Secretary Luis Mozo Cañete, have asserted allegations of facts that demonstrate that "the defendant's in-state conduct form[s] an 'important, or [at least] material, element of proof in the plaintiff's case." *Harlow*, 432 F.3d at 61 (quoting *Pleasant St. I*, 960 F.2d ay 1089). Defendants FPF, Rivera-Gutierrez, Martinez, Ortiz and Mozo-Cañete, insist that "plaintiffs' quarrel is not with FPF's decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative." (FPF MTD P. 2.) They further add that "FPF … is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (FPF MTD P. 2.)

It is worth mentioning that the Second Circuit of Appeals recently issued its ruling in *Relevent Sports, LLC v. U.S. Soccer Federation, Inc., et al.*, 61 F. 4th 299 (2nd Cir. 2022), and concluded that allegation that members previously agreed to be bound by an association's rules is enough, standing alone, to plead concerted action in a suit challenging the legality of a rule promulgated by the association, regardless of whether the member defendant was involved with, assented to, or even agreed with the rule at issue. The Second Circuit decision defeats FIFA's flawed argument that Plaintiffs have failed to allege concerted action. (MTD P. 9.)

As a result, the defendants therein, U.S. Soccer Federation (analogous to Puerto Rico's FPF), and FIFA, on August 4, 2023 filed a *petition for writ of certiorari* with the Supreme Court of the United States, and on March 14, 2024, the U.S. Department of Justice Solicitor General filed an *amicus curiae* brief in support of Relevent Sports. In same, the friends of the court assert that while "[T]he district court dismissed respondent's [Relevent Sports] Section 1 [of the Sherman Antitrust Act] claim on the ground that respondent had failed to allege concerted action. The court

concluded that, "for an organizational decision or policy to constitute concerted action," a plaintiff "must plausibly allege an antecedent 'agreement among horizontal competitors to agree to vote a particular way' to adopt such a policy"—which respondent had failed to do. Pet. App. at 37a (brackets and citations omitted).

## II. Plaintiffs Claims Against FIFA State Sufficient Facts and Predicate Acts and Should Not Be Dismissed Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement...showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court expounded upon the Twombly standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* Plaintiffs must offer well-pleaded facts that permit the court to infer "more than the mere possibility of misconduct." *Montero-Rivera v. Puerto Rico, 2010 WL 455001, at *1 (D.P.R. Feb. 4, 2010).*

In short, "[T]o withstand a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ríos-Campbell v. U.S. Dep't. of Commerce*, 927 F.3d 21 (1st Cir. 2019), citing *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).

Again, Plaintiffs properly pled how FIFA is part of a scheme with the other Defendants, to conspire in restraint of trade and to conspire in violation of anti-racketeering laws, to exclude Plaintiffs from the "industry" with the purpose of maintaining control of the Federation and enriching themselves and their associates by benefitting from the football soccer infrastructure developed by others, not the Federation. (TCA ¶1). Plaintiffs also pled that FIFA is the "self-declared, international governing body for soccer. Its voting members are the 211 affiliated National Federations that FIFA authorizes to act on its behalf in countries around the world, including Defendant, Federacion Puertorriquena de Futbol, in Puerto Rico, and according to the defendants in Puerto Rico, an indispensable party to the litigation." (TCA ¶18). Notably, Defendants FPF and its co-defendant federative officers, President Iván Rivera-Gutiérrez, Vice-President José "Cukito" Martinez, Secretary General Gabriel Ortiz, and Adjunct Secretary General

Luis Mozo Cañete, agree with Plaintiffs that Defendant FIFA that the Federation "is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (FPF MTD P. 2). Thus, according to FIFA's agent in Puerto Rico – FPF – FIFA is an indispensable party, and but for its directions to Puerto Rico's federative body and its officers, the FPF Defendants, they would not have acted towards Plaintiffs, and particularly Puerto Rico Soccer League, as they did in 2019, and since.

