## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

PUERTO RICO SOCCER LEAGUE NFP, CORP., ET AL

**Plaintiffs**

v.

FEDERACIÓN PUERTORRIQUEÑA DE FUTBOL, ET AL

**Defendants**

**CIVIL NO. 23-1203 (RAM)**

## OPINION AND ORDER

Pending before the Court is co-defendants Federación Puertorriqueña de Fútbol, Inc. ("FPF") and its directors, Iván Rivera-Gutierrez, José "Cukito" Martínez, Gabriel Ortiz, and Luis Mozo Cañete's (collectively "Directors" and together with FPF, "FPF Defendants"), *Motion to Dismiss* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 44). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the *Motion to Dismiss*.

## I.   BACKGROUND

On April 26, 2023, Plaintiffs Puerto Rico Soccer League NFP Corp. ("PRSL"), Joseph Marc Serralta Ives ("Serralta"), Juan M. Cornejo ("Cornejo"), Maria Larracuente ("Larracuente"), Jose R. Olmo-Rodriguez ("Olmo", and Futbol Boricua (FBNET), Inc.'s ("FBNET") (collectively, "Plaintiffs") filed a *Complaint* against FPF, its Directors, and "Defendants John Doe 1-10" (collectively, "Defendants"). (Docket No. 1). Plaintiffs subsequently filed their

*First Amended Complaint* on June 19, 2023, and a *Second Amended Complaint* on August 2, 2023. (Docket Nos. 15 and 23). FPF Defendants answered the *Second Amended Complaint* on August 1, 2023.[1] (Docket No. 22). Then, on September 5, 2023, Plaintiffs filed a *Third Amended Complaint* ("*Complaint*").[2] (Docket No. 33). In that *Complaint*, Plaintiffs added two new defendants: the Fédération Internationale de Football Association ("FIFA") and the Confederation of North, Central, and Caribbean Association Football ("CONCACAF") (hereinafter included in the term "Defendants"). Id.

In their *Complaint*, Plaintiffs allege violations of section 1 of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and a bevy of commonwealth-law claims: tortious interference with a contract, abuse of process, and breach of fiduciary duty. Id. at 44-58. Per Plaintiffs' *Complaint*, FPF Defendants, CONCACAF, and FIFA, along with their member organizations, "engaged in concerted action and agreements to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico." Id. at 44. Further, Plaintiffs allege Defendants devised "a scheme to defraud Plaintiffs of money, property, and other benefits of monetary value

---

[1] Because FPF Defendants filed their answer before the Court granted Plaintiffs leave to file their proposed *Second Amended Complaint*, the answer appears on the docket first.

[2] The *Third Amended Complaint* is the operative complaint in this case.

by excluding Plaintiffs from the FPF's affairs by means of false or fraudulent pretenses and representations." <u>Id.</u> at 48. In addition, Plaintiffs allege Defendants tortiously interfered with various contractual relations of Plaintiffs, filed unfounded complaints in an abuse of process, and "violated [Defendants'] fiduciary duty to the corporation named FPF." <u>Id.</u> at 56-57.

On September 29, 2023, FPF Defendants filed their *Motion to Dismiss*. (Docket No. 44). FPF Defendants argue Plaintiffs' section 1 claim should be dismissed because Plaintiffs failed to plead an antitrust injury and, in any event, did not allege a conspiracy. (Docket No. 44 at 6, 8). As to the racketeering claims, FPF Defendants contend Plaintiffs lack standing to assert claims under RICO because they have not plead an injury to their business or property that was caused by FPF Defendants' purported acts. <u>Id.</u> at 15-16. FPF Defendants also maintain Plaintiffs have failed to plead the other elements of a RICO violation, in part due to the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b). <u>Id.</u> at 16, 21, 24. Regarding Plaintiffs' commonwealth-law claims, FPF Defendants argue the Court should either dismiss them for failing to state a claim or decline to exercise supplemental jurisdiction over them. <u>Id.</u> at 26, 31, 33, 35.

On October 24, 2023, Plaintiffs filed a *Response in Opposition to the FPF Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint* (*"Opposition"*). (Docket No. 48). First, Plaintiffs

contend FPF Defendants' *Motion to Dismiss* should be treated as a motion for judgment on the pleadings, apparently based on the fact that FPF Defendants asserted some of the same defenses in their answer to the *Second Amended Complaint* that they assert in their present *Motion*. Id. at 9. Second, Plaintiffs dispute FPF Defendants' arguments that Plaintiffs have insufficiently plead facts to support their antitrust, RICO, and commonwealth-law claims. (Docket No. 48 at 11-21).

FPF Defendants filed a *Reply in Further Support of Motion to Dismiss* ("*Reply*") on November 9, 2023. (Docket No. 56). Plaintiffs filed a *Surreply in Opposition to the FPF Defendants' Reply* ("*Surreply*") on November 14, 2023. (Docket No. 61). Included in Plaintiffs' *Surreply* is a request for a hearing. Id. at 5.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s] devoid of further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. See Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (citations omitted).

### III. PRELIMINARY MATTERS

As an initial matter, the Court **DENIES** both Plaintiffs' request for the *Motion to Dismiss* to be treated as a judgment on the pleadings and its request for a hearing. Regarding the former, Fed. R. Civ. P. 15(a) allows for a party to amend its complaint **and** for a defendant to respond to that amended complaint. "An amended complaint, once filed, normally supersedes the antecedent complaint." Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). Here, Plaintiffs filed their *Third Amended Complaint*, and FPF Defendants timely filed their *Motion to Dismiss* before answering. (Docket Nos. 33, 41 and 44). FPF Defendants may therefore proceed with their *Motion*, regardless of having already filed an answer to the *Second Amended Complaint*. See Wadsworth v. Me. Sch. Admin. Dist. 40/Reg'l Sch. Unit 40, 2020 WL 5880471, *10 (D. Me. 2020) ("The Amended Complaint filed between [the

defendant's] answer and his motion to dismiss does not affect this principle."); *see also* <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 54 (1st Cir. 2006) (noting a motion to dismiss and a motion for judgment on the pleadings "are ordinarily accorded much the same treatment") (citations omitted).

Turning to Plaintiffs' request for oral argument, the Court is satisfied it can adjudicate the *Motion* in the absence of a hearing.

