## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, JUAN M. CORNEJO, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACION PUERTORRIQUENA DE FUTBOL, INC., IVAN RIVERA-GUTIERREZ, JOSE "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CANETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL ACTION NO. 23-1203-RAM |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF A PROTECTIVE AND CONFIDENTIALITY ORDER AND RULE 502(d) ORDER**

**COME NOW** Federación Puertorriqueña de Futbol, Inc., Iván Rivera-Gutierrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete (together with the foregoing, "FPF Defendants"), Fédération Internationale de Football Association ("FIFA"), and Confederation of North, Central America and Caribbean Association Football ("CONCACAF"), (together, "Defendants"), through their undersigned counsel and hereby respectfully submit this Reply in support of their Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order and Memorandum in Support Thereof (Dkt. No. 169, the "Motion" or "Mot.").

## INTRODUCTION

Plaintiffs' Opposition brief (Dkt. No. 176, the "Opposition" or "Opp.") contains significant citation issues that are deeply concerning, and suggest the possible use of artificial intelligence or similar tools without appropriate human oversight. The Opposition cites to a total of seven First Circuit cases (outside of those cases raised by Defendants in their previous submissions). The Opposition attributes quotations to four of those cases that are simply absent. *See infra* at 8–9. One of the four cases that were incorrectly cited, *Gill* v. *Gulfstream Park Racing Ass'n*, is also incorrectly titled by the Opposition as "*Gill* v. *Gulfstream Aerospace Corporation*." Opp. at 3. Most concerning of all, the Opposition cites to a First Circuit case from 1987, "*United States* v. *Gannett*," that does not exist. Opp. at 4. The case is not identifiable by its reporter number and the case name cannot be located on Westlaw, Lexis, PACER, or Google. In fact, the case appears to exist only in the world of the artificial intelligence tool, ChatGPT, which returns the citation "*United States v. Gannett Co.*, 835 F.2d 392, 395 (1st Cir. 1987)":



Plaintiffs' briefs in opposition to Defendants' Motions to Disqualify (Dkt. No. 174) and for a Protective Order Limiting Discovery (Dkt. No. 175) feature the same issues, as detailed in Defendants' reply briefs in support of those motions. The Court should wholly disregard Plaintiffs' Opposition, and issue any further relief or action that it deems appropriate. *E.g., Wadsworth* v. *Walmart, Inc.*, 2025 WL 608073, at *2 (D. Wy. Feb. 24, 2025) (sanctioning counsel after ordering them *sua sponte* to show cause as to why they should not be sanctioned or disciplined for "using a fake [AI generated] opinion to support an argument"); *Bunce* v. *Visual Tech. Innovations, Inc*., 2025 WL 662398, at *2 (E.D. Pa. Feb. 27, 2025) (sanctioning counsel after

ordering them *sua sponte* to show cause as to why they should not be sanctioned for using ChatGPT to cite artificial or inapposite cases); *Mata* v. *Avianca, Inc.*, 678 F. Supp. 3d 443, 449 (S.D.N.Y. 2023) (same).

Regardless, Defendants' Motion should be granted. The Motion established that Defendants' proposed protective order should be entered to provide the ability for the Parties to (1) designate certain materials as Highly Confidential (as is standard in litigation of this nature), (2) confirm that Highly Confidential information will not be used for any improper purpose (as is necessary in antitrust cases involving direct competitors), and (3) preserve the status quo with respect to discovery responses and objections which are not yet before the Court. Nothing in Plaintiffs' Opposition (even to the extent it cites good law) overcomes Defendants' reasoned bases for their proposals, which merely provide the ability for all Parties to protect their competitively sensitive material, and preserve the status quo with respect to discovery while the Parties continue to meet and confer regarding the application of Hague Convention procedures as to FIFA. For these reasons, Defendants respectfully submit that their proposed Protective Order should be entered in full.

