# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACIÓN PUERTORRIQUEÑA DE FÚTBOL, INC., IVÁN RIVERA-GUTIÉRREZ, JOSÉ "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CAÑETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL ACTION NO. 23-1203 (RAM) <br><br> RE: <br><br> COMPLAINT FOR DAMAGES RESULTING FROM VIOLATIONS OF THE SHERMAN ANTITRUST ACT, AND DEMAND FOR JURY TRIAL |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## JOINT MOTION TO DISQUALIFY PLAINTITFFS' COUNSEL

**TO THE HONORABLE COURT:**

**COME NOW** codefendants Federación Puertorriqueña de Futbol, Inc., Iván Rivera-Gutierrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete ("FPF Defendants"), the Confederation of North, Central America and Caribbean Association Football ("CONCACAF"), and Fédération Internationale de Football Association ("FIFA," and together, where appropriate, "Defendants"), by and through their undersigned counsel, and respectfully move the Court to disqualify Ibrahim Reyes-Gándara ("Mr. Reyes") and José R. Olmo-Rodríguez ("Mr. Olmo," and

with Mr. Reyes, "Plaintiffs' Counsel") from continuing to act as counsel of record and advocates for plaintiffs in the instant case, and to commence disciplinary action against Plaintiffs' counsel for their ethical misconduct.[1]

## I. INTRODUCTION

On March 6, 2025, Defendants filed a *Joint Motion to Disqualify Plaintiffs' Counsel and Memorandum of Law in Support Thereof* (hereinafter, the "*Motion to Disqualify*") [2], **Dkt. No. 164**. Three days later, on March 9, 2025, Plaintiffs filed a motion titled *Plaintiffs' Response in Opposition Defendants' Joint Motion to Disqualify Plaintiffs' Counsel* (hereinafter, the "*Response*"), **Dkt. No. 174**.

As a preliminary matter: To Defendants' surprise, Plaintiffs' *Response* is plagued by references to non-existent caselaw and fictitious direct quotes mustered by Plaintiffs' Counsel in a misguided attempt to shore-up their position against Defendants' well-reasoned *Motion to Disqualify*.[3] So far as Defendants can discern, this appears to be the result of the use of generative artificial intelligence (Gen AI) tools without appropriate human oversight. Its recurrence is evident throughout Plaintiffs' two other briefs in response to Defendants' motions filed on March 6 as well. Plaintiffs' submission of phantom quotations and fictitious cases across three simultaneously-filed briefs constitutes a pattern that presents serious ethical concerns, which

---

[1] Defendants reserve the right to raise any and all issues arising under F. R. Civ. P. Rule 11 through a separate motion as prescribed by Rule 11(c)(2).

[2] Simultaneously, Defendants filed an *Emergency Request for Stay of Discovery and Request for Extension*, Dkt. No.167; *Defendants' Joint Motion for Protective Order Limiting the Scope of Discovery*, Dkt. No. 168, and *Defendants' for Entry of a Protective Order and Memorandum in Support Thereof*, **Dkt. No. 169**. Defendants' *Emergency Request for Stay of Discovery* was partially granted by the Court on March 7, 2025.

[3] On March 9, 2025, Plaintiffs also filed response motions in opposition to Defendants' requests for protective order limiting the scope of discovery and for a protective order regarding discovery of protected materials. *See* **Dkt. Nos. 175-176**. Defendants have identified the same pattern of references to non-existent cases and incorrect direct quotes in Plaintiffs' response motions in opposition to the protective order motions filed by Defendants at **Dkt. Nos. 168-169**. Accordingly, Defendants have addressed the particular issues affecting each motion separately through the corresponding replies filed simultaneously with the instant motion.

compounds the concerns already raised in the *Motion to Disqualify* and should be addressed by the Court.

