IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, MARÍA LARRACUENTE, JOSÉ R. OLMO-RODRÍGUEZ, and FÚTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACIÓN PUERTORRIQUENA DE FUTBOL, INC., IVÁN RIVERA-GUTIÉRREZ, JOSÉ "CUKITO" MARTÍNEZ, GABRIEL ORTIZ, LUIS MOZO CANETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL ACTION NO. 23-1203-RAM <br><br><br> Re: <br><br> SHERMAN ANTITRUST ACT <br><br><br> Hon. Raul M. Arias-Marxuach |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR
PROTECTIVE ORDER LIMITING THE SCOPE OF DISCOVERY**

**INTRODUCTION**

Defendants showed in their moving papers seeking a Protective Order that Plaintiffs continue to seek discovery that relates to *other* claims that were dismissed, which are not related to the sole remaining antitrust claim, such that they seek to embark on a fishing expedition to try to resurrect their dismissed claims. Defendants also showed that Plaintiffs' refusal to cut its list of 68 trial witnesses down to a more manageable number eliminating cumulative and disproportionate discovery, unfortunately requires this Court's intervention to issue an appropriate protective order that does so. *See* Mov. Br. at 8-13.

Plaintiffs' Opposition ("Opp.") underscores the need for the protective order Defendants seek. Plaintiffs attempt to reframe their antitrust allegations beyond what they actually pled in the Third Amended Complaint ("TAC") to create a justification for their irrelevant, disproportionate discovery requests. As explained below, however, there are *no allegations* in the TAC regarding any activity by Defendants FIFA or CONCACAF with respect to the myriad factual allegations pertaining to the dismissed Commonwealth-based claims that could support the existence of an alleged Section 1 Sherman Act antitrust conspiracy among all Defendants. Plaintiffs nonetheless seek massive discovery relating only to individualized non-concerted action by FPF that relate exclusively to their dismissed claims—likely because Plaintiffs asserted (and apparently have) *no* actual factual allegations relating to their purported concerted action antitrust claims to pursue in discovery. The Opp. fails to explain a nexus between discovery that on its face relates only to FPF's individualized conduct in connection with Plaintiffs' now-dismissed claims, and the sole remaining antitrust claim, nor how that discovery is proportionate.

Moreover, Plaintiffs' argument that it is "premature" to consider whether their 68 trial witnesses need to be substantially paired down is without merit. In the Opp., Plaintiffs confirm

1

their trial witness list includes witnesses with cumulative and duplicative testimony, which confirms the need for a protective order so that discovery is proportionate and the case remains manageable.

Finally, Defendants note that Plaintiffs' Opp. to this brief—like their oppositions to the other simultaneously filed Motions—contain egregious citation errors suggesting the potential use of artificial intelligence without appropriate human oversight, and the Court should therefore strike the oppositions and take any other actions the Court deems appropriate.

**ARGUMENT**

Defendants' request for a protective order is supported by well-established legal grounds under Fed. R. Civ. P. 26(c) and applicable case law confirming that discovery is not limitless and must be proportional to the needs of the case. Mov. Br. at 7. In their Opp., several of the cases cited by Plaintiffs (1) contain inaccurate citations (*see, e.g., In re New England Compounding Pharmacy, Inc. Prods. Liab. Litigation*, 752 F.3d 49 (1st Cir. 2014)), (2) do not actually contain the language quoted in the brief (*see, e.g., In re Subpoena to Witzel*, 531 F.3d 113 (1st Cir. 2008); *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53 (1st Cir. 1999); *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391 (1st Cir. 2005)), or (3) do not exist at all (*see, e.g., Healey v. Gonzalez*, 747 F.3d 111 (1st Cir. 2014); *Sullivan v. Taglianetti*, 588 F.2d 1355 (1st Cir. 1978)). The Court should take whatever corrective action it deems appropriate in light of Plaintiffs' misrepresentations to the Court regarding their legal authority, but at the very least strike the Opp. and grant Defendants' motion. In any event, nothing in the Opp. justifies allowing the irrelevant, unduly burdensome and disproportionate discovery sought by Plaintiffs.

**I. Plaintiffs Improperly Attempt To Reframe the Sherman Act Claim To Incorporate Allegations That Solely Relate To The Dismissed RICO and Commonwealth-law Claims In Order to Expand Discovery.**

In their Opp., Plaintiffs seek to redefine the Sherman Act allegations to be something they are not, in an attempt to take what already will be an enormously expensive antitrust case and expand it beyond the pale of relevance or proportionality.

