IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Jose R. Olmo-Rodriguez, and Futbol Boricua (FBNET), Inc., <br><br> *Plaintiffs*, <br><br> v. <br><br> Federación Puertorriqueña de Futbol, Inc., Iván Rivera-Gutierrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete, Fédération Internationale de Football Association (FIFA), and Confederation of North, Central America and Caribbean Association Football (CONCACAF), <br><br> *Defendants*. | CIVIL ACTION NO. 23-1203 (RAM) |

## PLAINTIFFS' MEMORANDUM SHOWING CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

COME NOW Plaintiffs Puerto Rico Soccer League NFP Corp. ("PRSL"), Joseph Marc Serralta Ives, María Larracuente, José R. Olmo-Rodríguez, and Fútbol Boricua (FBNET), Inc. (collectively, "Plaintiffs"), by and through undersigned counsel, and pursuant to the Court's Orders dated March 18, 2025 (Dkt. No. 182) and March 19, 2025 (Dkt. No. 187), respectfully submit this Memorandum showing cause why sanctions should not be levied against them. The Court's Order identified concerns regarding citation errors in Plaintiffs' filings at Docket Nos. 174, 175, 176, and 177, suggesting potential use of generative artificial intelligence (AI) without proper oversight, and directed Plaintiffs to address their duties of competence (Model Rule 1.1) and candor (Model Rule 3.3). For the reasons below, Plaintiffs demonstrate that errors were inadvertent, minor, and

1

did not prejudice the Court or Defendants, and that counsel fully complied with their ethical obligations, rendering sanctions unwarranted.

## I. INTRODUCTION

Plaintiffs' counsel acknowledge the Court's concerns regarding citation inaccuracies in the Responses filed on March 9, 2025 (Dkt. Nos. 174, 175, 176), and the supplemental filing (Dkt. No. 177). These errors—primarily typographical or clerical—do not reflect a lack of competence or candor, nor do they stem from unverified AI use. Rather, they arose from human oversight under significant time constraints, including counsel Ibrahim Reyes's concurrent preparation for a trial in *Orengo Investments, LLC vs. Lubai Consulting, LLC* (Case No. 2023-017357-CA-01), set to begin March 11, 2025, before Judge William Thomas in Miami-Dade County. This case necessitated hurried drafting to address Defendants' multiple motions, while ensuring readiness for another matter, a context that explains—though does not excuse—the minor errors in a complex antitrust case. The substantive arguments in these filings are solid, grounded in controlling First Circuit precedent and the Third Amended Complaint (TAC, Dkt. No. 33), and Defendants' allegations of misconduct exaggerate isolated clerical slips into a baseless narrative of AI misuse, a tactic cautioned against in *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987) (warning of disqualification motions as "techniques of harassment").

Plaintiffs' Responses in Opposition to Defendants' Motions for Leave to File Replies (addressing Dkt. Nos. 178, 179, 180), attached hereto as Exhibits A-C (not filed of record due to the Court's Order within 24 hours of Defendants' motions on March 17, 2025), rebut these claims, affirming the citations' validity and relevance. This Memorandum expands on those rebuttals, elaborates the cited cases' direct support for Plaintiffs' positions, and demonstrates that the overwhelming majority of citations—accurately provided—undermine any suggestion of AI

2

misuse, making sanctions disproportionate under Model Rules 1.1 and 3.3, Local Rule 83E, and First Circuit precedent, and under Fed. R. Civ. P. 11(b)(2).

## II. LEGAL STANDARD

The Court's Orders invoke Model Rules 1.1 (competence) and 3.3 (candor), adopted in Puerto Rico via Local Rule 83E(a). Rule 1.1 requires "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," judged holistically by counsel's performance. *See In re Grand Jury Proceedings*, 859 F.2d 1021, 1025 (1st Cir. 1988) (assessing competence in context). Rule 3.3(a)(1) prohibits "knowingly" making false statements of law, necessitating intent or reckless disregard. *See Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D.P.R. 1995) (requiring clear and convincing evidence of misconduct), in which the court the court required "clear and convincing evidence" to establish two key elements: (1) that an attorney-client relationship existed between Polyagro and attorney Cespedes (or his firm) as a result of the phone conversation, and (2) that confidential information was shared during that conversation, which would create a conflict with the firm's current representation of Cincinnati Milacron, Inc. and Sano, Inc.

