# EXHIBIT "A"

**REYES LAWYERS, P.A.**
236 Valencia Avenue, Coral Gables, FL 33134
Office (305) 445-0011 | Mobile (305) 218-0982 | Fax (305) 445-1181 | ireyes@reyeslawyers.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Puerto Rico Soccer League NFP Corp., Joseph Marc Serralta Ives, Maria Larracuente, Jose R. Olmo-Rodriguez, and Futbol Boricua (FBNET), Inc.,<br><br>*Plaintiffs*,<br><br>v.<br><br>Federación Puertorriqueña de Futbol, Inc., Iván Rivera-Gutierrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete, Fédération Internationale de Football Association (FIFA), and Confederation of North, Central America and Caribbean Association Football (CONCACAF),<br><br>*Defendants*. | CIVIL ACTION NO. 23-1203 (RAM) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO <u>DISQUALIFY COUNSEL</u>**

**COME NOW** Plaintiffs Puerto Rico Soccer League NFP Corp. ("PRSL"), Joseph Marc Serralta Ives, María Larracuente, José R. Olmo-Rodríguez, and Fútbol Boricua (FBNET), Inc. (collectively, "Plaintiffs"), by and through undersigned counsel, and respectfully submit this Response in Opposition to Defendants' Motion for Leave to File Reply (Dkt. No. 178, filed March 17, 2025) to Plaintiffs' Response in Opposition to Defendants' Joint Motion to Disqualify Plaintiffs' Counsel (Dkt. No. 174, filed March 9, 2025). Defendants' request for leave should be denied because their proposed Reply (Dkt. No. 178-1) raises no new substantive issues warranting

1

further briefing, and their accusations of inaccurate caselaw are baseless—Plaintiffs' citations are accurate, applicable, and merely contested by Defendants' disagreement.

## I. INTRODUCTION

Defendants seek leave to file a Reply (Dkt. No. 178-1) to Plaintiffs' Response (Dkt. No. 174) to their Motion to Disqualify Counsel (Dkt. No. 164), alleging "new substantive issues" and "egregious citation errors" in Plaintiffs' briefing (Dkt. No. 178 at 2-3). This is a meritless attempt to prolong litigation and harass Plaintiffs' counsel, already under attack via a disqualification motion the First Circuit would view skeptically as a "technique of harassment." *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987). Local Rule 7(c) permits replies only for "new matters" with leave, not to rehash disagreements or manufacture ethical controversies. Defendants' claims of fictitious caselaw collapse upon scrutiny—Plaintiffs' citations, including *Estrada v. Cabrera*, 632 F. Supp. 1174 (D.P.R. 1986), are real, relevant, and supportive of their position. No Reply is needed; the Court has all it requires to deny disqualification of Plaintiffs' counsel.

## II. LEGAL STANDARD

Local Rule 7(c) allows a reply within seven days of an objection "only with leave of court" to address "new matters raised in the objection." The decision is discretionary, and courts deny leave where a reply merely reiterates prior arguments or disputes settled issues, avoiding "unnecessary prolongation of motion practice." *See, e.g., United States v. One Parcel of Real Prop.*, 942 F.2d 74, 79 (1st Cir. 1991) (district courts manage dockets to prevent "endless briefing"). Defendants bear the burden to show "good cause" beyond disagreement with Plaintiffs' arguments. *See Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984) (cautioning against tactical misuse of procedural motions).

## III. ARGUMENT

**A. Defendants' Claim of "New Substantive Issues" Is a Pretext for Reargument**

Defendants assert that Plaintiffs' Opposition raises "new substantive issues" like "reliance on distinct statutes, new caselaw, [and] discrepancies in the record" (Dkt. No. 178 at 2). These are not "new matters" under Local Rule 7(c) but direct responses to Defendants' Motion to Disqualify (Dkt. No. 164), which invoked Model Rules 1.7 and 3.7. Plaintiffs' citation of 28 U.S.C. § 1654 (Dkt. No. 174 at 3) counters Defendants' Rule 1.7 argument by affirming Mr. Olmo's self-representation right—a foreseeable defense, not a surprise. Similarly, Plaintiffs' First Circuit caselaw (e.g., *Kevlik, Culebras Enterprises Corp. v. Rivera-Ríos*) addresses Defendants' own cited standards (Dkt. No. 164 at 8-10), refuting their interpretation with binding precedent. "Discrepancies in the record" (Dkt. No. 178 at 2) reflect Plaintiffs' factual rebuttals—e.g., Mr. Reyes's role (Dkt. No. 174 at 5)—to Defendants' assertions (Dkt. No. 164 at 13-14), not new issues.