Suitably, Plaintiffs pled that all defendants, including FIFA, conspired during on or about August 2018 to September 2019, and beyond, to sabotage PRSL's LigaPro and its business plan including its stadium-building plans. (TAC ¶ 45). Plaintiffs also pled that all defendants devised a scheme to create leagues that the Federation would own and operate after eliminating the existing leagues. (TAC ¶ 47). The FPF Defendants with FIFA and CONCACAF did just that.

Furthermore, the *Relevent Sports* ruling in the Second Circuit reaffirmed longstanding antitrust doctrine that an association rule that governs the behavior of its members is direct evidence of an agreement under Section 1. The Second Circuit decided that "when a plaintiff challenges a "binding association rule" governing "members' separate businesses," the rule itself is "direct evidence of concerted action." *Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 303 (2nd Cir. 2023) The court accordingly held that *Relevent Sports* was not required to allege a prior 'agreement to agree' or conspiracy to adopt the policy." *Id.* at 309, quoting *Associated Press v. United States*, 326 U.S. 1, 19 (1945). The court accordingly held that respondent was not required to "allege a prior 'agreement to agree' or conspiracy to adopt the policy." *Id.* at 307.

Consistently, the Declaration of Joseph Marc Serralta Ives (Exhibit "A"), the Declaration of Edwin Jusino (Exhibit "B"), and the Declaration of Maria E. Larracuente (Exhibit "C") show,

in no uncertain terms, that FIFA has historically conducted, and continues to conduct, business in Puerto Rico, in a systematic and continuous manner, over decades, availing itself to the jurisdiction of the forum. For instance, Exhibit "A" refers to FIFA's removal of a federative president, Luis Russi Dilan, in Puerto Rico in 2002. It refers to FIFA installing a Normalizing Commission in Puerto Rico afterwards, including an Executive Committee implemented by FIFA. It refers to FIFA's financial investments in Puerto Rico, through FIFA Forward Development. It refers to FIFA's actual knowledge of the fraudulent nature of the FPF September 20, 2019 correspondence, which in turn had FIFA tell FPF on September 27, 2019, that "it can take action against members that participate in a tournament that was not authorized by the Federation and that the Federation was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes." (TAC ¶ 52). In short, FIFA informed FPF in a correspondence dated September 27, 2019, that it could interfere and interrupt the Puerto Rico Soccer League's business plan. FIFA was notified as early as November 19, 2019, almost four years before filing suit, about Plaintiff Puerto Rico Soccer League's situation and plan in Puerto Rico, and yet, FIFA allowed the fraudulent conduct of its federative body in Puerto Rico to continue, as it does to this day. Plaintiffs have pled, and supported their pleadings, that FIFA has purposely established 'minimum contacts' with Puerto Rico in a continuous and systematic manner, over many decades, availing itself to the jurisdiction of the forum, and that its continuous and systematic presence in Puerto Rico continues to this day, despite claiming to be an isolated body in Switzerland.

A.    **Plaintiffs Show that FIFA Joined the Conspiracy and Caused the Local Federation to Interfere with Plaintiffs to Monopolize the Market to Themselves**

While codefendants FPF, Rivera-Gutierrez, Martinez, Ortiz, and Mozo-Canete (the "FPF Defendants") assert in their motion to dismiss that "[I]ndeed, plaintiffs' quarrel is not with FPF's

decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative. (FPF MTD P. 2). FPF, however, is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (FPF MTD P. 2).