## IV.   ANTITRUST CLAIM

Plaintiffs' first claim is brought under section 1 of the Sherman Act, which outlaws "[e]very contract, combination . . . or conspiracy[] in restraint of trade or commerce." 15 U.S.C. § 1; (Docket No. 33 at 46). Plaintiffs allege Defendants violated section 1 by conspiring to "restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico." (Docket No. 33 at 44).

### A. <u>Factual Allegations Relevant to Plaintiffs' Section 1 Claim</u>

According to the *Complaint*, PRSL is a for-profit corporation that "operated the island's top [soccer] league" until 2019. <u>Id.</u> at 3. Following Hurricane María in 2017, league soccer suffered in Puerto Rico due to both a lack of usable soccer fields and a shortage of people still living on the island. <u>Id.</u> at 14. Nonetheless, PRSL continued to organize league soccer and made

plans to "bring back top soccer" with a major 2019-2020 season. Id.

Leading up to fall of 2019, "PRSL operated with the authorization of Defendant FPF, which annually issued its 'aval' (in Spanish) or affiliation."[3] Id. at 11-12. FPF is the FIFA-affiliated federation, or "National Association," in Puerto Rico. Id. at 6. FPF is obligated to follow FIFA policies and is "subject to disciplinary action both from FIFA and from the applicable regional [c]onfederation, such as CONCACAF." Id. at 9. In turn, FPF helps enforce and implement FIFA's rules against teams and players in Puerto Rico. Id. at 10. FPF is also the "FIFA-affiliated sanctioning authority in Puerto Rico," which means it has the authority to approve soccer organizations, like teams and leagues, as well as to approve tournaments. Id. at 10, 18.

Under FIFA policy, FIFA-affiliated teams and players in Puerto Rico may not participate in a tournament that is not sanctioned by FPF. Id. at 9-10. Failure to comply with this tournament-participation policy can result in discipline, including "ineligibility to participate in the FIFA World Cup and other prestigious FIFA-affiliated competitions, as well as a prohibition on being transferred, i.e., traded to or signed by

---

[3] Throughout the *Complaint*, Plaintiffs use a variety of terms to describe FPF's authority to affiliate or approve soccer organizations and tournaments. Most common is the word "sanction," which seems to signify FPF's approval of a particular organization or tournaments. *See, e.g.*, (Docket No. 33 at 8-9).

another FIFA-affiliated club." Id. at 9-10; see also id. at 19. Plaintiffs characterize this as a "group boycott;" they allege that when a FIFA-affiliated team or player disobeys FIFA's tournament-participation policy, that team or player is then "boycotted" by FPF, CONCACAF, and FIFA. Id. at 9-10, 44.

Plaintiffs aver that beginning in 2019, FPF used its sanctioning authority to leverage FIFA's tournament-participation policy to exclude PRSL from the market for league tournaments in Puerto Rico. Id. at 44-46. Allegedly, FPF wished to replace PRSL's league, called LigaPro, with its own league, called Liga Puerto Rico. Id. at 11, 20. Plaintiffs allege FPF believed it alone should operate a top (or "superior") soccer league in Puerto Rico and that it stood to gain financially from doing so. Id. at 18, 20.

To accomplish its goal of excluding PRSL, FPF allegedly cancelled, or refused to recognize, PRSL's affiliation just weeks before the beginning of PRSL's major 2019-2020 season. Id. at 17-18. Moreover, FPF allegedly contacted teams that had planned to participate in PRSL's LigaPro and told them PRSL's tournaments were not sanctioned and that participating in them would result in discipline. Id. at 19.

As a result, PRSL's season was allegedly "blocked." Id. at 20. Plaintiffs aver that since then, "Plaintiff PRSL has not been able to obtain [FPF's] affiliate status," which has affected "its League, clubs, owners, investors, partners, and sponsors." Id. at

20. Among others allegedly affected by this development was FBNET, which had contracted with PRSL to transmit PRSL's 2019-2020 season live. Id. at 5.

Plaintiffs contend the defendants in this case have engaged in a variety of anticompetitive agreements. These include: (1) "FPF's anticompetitive agreement to comply with the FIFA Policy that prohibits the sanctioning of any League tournament in Puerto Rico not conducted by [FPF];" (2) "the anticompetitive agreement by FIFA and its affiliates, Defendant FPF herein, to boycott . . . clubs and players that participate in League tournaments in Puerto Rico without a [FPF] sanction;" and (3) "the anticompetitive agreement between [FPF] and FIFA to exercise its sanctioning authority in a manner that restricts output in the relevant market and enhances the competitive market position of [FPF]." Id. at 44. Plaintiffs allege these anticompetitive agreements have had the effect of excluding PRSL from the market for league tournaments and hurting consumers in the form of cancelled tournaments. Id. at 10, 19-20, 46.

**B. <u>Antitrust Injury</u>**

FPF Defendants' first argument for why Plaintiffs' section 1 claim should be dismissed is that the allegations in the *Complaint* fail to identify an antitrust injury, i.e., a harm to competition in the relevant market. (Docket No. 44 at 6). Instead, FPF

Defendants argue, Plaintiffs have only alleged harm to PRSL, one of FPF's competitors. Id. at 8.

FPF Defendants are correct about the need to plead an injury. "Plaintiffs must show not only that they were injured as a result of the defendant's actions and that those actions constituted an antitrust violation, but also that their injury is the type of injury the antitrust violation would cause *to competition*." Sterling Merch., Inc. v. Nestle, S.A., 656 F.3d 112, 121 (1st Cir. 2011). However, the Court finds Plaintiffs have alleged sufficient facts to satisfy that requirement.