## ARGUMENT

I. **Plaintiffs Ignored The Court's Order to Submit a Competing Proposed Protective Order, and Defendants' Proposal Should Therefore Be Adopted in Full**

The operative schedule in this matter set a deadline of February 21, 2025 for Plaintiffs and Defendants (together, the "Parties") to confer and file a single joint proposed protective order, or separate contested protective orders. Dkt. No. 147.[1] On February 21, the Parties jointly requested an extension of time for further negotiations. *See* Dkt. No. 161. On February 25, the Court granted

---

[1] The Motion provides a full procedural history as to this dispute, *see* Mot. at 2, and Defendants only reiterate it here as relevant.

3

that extension and ordered: "Stipulated Protective Orders **or motions for protective orders** due by March 6, 2025." Dkt. No. 162. Defendants filed the Motion on March 6, 2025 attaching as Exhibit 1 Defendants' Proposed Protective Order. Plaintiffs did not file any motion or proposed protective order on the docket by the Court's deadline of March 6. On March 9, Plaintiffs filed an opposition brief outlining their disagreements with Defendants' proposal but once again failed to attach an alternative proposal and to this day have not moved for entry of their own proposed order. Dkt. No. 176.[2]

Plaintiffs' failure to comply with the Court's order and submit an alternative Protective Order warrants adoption of Defendants' proposal. The portions of Defendants' Protective Order that Plaintiffs object to in their opposition are not easily struck: Plaintiffs object not simply to a particular provision, but to the entirety of the confidentiality framework proposed, which appears no less than twenty-three times in nine different sections or subsections of Defendants' proposal, and in two additional provisions. Plaintiffs should be deemed to have waived their right to propose a competing Protective Order, and Defendants' proposal (which contains standard, ordinary-

---

[2] On March 13, 2025, Plaintiffs also filed a document styled "Supplement to Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order." *See* Dkt. No. 177. That "Supplement" purports to "address[] newly discovered evidence of witness intimidation" by an unidentified person purportedly affiliated with FPF, and then erroneously argues that "Defendants" engaged in "witness intimidation." *Id.* at 3. Plaintiffs nowhere aver any fact suggesting that FIFA and CONCACAF were involved in this conduct whatsoever, and Plaintiffs' continued pattern of erroneously lodging accusations at the collective "Defendants" without basis is improper to say the least. The FPF Defendants will file a fulsome response to this new motion in due course. But in the interim, Defendants note that Plaintiffs' Supplement relies entirely on double hearsay without so much as a declaration or any other evidentiary support. It also seeks relief exclusively related to Defendants' Motion to Limit Discovery (Dkt. No 168), and is therefore irrelevant to the instant Motion. Moreover, Plaintiffs' Supplement, like Plaintiffs' three original briefs, contains two phantom quotations that do not appear in their attributed cases, suggesting the use of artificial intelligence again on this improper "supplement." Dkt. No. 177 at 3, 4 (purporting to quote from *Rozier* v. *Ford Motor Co.* and *Anderson* v. *Cryovac*).

4

course provisions and is consistent with First Circuit practice as discussed below) should be adopted in full. *See Rosario-Diaz* v. *Gonzalez*, 140 F.3d 312, 314 (1st Cir. 1998) (district court did not err in refusing, pursuant to Rule 16(f), to consider motion not timely filed under the court's scheduling order).

## II. Defendants' Proposed Two-Tier System of Confidentiality is Standard Practice in Antitrust Cases and Should be Adopted

Defendants' Motion showed that First Circuit courts presiding over cases that, as here, involve competitive considerations routinely enter pre-discovery protective orders that feature two-tiered frameworks for confidentiality designations to allow parties to protect, if needed, sensitive materials from disclosure to competitors who might use documents produced for competitive, rather than litigation, purposes. Mot. at 5. The Motion further demonstrated that, in this antitrust case, Plaintiffs are in fact seeking the type of materials that present those concerns. Mot. at 6 & nn.3–4. Defendants' proposal ensures that the Parties can expeditiously disclose documents without concern that doing so will result in their disclosure to competitors. Moreover, Defendants' proposal does not require the Court to conclude now that any particular document (or category of documents) is in fact "Highly Confidential – Attorneys' Eyes Only," but only establishes a clear process through which either Party *may* designate produced material as "Highly Confidential – Attorneys' Eyes Only" if warranted. *See* Mot. at 5–7. Any challenge to the use of such designation on a particular document can be brought at a later date if there is disagreement amongst the Parties as to whether the designation was warranted.