Even so, Plaintiffs' substantive reasoning in opposition to disqualification is not well grounded in the law. In sum, Plaintiffs argue that Defendants' motion to disqualify Plaintiffs' Counsel under Model Rules 1.7 and 3.7 of the ABA Model Rules of Professional Conduct (hereinafter, "ABA Model Rules") is premature and that their vested personal interest in the outcome of the litigation does not preclude them from continuing in the legal representation of all Plaintiffs.[4] Plaintiffs are wrong. *First*, as to Mr. Olmo, 28 U.S.C. § 1654 does not supersede Model Rule 1.7: It expressly *permits* courts to adopt (as the District of Puerto Rico has done) rules concerning an attorney's self-representation, and the weight of the case law establishes that attorneys representing themselves *and* co-plaintiffs in situations like the one at bar create irresolvable conflicts. *Second*, as to Mr. Reyes, Plaintiffs' conclusory argument Mr. Reyes has no conflict with the other Plaintiffs, and that he does not serve as COO, are irrelevant (and as to the latter point, contrary to Plaintiffs' own prior representations). Indeed, Plaintiffs have not even done the bare minimum in their *Response* of showing that the other Plaintiffs have provided informed consent to his representation. *Third*, Model Rule 3.7 forecloses both Messrs. Olmo and Reyes from serving as counsel; while courts have permitted attorneys to proceed as counsel prior to trial, they have only done so when those attorneys expressly represented that they would <u>not</u> serve as trial counsel—a representation that, even in their *Response*, Plaintiffs' Counsel refuse to provide.

In light of these identified and unrebutted conflicts, and in light of the alarming citation issues in Plaintiffs' recent briefing, Plaintiffs' Counsel should be disqualified.

---

[4] Mindful of the restrictions imposed by Local Rule 7(c) of the Local Civil Rules (hereinafter, the "Local Rules"), Defendant's hereby *Reply* to those aspects of the *Response* that are new or differ from the moving brief.

## II. DISCUSSION

**A.**   *Plaintiffs' Counsel ethical misconduct escalates: the Response is plagued with references to non-existent caselaw and inaccurate or non-existent direct citations.*

Defendants, of course, have carefully analyzed the caselaw and the purported direct citations provided by Plaintiffs' Counsel in support of their arguments against disqualification. In an appalling turn of events, the *Response* is plagued by references to non-existent caselaw and incorrect keycite references to direct quotes that do not exist. These discrepancies are pervasive, to the point where virtually *all* caselaw citations included in the *Response* are either inexistent or deficient in some way. That is true for all three of Plaintiffs' Responses.

Most glaring in the present *Response* is Plaintiffs' Counsel's reliance on the seemingly inexistent case of "*Estrada v. Cabrera*, 632 F.2d 1007, 1012 (1st Cir. 1980)" cited as being a First Circuit case included in the Federal Reporter. *See* **Dkt. No. 174**, p. 2. *Estrada* is referenced extensively in the *Response* with direct quotes and corresponding page keycites. *See* **Dkt. No. 174**, p. 2-3, 5, 7. However, the case at 632 F.2d 1007 is not "Estrada v. Cabrera" but rather a different case, U.S. v. Basso, 632 F.2d 1007 (1st Cir. 1980), that deals with illegal arrests and federal criminal procedure. *U.S. v. Basso* is completely unrelated to the issue of attorney disqualification. Not surprisingly, none of the direct quotes cited to 632 F.2d 1007 exist.[5]

Beyond the nonexistent case, the *Response* motion contains numerous purportedly direct quotes that do not appear in the cited cases. Indeed, most of Plaintiffs' direct quotations as marked by the inverted commas (quotation marks) are inaccurate or the text is simply not found in the

---

[5] There is, however, a different case not cited by Plaintiffs' Counsel called "Estrada v. Cabrera", a U.S. District Court case that can be found in the Federal Supplement at 632 F.Supp. 1174. Nevertheless, even assuming *arguendo* that this is the case that Plaintiff's Counsel intended to cite, NONE of the direct quotes included in the *Response* motion as referencing "Estrada" are to be found in that case either. *See* **Dkt. No. 174**, p. 2-3, 5, 7.

cases as cited. For the sake of clarity, the following is a list of Plaintiff's references and the incongruencies found:

- *Estrada v. Cabrera*, 632 F.2d 1007, 1012 (1st Cir. 1980) (case not found in the Federal Reporter and direct quotes do not exist); *see* Dkt. No. 174, p. 2-3, 5, 7.