To prove that antitrust claim, Plaintiffs must allege a contract or conspiracy that "unreasonably restrains trade." Opp. at 3. It is clear from Plaintiffs' TAC, and the Court's Opinion on FPF's Motion to Dismiss, that the sole surviving antitrust claim is based exclusively on a purported allegation that FIFA, FPF, and CONCACAF conspired in connection with an alleged tournament-participation policy. TAC ¶ 162; FPF Opinion at 9.

Plaintiffs' TAC lacks any actual allegations whatsoever of concerted action amongst all Defendants such that there is minimal discovery to pursue for Plaintiffs' purported remaining "antitrust" claim. As a result, Plaintiffs now pursue discovery from all Defendants regarding actions of the FPF Defendants *individually*, consisting of separate non-antitrust related purported misrepresentations, tortious interference, or breaches of fiduciary duty. Plaintiffs argue (only in *connection with its discovery demands*) that those allegations are somehow related to their alleged antitrust violation. Opp. at 3-4. But the citations to the TAC referenced by Plaintiffs relate to alleged actions conducted *solely* by FPF Defendants and do *not* include any alleged factual allegations implicating purported acts by FIFA or CONCACAF that could be the proper topic of discovery regarding the sole remaining antitrust claim. *See generally* TAC ¶¶ 36-37, 44, 91-92, 149-153. Tellingly, the *only* allegations involving all of the FIFA, CONCACAF and FPF Defendants are Plaintiffs' generic allegations related to the alleged Section 1 Sherman Act antitrust claim. *See* TAC ¶¶ 52-53. Thus, Plaintiffs' own allegations confirm that the alleged antitrust claim

3

is distinct, and its allegations as to FPF specifically relate only to the generalized RICO conspiracy and/or Commonwealth-based claims and are *not* "inextricably intertwined" with the antitrust claims as Plaintiff now contends. Opp. at 4.[1] Even if Plaintiffs' allegations against FPF were intended to support their antitrust claim (they were not), they do not reflect the concerted action or harm to competition that bears on their sole surviving Sherman Act claim that the Court permitted.

Examples of Plaintiffs' improper attempt to recast Commonwealth-law claim allegations as antitrust allegations abound. The theory articulated in Plaintiffs' Opp. that Defendants acted to "eliminate rival voices and consolidate control over soccer governance" is the exact basis of their dismissed RICO and Commonwealth-law claims—not the antitrust claims of concerted action in relation to a single purported policy. For their *RICO* claims, not their antitrust claims, Plaintiffs' pled that "Defendants devised . . . a scheme to defraud Plaintiffs of money, property, and other benefits of monetary value by excluding Plaintiffs from the FPF's affairs ***by means of false or fraudulent pretenses and representations***." TAC ¶ 182 (emphasis added). The "false or fraudulent pretenses and representations" alleged are those that impacted Plaintiffs Larracuente and Olmo, among others, regarding alleged election fraud and fraudulent misrepresentations in order to exclude individuals from FPF. *See* TAC ¶¶ 185(d), 185(f). Indeed, the only causes of action that even mention the wrongs done to Plaintiffs Larracuente and Olmo are the RICO and Commonwealth-law claims. *See* TAC ¶¶ 185(d), 185(f), 219. These allegations are in no way related to CONCACAF or FIFA, nor to Plaintiffs' antitrust claim, nor to the antitrust laws generally. *See* TAC ¶¶ 161–165 (no mention of Larracuente, Olmo, FBNET, or any specific misrepresentations regarding the same). As such, discovery demanding that Defendants scour

---

[1] Plaintiffs reliance on *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 752 F.3d 49, 54 (1st Cir. 2014) is misplaced. The reporter number listed in the citation does not lead to any case and there is no First Circuit decision by the same name.

4

their records for "all" documents relating to Ms. Larracuente and Mr. Olmo seeks information that is not relevant, does not relate to any concerted action, "agreement," or "group boycott" by all Defendants that could support Plaintiffs' antitrust claim, and, in any event, is grossly disproportionate to the needs of the case. *See also generally* Mov. Br., Ex. 1.

Similarly, requests seeking documents concerning a travel agency allegedly used by Mr. Rivera (TAC ¶ 60), allegations concerning alleged misuse of visas or violations of immigration labor laws (TAC ¶¶ 3, 64-65), alleged press denials and censorship covering FPF matches (TAC ¶¶ 148-152) or referee training (TAC ¶¶ 137-38) have no nexus to any purported agreement among all Defendants nor to Plaintiffs' sole surviving antitrust claim. None of those claims involve allegations about either FIFA or CONCACAF, and from the face of the TAC are contained to the Commonwealth-based claims or the alleged RICO conspiracy claim – all of which have been dismissed with prejudice. *See* Dkt. Nos. 129, 130, and 138.