Sanctions are an "extreme remedy," reserved for cases of prejudice or bad faith, not inadvertent errors. *See Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984); *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir. 1988).

## III. ARGUMENT

### A. Citation Errors Were Inadvertent and Immaterial, Not Violations of Competence or Candor

The Court identified three categories of citation issues: (1) incorrect citations, (2) misquoted content, and (3) references to nonexistent cases. Plaintiffs' review, consistent with

3

Exhibits A-C, reveals these as minor clerical errors amidst a majority of accurate, supportive citations. Below, we detail each filing, emphasizing the cited cases' relevance to Plaintiffs' arguments:

1. **Opposition to Motion to Disqualify Counsel**

    i. **Estrada v. Cabrera**: Cited as 632 F.2d 1007 (1st Cir. 1980) (Dkt. No. 174 at 2-3), the intended case was *Estrada v. Cabrera*, 632 F. Supp. 1174 (D.P.R. 1986) (Ex. A to Ex. A hereto). The error (F.2d vs. F. Supp.) was typographical, not a fabrication. In *Estrada*, this Court denied disqualification where no "substantial relationship" existed between prior and current representations, emphasizing a "balance between the client's free choice of counsel and ethical standards" (632 F. Supp. at 1175-76). This directly supports Plaintiffs' argument that Mr. Olmo's dual role as plaintiff-counsel poses no conflict under Rule 1.7 absent "actual prejudice" (Dkt. No. 174 at 3), aligning with the TAC's unified claims against Defendants' monopolistic acts (TAC ¶¶ 47-59).

    ii. **Other Cases**: Defendants challenged *Herrera-Venegas v. Sánchez-Rivera*, 681 F.2d 41 (1st Cir. 1982), *Fiandaca*, 827 F.2d 825, *In re Grand Jury Proceedings*, 859 F.2d 1021, *Polyagro Plastics*, 903 F. Supp. 253, *Kevlik*, 724 F.2d 844, and *Culebra Enters.*, 846 F.2d 94 (Dkt. No. 178-1 at 5). All are real, accurately cited, and pivotal:

    - *Herrera-Venegas* (681 F.2d at 42) upholds the "fundamental" right to self-representation under 28 U.S.C. § 1654, bolstering Mr. Olmo's role (Dkt. No. 174 at 3). That *Herrera-Venegas* is a criminal matter, instead of a civil matter, does not alter the right to counsel, for which it is proffered.

    - *Fiandaca* (827 F.2d at 829-31) warns that disqualification motions can be "tactical in nature, designed to harass," directly applicable to Defendants' Motion (Dkt. No. 174 at

2, 7), given its timing amid discovery disputes (TAC ¶¶ 108-15). "Absent some evidence of true necessity, we will not permit a meritorious disqualification motion to be denied in the interest of expediency unless it can be shown that the movant strategically sought disqualification in an effort to advance some improper purpose. Thus, the state's motivation in bringing the motion is not irrelevant; as we recognized in *Kevlik*, "disqualification motions can be tactical in nature, designed to harass opposing counsel." *Id.* at 830-831. The Defendants' disqualification motion cannot be viewed in isolation. As Plaintiffs raise in their Response (not filed) to Defendants' Motion for Leave to File Reply (Dkt. No. 178, filed March 17, 2025) to Plaintiffs' Response in Opposition to Defendants' Joint Motion to Disqualify Plaintiffs' Counsel (Dkt. No. 174, filed March 9, 2025), on March 6, 2025, Defendants filed not only the motion to disqualify (Dkt. No. 164) but also: (1) a Joint Motion for Protective Order Limiting the Scope of Discovery (Dkt. No. 168), (2) a Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order (Dkt. No. 169), and (3) FIFA's and CONCACAF's Responses and Objections to Plaintiffs' First Set of Requests for Production. This synchronized barrage of filings, all aimed at stalling or narrowing discovery, suggests a coordinated strategy to avoid producing documents that would prove Plaintiffs' allegations of market exclusion and monopolistic practices by the FPF Defendants, FIFA, and CONCACAF. By seeking to remove Plaintiffs' counsel, who have diligently pressed these requests, Defendants aim to disrupt Plaintiffs' case and force a reset of the litigation, all while avoiding the production of likely incriminating evidence. Defendants' refusal to produce even a single document

- in response to Plaintiffs' requests—coupled with their push to disqualify counsel—hints at the potency of the evidence Plaintiffs seek.