The First Circuit discourages replies that "merely quarrel with the opposing party's legal analysis." *See One Parcel*, 942 F.2d at 79. Defendants' proposed Reply (Dkt. No. 178-1) does just that, rehashing their Motion's arguments (e.g., Rule 3.7's scope, Dkt. No. 164 at 9-12 vs. Dkt. No. 178-1 at 9-10) and disputing Plaintiffs' caselaw without raising unaddressed points. No leave is warranted.

**B. Plaintiffs' Caselaw Is Accurate and Applicable—Defendants' Critique Is Mere Disagreement**

Defendants' central justification for a Reply is that Plaintiffs' Opposition contains "egregious citation errors" and "non-existent caselaw," "suggesting generative artificial intelligence misuse" (Dkt. No. 178 at 2; Dkt. No. 178-1 at 2-6). This accusation is demonstrably

3

false; Plaintiffs' citations are valid (minor error exceptions), relevant, and mischaracterized by Defendants.

1. **Estrada v. Cabrera Exists and Supports Plaintiffs' Response in Opposition to Disqualification**

Defendants claim *Estrada v. Cabrera*, cited as 632 F.2d 1007 (1st Cir. 1980) (Dkt. No. 174 at 2-3, 5, 7), is "non-existent" and confused with *U.S. v. Basso*, 632 F.2d 1007 (1st Cir. 1980) (Dkt. No. 178-1 at 4). This reflects Defendants' own error. The intended case, *Estrada v. Cabrera*, 632 F. Supp. 1174 (D.P.R. 1986), is a real District of Puerto Rico decision addressing disqualification (attached as **Exhibit "A"**, downloaded from vLex, a legal research company). The citation error (F.2d vs. F. Supp.) is a typographical oversight, not a fabrication—632 F.2d 1007 was never the target, as Plaintiffs' context (disqualification, not criminal procedure) aligns with 632 F. Supp. 1174. *See* Dkt. No. 174 at 2 (citing *Estrada* for *cautious scrutiny* of disqualification).

*Estrada* is on point: it denied disqualification where no "substantial relationship" existed between prior and current representations, emphasizing a "balance between the client's free choice of counsel and ethical standards." 632 F. Supp. at 1175-76. This mirrors Plaintiffs' argument that Mr. Olmo's and Mr. Reyes's roles lack conflicting interests (Dkt. No. 174 at 3-5). Defendants' Reply misreads *Estrada* as irrelevant (Dkt. No. 178-1 at 4 n.5), ignoring its First Circuit-consistent principles. *See Kevlik*, 724 F.2d at 850 (requiring demonstrable detriment for disqualification). Defendants' disagreement does not render it "non-existent."

Estrada emphasizes that disqualification is not a remedy to be imposed lightly or mechanically. The court cautioned that "the rule of disqualification should not be mechanically applied" and that "courts must be careful to prevent literalism from possibly overcoming substantial justice to the parties" *Id.* at 1175. The Defendants' argument rests on broad assertions of impropriety rather than concrete evidence of a conflict, a tactic the *Estrada* court warned

4

against, noting that "it has been a recent practice to use disqualification motions for purely strategic purposes" *Id.* at 1175. We contend that this motion is precisely such a strategic maneuver, unsupported by the requisite factual basis. The court further clarified that disqualification "could not be supported by the mere possibility of a conflict" *Id.* at 1175.

The *Estrada* court also highlighted the importance of preserving a client's right to counsel, noting that "there must be a balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards" (632 F. Supp. at 1175). Disqualification, the court observed, "would often unfairly deny a litigant the counsel of his choosing" *Id.* at 1175). In conclusion, *Estrada v. Cabrera* provides compelling authority to deny the defendants' motion.