Plaintiffs have pled, and shown, that the Federation and FIFA, and CONCACAF, acted in concert to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico. This unlawful conduct includes Defendant FPF's anticompetitive agreement to comply with the FIFA Policy that prohibits the disapproval of any League tournament in Puerto Rico not conducted by Defendant FPF; the anticompetitive agreement by FIFA and its affiliates, Defendant FPF herein, to boycott and punish professional soccer leagues, clubs and players that participate in League tournaments in Puerto Rico without a Defendant FPF authorization, or permit, ("aval" in Spanish); and the anticompetitive agreement between Defendant FPF, Defendant FIFA and Defendant CONCACAF to exercise its sanctioning authority in a manner that restricts output in the relevant market and enhances the competitive market position of Defendant FPF and its economic partners. (TAC ¶ 162.) The anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities have had significant anticompetitive effects on the relevant market for League tournaments and events in Puerto Rico, including causing antitrust injury to consumers, sponsors and competitors in the market as alleged herein. (TAC ¶ 166.) The anticompetitive agreements between Defendant FPF, FIFA and their constituent member entities have directly and proximately caused antitrust injury and damages to the business and property of Plaintiffs, to similarly situated competing promoters, and to consumers in the form of cancelled

League tournaments and events that were to be held in Puerto Rico, precluded the ability to schedule future League tournaments and events in Puerto Rico, and thus prevented PRSL's SafeStadium plans and projects to be funded and built, after PRSL had already secured the land, building materials, and retained the professionals to design and build said stadia. (TAC ¶ 168.) Plaintiff PRSL organized its 2019-2020 season to highlight to its investors and sponsors, and United Nations colleagues, Puerto Rico's climate change issues and challenges, and PRSL's climate action solutions possible through football soccer, so it could start building stadia in 2020. By then, PRSL had retained world-renowned sports venue architectural firms, including Pesquera y Asociados (Madrid, Spain), which partook in the design of the Madrid stadium where Atletico Madrid plays, Centro Deportivo Wanda Alcalá de Henares, PSD Pro Sports Developments (San Antonio, Texas), builders of multiple soccer-specific stadia, and Sadurni Architects + Engineers (San Juan, Puerto Rico), to act as the local architects. PRSL also retained engineers, experts in new building materials and materials testing, experts in environmental issues, land surveyors, attorneys, accountants, lobbyists, and secured land in several Puerto Rico municipalities, where to build its first two SafeStadium soccer venues, in the municipalities of Isabela and Dorado. (TAC ¶ 35.) Defendant Jose "Cukito" Martinez conspired with Defendant Rivera, Martinez, Ortiz, Mozo-Cañete, FIFA, CONCACAF, and John Doe 1-18, during on or about August 2018 to September 2019, and beyond, to sabotage PRSL's LigaPro and its business plan including its stadium-building plans, after Defendant Martinez learned Plaintiffs' PRSL and Serralta's business plan by agreeing to own and operate PRSL's club in the Municipality of Cayey, and after he accompanied Plaintiffs PRSL and Serralta to meetings with the Municipality of Cayey's Mayor Rolando Ortiz Velazquez, to build a small SafeStadium in said municipality, in similar manner to what PRSL had arranged with other municipalities in Puerto Rico. (TAC ¶ 45.) Defendants Rivera, Martinez, Ortiz, Mozo-

Cañete, FIFA, CONCACAF, and John Doe 1-18, devised a scheme to create leagues that the Federation would own and operate after eliminating the existing leagues.

The scheme was twofold. One of the purposes of the scheme was to eliminate the existing leagues and replace them with leagues owned by the Federation, and, in that manner, take the money that the leagues generate, for the Federation to pay salaries and other benefits of monetary value to Defendants and their associates, thereby maintaining control of the FPF, and enriching themselves and their associates, while causing damages to the business of the leagues that the Federation would refuse to affiliate, such as PRSL and others that are not named plaintiffs herein due to their fear of retaliation from Defendants. Second, as FPF club members who participate in the Superior league have a direct vote for the President, and the rest of the members of the Board of Directors, in the elections, by eliminating PRSL's Superior league, the Defendants eliminated the prospect of having about ten (10) teams that would not vote for them in future elections. (TAC ¶ 47.) Defendants repeatedly met, conferred, discussed, and agreed, on the acts to further the conspiracy to violate antitrust and racketeering laws. To accomplish this purpose, Defendants used the wire and mail systems. Defendants also used Defendant Mozo-Cañete to prepare the communications containing fraudulent misrepresentations of fact and used Defendants Rivera and Ortiz to disseminate the communications, through the wire and mail. (TAC ¶ 48.)