Plaintiffs allege anticompetitive agreements between FPF Defendants, CONCACAF, and FIFA resulted in PRSL being excluded from the "relevant market for League tournaments and events in Puerto Rico."[4] (Docket No. 33 at 10, 19-20, 44). Plaintiffs aver this exclusion resulted from losing access to top clubs and players, whose participation PRSL needed to compete in the league-tournament market. Id. at 10-11, 18-20. In addition, Plaintiffs allege an injury to competition generally. Specifically, Plaintiffs aver Defendants' action harmed consumers "in the form of cancelled League tournaments." *See* id. at 46. This allegation

---

[4] FPF Defendants rightfully point out that showing injury to competition requires defining the relevant market. (Docket No. 44 at 7). Though Plaintiffs' description of the alleged market leaves much to be desired, the Court is satisfied Plaintiffs have satisfied their burden at this juncture, which is only that the "complaint allege[] facts that plausibly delineate a relevant market." Vázquez-Ramos v. Triple-S Salud, Inc., 55 F.4th 286, 297 (1st Cir. 2022).

of cancelled tournaments, coupled with Plaintiffs' allegations that PRSL "operated **the** island's top league until Defendants' interference in 2019," id. at 3 (emphasis added), supports a plausible inference that Defendants' actions reduced the output of league tournaments within the relevant market. *See* Sterling Merch., Inc., 656 F.3d at 121 (noting "antitrust injury doctrine . . . 'requires every plaintiff to show that its loss comes from acts that reduce output or raise prices to consumers'") (citation omitted). Therefore, the Court finds Plaintiffs have alleged facts supporting a plausible antitrust injury. *See* Abarca Health, LLC v. PharmPix Corp., 915 F. Supp. 2d 210, 215-16 (D.P.R. 2012) (denying motion to dismiss where defendants allegedly "attempted to completely eliminate a [competitor] from the industry"). FPF Defendants' *Motion* is therefore **DENIED** as to its argument that Plaintiffs have not plead an antitrust injury.

### C. Concerted Action

FPF Defendants' other argument for dismissing Plaintiffs' antitrust claim is that Plaintiffs have failed to allege concerted action. "There are two prerequisites for a successful section 1 claim." Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 16 (1st Cir. 2004) (citing Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984)). "First, there must be concerted action." Id. "Second, the actors' agreement must involve either restrictions that are per se illegal or restraints of trade that

fail scrutiny under the rule of reason." Id. To successfully plead concerted action, a plaintiff must provide "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Bell Atl. Corp., 550 U.S. at 556.

Here, having considered FPF Defendants' argument that Plaintiffs failed to plead concerted action, the Court disagrees and finds Plaintiffs have adequately alleged facts from which to infer a plausible conspiracy.

## 1. Plaintiffs have alleged direct evidence of concerted action

FPF Defendants first contend FPF's mere compliance with FIFA's rules is insufficient to show a "conscious commitment to a common scheme designed to achieve an unlawful objective." (Docket No. 44 at 10 (citing Monsanto Co., 465 U.S. at 764). FPF Defendants argue what Plaintiffs call a conspiratorial agreement "is merely" FPF's compliance with FIFA's requirement that FIFA-affiliated entities participate only in sanctioned events. Id.

To show concerted action, a plaintiff can put forward either "direct evidence that the defendants entered into an agreement" or "circumstantial facts supporting the *inference* that a conspiracy existed." United States v. Apple, Inc., 791 F.3d 290, 315 (2d Cir. 2015) (citations omitted); *see also* Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 43 (1st Cir. 2013); Euromodas, Inc., 368 F.3d at 17. Alleging a defendant's compliance with another organization's rule or policy may be sufficient to plead

direct evidence of concerted action, provided the rule or policy is itself alleged to be anticompetitive. *See* Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc., 61 F.4th 299, 307, 309 (2d Cir. 2023); Associated Press v. United States, 326 U.S. 1, 4, 19 (1945); FTC v. Ind. Fed'n of Dentists, 476 U.S. 447, 451, 457-58 (1986); Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla., 468 U.S. 85, 99 (1984) ("By participating in an association which prevents member institutions from competing against each other . . . the NCAA member institutions have created a horizontal restraint -- an agreement among competitors on the way in which they will compete with one another."); N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 40-41 (2d Cir. 2018) (explaining national federation's approval of policy could "constitute direct evidence of § 1 concerted action" if the policy itself were challenged as anticompetitive).

In this case, Plaintiffs argue they have plead direct evidence of concerted action by alleging FPF, CONCACAF, and various leagues and clubs comply with FIFA's tournament-participation policy, including the punitive use of boycotts. (Docket No. 48 at 12-13). The Court agrees. As discussed, Plaintiffs allege in their *Complaint* that Defendants engaged in at least three different anticompetitive agreements. (Docket No. 33 at 44). One of those is the purported agreement to punish FIFA-affiliated clubs and players that participate in non-sanctioned tournaments. Id. at 10,

44. Plaintiffs allege this agreement is what caused PRSL to be excluded from the market for league tournaments in Puerto Rico. Id. at 18-20. They allege that once FPF decided not to sanction PRSL's 2019-2020 season, it contacted teams and players to warn them not to participate. Id. The clubs that had planned to participate then withdrew out of fear of being disciplined for breaking FIFA's tournament-participation policy. Id. This lack of club participation "sabotaged" PRSL's season. Id. at 19.

Because Plaintiffs allege FPF and the FIFA-affiliated teams in Puerto Rico agreed to comply with this tournament-participation policy, the Court finds Plaintiffs have adequately plead concerted action by FPF to participate in what Plaintiffs allege is an anticompetitive conspiracy. Specifically, the Court finds Plaintiffs have adequately plead FPF conspired with FIFA-affiliated teams to follow and enforce FIFA's anticompetitive policy. See Relevent Sports, LLC, 61 F.4th at 304-05, 309-10 (finding compliance by national federation, leagues, and teams with FIFA policy was direct evidence of concerted between federations, leagues, and teams); Shields v. Fed'n Internationale de Natation, 419 F. Supp. 3d 1188, 1221 (N.D. Cal. 2019) (finding concerted action adequately plead where "[p]laintiffs' Section 1 claim[] [was] that [international swimming organization] FINA compelled its member federations [through promulgation of FINA rules] to agree among themselves and with FINA . . . to restrain

trade in the market for top-tier international swimming competitions").

FPF Defendants argue "there are no facts alleged that demonstrate that any of the defendants had a conscious commitment to the purported scheme to oust PRSL and reduce competition in the market." (Docket No. 44 at 10-11). While it is true Plaintiffs appear at times to be alleging they were injured by an overall anticompetitive scheme, (Docket No. 33 at 2, 44), Plaintiffs also make plain they are challenging FIFA's tournament-participation policy itself. Id. at 44-45. Because a plaintiff may plead alternative legal theories in a complaint, Plaintiffs' allegations of concerted action pass muster. See Fed. R. Civ. P. 8(d); Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (citation omitted); Limone v. United States, 579 F.3d 79, 93 (1st Cir. 2009) ("The plaintiffs had the right to plead alternative theories of liability . . . and their exercise of that right did not debar them from an independent review of each set of claims.") (citation omitted).