The Opposition argues without basis that Defendants' proposal is "restrictive." Opp. at 2. Those concerns are misplaced. Again, Defendants have not asked the Court to conclude that any specific document warrants the "Highly Confidential – Attorneys' Eyes Only" designation at this stage, but instead to create a framework for discovery that allows the Parties to later take necessary

5

steps to mark Highly Confidential material and prevent the disclosure of any such materials to competitors. Once again, Defendants' proposal does not foreclose any Party from later challenging such a designation. Defendants' proposal would therefore not restrict discovery by any means—to the contrary, it would expedite it, by permitting the Parties to produce documents without the potential for *seriatim* motion practice over the treatment of competitively sensitive materials. Plaintiffs' own (legitimately) cited cases approve this practice for this reason. *See Pub. Citizen* v. *Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) (approving even "blanket protective orders" entered at the outset of discovery because they "may be useful in expediting the flow of pretrial discovery materials [and are] subject to later modification").

The Opposition argues that Defendants have not identified specific documents that require the proposed protection. *See* Opp. at 3. Plaintiffs' argument is meritless. That discovery is only just beginning is the very reason *to* enact the framework Defendants propose, not to forego it. Protective orders such as this are routinely entered at the outset of discovery *before* documents are produced, and routinely provide for "Highly Confidential – Attorneys' Eyes Only" designations in the event they are needed as discovery progresses. *See* Mot. at 5. And while specific documents are not yet at issue (because the Parties have not negotiated the scope of Plaintiffs' requests), Defendants' Motion did identify with particularity that Plaintiffs' document requests expressly seek the type of competitively sensitive documents that are likely to require a Highly Confidential designation. Mot. at 6 nn.3–4. Plaintiffs tellingly do not even attempt to address those Requests.

Nor do Plaintiffs identify any case that rejected the entry of a Protective Order containing the option of a "Highly Confidential – Attorneys' Eyes Only" designation. Instead, Plaintiffs' Opposition attributes numerous quotations to cases in which they do not appear, including *Public Citizens* v. *Liggett*, *Anderson* v. *Cryovac*, and *Gill* v. *Gulfstream Park Racing* (which Plaintiffs

incorrectly cite as "*Gulfstream Aerospace Corporation*"). *See* Opp. at 3. Even aside from that issue, the Opposition's cases are plainly inapposite: those cases either considered later challenges to the *actual* designation of a particular set of materials as confidential pursuant to an existing protective order like the one Defendants propose—or did not even consider a pre-discovery protective order at all. *See Poliquin* v. *Garden Way, Inc.*, 989 F.2d 527, 532–33 (1st Cir. 1993) (requiring post-trial disclosure of documents entered into the record at trial, but protecting others); *Pub. Citizen* v. *Liggette Grp., Inc.*, 858 F.2d at 789–92 (concluding post-judgment that certain documents did not "contain trade secrets or other specially confidential material" but that the original entry of a "blanket" protective order before discovery was permissible); *Anderson* v. *Cryovac, Inc.*, 805 F.2d 1, 7–8, 11–14 (1st Cir. 1986) (requiring disclosure only of otherwise-public documents post-disposition); *Gill* v. *Gulfstream Park Racing Ass'n*, 399 F.3d 391, 401–03 (1st Cir. 2005) (considering application of the "informant's privilege" as to inadvertently disclosed information, and remanding to the District Court with instructions to balance the parties' legitimate interests in disclosure and privacy as to the materials sought). The Opposition does not cite any case that called into question a *pre-discovery* protective order of the type Defendants propose, which are commonplace and necessary in competitor cases.[3]

### III. Defendants' Proposal That Plaintiffs' Counsel Commit to a Supplemental Undertaking Should Be Adopted.

In the Motion, Defendants demonstrated that Messrs. Reyes and Olmo are serving as counsel of record in this case while also possessing direct personal interests in and decision-

---

[3] *See, e.g.*, *United States* v. *JetBlue Airways Corp.*, 23-cv-10511 (D. Mass.) Dkt. No. 66 (entering protective order permitting two tiers of designations for "Confidential" and "Highly Confidential" materials); *Malden Transp., Inc.* v. *Uber Techs.*, 1:16-cv-12583 (D. Mass.) Dkt. No. 139 (similar); *Vazquez-Ramos* v. *Triple-S Salud, Inc.*, 19-cv-1527 (D.P.R.) Dkt. No. 157 (similar).