- *Herrera-Venegas v. Sánchez-Rivera,* 681 F.2d 41, 42 (1st Cir. 1982) (case is unrelated to the controversy and the direct quote does not exist); *see* Dkt. No. 174, p. 3.

- *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987) (direct quotes do not exist as cited); *see* Dkt. No. 174, p. 2-3, 5-7.

- *In re Grand Jury Proceedings,* 859 F.2d 1021, 1026 (1st Cir. 1988) (direct quotes do not exist as cited); *see* Dkt. No. 174, p. 2, 4-6.

- *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.,* 903 F. Supp. 253, 256 (D.P.R. 1995) (direct quotes does not exist as cited); *see* Dkt. No. 174, p. 2.

- *Kevlik v. Goldstein,* 724 F.2d 844, 850 (1st Cir. 1984) (direct quotes do not exist as cited); *see* Dkt. No. 174, p. 2, 4-5, 7.

- *Culebra Enters. Corp. v. Rivera-Ríos,* 846 F.2d 94, 97 (1st Cir. 1988) (direct quotes do not exist as cited); *see* Dkt. No. 174, p. 2, 4-7.

The extensive reference to a non-existent case ("*Estrada*") and pervasive use of supposed direct quotes that are not in the text of the cases as cited shows, at best, a blatant lack of regard for accuracy in legal citation and, at worst, an intentional ploy to misguide the Court in its review of the motions pending for its consideration.[6] More to the point, this pattern exhibited by Plaintiffs in their *Response* motions is a tell-tale sign of the inappropriate use of Gen AI to craft their motions. It is highly likely the nonexistent cases cited, and the multitude of incorrect direct quotes are the

---

[6] *See* Footnote No. 3.

product of Gen AI "hallucinations" when queried for prompts to counter Defendants' arguments.[7] While this is a fairly recent phenomenon it is sadly not at all foreign to the federal judiciary. Other U.S. District Courts have encountered and been forced to address this very issue of fictitious references—which they have deemed violative of professional ethics. *See* Mata v. Avianca, Inc., 678 F.Supp.3d 443 (S.D.N.Y. 2023); Wadsworth v. Walmart, Inc., 2025 WL 608073, *at p. 6, __ F.R.D. __ (D.Wy. February 24, 2025) (fictitious references constituted ethical misconduct warranting, *inter alia*, revocation of *pro hac vice* admission).

This egregious conduct by Plaintiffs' Counsel is compounded by the fact that this was done in a *Response* motion to a *Motion to Disqualify* that itself raises serious conflict of interest and ethical considerations arising from the ABA Model Rules. Plaintiff's Counsel have resorted to the unfortunate tactic of responding to questions of professional misconduct with briefing reflecting **even more** professional and ethical misconduct. Defendants note that Rule 83E(b)-(d) of the Local Rules permit the presiding Judge to commence disciplinary proceedings for violations of the ABA Model Rules, the Local Rules or other ethical considerations. Moreover, Local Rule 83E(c) establishes the range of disciplinary actions that the Court may impose.[8]

In light of the new ethical issues highlighted in the instant motion and in the other *Reply* briefs contemporaneously filed herewith, disciplinary action against Plaintiffs' Counsel may be

---

[7] *See* Lent & Paek, *Common Issues That Arise in AI Sanction Jurisprudence and How the Federal Judiciary Has Responded to Prevent Them*, American Bar Association (ABA) (September 17, 2024) https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-september/common-issues-arise-ai-sanction-jurisprudence/.