Since Plaintiffs' pleaded antitrust claims are about alleged "action and agreements to restrict entry into, and limit output of, the relevant market for League tournaments and events in Puerto Rico," discovery requests that are about other topics and subject matter are not relevant and at the very least disproportionate to the needs of the case. *See* Mov. Br. at 8–11. Plaintiffs cite to *DM Rsch.., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) to suggest the First Circuit has "cautioned against prematurely narrowing discovery" where the full scope of the conspiracy is unknown. Opp. at 4. But that case actually relates to a motion to dismiss, has nothing to do with discovery, does not contain the quote Plaintiffs attribute to it, and does not support their argument cautioning against "prematurely narrowing discovery." Opp. at 4.

In any event, contrary to what Plaintiffs contend in their Opp. (at 2–3), the Court is empowered to limit discovery under Rule 26 to what is proportional to the remaining claim and

defenses. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case**.") (Emphasis added). Plaintiffs' Opp. ignores the fact that "[t]he Supreme Court has recognized that discovery in an antitrust case can quickly become enormously expensive and burdensome to defendants." *Digital Ally, Inc. v. Taser Int'l, Inc.*, 2016 WL 5944497, at *5 (D. Kan. Oct. 13, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)). Such recognition suggests "that the court should be particularly mindful of the course of discovery it will authorize in antitrust cases." *Id.* Rule 26 and the legal precedent in this Circuit do not allow a plaintiff to continue to pursue excessive discovery that has nothing to do with the remaining claims, only the dismissed claims. *See* Fed. R. Civ. P. 26(b)(1); *Almeida-Leon v. WM Cap. Mgmt. Inc.*, 2019 WL 13198700, at *2 (D.P.R. Feb. 1, 2019) (denying plaintiff's motion to compel because, among other things, the testimony sought was relevant only under claims that had been previously dismissed).

The *Rich v. Shrader*, 2013 WL 3710806, at *5-6 (S.D. Cal. July 11, 2013) decision is instructive. In that case, the court dismissed Plaintiff's RICO, ERISA, and Securities Exchange Act claims, leaving just tortious interference and breach of contract claims. 2013 WL 3710806, at *6. But Plaintiff's discovery requests reached beyond the underlying allegation and sought to include documents and information related to "a vast, illegal scheme." *Id.* at *8. The Court refused to allow such a "fishing expedition," holding that "[t]he scope of discovery and the issues at stake . . . are determined by the remaining causes of action" reflected in the Court's order on Defendants' Motion to Dismiss, not the complaint. *Id.* at *6. The Court further held that "[d]iscovery requests relating to dismissed causes of action are irrelevant, and therefore should be denied" especially where plaintiff's discovery requests sought to reach beyond the allegations explicitly pled in the complaint regarding the remaining causes of action, and failed to demonstrate how the requested

discovery would produce relevant evidence." *Id.* at *8. The court in *Rich* acknowledged that "[e]ven assuming the possibility that some documents requested are relevant to prove Plaintiff's alleged scheme, the Court *sua sponte* has an obligation to limit discovery" under Rule 26 "if the burden of the discovery outweighs the likely benefit." *Id.* at *9. And the Court found that Plaintiff's discovery requests relating to "a vast, illegal scheme" went beyond what was pled in the complaint and was more burdensome than beneficial. *Id.* at *10.

This Court should follow the *Rich* and *Almaeida-Leon* courts' lead and grant Defendants' Motion for a Protective Order curtailing Plaintiffs' improperly vast and disproportionate discovery relating only to dismissed claims. Without clear instruction from the Court, the Parties will continue to face global disputes regarding the scope of discovery.