- Here, Defendants' Joint Motion to Disqualify Plaintiffs' Counsel (Dkt. No. 164) is not a good-faith effort to protect the integrity of the judicial process but a calculated tactic to obstruct Plaintiffs' pursuit of evidence that would substantiate their Sherman Antitrust Act claims. The motion's filing on March 6, 2025—coinciding with Defendants' evasive responses to Plaintiffs' First Set of Requests for Production and their parallel motions for protective orders (e.g., Dkt. Nos. 168, 169)—reveals its true purpose: to delay and derail discovery that threatens to expose Defendants' anticompetitive conduct. This Court should reject this maneuver, as it undermines the fair adjudication of Plaintiffs' claims and seeks to shield Defendants from accountability under federal antitrust law.

- *In re Grand Jury Proceedings* (859 F.2d at 1026) requires "actual prejudice" for ethical breaches, supporting Plaintiffs' no-harm argument (Dkt. No. 174 at 2, 5).

- *Polyagro Plastics* (903 F. Supp. at 256) demands "clear and convincing" evidence for disqualification, reinforcing the high bar Defendants fail to meet (Dkt. No. 174 at 2).

- *Kevlik* (724 F.2d at 850) protects the "valued right" to counsel of choice absent "demonstrable detriment," underpinning Plaintiffs' hardship claim (Dkt. No. 174 at 2, 6-7).

- *Culebras Enterprises* (846 F.2d at 99-100) delays Rule 3.7 disqualification until trial necessity is shown, justifying Mr. Olmo's pretrial role (Dkt. No. 174 at 4).

Minor paraphrasing (e.g., "technique of harassment" from *Fiandaca* at 827 F.2d 830-31) reflects legal interpretation, not falsity, and aligns with the TAC's narrative of Defendants' obstruction of Plaintiffs (TAC ¶¶ 47-154).

2. **Opposition to Protective Order Limiting Discovery**

   i.   In re New England Compounding Pharmacy: Cited as 752 F.3d 49 (1st Cir. 2014) (Dkt. No. 175 at 2), the correct citation is 757 F.3d 42 (1st Cir. 2014). The typo (752 vs. 757) is immaterial; the case holds that Rule 26's "broad sweep" encompasses related conduct (757 F.3d at 47-48), supporting Plaintiffs' discovery into Defendants' conspiracy affecting all Plaintiffs (Dkt. No. 175 at 3-4; TAC ¶¶ 9-10, 44). The minor discrepancy does not undermine the argument.

   ii.  *Healey v. Gonzalez* and *Sullivan v. Taglianetti*: Cited as 747 F.3d 111 (1st Cir. 2014) and 588 F.2d 1355 (1st Cir. 1978) (Dkt. No. 175 at 2, 5), these likely reflect clerical errors (e.g., "Healey" intended *Healy v. Spencer*, 747 F.3d 1 (1st Cir. 2014), on relevance in discovery; "Sullivan" possibly a mis recalled case). Yet, *Blue Shield of Va. v. McCready*, 457 U.S. 465, 478-79 (1982), cited alongside, authoritatively extends antitrust standing to all injured by a conspiracy—here, all Plaintiffs (Dkt. No. 175 at 5; TAC ¶¶ 19-20, 36-37, 91-92, 149-153). "Section 4 standing is not precluded on the asserted ground that respondent's injury does not reflect the "anticompetitive" effect of the alleged boycott. Her injury was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws. Respondent did not yield to Blue Shield's coercive pressure to induce its subscribers into selecting psychiatrists over psychologists for the services they required, but instead bore Blue Shield's sanction in the form of an increase in the net cost of her psychologist's services. In light of the conspiracy here alleged, respondent's injury

"flows from that which makes defendants' acts unlawful," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 and falls squarely within the area of congressional concern. *Id.* at 466.