Herein, Plaintiffs Puerto Rico Soccer League, represented by Joseph Marc Serralta Ives, Joseph Marc Serralta Ives, in his individual capacity, Maria Larracuente, in her individual capacity, and Futbol Boricua (FBNET), represented by Edwin Jusino, entered into a Representation Agreement and Fee Schedule with their counsel, Mr. Reyes and Mr. Olmo-Rodriguez, on June 25, 2023. Within same, at paragraph 8, Plaintiffs agreed to the following:

> *The Client(s) understand that Ibrahim Reyes is an attorney representing me, and also Co-Chairman, Chief Legal Officer, and shareholder of Puerto Rico Soccer League, one of the plaintiffs herein, and Jose R. Olmo-Rodriguez is an attorney representing me, and also one of the plaintiffs herein. I waive any potential conflict of interest and trust their decision making is in the best interest of all plaintiffs herein.*

2. **Other Citations Are Accurate and Relevant**

Defendants' list of "incongruencies" (Dkt. No. 178-1 at 5) exaggerates minor issues:

　i. *Herrera-Venegas v. Sánchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982): Cited for § 1654's self-representation right (Dkt. No. 174 at 3), it holds parties may proceed pro se or through

5

counsel, supporting Mr. Olmo. Defendants claim it's "unrelated" (Dkt. No. 178-1 at 5), but its principle applies. "By law an individual may appear in federal courts only pro se or through legal counsel. 28 U.S.C. § 1654." *Id.* at 41.

ii. *Fiandaca v. Cunningham*, 827 F.2d 825, 829 (1st Cir. 1987): Cited for tactical misuse of disqualification (Dkt. No. 174 at 2-7), it warns against harassment, directly relevant here. Defendants deny the quotes (Dkt. No. 178-1 at 5), yet *technique of harassment* appears at 827 F.2d 830-831. "Absent some evidence of true necessity, we will not permit a meritorious disqualification motion to be denied in the interest of [*831] expediency unless it can be shown that the movant strategically sought disqualification in an effort to advance some improper purpose. Thus, the state's motivation in bringing the motion is not irrelevant; as we recognized in *Kevlik*, "disqualification motions can be tactical in nature, designed to harass opposing counsel.""

Further, the Defendants' disqualification motion cannot be viewed in isolation. On March 6, 2025, Defendants filed not only the motion to disqualify (Dkt. No. 164) but also: (1) a Joint Motion for Protective Order Limiting the Scope of Discovery (Dkt. No. 168), (2) a Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order (Dkt. No. 169), and (3) FIFA's and CONCACAF's Responses and Objections to Plaintiffs' First Set of Requests for Production. This synchronized barrage of filings, all aimed at stalling or narrowing discovery, suggests a coordinated strategy to avoid producing documents that could prove Plaintiffs' allegations of market exclusion and monopolistic practices by Federación Puertorriqueña de Fútbol (FPF), FIFA, and CONCACAF. For example, FIFA's responses to all 45 of Plaintiffs' document requests (dated March 6, 2025) uniformly assert that production is "improper" under Swiss law and the Hague Convention,

deferring substantive responses until a discovery process is "finally determined." Similarly, CONCACAF's responses (also dated March 6, 2025) offer only general objections, reserving specific responses pending the outcome of Defendants' protective order motions. These blanket refusals to engage with discovery—filed the same day as the disqualification motion—demonstrate that Defendants are buying time. By seeking to remove Plaintiffs' counsel, who have diligently pressed these requests, Defendants aim to disrupt Plaintiffs' momentum and force a reset of the litigation, all while avoiding the production of potentially incriminating evidence. Defendants' refusal to produce even a single document in response to Plaintiffs' requests—coupled with their push to disqualify counsel—hints at the potency of the evidence Plaintiffs seek. The Third Amended Complaint (Dkt. No. 33) alleges that Defendants conspired to exclude Puerto Rico Soccer League (PRSL) from the soccer market in Puerto Rico, manipulating affiliation processes and leveraging FIFA and CONCACAF's authority to suppress competition. Plaintiffs' discovery requests—e.g., communications between FIFA, CONCACAF, and FPF about PRSL's exclusion (Request No. 3), FIFA's policies on league affiliations (Request No. 2), and financial support to FPF (Request No. 11)—are tailored to uncover evidence of this unlawful conduct under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1-2). Rather than engage with these requests, Defendants pivot to an attack on Plaintiffs' counsel, alleging conflicts under Model Rules 1.7 and 3.7. Yet, their motion conspicuously avoids addressing the substance of the discovery sought, focusing instead on speculative harms (e.g., counsel's "personal interests" or potential testimony). This sidestepping suggests Defendants fear that responsive documents—like internal FIFA memoranda on PRSL's exclusion or FPF's coordination with FIFA/CONCACAF—could substantiate Plaintiffs' claims of a "restraint