On September 20, 2019 FPF's President, Defendant Rivera, communicated with FIFA, via email, fraudulently misrepresenting to FIFA that a number of clubs in Puerto Rico were going to participate in a competition (the PRSL LigaPro 2019-2020 Season) that was not "avalada" or affiliated to FPF. (TAC ¶ 49.)

On September 27th, 2019 Mr. Mattias Grafström, of FIFA, responded to FPF, with copy to CONCACAF, informing FPF that it can take action against members that participate in a

tournament that was not authorized by the Federation and that the Federation was in a position to act in conformance with Article 14(1)(d) of the FPF Statutes. (TAC ¶ 52.) In addition to FIFA's participation, as pled, "the Defendants in Puerto Rico allege that their acts and conduct are sanctioned (permitted) by FIFA and CONCACAF, and thus, FIFA and CONCACAF are indispensable parties to the litigation." (TAC ¶ 53.)

Hence, it is abundantly clear that Plaintiffs show that FIFA joined the conspiracy and caused the national federative body to interfere with Plaintiffs to monopolize the market to themselves, and supply the who, what, where, when, why and how as to how they went about it.

**B.     Plaintiffs Show that FIFA Caused the Local Federation to Interfere with Plaintiffs to Monopolize the Market to Themselves by Engaging in Multiple Racketeer Influenced and Corrupt Practices that Connect FIFA to the Conspiracy**

Similarly, Plaintiffs also show that FIFA caused the national federative body, and its four codefendant officers, to interfere with Plaintiffs to monopolize the market to themselves by engaging in multiple racketeer influenced and corrupt practices that connect FIFA to the conspiracy.

First, the FPF Defendants – comprised of the national federative body, its President, Vice President, Secretary General and Adjunct Secretary General - state so themselves. Plaintiffs have pled, and shown, that the Federation and FIFA and CONCACAF, acted in concert to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico. This unlawful conduct includes Defendant FPF's anticompetitive agreement to comply with the FIFA Policy that prohibits the disapproval of any League tournament in Puerto Rico not conducted by Defendant FPF; the anticompetitive agreement by FIFA and its affiliates, Defendant FPF herein, to boycott and punish professional soccer leagues, clubs and players that participate in League

tournaments in Puerto Rico without a Defendant FPF authorization, or permit, ("aval" in Spanish); and the anticompetitive agreement between Defendant FPF, Defendant FIFA and Defendant CONCACAF to exercise its sanctioning authority in a manner that restricts output in the relevant market and enhances the competitive market position of Defendant FPF and its economic partners. (TAC ¶ 162.) The FPF Defendants allege that everything they did, they did because Defendants FIFA and CONCACAF expected it. The FPF Defendants' motion to dismiss, filed after they had filed an answer and affirmative defenses, advances that "[P]laintiffs' "allegations unequivocally confirm plaintiffs' awareness that the Fédération Internationale de Football Association (FIFA) and the Confederation of North, Central American, and Caribbean Association Football (CONCACAF) are indispensable parties to the litigation." *See* FPF Defendants' Answer and affirmative defenses [DE 22] at ¶¶ 46, 49, 50, and Seventh Affirmative Defense. Defendant FIFA wishes this Court ignores that "participation in an unlawful restraint of trade satisfies the wrongful conduct element of a claim for tortious interference." *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 883 F.2d 1101 (1st Cir. 1989).