FPF Defendants also suggest FPF's longstanding membership in FIFA means their compliance with its policies cannot be evidence of concerted action. (Docket No. 44 at 10-11). They note "agreeing to abide by FIFA's rules has always been inherent in becoming and maintaining FPF's membership in FIFA." Id. However, the Court fails to see how the vintage of FIFA's tournament-participation policy

would have made FPF Defendants any less aware of FPF's consent to
follow it. If anything, the well-established nature of the policy
would have made FPF Defendants **more** aware of FPF's compliance.

In short, because Plaintiffs challenge FIFA's tournament-
participation policy itself as anticompetitive, the allegation
that FPF Defendants comply with that policy is sufficient for
Plaintiffs to plead direct evidence of concerted action with other
entities that comply with the same policy.

## 2. Plaintiffs have sufficiently plead FPF and FIFA-affiliated teams are separate for purposes of section 1

FPF Defendants next argue that even if FPF's compliance with
FIFA policy is direct evidence of agreement, FPF and FIFA should
be considered a single entity and therefore incapable of
conspiring. Id. at 13.

"Section 1 of the Sherman Act . . . reaches unreasonable
restraints of trade effected by a 'contract, combination . . . or
conspiracy' between *separate* entities. It does not reach conduct
that is 'wholly unilateral.'" Copperweld Corp. v. Indep. Tube
Corp., 467 U.S. 752, 768 (1984) (citations omitted). The key to
determining whether alleged conspirators are separate for the
purpose of section 1 is "whether [the purported conspiracy] joins
together separate decisionmakers." Am. Needle, Inc. v. Nat'l
Football League, 560 U.S. 183, 195 (2010). Courts should ask
whether there is an agreement among "separate economic actors

pursuing separate economic interests" that "deprives the marketplace of independent centers of decisionmaking" and of "diversity of entrepreneurial interests." Id. (first quoting Copperweld Corp., 467 U.S. at 769, then quoting Fraser v. Major League Soccer, L.L.C., 284 F.3d 47, 57 (1st Cir. 2002)).

Because the Court has found Plaintiffs alleged direct evidence of concerted action between FPF and FIFA-affiliated teams, the relevant separate-entity question is not whether **FPF and FIFA** are separate entities but rather whether **FPF and the FIFA-affiliated teams** are separate. The Court finds Plaintiffs have adequately plead they are.

For one, FPF's alleged purposes are unique to federations: affiliating local soccer clubs, enforcing FIFA's rules, and, as of late, running soccer leagues. (Docket No. 33 at 10, 20). These are different than the purposes of an individual soccer team. As to decision making, Plaintiffs have alleged FIFA-affiliated teams are led by different people and hire their own staffs and players. Id. at 3-6, 9-10, 15, 17. The teams seek affiliation individually and communicate on their own behalf. Id. at 10, 19. While the heads of individual leagues or teams sometimes serve on FPF's board, id. at 4, Plaintiffs allege various instances where that body has been at odds with FIFA-affiliated teams or their leadership. See, e.g., id. at 11, 24.

Taken together, the Court finds these facts sufficient to plead FPF is a separate entity from FIFA-affiliated teams in Puerto Rico for the purposes of section 1. *See* <u>Shields</u>, 419 F. Supp. 3d at 1220-21 (finding member federations within world swimming organization were separate entities, where plaintiffs alleged the "member federations frequently disagree[d] among themselves" and "acted independently in engaging in direct negotiations" with third parties).

Because the Court finds Plaintiffs have alleged direct evidence of concerted action between FPF and FIFA-affiliated teams, and that Plaintiffs have adequately plead facts to show FPF is separate from those teams, the Court **DENIES** FPF Defendants' *Motion* to the extent it argues Plaintiffs have failed to allege concerted action.

## V.   RICO ACT CLAIMS

In addition to the Sherman Act, Plaintiffs allege FPF Defendants violated RICO by committing a series of predicate criminal acts, namely mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), laundering of monetary instruments (18 U.S.C. § 1956), and fraud in foreign labor contracting (18 U.S.C. § 1351). (Docket No. 33 at 2, 48, 51). As discussed below, the Court finds these allegations fail to state a claim upon which relief can be granted.

## A. <u>Factual Allegations Relevant to Plaintiffs' RICO Claims</u>

Plaintiffs' primary allegations are that some or all of FPF Defendants: (1) misrepresented PRSL's and the Pumas' affiliation status; (2) misstated FPF rules during the Pumas' affiliation process; (3) filed fraudulent complaints against Cornejo within FPF and lied about the appeals process; (4) used deceit to prevent Larracuente from bringing her own complaints; (5) blocked Larracuente from running for FPF president; (6) misrepresented Larracuente's availability to work for CONCACAF; (7) misrepresented a candidate's credentials during an FPF election; (8) registered a travel agency as a front to hide a conflict of interest; and (9) hired foreign nationals to work illegally. <u>Id.</u> at 9-46. Plaintiffs allege FPF Defendants performed these predicate acts in order to deprive Plaintiffs of opportunities, sabotage PRSL's league, and exclude Plaintiffs from the affairs of FPF. <u>Id.</u> at 17, 48-50.

## B. <u>Applicable Law</u>

"RICO provides a cause of action for those 'injured in [their] business or property by reason of' a violation of that statute." <u>Roe v. Healey</u>, 78 F.4th 11, 27 (1st Cir. 2023) (quoting 18 U.S.C. § 1964(c)). To adequately plead a civil RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

When pleading fraud as a RICO predicate act, "a party must state with particularity the circumstances" that constitute it. Fed. R. Civ. P. 9(b). This requires "allegations of fraud that are specific with respect to time, place and content." Freeport Transit, Inc. v. McNulty, 239 F. Supp. 2d 102, 108-09 (D. Me. 2003) (citing New Engl. Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987)).

Importantly, a civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been **injured in his business or property** by the conduct constituting the violation." Sedima*,* 473 U.S. at 496 (emphasis added); *see also* Willis v. Lipton, 947 F.2d 998, 1000 (1st Cir. 1991) ("A plaintiff enjoys standing under section 1964(c) only if he can demonstrate (1) a violation of section 1962, and (2) harm 'by reason of' the violation.") (citations omitted).