7

making power over Plaintiff PRSL. *See* Mot. at 7. The Motion further demonstrated that courts restrict certain attorneys from viewing competitive materials when they hold that type of competitive decision-making authority within an enterprise. *Id.* at 8–9. Defendants' proposal here is that any competitively sensitive materials that may be designated as "Highly Confidential – Attorneys' Eyes Only" should not be viewed by Mr. Reyes and Mr. Olmo, who are competitive decisionmakers for Plaintiff PRSL, absent the designating party "provid[ing] written consent or the Court grant[ing] permission upon a showing of good cause," with counsel confirming they will not misuse highly confidential materials to gain a competitive advantage. That protection is necessary and unobtrusive given Plaintiffs' Counsels' dual roles at PRSL.

Plaintiffs' Opposition does not dispute Defendants' case law or deny that it applies to Plaintiffs' Counsel as competitive decisionmakers for PRSL. Instead, the Opposition purports to take issue with Defendants' separate Motion to Disqualify, and argues that Messrs. Olmo and Reyes do not have a *conflict* under the ABA Model Rules of Professional Conduct that warrants their disqualification as counsel for Plaintiffs. *See* Opp. at 4–5. Defendants of course disagree as set forth in the Motion to Disqualify, but more importantly for the present Motion, that argument speaks past the point raised in the Motion for entry of Defendants' Protective Order. Counsel does not need to have a conflict of interest or be subject to disqualification to warrant restricting their access to competitively sensitive materials—all that is required is that, as here, the attorney serves as a competitive decisionmaker for a competitor. *See* Mot. at 8–9 (collecting cases).

Moreover, here, again, Plaintiffs' cases are inapposite—or appear to be simply nonexistent. *See* Opp. at 4–5. *Poliquin*, 989 F.2d 527, concerned public disclosure of materials and whether certain materials should be disclosed <u>at all</u>, not whether a particular party's attorney should be entitled to access particular materials. And Plaintiffs' quoted language (again) does not appear in

8

that case. *In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001) involves <u>neither</u> disqualification of counsel, <u>nor</u> confidentiality, but waiver of the attorney-client privilege. Finally, as noted above, Defendants are unable to locate any First Circuit case <u>ever</u> that is entitled "*United States* v. *Gannett*," nor any case in <u>any</u> circuit entitled "*United States* v. *Gannett*" that was published in 1987, or in any other year, that considered disqualification of counsel or the restriction of counsel's access to confidential materials.[4]

Here, even if Messrs. Olmo and Reyes are not disqualified as counsel of record, they should still not be permitted to freely access their competitor's competitively sensitive materials without the reasonable restriction Defendants request. The minor limitation Defendants propose, relative to the high potential for misuse of competitively sensitive materials, warrants Defendants' proposed provision, and Plaintiffs have not provided any law or fact to the contrary.

**IV.   The Proposed Protective Order Only Seeks to Preserve the Parties' Right to Invoke the Hague Evidence Convention.**

Plaintiffs improperly seek to litigate in their Opposition the substantive question whether the Hague Convention in fact applies to discovery against FIFA in this case. Opp. at 5–6. But that question is not before the Court. The Parties have not met and conferred on FIFA's responses to Plaintiffs' requests for production; Plaintiffs have not moved to compel, and FIFA has not sought a protective order limiting their obligation to comply with discovery outside the strictures of the Hague Evidence Convention. As a result, and as explained in the Motion, Defendants' proposed Protective Order merely preserves the status quo while the Parties continue to discuss this issue, and in the interim reserves the Parties' rights to invoke the Hague Evidence Convention and Article 271 of the Swiss Penal Code. The preservation of such rights is appropriate given that the parties

---

[4]   As noted above, *see supra* at 1–2, that case appears to exist only in the AI tool, ChatGPT.

have just begun negotiations about the discovery process and scope of discovery.