[8] "An order imposing discipline under this rule may consist of any of the following:
    (1) disbarment;
    (2) suspension;
    (3) public or private reprimand;
    (4) monetary penalties, including an order to pay the costs of proceedings; or
    (5) **if the attorney was admitted *pro hac vice* or has been otherwise permitted to appear, preclusion from again appearing before this court**."

*See* Local Rule 83E(c) (Emphasis ours).

warranted. Therefore Defendants respectfully move this Court's discretion to commence disciplinary action against Plaintiffs' Counsel pursuant to Local Rule 83E.

### B. *Plaintiffs' Counsel reliance on 28 U.S.C. § 1654 to support his position is misguided as the statute and caselaw cited does not support his position nor prevent disqualification.*

The pattern described above becomes even more evident as Plaintiffs' Counsel *Response* motion winds on. In pages 3 to 4 of the *Response*, Plaintiffs admit that Mr. Olmo is exercising a dual role as plaintiff and attorney for all Plaintiffs, but argue that it is based on his right to self-representation is enshrined in 28 U.S.C. § 1654, and that this statute, along with First Circuit case law interpreting it, protects him from disqualification. Plaintiffs' contentions are severely mistaken, and their arguments are, likewise, plagued by inaccurate or non-existent citations.

The statute on which Plaintiff's Counsel hinge their argument against Mr. Olmo's disqualification, merely establishes how parties may appear before the Court. The statute, in full, provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, **by the rules of such courts**, respectively, are permitted to manage and conduct causes therein.

28 U.S.C. § 1654 (Emphasis ours).

Contrary to their assertion, 28 U.S.C. § 1654 does not guarantee a party's absolute right to conduct his claims before the court personally, but rather recognizes that it is subject to compliance with the rules established by the Court to administer justice. *See* Whitehouse v. U.S. Dist. Court for Dist. of Rhode Island, 53 F.3d 1349, 1356 (1st Cir. 1995) (citing 28 U.S.C. § 1654 as statutory basis for the Court's power to regulate the conduct of attorney's appearing before it). Nothing in 28 U.S.C. § 1654 supersedes the provisions of the Model Rules as adopted by this Court, which include Model Rules 1.7 and 3.7.

Plaintiff's Counsel argue that the First Circuit has recognized Mr. Olmo's appearance as a "fundamental right" and that "litigants 'may conduct their own case'" *See* Dkt. No. 174, p. 3 (citing Herrera-Venegas v. Sánchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982)). Yet, their reliance on both the statute an the case is misguided. What the First Circuit resolved in Herrera-Venegas v. Sánchez-Rivera, 681 F.2d 41 (1st Cir. 1982) is that a party may only appear before the Court *pro se* or through counsel. On that basis, the court rejected intervention from a third-party non-lawyer. The case cited by Plaintiffs' Counsel has nothing to do with the controversy currently before the Court and, once again, contains **NONE** of the direct quotes included in Plaintiffs' motion. Additionally, Plaintiff's counsel also quote "*Estrada v. Cabrera*" in support of this argument, a case that, as discussed above, does not exist.

Beyond the nonexistent legal support, even Plaintiff's logic is flawed. It is clear that Mr. Olmo is not merely representing himself but acting as attorney of record for all Plaintiffs while simultaneously relying on Mr. Reyes as co-counsel, including for himself. Moreover, it is clear that Mr. Olmo is not formally appearing *pro se*, as the *Response* suggests. He has never made such a claim nor has he requested leave of the Court to do so. Rather, he seeks to conduct a hybrid representation without the Court's permission, which the First Circuit has rejected. In McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004), the Court of Appeals held that a lawyer admitted to the bar did not have "a right to appear as co-counsel in his personal capacity (i.e., *pro se*)" in a case where he himself was plaintiff. The court reasoned that "[h]e is—and has been—represented by other counsel in the district court proceedings. A party has a right to represent himself or to be represented by an attorney, but he cannot have it both ways. There is no right to hybrid representation in the federal courts." *Id.*, citing United States v. Campbell, 61 F.3d 976, 981 (1st Cir.1995); United States v. Nivica, 887 F.2d 1110, 1121–22 (1st Cir.1989).