## II. The Court's Opinion on FPF's Motion to Dismiss Disposed of All Claims Related to Plaintiffs Other Than PRSL.

Plaintiffs are incorrect that the remaining antitrust claim is not limited to PRSL. Opp. at 4. As alleged in the TAC, the entire antitrust claim is about an alleged agreement to exclude **PRSL** from operating a superior league or being affiliated with FPF, while also excluding clubs or players from being able to play for or in unsanctioned leagues, clubs or matches. FPF Opinion at 9 ("Plaintiffs allege these anticompetitive agreements had the effect of *excluding PRSL* from the market for league tournaments…") (emphasis added). Additionally, the only alleged antitrust injury identified in the Court's FPF Opinion is "PRSL being excluded from the 'relevant market for League tournaments and events in Puerto Rico.'" *Id.* at 10. But the TAC fails to provide any basis for identifying alleged concerted actions by FIFA, CONCACAF and the FPF Defendants in *causing* that antitrust injury, as opposed to the various Plaintiffs' alleged harmed as described extensively in the separate individual RICO and Commonwealth-based claims. Defendants cannot engage in an entire discovery program that hinges entirely on unpled allegations or on the

7

dismissed RICO and Commonwealth-law claims, including alleged injury from those claims, and under the guise of discovery demands seek to suddenly repackage the harms allegedly arising from those claims into antitrust injuries. *See Campbell v. Sedgwick, Detert, Moran & Arnold*, 2012 WL 12898345, at *4 (D.N.J. Oct. 9, 2012) ("Plaintiff may not create new claims through discovery, unrelated to those set forth in the pleadings.").

The bottom line is that Plaintiffs' discovery requests about purported misrepresentations, travel agencies, visas and immigration matters, or FPF elections have no relevance to any antitrust conspiracy or the purported policy on which the antitrust claim is now based, and the Opp. fails to identify any allegation of a factual nexus between those matters and their antitrust claims. Their insistence to pursue discovery about these topics—that relate only to Plaintiffs' dismissed claims—confirm that Plaintiffs seek to embark on a fishing expedition into waters far beyond what is relevant to their sole remaining antitrust claim. The Court should not allow that to happen, or allow discovery—and ultimately the entire case—to spin out of control due to Plaintiffs' unrestrained desire to look under every rock to find whatever scrap of information it may find, no matter how irrelevant or tangential.[2]

### III. Plaintiffs' 68-person Trial Witness List is Plainly Disproportionate and Unreasonable Warranting the Protective Order Sought by Defendants

Plaintiffs refuse to acknowledge the fundamental problems with their position on witnesses and depositions. As the Court already observed at the February 6, 2025 Preliminary Conference, Plaintiffs' 68-person trial witness list is plainly disproportionate to the needs of this case. That is

---

[2] Plaintiffs' assertion that the court should permit discovery into related injuries is based on its citation to *Sullivan v. Taglianetti* (Opp. at 5), a case that simply does not exist. Plaintiffs also cite to *Blue Shield of Va. v. McCready*, 457 U.S. 465, 478-79 (1982) a Supreme Court decision determining a patient covered by their employees insurance plan had standing to sue the insurance provider under Section 4 of the Clayton Act because Congress had intended to include a private enforcement mechanism. The decision has nothing to do with the scope of discovery. Accordingly their argument in this regard should be ignored.

why the Court directed Plaintiffs to narrow down their list of potential trial witnesses to a far more manageable number, noting Defendants have the right to depose all such intended trial witnesses since the Court would not allow trial by ambush. *See, e.g., Heal v. Wells Fargo, N.S. as Trustee for WaMu Mortgage Pass-Through Certificates Services 2006-PR2 Trust*, 560 F. Supp. 3d 347, 358 (D. Mass. 2021) ("[T]he purpose of mandatory witness disclosure under the Federal Rules is 'to avoid trial by ambush.'").

Plaintiffs contend they require testimony from a club manager from each of the seven teams in the League and five Mayors and other governmental officials, as well as referees, club officials, and FIFA representatives, among others. Opp. at 6. Testimony from multiple mayors, club managers, referees, and club officials, however, is obviously duplicative and cumulative testimony. There is no need for this kind of discovery. *See United States v. Muñoz-Franco*, 203 F. Supp. 2d 102, 110 (D.P.R. 2002) (excluding cumulative witness testimony); *see also* Fed. R. Civ. P. 26(b)(2) (the Court can limit discovery that is "unreasonably cumulative or duplicative").[3]

Limiting Plaintiffs to 15 trial witnesses in the first instance, with an opportunity to include more if Plaintiffs can show good cause, is a totally reasonable exercise of the Court's authority to control discovery. Plaintiffs' supplemental filing (Dkt. No. 177) does not change this fact. Although the FPF Defendants vigorously deny Plaintiffs' allegation that "an agent of Defendant FPF" contacted Mr. Simonetti to intimidate him from participating in this lawsuit (a purported