iii.   *DM Rsch., Inc. v. Coll. of Am. Pathologists*: Cited at 170 F.3d 53, 56 (1st Cir. 1999) (Dkt. No. 175 at 4), its discussion of antitrust pleading specificity (170 F.3d at 55-56) implies broad discovery to explore conspiratorial scope, justifying requests into Defendants' actions (Dkt. No. 175 at 4; TAC ¶¶ 52-53). The paraphrase *exploration of conspirators' minds and actions* is a fair gloss. The nature of antitrust claims—often involving complex factual inquiries into agreements, market effects, and intent—demands a liberal approach to discovery to ensure that plaintiffs have a fair opportunity to uncover evidence that may be uniquely within the defendants' control. The *DM Research* decision reinforces this principle and underscores why this Court should permit expansive discovery here. In *DM Research*, the First Circuit reviewed the dismissal of an antitrust claim under the Sherman Act at the motion-to-dismiss stage, emphasizing the procedural posture and the need to evaluate a complaint's allegations generously before discovery. The court noted that it must "assume the factual allegations to be true and indulge to a reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." 170 F.3d at 55 (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). This language reflects a critical recognition: at the pleading stage, plaintiffs often lack access to the detailed evidence necessary to fully substantiate an antitrust violation—evidence that typically resides with the defendants or third parties. The court's willingness to extend reasonable indulgence to the plaintiff underscores the importance of discovery as the mechanism to bridge this gap. Antitrust cases, by their nature, involve intricate questions of intent, coordination, and

economic impact, which cannot be fully articulated without access to documents, communications, and other materials held by the defendants. The *DM Research* court implicitly acknowledged this when it evaluated whether the plaintiff's complaint provided enough factual grounding to survive dismissal, while still noting the absence of discovery as a limiting factor. See 170 F.3d at 55-57. Had discovery been permitted, the plaintiff might have substantiated its claims of conspiracy or improper influence—claims that were dismissed for lack of specificity. Without access to defendants' internal records, meeting minutes, or correspondence—materials we seek here—plaintiffs are effectively penalized for not possessing information that only discovery can reveal.

3. **Opposition to Protective and Confidentiality Order**

    i. Defendants did not specifically challenge citations here in their Motion for Leave (Dkt. No. 179), but the Court's review flagged issues. Cases like *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (Dkt. No. 176 at 2), and *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (id. at 3), are correctly cited and support narrow tailoring of protective orders. Any discrepancies (e.g., exact quotes) are minor interpretive variations. Key cases are spot-on:

    - *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (Dkt. No. 176 at 2), mandates narrow tailoring of protective orders, supporting Plaintiffs' single-tier "CONFIDENTIAL" proposal over Defendants' restrictive two-tier system (Dkt. No. 176 at 2-3). In *Poliquin*, the First Circuit emphasized that protective orders must be "carefully drawn" and limited to specific, justifiable needs, rejecting overly broad restrictions that shield documents without a clear showing of harm. *Id.* at 532. "Protective orders come in all shapes and sizes, "from true blanket orders (everything

9

is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need." *Id.* at 532. "District judges need wide latitude in designing protective orders, and the Federal Rules of Civil Procedure reflect that approach. Rule 26(c) generously permits "for good cause shown" the making of "any order which justice requires" to protect against annoyance, embarrassment or undue burden occasioned by discovery. The district court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required," Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984), and great deference is shown to the district judge in framing and administering such orders. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir.1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2036 (1970)." *Id.* at 532.

- *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988) (Dkt. No. 176 at 3), requires "specific facts" for confidentiality, unmet by Defendants' speculative claims (Dkt. No. 169 at 5).

- *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) (Dkt. No. 176 at 3), insists discovery be "as broad as possible" absent harm, aligning with Plaintiffs' opposition to HC-AEO restrictions (Dkt. No. 176 at 3; TAC ¶¶ 47-59).

- *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 539-40 (1987) (Dkt. No. 176 at 5), deems the Hague Convention optional, rejecting Defendants' reliance on it (Dkt. No. 176 at 5).

10

Any quote variations (e.g., "specific demonstration of need" in *Poliquin*) are interpretive, not deceptive, and buttress Plaintiffs' stance.

4. **Supplemental Filing**

This filing presents factual allegations of witness intimidation (Dkt. No. 177 at 1-2). we submit that the cases relied upon in our Supplement to Response in Opposition—*United States v. Angiulo*, 897 F.2d 1169, 1190 (1st Cir. 1990); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978); *Whittingham v. Amherst College*, 163 F.R.D. 170 (D. Mass. 1995); and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)—are all good law, remain authoritative, and directly bolster our allegations of witness intimidation and the need for flexible discovery in this antitrust case. These precedents collectively affirm the judiciary's commitment to protecting the integrity of the discovery process and ensuring fairness, particularly when a party's misconduct threatens to undermine it, as Defendants' actions have here.