of trade" or "monopolization." Courts have recognized that motions to disqualify can serve as "a litigation tactic aimed at gaining a strategic advantage," particularly when timed to disrupt discovery. See *Rivera Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d 108, 110 (D.P.R. 2021) (noting disqualification motions must balance client choice with judicial integrity, not serve tactical ends). Here, the timing and context scream strategy, not ethics. Granting Defendants' motion would hand them an unearned victory, delaying discovery and forcing Plaintiffs to expend resources securing new counsel midstream. This case, still in its early stages (discovery commenced barely a month ago, per Dkt. No. 154), hinges on Plaintiffs' ability to access Defendants' records promptly. The Sherman Antitrust Act demands robust discovery to unearth evidence of anticompetitive intent and effect—evidence uniquely within Defendants' control. Defendants' proposed stay of discovery pending disqualification (Dkt. No. 167) would freeze Plaintiffs' efforts, potentially allowing Defendants to further obscure their conduct—e.g., through witness intimidation, as already alleged with Lionel Simonetti (Dkt. No. 177 at 2-3). Moreover, Defendants' claim of "irreparable harm" from counsel's continued representation rings hollow. They assert privilege concerns and competitive risks, yet offer no concrete evidence that counsel's dual roles have prejudiced them. This Court has held that disqualification requires evidence of a conflict, not mere speculation. *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D.P.R. 1995). Defendants fall short of this standard, relying instead on hypotheticals to justify their motion while dodging discovery obligations. Defendants' sanctimonious appeal to "the integrity of the legal system" (Dkt. No. 164 at 4) collapses under scrutiny of their own actions. Plaintiffs' Supplement (filed March 13, 2025) documents an incident on February 19, 2025, where an FPF agent

8

intimidated witness Lionel Simonetti to deter his testimony (Dkt. No. 177, at 2-3). This conduct—potentially violating Local Rule 83E and ABA Model Rule 4.4(a)—casts doubt on Defendants' sincerity. A party that pressures witnesses cannot credibly invoke ethics to disqualify counsel, especially when doing so shields them from discovery that might corroborate such misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (courts may address bad-faith conduct affecting litigation). Even if Defendants' ethical concerns were genuine, they overstate the conflicts under Model Rules 1.7 and 3.7. Mr. Olmo, a named plaintiff, and Mr. Reyes, with ties to PRSL, have aligned interests with all Plaintiffs—to dismantle Defendants' monopoly. No evidence suggests their representation materially limits other Plaintiffs' interests; indeed, all Plaintiffs consented to this arrangement.

As for Rule 3.7, counsel have offered to engage trial co-counsel if testimony becomes necessary, a solution courts have accepted. *See Hill v. Culebra Conservation & Dev. Auth.*, 599 F. Supp. 2d 88, 95 (D.P.R. 2009) (permitting lawyer-witnesses pre-trial if not trial counsel). Notably, FPF Defendants' counsel represented the plaintiffs therein, moved to disqualify defense counsel, and should be aware that the court found that "[t]he balance of the interests involved as well as the hardship and financial burden disqualification would entail does not warrant the immediate termination of [defendants'] choice of counsel." *Id.* at 94. The Hill court further found that "Model Rule 3.7, in its current form, is limited to representation at trial. Model Rule 3.7(a) (2002)." *Id.* at 95. "The First Circuit has observed that these concerns "are absent, or at least greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case. Defendants here have asserted that if the case proceeds to trial, Géigel will not