Additionally, there can be no dispute that an agreement by competing members of a private industry association, such as FIFA, to follow the association's anticompetitive directives is an actionable conspiracy in violation of Section 1. See *Assoc'd Press v. United States*, 326 U.S. 1, 8-9, 11-12 (1945). Moreover, the conduct plausibly alleged in the Third Amended Complaint – a conspiracy among the competing FIFA-affiliated Confederation (CONCACAF), National Association (Defendant FPF), leagues (Defendant FPF's Liga Puerto Rico), and teams to adhere to and enforce the FIFA Policy with Defendant FPF – states a claim for a horizontal group boycott and naked restriction of output that "should be condemned as per se violations of § 1." *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 73 (2d Cir. 1988); see also *Freedom*

*Holdings, Inc. v. Spitzer*, 357 F.3d 205, 225 (2d Cir. 2004) ("output limitation [is] ordinarily condemned as a matter of law under an 'illegal per se' approach because the probability that these practices are anticompetitive is so high . . ."); cf. *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460-61 (1986) ("proof of actual detrimental effects, such as a reduction of output, can obviate the need for an inquiry into market power").

Further, in a classic "hub-and-spoke" conspiracy, FIFA is the hub for the agreements entered into by its horizontally competing members, and group boycotts or output restrictions effectuated by such conspiracies have been recognized as per se violations of Section 1. See *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212-213 (1959) (boycott of competing appliance companies (the spokes) organized by an appliance store in a vertical relationship (the hub) held per se unlawful); *Keurig*, 383 F. Supp. 3d at 244-45. Moreover, Plaintiffs allege that FPF Defendants' participation has the purpose and effect of reducing output in the relevant markets and bestowing a competitive advantage on Defendant FPF's economic partner, Liga Puerto Rico, which is Plaintiff PRSL's Liga Pro's horizontal competitor. (TAC ¶¶ 2, 10-11, 73-77, 86, 89, 101, 129-134, 142.) This is the type of anticompetitive agreement that states a claim for violation of Section 1. Accordingly, Plaintiffs show that Defendant FIFA caused the national federative body, and its four codefendant officers, to interfere with Plaintiffs to monopolize the market to themselves by engaging in multiple racketeer influenced and corrupt practices that connect FIFA to the conspiracy.

## III. FIFA is a Necessary and Indispensable Party to this Action

Defendant FIFA wants this court to believe that Plaintiffs added it "into this case at this late stage without any evidence that FIFA had anything to do with the alleged conspiracy. Once the FPF Defendants asserted that FIFA is necessary and indispensable, Plaintiffs decided to cover their

bases by naming FIFA as a defendant." (MTD P. 17). As it happens, Plaintiffs joined the Defendant FIFA when its national association, the Federación Puertorriqueña de Futbol, and its President, its Vice-President, its Secretary General, and its Adjunct Secretary General, all pled that "plaintiffs' quarrel is not with FPF's decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative. (ECF No. 33, ¶ 31). FPF, however, is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (*Id.,* ¶ 30).

Rule 19 makes necessary a party in whose absence the court cannot grant complete relief or who claims an interest relating to the subject matter of the action. The rule "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case" in deciding whether a party is necessary. *Bacardi Int'l Ltd.* v. *Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013). Where Plaintiffs and Defendants agree that FIFA is a necessary and indispensable party, and Plaintiffs and Defendants allude to the FIFA rules requiring Defendant FPF to abide by same or face expulsion, it is disingenuous of FIFA to claim it is not a necessary and indispensable party, when its very own national association is claiming that but for FIFA's rules, it would not have blocked Plaintiff Puerto Rico Soccer League.

Had the Federation independently decided to deny Plaintiff Puerto Rico Soccer League approval for official league games in Puerto Rico in the 2019-2020 season, and since, the critical element of concerted action would be absent, and Defendant FIFA would not be necessary and indispensable to the action. But the Federation did not act independently. It specifically told us so. Rather, it participated in a membership association that adopted a policy binding FIFA's members,

and the Federation invoked the policy as its stated rationale for denying approval to Plaintiff, Puerto Rico Soccer League, to conduct its football league seasons since the 2019-2020 season start date of October 12, 2019.