The First Circuit has cautioned that although "RICO is to be construed broadly, 'injury to property' is not an infinitely elastic concept." DeMauro v. DeMauro, 115 F.3d 94, 97 (1st Cir. 1997) (internal citations omitted). Accordingly, courts have held that "as a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994); *see also* Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding injury in the form of lost business

commissions was too speculative to confer standing under RICO because plaintiff only alleged "he would have lost commissions in the future, and not that he ha[d] lost any yet") (collecting cases); In re Actimmune Mktg. Litig., 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009) ("The private remedy provisions of RICO require a plaintiff to have suffered an ascertainable loss that is in direct relation to the alleged fraudulent conduct."), aff'd, 464 F. App'x 651 (9th Cir. 2011).

Furthermore, although the "harm alleged may be either direct or indirect, so long as it flows from the predicate acts[,] [m]ere cause in fact is insufficient to confer RICO standing [because] section 1964(c) establishes a proximate cause requirement as well." Willis, 947 F.2d at 1000 (internal quotation marks and citations omitted); see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation **led directly** to the plaintiff's injuries.") (emphasis added).

Thus, "when assessing causation under RICO," the First Circuit has explained courts should focus on three factors: (1) "concerns about proof," including the existence of independent causes, (2) "concerns about administrability and the avoidance of multiple recoveries," and (3) "the societal interest in deterring

illegal conduct and whether that interest would be served in a
particular case." Roe, 78 F.4th at 27 (citation omitted).

### C. Analysis

FPF Defendants argue Plaintiffs lack standing to bring their
RICO claims because Plaintiffs have not plead (1) an injury to
their business or property or (2) causation. (Docket No. 44 at
15). Additionally, they argue Plaintiffs have failed to plead
predicate criminal acts with sufficient particularity. Id. at 16.
Plaintiffs ignore these arguments. (Docket No. 48 at 17-18).

To assess FPF Defendants' argument about standing and
particularity, the Court has reviewed all allegations of injury to
business or property that Plaintiffs aver were caused by
racketeering conduct. See (Docket No. 33 at 9-46). Most of these
alleged harms are conclusory and therefore fail under Iqbal. See,
e.g., id. at 26 ("This situation negatively affected Plaintiff
Cornejo's finances."); 31 ("This situation affected Plaintiff Olmo
in his soccer business and in his personal finances."); 39
(alleging "more economic expenses for Pumas and Plaintiff Olmo");
49 (alleging Cornejo was "exclude[ed] . . . from [FPF's] affairs
and from his employment" without identifying who employed Cornejo
or when he was purportedly excluded).

Below, the Court analyzes Plaintiffs' few non-conclusory
allegations of harm to business or property. Allegedly, these
injuries were suffered by **PRSL**, **FBNET**, **Larracuente**, and **Olmo**. The

Court finds these allegations, while non-conclusory, still fail to articulate an ascertainable, non-speculative harm or, alternatively, fail to plead proximate causation. In addition to these issues of standing, many of Plaintiffs' purported harms are plead in connection with allegations of fraud that are too vague to satisfy the heightened pleading standard required by Fed. R. Civ. P. 9(b).

### 1. **PRSL and FBNET**

Plaintiffs allege PRSL's and FBNET's businesses were harmed as a result of fraudulent emails and other communications sent by FPF Defendants informing FPF clubs and players that PRSL was no longer affiliated with FIFA. (Docket No. 33 at 18-19). Allegedly, this resulted in PRSL's 2019-2020 season being "sabotaged." Id. at 19. Further, FBNET, which had agreed to transmit PRSL's 2019-2020 season live, was left "without a league to cover." Id. at 41-42.

The Court finds these allegations are insufficient to show the alleged injuries were proximately caused by FPF Defendants' purportedly fraudulent communications. Plaintiffs allege FPF Defendants accompanied their fraudulent communications to clubs and players with threats that any club or player that participated in PRSL's tournament would be punished. Id. at 19. Given Plaintiffs' allegations that FPF is responsible for enforcing FIFA policies and has authority in Puerto Rico to sanction organizations and tournaments, id. at 10, it is plausible that the clubs and

players that received FPF's warnings would have complied even had they known the truth about PRSL's affiliation status. Plaintiffs' allegations make it equally plausible that what caused the teams to abandon PRSL's 2019-2020 season was not FPF Defendants' deceit about PRSL's affiliation but rather the warnings that those who participated in PRSL's league "would not be considered by [FPF] for awards or membership on that National Team." Id. at 19. See Anza, 547 U.S. at 461 (finding no proximate causation where plaintiff's lost sales "could have resulted from factors other than [defendant's] alleged acts of fraud").

Even if Plaintiffs did have standing, their allegations of injury to PRSL and FBNET fail to plead mail or wire fraud, both of which require allegations of "false pretenses." United States v. Martin, 228 F.3d 1, 15 (1st Cir. 2000). It is impossible to decipher from Plaintiffs' allegations **when** PRSL became disaffiliated from FPF. Plaintiffs seem to allege they found out before the 2019-2020 season was set to begin that PRSL "would no longer be authorized, i.e., sanctioned by FIFA." (Docket No. 33 at 19). Plaintiffs also alleged PRSL's affiliation was "unlawfully withheld," and that PRSL "has not been able to obtain [FPF's] affiliate status since." Id. at 20. These allegations suggest the FPF Defendants revoked PRSL's affiliation **before** warning clubs not to participate in PRSL's tournament. If so, the FPF Defendants' communications would not have been false. Such ambiguity is

impermissible in a complaint pleading fraud. *See* B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 169 (S.D.N.Y. 1995) (explaining plaintiffs must allege "who was involved, where and when the communications took place, and explain **how they were fraudulent**") (emphasis added).

In short, because Plaintiffs have failed to allege facts showing PRSL or FBNET have RICO standing and, regardless, fail to satisfy Rule 9(b)'s heightened pleading standard in alleging the underlying predicate acts, the Court finds Plaintiffs have failed to state a RICO claim with regards to the alleged damages incurred by PRSL or FBNET.

### 2. Larracuente

Plaintiffs allege that in the past, "CONCACAF would frequently contact the FPF and request [Larracuente's] services." (Docket No. 33 at 34). Allegedly, Larracuente was "ascending in CONCACAF's ranks" and had an "expectation" of participating as a game commissioner in the 2022 World Cup. Id. According to Plaintiffs, all this came to an end when Rivera became president of FPF:

> [W]hen Defendant Rivera assumed the [FPF] Presidency, he replied to CONCACAF's email communications, also by email, by fraudulently misrepresenting to CONCACAF that Plaintiff Larracuente was not available, and was able to persuade its coconspirator CONCACAF to make the job offers to Defendant Rivera's associates, not to Plaintiff Larracuente. This allowed Defendant Rivera to reward his

associates, and assure their votes in his favor in the upcoming elections. **As a result, Plaintiff Larracuente lost earnings of at least $1,500.00 each year since 2019.**

Id. at 35 (emphasis added).