To the extent the Parties are ultimately unable to reach agreement on the application of the Hague Convention, there will then be an opportunity to fully brief and argue—in the context of actual discovery requests—the various factors affecting international comity. *See Société Nationale Industrielle Aérospatiale* v. *U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 543–544 (1987) (trial courts should conduct a "particularized analysis" of international comity factors in deciding whether to apply Hague Procedures). And in the interim, Defendants' Protective Order that merely reserves FIFA's right to invoke the Hague Convention processes should be put in place to preserve the status quo.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court adopt Defendants' proposed protective order in full, and also implement Defendants' proposed Rule 502(d) order in full.

Dated: San Juan, Puerto Rico
March 18, 2025

          **FERRAIUOLI, LLC**

          By:*/s/ Roberto A. Camara-Fuertes*
          Roberto A. Camara-Fuertes
          USDC-PR 219002
          Suleicka Tulier-Vazquez
          USDC-PR 305111
          P.O. Box 195168
          San Juan, PR 00919-5168
          Tel: (787) 766-7000
          Fax: (787) 766-7001
          Email: rcamara@ferraiuoli.com
                  stulier@ferraiuoli.com

          **PAUL, WEISS, RIFKIND,**
          **WHARTON & GARRISON LLP**
          H. Christopher Boehning (*pro hac vice*)
          1285 Avenue of the Americas
          New York, New York 10019-6064
          Tel: (212) 373-3000
          Fax: (212) 757-3990
          Email: cboehning@paulweiss.com

          *Attorneys for Defendant FIFA*

          **ADSUAR MUÑIZ GOYCO**
          **SEDA & PÉREZ-OCHOA, P.S.C.**
          P.O. Box 70294
          San Juan, Puerto Rico 00936-8294
          Tel: 787.756.9000 Fax: 787.756.9010

          */s/Edwin Seda-Fernández*
          Edwin J. Seda-Fernández
          USDC-PR No. 205212
          Email: seda@amgprlaw.com

          */s/Eric Pérez-Ochoa*
          Eric Pérez-Ochoa
          USDC-PR No. 206314
          Email: epo@amgprlaw.com

*/s/Alexandra C. Casellas Cabrera*
Alexandra Casellas Cabrera
USDC-PR No. 301010
Email: acasellas@amgprlaw.com

*/s/Andrés Daniel Santiago López*
Andrés D. Santiago-López
USDC-PR No. 309508
Email: asl@amgprlaw.com

*Counsel for the FPF Defendants*


**O'NEILL & BORGES LLC**
By: */s/ Salvador J. Antonetti-Stutts*
　　*/s/ Aníbal A. Román-Medina*

Salvador J. Antonetti-Stutts
USDC-PR No. 215002
Aníbal A. Román -Medina
USDC-PR No. 308410
250 Ave. Muñoz Rivera, Ste. 800
San Juan, P.R. 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: salvador.antonetti@oneillborges.com
　　　 anibal.roman@oneillborges.com

**SIDLEY AUSTIN LLP**
*John J. Kuster (pro hac vice)*
*Jon Muenz (pro hac vice)*
*Amanda M. Blau (pro hac vice)*
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: jkuster@sidley.com
　　　 ablau@sidley.com
　　　 jmuenz@sidley.com

*Attorneys for Defendant CONCACAF*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/Dkt. system which will send notification of such filing to all counsel of record.

Dated: March 18, 2025.
      San Juan, Puerto Rico

*/s/Roberto A. Camara-Fuertes*
Roberto A. Camara-Fuertes
USDC-PR No. 219002
Ferraiuoli LLC
San Juan, PR 00919-5168
rcamara@ferraiuoli.com
Phone: (787) 766-7000
Fax: (787) 766-7001