The First Circuit's reasoning in *McCulloch* is particularly fitting here. Mr. Olmo has argued that neither his vested financial interest, personal knowledge of the allegations, and high likelihood of being required to provide testimony as witnesses serve as sufficient grounds for disqualification under M.R. 1.7 and M.R. 3.7. To the contrary, in *McCulloch* the District Court disqualified a lawyer who, like Mr. Olmo, was simultaneously Plaintiff and co-counsel for all Plaintiffs. The First Circuit affirmed:

> McCulloch is both a lawyer and a member of the bar of the United States District Court for the District of Puerto Rico. Thus, he ordinarily would have a right, in that capacity, to enter his appearance as counsel in a pending case. But this case is out of the ordinary in that McCulloch is a principal in the transaction that underlies the litigation. He has been deposed at length, and there is every reason to expect that he would be one of the main witnesses should a trial ensue. A lawyer is under an ethical obligation to refrain from appearing as counsel in a case in which he reasonably can anticipate that he will be called as a percipient witness. See ABA Model Rules of Prof'l Conduct R. 3.7(a); see also D.P.R.R. 83.5(a) (formerly Rule 211.4(b)) (incorporating the ABA Model Rules to govern attorney conduct in the District of Puerto Rico). Given the salience of that apothegm, the district court did not abuse its discretion in refusing to permit McCulloch to act as co-counsel in this matter.
>
> McCulloch v. Vélez, *supra*, p. 4-5 (citing Hutchinson v. Spanierman, 190 F.3d 815, 828 (7th Cir.1999); United States v. Merlino, 349 F.3d 144, 150–52 (3d Cir.2003)).

The same reasoning applies here in favor of Plaintiff's Counsel disqualification, therefore the *Motion to Disqualify* should be granted.

### C. *Plaintiffs' Counsel misrepresent the standard for disqualification under Model Rule 3.7.*

In an attempt to forestall disqualification, Plaintiffs' Counsel resort to misrepresent the holding in the caselaw cited in both the *Motion to Disqualify* and the *Response* by arguing that moving to disqualify is premature. Concisely, Plaintiffs' *Response* argues that Defendants' motion to disqualify pursuant to Model Rule 3.7 is premature, on the grounds that disqualification under M.R. 3.7 is only for trial, and not pre-trial stages of the litigation and that, in any case, it is not clear whether Messrs. Reyes and Olmo will have to testify, making disqualification premature.

9

Once again, Plaintiffs' argument is infected with inaccurate direct quotes and inapposite case law, and in any event is wrong.

The USDC-PR and First Circuit caselaw have, in some cases, partially denied or postponed the decision to disqualify a lawyer under M.R. 3.7, but only on grounds conspicuously missing in the instant case: In those cases, the party had made **unequivocal** representations that the subject of the motion for disqualification **would not** be present at trial as the party's trial attorney. *See* Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 100-101 (1st Cir. 1988); Taboas v. Fiddler, Gonzalez & Rodriguez, PSC, 959 F.Supp.2d 225, 227 (D.P.R. 2013); Hill v. Culebra Conservation and Development Authority, 599 F.Supp.2d 88, 95 (D.P.R. 2009). Plaintiffs offered no such representation prior to Defendants' original *Motion to Disqualify*, and Plaintiffs offer none in their *Response*.[9] Therefore the Court should disqualify both attorneys.