---

[3] In support of their argument that Defendants are requesting a premature, unnecessary restrictions on discovery, Plaintiffs rely on *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 401 (1st Cir. 2005) and *In re Subpoena to Witzel*, 531 F.3d 113, 117 (1st Cir. 2008). Oppo. at 6. However, neither of these cases stand for the proposition that Plaintiffs assert. In fact, the quote from *Gill* cited in Plaintiffs' Opp. is not even in that Court's cited decision. 399 F.3d at 391. As noted in Defendants' Joint Motion the relief Defendants are requesting is not unique nor inconsistent with the Federal Rules governing discovery. *See, e.g.*, *Whittingham v. Amherst College*, 163 F.R.D. 170, 171 (D. Mass. 1995).

screen-shot of a call supported only by double-hearsay is hardly confirmatory evidence),[4] it is of no moment to whether Defendants' proposed soft cap of 15 witnesses is appropriate for this case. Indeed, under the proposed protective order, Plaintiffs could seek to establish the alleged intimidation it contends occurred constitutes "good cause" to include witnesses above the 15 limit – a showing Plaintiffs still have not made. None of Plaintiffs' newly cited cases remotely involve a situation like this one, or support Plaintiffs' desire to call 68 trial witnesses. The fact is that Plaintiffs simply have provided no justification for having more than 15 witnesses to prove their antitrust allegations, or why requiring a showing of good cause for more would not address any concerns it has about calling more in the future.

Providing these clear boundaries on discovery will allow the parties to be thoughtful with respect to the number of witnesses they truly need, and provide the Court with a reasonable method to monitor the scope of discovery ensuring there is not runaway time and costs to prosecute and defend this case. Defendants respectfully request their motion for a protective order to limit Plaintiffs' trial witness list be granted.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in Defendants' Joint Motion (Dkt. No. 168), the Defendants respectfully request this Court issue the proposed Protective Order, *see* Dkt. No. 168-10, which limits the scope of Plaintiffs' discovery, prohibits inquiry into matters related to claims that have already been dismissed from this case, and limits Plaintiffs' number of witnesses to 15, absent a showing of good cause for any additional witnesses, and grant Defendants any other relief that the Court deems just and proper.

---

[4] The FPF Defendants will separately respond to these inflammatory allegations in due course.

**RESPECTFULLY SUBMITTED**,

Dated: March 18, 2025

        **ADSUAR MUÑIZ GOYCO
SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: 787.756.9000 Fax: 787.756.9010

*/s/Edwin Seda-Fernández*
Edwin J. Seda-Fernández
USDC-PR No. 205212
Email: seda@amgprlaw.com

*/s/Eric Pérez-Ochoa*
Eric Pérez-Ochoa
USDC-PR No. 206314
Email: epo@amgprlaw.com

*/s/Alexandra C. Casellas Cabrera*
Alexandra Casellas Cabrera
USDC-PR No. 301010
Email: acasellas@amgprlaw.com

*/s/Andrés Daniel Santiago López*
Andrés D. Santiago-López
USDC-PR No. 309508
Email: asl@amgprlaw.com

*Counsel for the FPF Defendants*

**FERRAIUOILI, LLC**
By: */s/ Roberto A. Camara-Fuertes*
Roberto A. Camara-Fuertes
Suleicka Tulier-Vazquez
P.O. Box 195168
San Juan, PR 00919-5168
Tel: (787) 766-7000
Fax: (787) 766-7001
Email: rcamara@ferraiuoli.com
      stulier@ferraiuoli.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
H. Christopher Boehning (*pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
Email: cboehning@paulweiss.com

*Attorneys for Defendant FIFA*

**O'NEILL & BORGES LLC**
*By: /s/ Salvador J. Antonetti-Stutts*
*/s/ Aníbal A. Román-Medina*

Salvador J. Antonetti-Stutts
USDC-PR No. 215002
Aníbal A. Román -Medina
USDC-PR No. 308410
250 Ave. Muñoz Rivera, Ste. 800
San Juan, P.R. 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email:  salvador.antonetti@oneillborges.com
anibal.roman@oneillborges.com

**SIDLEY AUSTIN LLP**
*John J. Kuster (pro hac vice)*
*Jon Muenz (pro hac vice)*
*Amanda M. Blau (pro hac vice)*
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: jkuster@sidley.com
ablau@sidley.com
jmuenz@sidley.com

*Attorneys for Defendant CONCACAF*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: March 18, 2025.
       San Juan, Puerto Rico

                                    */s/Aníbal A. Román -Medina*
                                    Aníbal A. Román -Medina
                                    USDC-PR No. 308410
                                    anibal.roman@oneillborges.com