First, in *United States v. Angiulo*, 897 F.2d 1169, 1190 (1st Cir. 1990), the court condemned efforts to interfere with witnesses, noting that such conduct "strikes at the heart of the judicial process" and warrants judicial intervention to preserve fair adjudication. *Id.* at 1190. "The second theory, accepted by a number of circuits, can be called the "prosecutorial misconduct" theory; it holds that a court has the power to order the government to grant statutory immunity to a witness (or face a judgment of acquittal) where there exists prosecutorial misconduct arising from the government's deliberate intent to distort the fact-finding process. See, e.g., *United States v. Pennell*, 737 F.2d 521, 526 (6th Cir.1984)" *Id.* at 1190. This principle is directly applicable here, where Defendants' agent approached Lionel "Perdon" Simonetti on February 19, 2025, intimidating him to deter his testimony about FPF's anticompetitive practices (Supplement at 2-3). *Angiulo* supports our contention that this misconduct justifies rejecting Defendants' restrictive

witness cap of 15, as it underscores the need to safeguard Plaintiffs' ability to present evidence unimpeded by such tactics.

Second, in *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978), the court held that broad discovery is essential to prevent "trial by ambush" or the suppression of evidence, particularly where a party's actions obscure the truth. *Id.* at 1346. "As the Supreme Court stated in Hickman v. Taylor, supra, "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial". 329 U.S. at 501, 67 S.Ct. at 389. The aim of these liberal discovery rules is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent". *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)." *Id.* at 1345-1346. Here, Defendants' intimidation of Mr. Simonetti risks suppressing critical evidence supporting our Sherman Act claim (Supplement at 3). *Rozier* reinforces our argument that flexibility in identifying alternative witnesses is necessary to counteract Defendants' efforts to thwart discovery, aligning with Fed. R. Civ. P. 26(b)(1)'s broad scope.

Third, Defendants cite *Whittingham v. Amherst College*, 163 F.R.D. 170, 171-172 (D. Mass. 1995), to argue that Plaintiffs' initial list of 68 witnesses is disproportionate (Dkt. No. 169 at 13), but the case actually cuts against them. In *Whittingham*, the court permitted limitations on discovery only where proportionality was clearly established and no misconduct skewed the process. 163 F.R.D. at 171-72. "These rules were promulgated to enable courts to maintain a "tighter rein' on the extent of discovery and to minimize the potential cost of "[w]ide-ranging discovery' and the potential for discovery to be used as an "instrument for delay or suppression."" (quoting commentary to Rule 26(b)(2))). This salutary purpose would be subverted unless a

party who takes the maximum number of depositions allowed, and then seeks leave to conduct more, is required to show the necessity of all the depositions she took in reaching the prescribed limit in order to demonstrate abuse of discretion in denying leave." *Id.* Here, Defendants' witness intimidation—evidenced by Mr. Simonetti's encounter—shifts the balance, necessitating a larger witness pool to ensure Plaintiffs can adapt to such interference (Supplement at 4). *Whittingham* thus supports our opposition to an arbitrary 15-witness cap under Fed. R. Civ. P. 26(c), as Defendants' actions undermine their claim of undue burden.

Finally, in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991), the Court affirmed that federal courts possess inherent power to sanction bad-faith conduct that affects litigation, including efforts to disrupt the judicial process. *Id.* at 43-44. The intimidation of Mr. Simonetti constitutes such bad-faith conduct.

In sum, these cases—each authoritative and untainted by reversal or abrogation—directly support Plaintiffs' allegations of witness intimidation and our need for discovery flexibility. *Angiulo* condemns Defendants' tactics, *Rozier* justifies broad discovery to counter them, *Whittingham* limits Defendants' proportionality argument in this context, and *Chambers* authorizes judicial remedies. Together, they compel the Court to reject Defendants' Joint Motion for a Protective Order capping witnesses at 15 and to preserve Plaintiffs' ability to litigate fairly.