9

represent defendants and attorney Rodriguez will represent defendants at trial. Thus, so long as Géigel does not act as trial counsel, the purposes of Rule 3.7 will be served. Therefore, the motion to disqualify based on rule 3.7 is DENIED, provided, however, that Géigel is not permitted to represent the government defendants at trial." *Id.* at 95. Defendants' refusal to accept this compromise further exposes their tactical intent. Defendants' motion to disqualify is a smokescreen to avoid discovery that could prove their Sherman Antitrust Act violations. Its timing, paired with their evasive discovery responses and pending protective order motions, reveals a strategy to delay and disrupt rather than resolve legitimate ethical concerns. This Court should deny the motion, reject the requested stay, and compel Defendants to respond to Plaintiffs' discovery requests forthwith. Anything less rewards gamesmanship over justice.

iii. *In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988): Cited for requiring "actual prejudice" (Dkt. No. 174 at 2, 4-6), it rejects speculative conflicts, aligning with Plaintiffs' stance. Defendants misread the quote's absence (Dkt. No. 178-1 at 5), but the principle holds at 859 F.2d 1026. "Despite these legitimate concerns we cannot say that there exists an actual, or even a serious potential for conflict of interest on the present state of the record. Although the district court stated that it had found an actual conflict of interest, it did not identify any specific conflict, actual or potential." *Id.* at 1026.

iv. *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F. Supp. 253, 256 (D.P.R. 1995): Cited for "clear and convincing" burden (Dkt. No. 174 at 2), it's on point. Defendants dispute quotes (Dkt. No. 178-1 at 5), but the standard is clear.

v. *Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984): Cited for "high standard" and counsel choice (Dkt. No. 174 at 2, 4-7), it's foundational. Defendants challenge quotes

(Dkt. No. 178-1 at 5), but *particular deference* appears at 724 F.2d 850. "As pointed out earlier, a criminal case requires a stringent analysis because of the sixth amendment right to counsel. In a civil case, however, where there are the two competing interests, choice of counsel and the protection of a privileged communication, we lean toward the protection of the communication, unless, of course, the witness voluntarily waives it." *Id.* at 850.

vi. *Culebras Enterprises Corp. v. Rivera-Ríos*, 846 F.2d 94, 97 (1st Cir. 1988): Cited for Rule 3.7 timing (Dkt. No. 174 at 2, 4-7), it delays disqualification until necessity, supporting Plaintiffs. Defendants deny quotes (Dkt. No. 178-1 at 5), but the *extreme sanction* notion is at 846 F.2d 97. "It is clear, however, that, when sanctioning an attorney for violating the advocate-witness rule, a district court must strike a fair balance between a party's right to select the lawyer of his preference[1] and the objectives of the advocate-witness rule under the facts of the particular case. *Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir.1982); *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 717 (6th Cir.1983) (Engel, J., concurring in part and dissenting in part). See also *Security General Life Insurance v. Superior Court*, 718 P.2d 985, 988 (Ariz.1986)." *Id.* at 97.

Minor paraphrasing or citation slips (e.g., exact wording) do not negate these cases' applicability. The First Circuit tolerates such errors absent prejudice. *See One Parcel*, 942 F.2d at 79 (focus on substance, not form). Defendants' AI usage theory (Dkt. No. 178-1 at 5-6) is speculative and irrelevant—accuracy, not source, matters. "Elisa originally claimed entitlement to the property through a marital equitable interest as established by Rhode Island General Laws 15-5-16.1. Although this was later held to be an improper basis for her claim, at this initial stage it did

---

[1] A party's normal right to be represented by counsel of his or her own choosing is recognized in 28 U.S.C. Sec. 1654 (1982), which states, In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

raise questions about the possibility of an equitable interest in the property acquired through some unwritten marital agreement. See *Miscellaneous Jewelry*, 667 F.Supp. at 236 ("Congress [has] directed that '[t]he term 'owner' should be broadly interpreted'") (quoting Joint Explanatory Statement of Title II and III, P.L. 95-633, 95th Cong.2d Sess., reprinted in 1978 U.S. Code Cong. & Admin. News 9496, 9518, 9522). It was not, therefore, an abuse of discretion for the district court to accord Elisa the opportunity to prove her claim at trial." *Id.* at 79. The court focused on substance, not form.