**IV. FIFA was Aware of the Tortious Interference and Intentionally Induced a Breach of Contract Between FPF and PRSL**

Where Plaintiffs and the FPF Defendants agree that FIFA is a necessary and indispensable party, and Plaintiffs and the FPF Defendants allude to the FIFA rules requiring Defendant FPF to abide by same or face expulsion, it is disingenuous of FIFA to claim it was not aware of the FPF Defendants' tortious interference, when its very own national association is claiming that but for FIFA's rules, it would not have blocked Plaintiff Puerto Rico Soccer League. It is shown that FIFA's rules towards its national federative body induced a breach of contract between Defendant FPF and Plaintiff PRSL.

Plaintiffs properly pled Defendant FIFA's conduct that connects it to the state law claims. Plaintiffs further invoked the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367, to hear and decide claims arising from the same nucleus of operative facts, that arise under the Constitution and laws of the Commonwealth of Puerto Rico. (TAC ¶ 26.) A substantial part of the events, or omissions, giving rise to Plaintiffs' claims occurred in Puerto Rico. 28 U.S.C. §1391(a)(2). All Defendants transacted their affairs in Puerto Rico. 18 U.S.C. §1965(a). (TAC ¶ 25.)

**V. Defendants Engaged in Abuse of Process.**

Abuse of process requires both "a bad motive, and the use of a legal process for an improper, collateral objective." *Microsoft Corp. v. Computer Warehouse*, 83 F. Supp. 2d 256, 261 (D.P.R. 2000) (emphasis added). Defendant FIFA's national association, the Federación

Puertorriqueña de Futbol, and its President, its Vice-President, its Secretary General, and its Adjunct Secretary General, all pled that "plaintiffs' quarrel is not with FPF's decision not to sanction the league, but with FIFA and its rules requiring the endorsement of the National Association in whose territory the match will be played, and consequential sanctioning power afforded to FPF as FIFA's national representative. (ECF No. 33, ¶31). FPF, however, is legally obliged to follow FIFA's rules. Failure to do so could, as correctly alleged by plaintiffs, subject FPF to disciplinary action from FIFA for violating FIFA's rules, which could include "expulsion from FIFA." (*Id.,* ¶30). Thus, FIFA is part of the abuse of process being conducted by its national federative body.

CCPR's article 18 prohibits the abuse of process ("abuso del derecho") that the Defendants have engaged by illegally closing Plaintiff PRSL's business and by filing unfounded complaints against Plaintiffs in the commissions that they control, and by excluding all Plaintiffs from soccer business activities. Therefore, pursuant to Article 1536, Defendant FIFA is liable to Plaintiffs for their damages.

## CONCLUSION

For the reasons set forth above, the support of the Declarations of witnesses, and the Exhibits to said Declarations, Plaintiffs respectfully ask the Court to deny FIFA's Motion to dismiss.

DATED this 22nd day of April, 2024
San Juan, Puerto Rico

By:*/s/José R. Olmo-Rodríguez*
José R. Olmo-Rodríguez
USDC PR 213405

261 Ave. Domenech, SJ PR 00918
787.758.3570/jrolmo1@gmail.com

By: /s/**Ibrahim Reyes**
  Ibrahim Reyes Gándara
  Florida Bar No. 581798

  REYES LAWYERS, P.A.
  236 Valencia Avenue
  Coral Gables, FL 33134
  Tel. 305-445-0011
  Fax. 305-445-1181
  Email: ireyes@reyeslawyers.com
  Admitted *pro hac vice*

  *Counsel for the Plaintiffs*

## CERTIFICATION

I HEREBY CERTIFY that I filed the within document via the CM/ECF system on April 22, 2024, which will send notification of filing to all parties.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed this document this 22nd day of April, 2024 with the Clerk of Court using CM/ECF/PACER, which will send a notice of such filing to all attorneys of record in this case.

  /s/ **Jose R. Olmo-Rodríguez**
  José R. Olmo-Rodríguez, Esquire