The Court finds Plaintiffs' allegation that Larracuente "lost earnings of at least $1,500.00 each year" lacks the definiteness required to plead a RICO injury. Without knowing which jobs were lost, or when, it would be impossible to calculate damages were Larracuente to succeed on her claim. See DeMauro, 115 F.3d at 97 (citing First Nationwide Bank, 27 F.3d at 768). Moreover, Plaintiffs fail to allege Larracuente **would have actually accepted** the jobs had she been given the opportunity. See In re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 522 (5th Cir. 1995) (finding contention of "lost 'opportunity' to obtain a NIFA loan by itself [was] too speculative to constitute an injury").

Even if Larracuente had standing based on the lost job opportunities, the allegations of the underlying fraud are too imprecise to state a claim. The allegation that Rivera "replied to CONCACAF's email communications" on an unspecified number of occasions falls short of the "time, place and content" pleadings required by Fed. R. Civ. P. 9(b). See N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 45 (1st Cir. 2001) (finding allegations that defendant used the mail "on at least two occasions in 1998 or later in furtherance of Lot 1 fraud" too vague to state a claim).

Finally, Plaintiffs argue separately that Larracuente was harmed by FPF Defendants blocking her candidacy for FPF President. *See* (Docket No. 33 at 36-37, 49). However, this fails to articulate a harm to **business or property**, as Plaintiffs make no allegations about the value, monetary or otherwise, of a candidacy for FPF president. *Cf.* Westchester Cnty. Indep. Party v. Astorino, 137 F. Supp. 3d 586, 605 (S.D.N.Y. 2015) ("[N]o court has held that a scheme to rig an election itself constitutes money or property fraud."). Moreover, to the extent Plaintiffs allege Larracuente's exclusion from the FPF presidency as a harm, this fails to satisfy the proximate cause requirement, since Larracuente could have become a candidate and still lost the election. *See* Roe, 78 F.4th at 27 ("The presence of an intervening factor, and the resulting attenuation of the injury, makes it less likely that plaintiffs can meet the causation requirement for RICO standing."). Thus, as with Plaintiffs' allegations regarding Larracuente's lost job opportunities, they have failed to plead a RICO violation based on this alleged injury to Larracuente.

### 3. Olmo

Plaintiffs allege that in February of 2022, one of the FPF Directors emailed Olmo to inform him that his soccer club, the Pumas, was no longer affiliated with FPF. (Docket No. 33 at 28). Plaintiffs appear to believe this email was fraudulent because the Pumas had been affiliated with FPF in the past. Id. The purported

fraud allegedly resulted in Olmo having to pay a new registration fee of $350, which he paid with his own funds. Id. Plaintiffs also allege Olmo paid various other associated expenses, such as those required to get the Pumas' coaches licensed with FPF.[5] Id.

The Court finds Plaintiffs' allegations of Olmo's injury fail to plead proximate cause. Plaintiffs plainly allege the Pumas were not paying their required dues to FPF when Olmo received the allegedly fraudulent email. Id. at 28. Thus, it is just as likely that Olmo had to pay the costs of re-registration due to the Pumas' **lack of compliance** as it is that the costs were caused by fraud. Given the presence of this independent factor, Plaintiffs' allegations of harm to Olmo fail to articulate a basis for standing. See Roe, 78 F.4th at 27.

Separately, Plaintiffs allege FPF Defendants fraudulently accused Olmo of violating FPF's statutes and ethics code, leading him to resign from his position as president of the Pumas. Id. at 40. However, Plaintiffs fail to allege this was harm to **business or property** since they do not aver whether Olmo was paid in that position. Regardless, Plaintiffs' allegations make clear he voluntarily resigned in order "to avoid further harm and damages to the club and the children who play in the club." Id.

---

[5] Plaintiffs additionally allege Olmo had to pay the $350 fee again in 2023, id. at 38-39, but they do not allege this second payment was caused by fraud.

In summary, because Plaintiffs' non-conclusory allegations of harm to business or property are insufficient to confer standing and, in many cases, are based on allegations of fraud that fail to meet Rule 9(b)'s heightened pleading standard, the Court **DISMISSES** the totality of Plaintiffs' RICO claims.

### VI.   COMMONWEALTH-LAW CLAIMS

In addition to their federal claims, Plaintiffs bring a variety of commonwealth-law claims. None is adequately plead.

### A. <u>Tortious Interference</u>

Under Puerto Rico law, the elements of a claim for tortious interference with a contract are: "(1) the existence of a contract between two or more parties, (2) interference with that contract by the defendant, (3) 'fault' on the defendant's part, (4) damage to the plaintiff, and (5) a nexus between the plaintiff's damage and the defendant's fault." <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002) (citing <u>Gen. Off. Prods. v. A.M. Capen's Sons</u>, 15 P.R. Offic. Trans. 727, 734-35 (P.R. 1984)). The first element requires showing the "existence of a contract **for a fixed period of time**." <u>R.R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc.</u>, 121 F. App'x 870, 871 (1st Cir. 2005) (citing <u>Dolphin Int'l of P.R. v. Ryder Truck Lines</u>, 27 P.R. Offic. Trans. 869, 1991 WL 735928 (P.R. 1991)) (emphasis added).

Plaintiffs claim Defendants tortiously interfered with contractual relationships between: (1) Olmo and a soccer team

called Pumas de Roosevelt Futbol Club, Inc. ("Pumas"); (2) Larracuente and CONCACAF; (3) FBNET and Liga Atlética Universitaria ("LAI"); (4) FBNET and an unnamed sponsor; and (5) PRSL and FBNET and a variety of other, unidentified organizations. FPF Defendants argue none of these allegations are sufficiently supported by factual allegations to state a claim. (Docket No. 44 at 26-31).