### D. Mr. Reyes' misrepresentations as to his true role in PRSL persists.

Plaintiffs' *Response* vaguely contends that Mr. Reyes did not deny his role as chief of operations for PRSL (COO) but merely "clarified his current roles as Co-Chair and CLO (Dkt. No. 164, Ex. F at 3), consistent with the TAC", and imply that there is a "2018-2019 time gap" that somehow. *See* **Dkt. No. 164**, p. 6. As a preliminary but dispositive matter, Mr. Reyes suffers the same conflict as Mr. Olmo in that he has an actual and active ownership interest in Plaintiff PRSL, and in that PRSL's interests may diverge from other plaintiffs'. Plaintiffs cannot overcome this conflict with quibbles regarding his present formal job title at PRSL. In any event, however, both

---

[9] Notably, Plaintiffs' arguments as to "substantial hardship"—including Plaintiffs' longstanding reliance on Plaintiffs' Counsel, the switching costs associated with obtaining new counsel, and their purported financial strain—are all equally if not more applicable in connection with changing counsel on the eve of trial.

arguments are incorrect and easily disproven by Plaintiffs' own pleadings and discovery documents.

*First*, in their March 4, 2025 letter to Defendants, Plaintiffs' Counsel sought to deflect and minimize his operational involvement in PRSL's purported business operations beyond the scope of his faculties as a lawyer: "Mr. Reyes is Co-Chair and Chief Legal Officer (CLO) of PRSL, **not** Chief Operating Officer (COO)". *See* **Dkt. No. 164**, Exhibit F, p. 3 (Emphasis ours). At the same time, the *Response* characterizes this as an "alleged role". *See* **Dkt. No. 174**, p. 5. Even Mr. Reyes' "Co-Chair and [CLO]" position is as disqualifying as a COO role, however. And, in any event, Defendants have proven that Mr. Reyes did act as PRSL's COO at least since April 2018. *See* Dkt. No. 164, Exhibits C & D. Mr. Reyes has not clarified if he stepped down from this role or when.

*Second*, Plaintiffs' Counsel make much of a purported "time gap" between the date in which he was named COO in 2018 and the facts alleged in the *Third Amended Complaint* to imply (without any attempt to elaborate) that his role as COO lacks relevance to the litigation and thus cannot serve as basis for disqualification under Model Rule 3.7. This contention is also discredited by the Plaintiffs' own documents. While the *Third Amended Complaint* does not establish a clearly defined relevant time period to the allegations, it does include repeated references to alleged events that occurred in 2018, during Mr. Reyes' tenure as COO. *See* **Dkt. No. 33**, ¶12, 15, 33-40, 148. Indeed, Plaintiffs own portions of the *Joint Case Management Memorandum* and their initial disclosures include descriptions of testimony and documents related to PRSL' purported operations in 2018. *See* **Dkt. No. 147**, p. 23; **Dkt. No. 164**, Exhibit A, p. 5, 7 (*e.g.* "Documents and correspondence from PRSL to Defendants, from 2018 forward."). Similarly, the requests for production noticed by Plaintiffs to the FPF Defendants seek discovery over documents related to PRSL's operations and interactions with the FPF in 2018. *See* **Dkt. No. 168**, Exhibit A, p. 10.

Therefore, Plaintiffs' Counsel cannot seriously argue that Mr. Reyes' position as COO and PRSL's operations, if any, in 2018 fall beyond the time period contemplated in the operative complaint.

Finally, in an attempt to shore-up their incongruous arguments, Plaintiffs also rely on a supposed direct quote to *In re Grand Jury Proceedings*, 859 F.2d 1021, 1025 (1st Cir. 1988) to try to establish that the threshold for "Rule 8.4 violations" are "intentional deceit" and that "actual conflict is require". This direct quote, however, does not appear at all in this case, much less in the page cited. To the contrary, the First Circuit has held that "[a]lthough a presumption exists in favor of the defendant's selection of counsel, it may be overcome 'by a showing of a serious potential for conflict.'" *Id*. at 1024 (citing Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 1700 (1988)); *see also* In re Special February 1977 Grand Jury, 581 F.2d 1262, 1264 (7th Cir.1978) ("a disqualification motion may be granted without proof of the existence of an actual conflict of interest ... when the possibility of a conflict becomes great enough"). That conflict has been shown here for both Mr. Reyes and Mr. Olmo.