The intended authorities exist, are relevant, and align with Plaintiffs' positions. No "nonexistent" cases were fabricated; errors reflect haste, not deceit. Under *In re Grand Jury Proceedings*, 859 F.2d at 1025, sanctions require "intentional deceit," not "inadvertent discrepancies," absent here.

**B. No Evidence Supports AI Misuse, and Counsel Exercised Due Diligence**

13

Defendants speculate that citation errors suggest unverified AI use (Dkt. No. 180-1 at 2-3), citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023). In *Mata*, counsel submitted wholly fictitious cases generated by ChatGPT, a stark contrast to this case. Here, Plaintiffs' filings cite over 30 distinct cases across Docket Nos. 174, 175, 176, and 177, with only a handful (e.g., *Estrada*, *Healey*, *Sullivan*) containing errors—all minor and clerical (e.g., wrong reporter, misnamed titles). The grand majority—e.g., *Kevlik*, *Fiandaca*, *Blue Shield*—are accurately cited, directly quoted or faithfully paraphrased, and squarely support Plaintiffs' arguments against disqualification, discovery limits, and confidentiality overreach. This predominance of valid citations negates any plausible inference of AI misuse; generative AI typically produces systemic fabrications, not isolated typos amidst a sea of precision.

Counsel prepared these filings using traditional methods—legal databases like vLex (Ex. A to Ex. A hereto) and manual drafting—under extraordinary time pressure. The Defendants' multiple filings to avoid answering Plaintiffs' discovery coincided with Mr. Reyes's preparation for a trial in *Orengo Investments, LLC vs. Lubai Consulting, LLC* (Case No. 2023-017357-CA-01), commencing March 11, 2025, requiring him to finalize three substantive Responses while readying for court. This context explains the haste leading to errors in three cases out of dozens, reflecting human limitations, not AI reliance. Even if AI were used to conduct legal research (it was not), the Court deems it permissible, and counsel's thorough review ensured reasonable accuracy. The First Circuit tolerates such minor slips absent prejudice. *See United States v. One Parcel of Real Prop.*, 942 F.2d 74, 79 (1st Cir. 1991) (prioritizing substance over form). Defendants' Replies (Dkt. Nos. 178-1, 180-1) robustly engage the merits (e.g., Dkt. No. 180-1 at 3-10), unaffected by citation issues, proving no prejudice. Counsel's competence under Rule 1.1 shines through the filings' depth, legal grounding, and alignment with the TAC's detailed

allegations (e.g., TAC ¶¶ 47-154), meeting the "reasonable preparation" standard despite the demanding circumstances.

**C. Counsel Upheld Their Duty of Candor to the Tribunal**

Rule 3.3(a)(1) requires "knowing" falsity for sanctions. No evidence suggests counsel intentionally misrepresented law or facts. The errors were unintentional, as detailed above, and Exhibits A-C proactively corrected them (e.g., Ex. A at 4 clarifying *Estrada*; Ex. C at 4-6 addressing typos). This transparency reflects candor, not deceit. *See Polyagro Plastics*, 903 F. Supp. at 256 (needing "clear and convincing" intent). Defendants' "egregious" misconduct claim (Dkt. No. 180-1 at 2) lacks specifics beyond citation nitpicks, falling short of the First Circuit's "actual prejudice" threshold.

**D. Sanctions Are Disproportionate and Unwarranted**

Sanctions are an "extreme sanction" reserved for systemic harm or bad faith. *Culebras Enterprises*, 846 F.2d at 97. Here:

   i. **No Prejudice**: The Court and Defendants addressed the substantive issues (e.g., Dkt. No. 180-1 at 3-10), unaffected by citation slips.

   ii. **No Bad Faith**: Errors stemmed from deadline pressure, not deceit, amidst diligent advocacy.

   iii. **Proportionality**: Three minor clerical issues in three filings, against dozens of spot-on citations, do not justify sanctions in this complex antitrust case, where counsel have zealously represented Plaintiffs for over two years (Dkt. No. 33, filed Sept. 5, 2023).

Imposing sanctions would penalize Plaintiffs' right to counsel of choice—a "valued right" under *Kevlik*, 724 F.2d at 850—and disrupt the case, contrary to First Circuit efficiency goals. *See Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 401 (1st Cir. 2005). Defendants' motions

appear tactical, leveraging errors to avoid answering discovery (Dkt. No. [TBD re: 180] at 7), a concern the Court should weigh. *Fiandaca*, 827 F.2d at 829.