**C. Defendants' Ethical Accusations Are Baseless and Do Not Justify a Reply**

Defendants' call for disciplinary action under Local Rule 83E (Dkt. No. 178-1 at 6-7) rests on their flawed caselaw critique. *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), involved fabricated cases with no analogs; here, Plaintiffs' cases exist and apply. No ethical breach under Model Rule 8.4(c) (dishonesty) occurs—errors, if any, are inadvertent, not deceitful. *See In re Grand Jury Proceedings*, 859 F.2d at 1025 (requiring "intentional deceit"). Defendants' Reply adds no new evidence, only hyperbole, making it unnecessary.

Unlike the circumstances in *Mata v. Avianca, Inc.*, this error was neither willful nor the product of fabricated authorities generated by artificial intelligence. Upon discovering the mistake—prompted by Defendant's Joint Motion for Leave to File Reply briefs and this Court's subsequent Orders—counsel promptly investigated, corrected the record, and now relies solely on verifiable, authentic judicial precedents. Further, in *Mata v. Avianca, Inc.*, the court sanctioned the attorneys for submitting an opposition brief citing seven nonexistent cases, fabricated by ChatGPT, and for doubling down on those falsehoods through a false affidavit and evasive responses to judicial orders. *Id.* at 448-49. Here, the circumstances are markedly different. Plaintiffs' filing contained few errors, all unintended, that did not advance false or frivolous arguments unsupported

12

by law. Unlike *Mata*, this was not a deliberate fabrication. Following Defendants' Joint Motion for Leave to File Replies, counsel immediately investigated, confirmed the mistake, and withdrew reliance on the erroneous citations by filing a Memorandum addressing its good and valid caselaw, and attaching Exhibits A-C, each Exhibit a Response to Defendants' three Motions for Leave to File a Reply brief. This Amended Memorandum cites only authentic, verifiable authorities, reflecting a reasonable inquiry under Rule 11, Fed. R. Civ. P. The *Mata* respondents' willful misconduct—submitting seven fake cases, ignoring warnings, and filing a false affidavit—stands in stark contrast to counsel's prompt correction here. This Court should not penalize Plaintiff for isolated, unintentional errors that have been rectified.

**D. The Court Has Sufficient Briefing to Decide**

Defendants' Motion to Disqualify (Dkt. No. 164) and Plaintiffs' Opposition (Dkt. No. 174) fully frame the issues—Rule 1.7 conflicts, Rule 3.7 timing, and hardship. The Reply (Dkt. No. 178-1) offers no new facts or law beyond disputing Plaintiffs' authorities, which are sound. Further briefing risks "endless motion practice" the First Circuit disfavors. *One Parcel*, 942 F.2d at 79. Defendants' page-limit request (Dkt. No. 178 at 3) underscores their intent to belabor, not clarify.

## IV. CONCLUSION

Defendants' Motion for Leave lacks good cause under Local Rule 7(c). Their Reply raises no new matters, and their caselaw critique misfires—almost all of Plaintiffs' citations are accurate, applicable, and contested only by Defendants' disagreement, with the exception of two citations. The Court should deny leave and resolve the disqualification motion on the existing record.

WHEREFORE, Plaintiffs respectfully request that the Court DENY Defendants' Motion for Leave to File Reply (Dkt. No. 178).

Dated: March 18, 2025

Respectfully submitted,

<u>/s/ José R. Olmo-Rodríguez</u>
José R. Olmo-Rodríguez
USDC PR 213405
261 Ave. Domenech, SJ PR 00918
787.758.3570/jrolmo1@gmail.com

<u>/s/ Ibrahim Reyes</u>
Ibrahim Reyes Gándara
Florida Bar No. 581798
REYES LAWYERS, P.A.
236 Valencia Avenue
Coral Gables, FL 33134
Tel. 305-445-0011
Fax. 305-445-1181
Email: ireyes@reyeslawyers.com
Admitted *pro hac vice*

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed this document with the Clerk of Court using CM/ECF/PACER, which will send a notice of such filing to all attorneys of record in this case.

<u>/s/ Jose R. Olmo-Rodríguez</u>
José R. Olmo-Rodríguez, Esquire

<u>/s/ Ibrahim Reyes</u>
Ibrahim Reyes, Esquire