In their *Opposition*, Plaintiffs fail to respond to FPF Defendants' arguments regarding these alleged instances of tortious interference. *See* (Docket No. 48 at 19-20). Instead, Plaintiffs' *Opposition* contains a list of citations to paragraphs in the *Complaint* that Plaintiffs believe show tortious interference. Id. Additionally, Plaintiffs cite to two, out-of-circuit cases, id. at 4, 19. However, those cases describe New York and Rhode Island law, not the law of Puerto Rico. *See* IQ Dental Supply, Inc. v. Henry Schein, Inc., 924 F.3d 57, 69 (2d Cir. 2019); Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I., 883 F.2d 1101, 1113 (1st Cir. 1989). While Plaintiffs argue generally that "participation in an unlawful restraint of trade satisfies the wrongful conduct element of a claim for tortious interference," they cite no Puerto Rico law to support that assertion. (Docket No. 48 at 4).

Having carefully reviewed the *Complaint*, the Court finds Plaintiffs failed to state a claim for tortious interference with a contract under Puerto Rico law.

### 1. Olmo and Pumas

Plaintiffs allege Defendants' conduct caused Olmo to resign from his role at the Pumas. (Docket No. 33 at 40). However, Plaintiffs do not allege facts suggesting Olmo had a fixed-period contract with the Pumas, much less that his resignation interfered with such a contract. *See* id. Therefore, Plaintiffs fail to satisfy at least two of the elements of a tortious-interference claim with regards to Olmo and the Pumas.

### 2. Larracuente and CONCACAF

Plaintiffs' primary allegations on this front seem to be that Larracuente was blocked from running for president of FPF, thwarted from becoming a CONCACAF game commissioner for the 2022 World Cup, and prevented from continuing to work for CONCACAF. *See, e.g.*, id. at 116-17, 120-21. It is true Plaintiffs allege "CONCACAF would frequently contact the FPF and request [Larracuente's] services, . . . which represented substantial earnings for [her]." Id. at 34-35. However, this allegation, along with the others, falls short of showing there was ever a fixed-period contract between Larracuente and CONCACAF, much less one that was interfered with. Without these elements, Plaintiffs cannot state a tortious-interference claim.

### 3. FBNET and LAI

Plaintiffs allege "Defendants **attempted** to inflict additional economic damages to Plaintiff Futbol Boricua." Id. at 42 (emphasis added). However, as FPF Defendants note, this allegation falls short of showing a contract was **actually** interfered with. (Docket No. 44 at 29). Because Plaintiffs themselves state in their *Complaint* that "LAI decided to conduct the match elsewhere and **honor the contract** with Plaintiff," this alleged incident of tortious interference is deficient. (Docket No. 33 at 42) (emphasis added).

### 4. FBNET and unnamed sponsor

Plaintiffs' allegation of a "loss of at least one sponsorship agreement" "due to the actions of an associate of the Defendants," id. at 42, is too conclusory to state a claim for tortious interference with a contract. Among other deficiencies, this allegation fails to state **who** conducted the alleged interference, making it impossible to infer a connection between Plaintiffs' alleged damages and Defendants' purported fault.

### 5. PRSL and FBNET; PRSL and certain unnamed organizations

Plaintiffs bring their tortious-interference claims under Article 1536 of the Puerto Rico Civil Code, which is Puerto Rico's general tort statute. *See* (Docket No. 33 at 56); P.R. Laws Ann. tit. 31 § 10801. Plaintiffs' claim is therefore governed by Article 1204(a), which provides a one-year statute of limitations. P.R

Laws Ann. tit. § 9496; *see also* <u>Dantlzer, Inc. v. Lamas-Besos</u>,
2010 WL 2572618, at *5 (D.P.R. 2010) (applying Puerto Rico's one-
year statute of limitations to a claim for tortious interference
with a contract); <u>V.W.F. Corp. v. Cap. Hous. Partners CLXII</u>, 2007
WL 1437503, at *4 (D.P.R. 2007) (same). Under the Puerto Rico Civil
Code, "a prescriptive period may be interrupted in one of three
ways: by the institution of an action 'before the courts, by
extrajudicial claim of the creditor, and by any act of
acknowledgment of the debt by the debtor.'" <u>Dantlzer, Inc.</u>, 2010
WL 2572618, at *5 (citations omitted).

In this case, Plaintiffs appear to allege Defendants
interfered with a contract for FBNET to live-transmit PRSL'
tournaments but that "plans ended with Defendants' illegal
interference with Plaintiff PRSL in 2019." (Docket No. 33 at 5,
41-42). Plaintiffs also allege interference with other contracts
between PRSL and certain unidentified parties. Plaintiffs allege
that after PRSL's "2019-2020 season was sabotaged and blocked,"
PRSL "has not been able to obtain the Federation's affiliate status
since, affecting its League, clubs, owners, investors, partners,
and sponsors." <u>Id.</u> at 20. These allegations show the alleged
tortious interference occurred in 2019, when FPF allegedly
interrupted LigaPro's 2019-2020 season. *See* <u>id.</u> at 19 (alleging
PRSL learned around September or October that its LigaPro 2019-
2020 season had been blocked by FPF).

Because Plaintiffs waited until April 2023 to bring their tortious-interference claims, (Docket No. 1), their claims fall outside the one-year prescription period. Furthermore, there are no allegations in Plaintiffs' *Complaint* to suggest Plaintiffs interrupted the prescriptive period, such as by bringing an earlier action in court or making an extrajudicial claim. *See* Dantlzer, Inc., 2010 WL 2572618, at *5. Finally, as indicated previously, Plaintiffs do not even dispute that their tortious-interference claim is time-barred, thereby conceding this argument. *See generally* (Docket Nos. 48 and 61); Ramstack v. Dep't of Army, 694 F. Supp. 2d 16, 19-20 (D.D.C. 2010) (noting plaintiff's failure to respond to defendant's statute-of-limitations argument in motion to dismiss allowed the court to deem it conceded); Grundy v. HSBC Bank USA, N.A. as Tr. for Registered Noteholders of Renaissance Home Equity Loan Tr. 2006-3, 2018 WL 4899459, *7 (D. Mass. 2018) (finding plaintiff waived argument in defendant's motion to dismiss by failing to address it).