### III. PRAYER

**WHEREFORE**, Defendants respectfully request the Court take notice of all the above and GRANT the *Motion to Disqualify* (**Dkt. No 164**), with any other relief that the Court deems just and proper.

**RESPECTFULLY SUBMITTED**.

Dated: March 17, 2025.

[SIGNATURE BLOCK IN THE NEXT PAGE]

| | |
|---|---|
| **ADSUAR MUÑIZ GOYCO**<br>**SEDA & PÉREZ-OCHOA, P.S.C.**<br>P.O. Box 70294<br>San Juan, Puerto Rico 00936-8294<br>Tel: 787.756.9000 Fax: 787.756.9010<br><br>*/s/Edwin Seda-Fernández*<br>Edwin J. Seda-Fernández<br>USDC-PR No. 205212<br>Email: seda@amgprlaw.com<br><br>*/s/Eric Pérez-Ochoa*<br>Eric Pérez-Ochoa<br>USDC-PR No. 206314<br>Email: epo@amgprlaw.com<br><br>*/s/Alexandra C. Casellas Cabrera*<br>Alexandra Casellas Cabrera<br>USDC-PR No. 301010<br>Email: acasellas@amgprlaw.com<br><br>*/s/Andrés Daniel Santiago López*<br>Andrés D. Santiago-López<br>USDC-PR No. 309508<br>Email: asl@amgprlaw.com<br><br>*Counsel for the FPF Defendants*<br><br>**FERRAIUOILI, LLC**<br>By:*/s/ Roberto A. Camara-Fuertes*<br>Roberto A. Camara-Fuertes<br>Suleicka Tulier-Vazquez<br>P.O. Box 195168<br>San Juan, PR 00919-5168<br>Tel: (787) 766-7000<br>Fax: (787) 766-7001<br>Email:rcamara@ferraiuoli.com<br>stulier@ferraiuoli.com | **PAUL, WEISS, RIFKIND,**<br>**WHARTON & GARRISON LLP**<br>H. Christopher Boehning (*pro hac vice*)<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Tel: (212) 373-3000<br>Fax: (212) 757-3990<br>Email: cboehning@paulweiss.com<br><br>*Attorneys for Defendant FIFA*<br><br>**O'NEILL & BORGES LLC**<br>By:*/s/ Salvador J. Antonetti-Stutts*<br>  */s/ Aníbal A. Román-Medina*<br><br>Salvador J. Antonetti-Stutts<br>USDC-PR No. 215002<br>Aníbal A. Román -Medina<br>USDC-PR No. 308410<br>250 Ave. Muñoz Rivera, Ste. 800<br>San Juan, P.R. 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br>Email: salvador.antonetti@oneillborges.com<br>anibal.roman@oneillborges.com<br><br>**SIDLEY AUSTIN LLP**<br>*John J. Kuster (pro hac vice)*<br>*Jon Muenz (pro hac vice)*<br>*Amanda M. Blau (pro hac vice)*<br>787 Seventh Avenue<br>New York, New York 10019<br>Tel: (212) 839-5300<br>Fax: (212) 839-5599<br>Email: jkuster@sidley.com<br>ablau@sidley.com<br>jmuenz@sidley.com<br><br>*Attorneys for Defendant CONCACAF* |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: March 17, 2025.
San Juan, Puerto Rico

*/s/Andrés Daniel Santiago López*
Andrés D. Santiago-López
USDC-PR No. 309508
Email: asl@amgprlaw.com