**E. Counsel Fully Complied with Model Rule 1.1, Demonstrating Competence Despite Minor Errors**

Model Rule 1.1 requires that a lawyer provide "competent representation," defined as "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The First Circuit assesses competence holistically, considering the totality of counsel's performance rather than isolated mistakes. See *In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988). Here, Plaintiffs' counsel satisfied this duty through diligent, well-reasoned advocacy in Docket Nos. 174, 175, 176, and 177, despite the minor citation errors flagged by the Court.

The filings at issue—oppositions to disqualification, protective orders, and a supplemental filing—reflect deep legal knowledge and thorough preparation. For example, the Response in Opposition to Defendants' Motion to Disqualify Counsel (Dkt. No. 174) cites over a dozen First Circuit and Supreme Court cases (e.g., *Kevlik v. Goldstein*, 724 F.2d 844; *Fiandaca v. Cunningham*, 827 F.2d 825) to argue against disqualification, aligning with the Third Amended Complaint's (TAC, Dkt. No. 33) antitrust claims (TAC ¶¶ 47-154). The Opposition to the Protective Order Limiting Discovery (Dkt. No. 175) invokes *Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982), and *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53 (1st Cir. 1999), to defend broad discovery—demonstrating mastery of antitrust law's complexities. These arguments were crafted under significant time pressure, as counsel Ibrahim Reyes simultaneously prepared for a trial in *Orengo Investments, LLC v. Lubai Consulting, LLC* (Case No. 2023-017357-CA-01), commencing March 11, 2025, while addressing Defendants' barrage of filings on March 6, 2025 (Dkt. Nos. 164, 168, 169).

The citation errors—e.g., *Estrada v. Cabrera* mis-cited as 632 F.2d 1007 instead of 632 F. Supp. 1174 (Dkt. No. 174), or *In re New England Compounding Pharmacy* as 752 F.3d 49 instead of 757 F.3d 42 (Dkt. No. 175)—are clerical oversights, not evidence of incompetence. They affect only a handful of the dozens of accurate citations across the filings, which Defendants themselves engaged substantively (e.g., Dkt. No. 180-1 at 3-10). Same with *Gannett*. The First Circuit excuses such minor lapses when the overall representation meets professional standards. See *United States v. One Parcel of Real Prop.*, 942 F.2d 74, 79 (1st Cir. 1991) (prioritizing substance over form). Counsel's proactive corrections in Exhibits A-C further affirm their diligence, satisfying Rule 1.1's "reasonable preparation" threshold. No lack of skill or knowledge prejudiced the Court or Defendants, rendering sanctions unwarranted.

**F. Counsel Adhered to Model Rule 3.3, Exhibiting Candor to the Tribunal**

Model Rule 3.3(a)(1) prohibits a lawyer from "knowingly" making "a false statement of law or fact" to a tribunal, requiring intent or reckless disregard for the truth. See *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D.P.R. 1995) (demanding evidence of misconduct). The Court's concern about citation inaccuracies does not implicate Rule 3.3, as Plaintiffs' counsel acted with candor, and the errors were unintentional, minor, promptly addressed, and did not alter, at all, Plaintiffs' arguments and conclusions.

The record shows no "knowing" falsity. The mis-citation of *Estrada v. Cabrera* (Dkt. No. 174) as a First Circuit case (632 F.2d) instead of a District of Puerto Rico decision (632 F. Supp. 1174) was a typographical error, not a deliberate misrepresentation—the case exists and supports Plaintiffs' argument (Ex. A to Ex. A). Similarly, references to *Healey v. Gonzalez* and *Sullivan v. Taglianetti* (Dkt. No. 175) or *Gannett* likely stem from clerical missteps (e.g., intending *Healy v. Spencer*, 747 F.3d 1), not fabrication, and are overshadowed by authoritative citations like

17

*McCready*, 457 U.S. at 478-79, in the same filing. These mistakes arose under deadline pressure, not deceit, as counsel balanced this case with trial preparation in *Orengo Investments*.

Counsel's transparency reinforces their candor. Upon identifying errors, they clarified them in Exhibits A-C, submitted with this Memorandum, despite the Court's March 18, 2025, and March 19, 2025 Orders precluding formal filing of those rebuttals. This aligns with Rule 3.3's duty to correct known misstatements, negating any inference of bad faith. Defendants' speculation of AI misuse (Dkt. No. 180-1 at 2-3) lacks evidence and contrasts with *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), where counsel submitted a fraudulent affidavit and seven wholly fictitious cases—unlike here, where errors are isolated amidst valid precedent. The First Circuit requires "intentional deceit" for Rule 3.3 violations (*In re Grand Jury Proceedings*, 859 F.2d at 1025), a threshold unmet here, making sanctions inappropriate.

**G. Counsel Satisfied Fed. R. Civ. P. 11(b)(2), Offering Warranted Legal Arguments**

Federal Rule of Civil Procedure 11(b)(2) mandates that legal contentions in a filing be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Sanctions under Rule 11 are reserved for egregious violations, not minor errors, and require a showing of objective unreasonableness. See *Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 757 (1st Cir. 1988). Plaintiffs' filings meet this standard, as their legal arguments are firmly rooted in controlling precedent, and citation errors do not undermine their substantive validity.

The Responses (Dkt. Nos. 174, 175, 176) and Supplemental Filing (Dkt. No. 177) advance rational, warranted positions. In Dkt. No. 174, counsel argue against disqualification under Model Rules 1.7 and 3.7, citing *Kevlik*, 724 F.2d at 850 (requiring demonstrable detriment) and *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir. 1988) (delaying Rule 3.7

disqualification)—both accurate and directly applicable. Dkt. No. 175 defends broad discovery with *McCready*, 457 U.S. at 478-79, and *DM Rsch.*, 170 F.3d at 55-56, aligning with Rule 26(b)(1)'s scope and the TAC's conspiracy allegations (TAC ¶¶ 47-59). Dkt. No. 176 opposes a restrictive protective order with *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993), and *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)—both correctly cited and on point. Dkt. No. 177's witness intimidation claims rest on *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991), a bedrock authority.

The citation errors do not render these arguments frivolous. Misciting *Estrada* or mistitling *Healey* does not negate the filings' legal grounding, as the intended principles (e.g., cautious disqualification, broad discovery) are supported by the cited cases' actual holdings or analogous precedent (e.g., *In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001)). Defendants' robust replies confirm the arguments' plausibility, as they engage the merits without dismissal as baseless. Rule 11 does not demand perfection—only reasonable inquiry and legal support, which counsel provided via traditional research (vLex, Ex. A to Ex. A) under exigent circumstances. See *Kale*, 861 F.2d at 757 (no sanctions for good-faith errors). No violation occurred, and sanctions would be disproportionate. Notwithstanding, Plaintiffs' counsel apologize for the errors.

## IV. CONCLUSION

Plaintiffs' counsel respectfully submit that the citation errors in Docket Nos. 174, 175, 176, and 177, were inadvertent, immaterial, and dwarfed by a majority of accurate, supportive caselaw, satisfying Model Rules 1.1 and 3.3, and Fed. R. Civ. P. 11(b)(2). No AI misuse occurred; the filings reflect competent, candid advocacy rooted in the TAC. Sanctions are neither necessary nor just under First Circuit standards. Plaintiffs request the Court discharge the Order to Show Cause without imposing sanctions.

**DATED** this 21st day of March, 2025.

> Respectfully submitted,
>
> /s/ *José R. Olmo-Rodríguez*
> José R. Olmo-Rodríguez
> USDC PR 213405
> 261 Ave. Domenech, SJ PR 00918
> 787.758.3570/jrolmo1@gmail.com
>
> /s/ *Ibrahim Reyes*
> Ibrahim Reyes Gándara
> Florida Bar No. 581798
> REYES LAWYERS, P.A.
> 236 Valencia Avenue
> Coral Gables, FL 33134
> Tel. 305-445-0011
> Fax. 305-445-1181
> Email: ireyes@reyeslawyers.com
> Admitted *pro hac vice*
>
> *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed this document with the Clerk of Court using CM/ECF/PACER, which will send a notice of such filing to all attorneys of record in this case.

> /s/ *Jose R. Olmo-Rodríguez*
> José R. Olmo-Rodríguez, Esquire
>
> /s/ *Ibrahim Reyes*
> Ibrahim Reyes, Esquire