In short, Plaintiffs' tortious-interference claims fail because Plaintiffs have either brought their claims too late or failed to allege facts from which the elements of tortious interference could be plausibly inferred. In light of the foregoing, Plaintiffs' tortious-interference claims against FPF Defendants are **DISMISSED.**

Finally, the Court addresses Plaintiffs' assertion, stated for the first time in their *Opposition*, that they are bringing a tortious-interference claim regarding Cornejo. (Docket No. 48 at 20). To support this, Plaintiffs point to their allegation that FPF caused Cornejo to be excluded from the FPF board of directors and lose his job as the Director of Liga Elite. *See* (Docket Nos. 33 at 23, 26 and 48 at 20). To the extent these claims are raised in Plaintiffs' *Complaint*, they are also **DISMISSED**, since none of the allegations contained in the *Complaint* plausibly support the existence of a fixed-period contract between Cornejo and FPF or Liga Elite, much less one that was interfered with.

## B. <u>Abuse of Process</u>

Plaintiffs also bring claims for abuse of process on the basis that FPF Defendants and the other defendants allegedly "clos[ed] PRSL's business, "fil[ed] unfounded complaints against Plaintiffs in the commissions that they control," and "exclude[ed] Plaintiffs from soccer business activities." (Docket No. 33 at 56-57). FPF Defendants argue these allegations fail to state an abuse-of-process claim because Plaintiffs fail to allege any abuse of criminal or civil legal proceedings. (Docket No. 44 at 32). Plaintiffs do not respond to FPF Defendants' argument. (Docket No. 48 at 20).

"Under Puerto Rico law, '[t]he two basic elements of abuse of process are a bad motive, and the use of a **legal process** for an

improper, collateral objective.'" <u>Gonzalez Rucci v. U.S. INS</u>, 405 F.3d 45, 49 (1st Cir. 2005) (citation omitted) (emphasis added). None of the allegations put forth by Plaintiffs as evidence of abuse of process involve legal proceedings. Rather, the allegations involved complaints filed within sports commissions associated with FPF. (Docket No. 33 at 56-57). Therefore, the Court **DISMISSES** Plaintiffs' claims against FPF Defendants for abuse of process.

## C. <u>Breach of Fiduciary Duties</u>

Plaintiffs base their claim for breach of fiduciary duties on the duties owed towards "FPF and to its members and affiliates." (Docket No. 33 at 57). However, an action by an individual to enforce the fiduciary duties owed a corporation must take the form of a derivative suit. *See* <u>Schoon v. Smith</u>, 953 A.2d 196, 201 (Del. 2008); <u>In re First Bancorp Derivative Litig.</u>, 465 F. Supp. 2d 112, 118 (D.P.R. 2006) (recognizing persuasive authority of Delaware business law). Such an action requires the plaintiff "aver[] in the complaint that the plaintiff was a stockholder of the corporation." P.R. Laws Ann. tit. 14 § 3786. *See also* Sebastián J. Sánchez Esteve, <u>Fiduciary Duties: Overlooked Factor in Corporate Decision-Making</u>, 13 U.P.R. Bus. L.J. 71, 79 (2022) (observing "when [a] corporation wants to hold the director accountable for violating their fiduciary duties, they must do it through what is known as a derivative action") (citation omitted).

Here, FPF Defendants argue Plaintiffs have failed to bring a proper derivative action, an argument to which Plaintiffs do not respond. (Docket Nos. 44 at 33-34 and 48 at 19-21). The Court agrees. Plaintiffs do not identify their action as a derivative suit, nor do they claim to be suing on behalf of the corporation. They allege generally that PRSL, Cornejo, Larracuente, and Olmo "were all members in good standing of the Federation," but they fail to explain what type of members they were or allege dates that would show they were shareholders at a relevant time. (Docket No. 33 at 23). Accordingly, the Court finds Plaintiffs lack standing to bring a claim for breach of fiduciary duties owed FPF and **DISMISSES** these breach-of-fiduciary claims against FPF Defendants.

## VII. LEAVE TO AMEND

As a final matter, FPF Defendants ask the Court to dismiss Plaintiffs' claims with prejudice since Plaintiffs have now amended their complaint three separate times. (Docket No. 44 at 4). In their *Opposition*, Plaintiffs reference Fed. R. Civ. P. 15(a) but do not explicitly request leave to amend. (Docket No. 48 at 21). To the extent Plaintiffs are in fact requesting leave to amend their *Complaint*, the Court **DENIES** that request.

While "[c]onsent to file amended pleadings shall be freely given when justice so requires," it should be denied when an "amendment would be futile or reward undue delay." Adorno v.

Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006)
(internal quotation marks and citations omitted). Normally, courts
afford plaintiffs at least one opportunity to amend their complaint
before dismissing with prejudice. *See* City of Miami Fire Fighters'
& Police Officers' Ret. Tr. v. CVS Health Corp., 46 F.4th 22, 36
(1st Cir. 2022).

Here, Plaintiffs have amended their complaint three times.
The Court finds Plaintiffs' failure after four attempts to allege
the basic information necessary to plead the elements of their
RICO and commonwealth-law claims shows it would be futile to allow
them a fifth attempt. *See* Simon v. Value Behav. Health, Inc., 208
F.3d 1073, 1084 (9th Cir. 2000) (finding that "[a]lthough it [was]
theoretically possible for [plaintiff] to allege more specific
facts," his failure to do so after three amendments suggested
futility of further amendments), *amended*, 234 F.3d 428, *and
overruled on other grounds*, Odom v. Microsoft Corp., 486 F.3d 541
(9th Cir. 2007); Halpert Enterprises, Inc. v. Harrison, 2007 WL
486561, at *7 (S.D.N.Y. 2007), *aff'd*, 2008 WL 4585466 (2d Cir.
2008) (denying leave to amend since it was "highly unlikely new
facts [would] come to light" that would allow plaintiff to state
a claim); Babakaeva v. PTR Invs., Inc., 2022 WL 17103767, *1 (4th
Cir. 2022) (affirming dismissal with prejudice where plaintiffs'
"requests for leave to amend were perfunctory, asserted only in
their responses to the Rule 12(b)(6) motions, and without

supporting pleadings"). Accordingly, the Court will dismiss with prejudice Plaintiffs' RICO Act claims, as well as their commonwealth-law claims for tortious-interference, abuse of process, and breach of fiduciary duties.

### VIII.    CONCLUSION

For the foregoing reasons, FPF Defendants' *Motion to Dismiss* at Docket No. 44 is: **DENIED** as to Plaintiffs' Sherman Act claim; **GRANTED** as to Plaintiffs' RICO Act claims; and **GRANTED** as to Plaintiffs' commonwealth-law claims. Plaintiffs' RICO Act claims and commonwealth-law claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2024.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge