## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, JUAN M. CORNEJO, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACION PUERTORRIQUENA DE FUTBOL, INC., IVAN RIVERA-GUTIERREZ, JOSE "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CANETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL ACTION NO. 23-1203-RAM |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM SHOWING CAUSE WHY SANCTIONS SHOULD NOT BE LEVIED

**TO THE HONORABLE COURT**:

**COME NOW** Federación Puertorriqueña de Futbol, Inc. ("FPF"), Iván Rivera-Gutierrez, José "Cukito" Martinez, Gabriel Ortiz, Luis Mozo Cañete (together with the foregoing, "FPF Defendants"), Fédération Internationale de Football Association ("FIFA"), and Confederation of North, Central America and Caribbean Association Football ("CONCACAF"), (together, "Defendants"), through their undersigned counsel, and for the reasons set forth below, hereby submit the following Response to Plaintiffs' Memorandum Showing Cause Why Sanctions Should Not Be Levied (Dkt. No. 190,

"Memorandum" or "Mem.").

## I.    INTRODUCTION

Plaintiffs' memorandum purportedly "showing cause" as to why sanctions should not be levied against them instead shows *more* cause as to why they should be sanctioned. Indeed, Plaintiffs' memorandum doubles down on their misconduct, continuing to include non-existent quotations and cases and asserting contrived excuses for their prior false statements that "show" only one thing: Plaintiffs counsel have no intention of changing course and abiding by the rules of professional conduct or the Federal Rules of Evidence in this case. While that is, of course, disappointing, it is also unsurprising, given the severe and irreconcilable conflicts of interest Plaintiffs' counsel have as interest-holders in PRSL and future fact witnesses in this case (as set forth in Defendants' Motion to Disqualify). For the foregoing reasons and as set forth below, Defendants respectfully submit that Plaintiffs' counsel failed to show cause as to why sanctions and/or other significant disciplinary action should not be levied against them, and instead confirmed that they should. Defendants also respectfully submit that the exhibits attached to Plaintiffs' Memorandum are improper and should be struck by the Court.

## II.    BACKGROUND

On March 9, 2025, Plaintiffs filed three briefs in opposition to three separate motions filed by Defendants less than seventy-two (72) hours earlier. All three opposition briefs were sanctionable on their face. In total, Plaintiffs cited four cases that did not appear to exist, attributed dozens of "quotes" to cases in which those quotes do not appear, and cited to almost exclusively inapposite case law. In response to Defendants' reply briefs pointing out these flaws, the Court conducted an independent review, and concluded that

"Plaintiffs' motions . . . contain multiple citations that are incorrect, do not contain the quotes or content cited to, and reference cases that cannot be located and thus presumably do not exist." Dkt. No. 187.

The Court ordered Plaintiffs to file a "memorandum showing cause as to why sanctions should not be levied against them for violations of the aforementioned rules of professional conduct and of Fed. R. Civ. P. 11(b)(2)" by March 21, 2025. *Id.* On May 21, 2025, Plaintiffs filed a "Memorandum Showing Cause Why Sanctions Should Not Be Levied" (Dkt. No. 190) that, in turn, attaches 30-plus pages of proposed "oppositions" to Defendants' motions for leave to file replies, motions which the Court had already granted three days prior (Dkt. No. 182).

Ethical attorneys faced with this Court's order would be expected to withdraw the sanctionable filings, admit their conduct, and offer a credible, transparent explanation for it. Plaintiffs' Memorandum and accompanying materials do the opposite. Instead, Plaintiffs unequivocally state AI "was not" used to "conduct legal research," and excuse their brazen misconduct as mere "clerical" errors as a result of "time pressure." Mem. at 14. That explanation facially lacks credibility for at least three reasons. First, Plaintiffs filed their briefs twelve (12) days *before* their March 21 deadline, belying any claim of time pressure. Second, Plaintiffs' counsel cannot explain the missing case that was found only by ChatGPT—indeed they cannot explain most of the missing cases and nonexistent quotations at all. Third, and worse still, Plaintiffs' Memorandum itself contains *new* defective citations and nonexistent quotations.

It now appears that Plaintiffs not only used generative artificial intelligence without appropriate oversight in their original briefs, but also *continued* to do so in drafting their Memorandum, all while flatly denying that fact to the Court.

## III.    PLAINTIFFS' MEMORANDUM SHOWING CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED DOUBLES DOWN ON FALSE CITATIONS

### a.  Plaintiffs Improperly Attempt, and Fail, to Rehabilitate Their Briefs

Plaintiffs argue that they simply mis-typed the respective reporter cites, names, and courts for the missing cases in their at-issue briefs, and that even where quotations were absent, the general meaning conveyed by those quotations was correct.   Plaintiffs' explanations lack credibility on their face and, even more egregiously, are buttressed by *more* erroneous cites and nonexistent quotations.

*First,* Defendants' Reply briefs (Dkt. Nos. 183–185) noted that Plaintiffs cited to four cases that did not appear to exist at all, specifically identifying *United States* v. *Gannett Co.*, 835 F.2d 392 (1st Cir. 1987); *Healey* v. *Gonzalez*, 747 F.3d 111 (1st Cir. 2014); *Sullivan* v. *Taglianetti*, 588 F.2d 1355 (1st Cir. 1978); and *Estrada* v. *Cabrera*, 632 F.2d 1007 (1st Cir. 1980).   Plaintiffs' explanations for all four case citations are implausible.

Plaintiffs describe *Gannett*—which Defendants could only find on ChatGPT—as "an inadvertent error" and claim that it was "likely a conflation with another case"  Dkt. No. 190-2 at 5.[1]  But Plaintiffs cannot explain why ChatGPT was able to independently

---

[1] As discussed *infra*, Plaintiffs' "Exhibit B" is styled as an opposition to Defendants' motion for leave to file a reply (Dkt. No. 179) despite the Court already having granted Defendants' motion.  Dkt. No. 182.  With respect to Exhibit B, Defendants further note that Plaintiffs inexplicably claim that Defendants "did not specifically challenge citations in" their at-issue reply (Dkt. No. 179-1) despite Defendants clearly calling out four cases just in the first paragraph *alone* of the reply's introduction.  Mem. at 9.

generate the exact same fictional case in response to the reporter cite Plaintiffs used, or what case Plaintiffs purportedly "conflat[ed]" *Gannett* with.  Likewise with *Sullivan*, Plaintiffs claim that it was just a "mis recalled case," without any explanation for what that could possibly mean, and what case they thought they had "recalled."  Mem. at 7.  And as with *Gannett*, Plaintiffs argue (in improper Exhibit C) that they "conflated [it] with another standing case," but do not identify what standing case that could possibly be.  Dkt. No. 190-3 at 6.

Plaintiffs' purported explanations for *Estrada* and *Healy* fare no better.  Plaintiffs claim that they made "clerical" errors misstating the relevant court (as to *Estrada*) and the case name (as to *Healey*).  Mem. at 7.  Remarkably, however, Plaintiffs' new citation for *Healey* v. *Gonzalez*, which Plaintiffs claim was intended to reference "*Healy* v. *Spencer*," now directs to an entirely different case, *Calderon Serra* v. *Banco Santander Puerto Rico*, 747 F.3d 1 (1st Cir. 2014), that has nothing to do with the instant case and is referenced nowhere in the Memorandum.  And while Defendants found a "*Healy* v. *Spencer*" at a different reporter citation, 453 F.3d 21 (1st Cir. 2006), that case concerns a *Brady* challenge brought by a convicted defendant post-trial, and has nothing to do with civil discovery or the proposition Plaintiffs attribute to it.  Similarly, while the citation for *Estrada* is now correct, the case is markedly off-point.  *Estrada* concerned disqualification on the basis that counsel's firm had previously been adverse to their client, which is irrelevant to all three of Defendants' pending motions.  *Estrada* v. *Cabrera*, 632 F. Supp. 1174, 1176 (1st Cir. 1980).  Moreover, Plaintiffs have not explained or addressed why or how they managed to quote non-existent language from that case in their original briefs.

Plaintiffs' submission of multiple cases that do not exist, their inability to explain such submissions, and their new submission of "corrected" citations in the form of improper exhibits that are *still* defective, is sanctionable. *See Mata* v. *Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or establishing new law."). Plaintiffs' claim that they did not use ChatGPT or any other AI program to generate their citations and arguments is irrelevant because they have "wasted the Court's time by requiring it to check [their] false and misleading citations." *See Crespo* v. *FNU Pabon-Charneco*, 2025 WL 835875 at *3 (D.P.R. March 17, 2025) (warning *pro se* counsel that given the "misleading and factitious citations" the court may impose filing restrictions "regardless of whether he drafted the motion by himself or used an AI platform," and noting that such conduct would subject "a licensed attorney-at-law" to "significant sanctions").

*Second*, as Defendants showed, Plaintiffs proffered **<u>numerous</u>** quotations, bounded by quotation marks, that do not exist in the cases cited. Plaintiffs' Memorandum does not meaningfully engage with or credibly explain how that happened. Instead, Plaintiffs argue that "[a]ny discrepancies (e.g., exact quotes) are minor interpretive variations," and that the substance of the quotes are still accurate—in other words, Plaintiffs argue that their nonexistent quotations are "[m]inor paraphrasing" reflecting "legal interpretation." Mem. at 7, 9. That is simply implausible.[2]

---

[2] For example, Plaintiffs include the citation "*DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (noting antitrust claims often require "exploration of the conspirators' minds and actions")" in their opposition to defendants' joint motion for protective order limiting the scope of discovery but this language does not exist in the cited

As a preliminary matter, across three briefs, Plaintiffs submitted **<u>dozens</u>** of quotations from thirteen different cases that do not appear in those cases.[3] That is a telltale sign that counsel submitted briefs "without reading the cases cited" or otherwise "failed to determine that the argument [they] made was legally tenable." *Gauthier* v. *Goodyear Tire & Rubber Co.*, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024). Notably, even "liberally us[ing] ellipses in order to change or misrepresent a court's holding" can be grounds for sanctions, and Plaintiffs' submissions go well beyond that. *Avianca*, 678 F. Supp. 3d at 460 (internal quotation and citation omitted).

But even more remarkably, Plaintiffs' Memorandum not only reiterates nonexistent quotations—it adds more. *See* Mem. at 6 (reiterating non-existent quotations from *Grand Jury* and *Polyagro*); 9–10 (reiterating still-non-existent portions of quotations from *Liggett* and *Cryovac*, and submitting a new, non-existent quotation for *Poliquin*). In any event, for all the reasons outlined in Defendants' motions, even if the incorrect quotations are disregarded, the cases they purportedly came from are inapposite and/or do not support

_____

decision. Dkt. No. 175 at 4. Plaintiffs claim that this "paraphrase . . . is a fair gloss" but the words "exploration," "conspirators," and "minds" do not appear at all in the decision. Dkt. No. 190 at 8. Furthermore, Plaintiffs argue that *DM Research* supports their argument that "this Court should permit expansive discovery" in antitrust cases but *DM Research* has nothing to do with the scope of discovery. *Id.* In the cited case the plaintiff appeals the court's dismissal of their case for failure to state a claim and the court notes that when considering a motion to dismiss they must "accept the facts as alleged" since the plaintiffs have not yet engaged in discovery. *DM Rsch., Inc.* v. *Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999). The decision contains no further discussion about the scope of discovery or the appropriate number of witnesses.

[3] As noted *supra*, while Plaintiffs correct their citation to *Estrada* v. *Cabrera* such that the case appears to exist, the case is off point, and the attributed quotations are not in that case either. *Compare* Dkt. No. 174 at 2, 3, 5, 7 (offering five purported quotations from *Cabrera*) *with Estrada* v. *Cabrera*, 632 F. Supp. 1174 (D.P.R. 1986) (submitted by Plaintiffs at Mem. at 17) (not containing any of the quoted language).

Plaintiffs' oppositions in substance.  Defendants respectfully refer the Court to their Reply briefs for detailed discussions on this point.

As set forth in Defendants' reply briefs, case law clearly establishes that these pervasive issues in Plaintiffs' memorandum warrant sanctions.  Dkt. Nos. 183 at 2–3, 184 at 6.  And now, Plaintiffs' contrived excuses and failure to "candidly acknowledge and correct the fictitious case[s] and quotation[s]" amounts to "knowing and willful misrepresentation with the intent to mislead" that further warrants sanctions.  *See United States* v. *Hayes*, 2025 WL 235531, at *10 (E.D. Cal. Jan. 17, 2025) (sanctioning counsel for failing to acknowledge that "the quotation is not from any case" and instead claiming that the issue was an "inadvertent citation error" in their response to an order to show cause as to why sanctions should not be issued).

### b.  Plaintiffs Offer No Legal or Factual Basis to Avoid Sanctions

Plaintiffs also attempt to assert various arguments as to why their conduct is not sanctionable under Model Rules 1.1 and 3.3, and Federal Rule 11, but none suffice.

*First,* Plaintiffs argue that Model Rule 1.1 is not applicable because the "substance" of their filings demonstrated "competence" even if the filings' "form" did not.  As a preliminary matter, for the reasons set forth herein and in the Replies, the briefs do not demonstrate competence in either form *or* substance.  Indeed they are littered with inaccurate citations and nonexistent case law and quotes.  Moreover, Plaintiffs rely solely on one cite to an entirely inapposite (arguably nonsensical) case for the proposition that there is a priority of substance over form such that they should not be held accountable here.  Specifically, Plaintiffs cite *United States* v. *One Parcel of Real Property*, 942 F.2d 74, 79 (1st Cir. 1991).  But neither the pincited section, nor any other section of that case, applies, and Model Rule 1.1 is not even mentioned let alone at issue in the case at all.

Indeed, *One Parcel* is a civil forfeiture action brought by the government against the wife of a convicted drug dealer, in which (in a different section than the one Plaintiffs pincited) the Court decided to permit a belated filing that it determined sufficiently put the government on notice of the claim, despite that it was not verified as required. *Id.* at 77-78. That is a far cry from the case here, where Plaintiffs' substantive errors continue to pervade their briefs. *See United States* v. *Pomales-Lebron*, 513 F.3d 262, 270 (1st Cir. 2008) (explaining that counsel's failure to take "immediate corrective action . . . to make amends even after the Order to Show Cause [was] issued" and their "nonsensical" response was a violation of their duty of competence, diligence, and candor).

*Second*, Plaintiffs contend that the purported "clerical" errors in their briefing are not sanctionable because they are the product of Plaintiffs' attorney Mr. Ibrahim Reyes's preparation for trial scheduled to begin on March 11, 2025. Mem. at 2. As a preliminary matter, it is not even clear *that* is true. The docket for the supposed case *Orengo Investments, LLC* v. *Lubai Consulting, LLC* (Case No. 2023-017357-CA-01), reflects that the Florida state court in that matter is in the process of rescheduling dates for that trial. Indeed, Mr. Reyes filed a notice of unavailability on March 11, 2025 noting times he would not be available for the rescheduled trial in that case. *Id.* at Dkt. No. 61. And even if Mr. Reyes had been busy with that trial, the Court provided counsel until March 21, 2025 to file responsive briefs, and Plaintiffs filed all three opposition briefs 12 days earlier for no ascertainable reason. Dkt. Nos. 174, 175, 176. If Mr. Reyes needed even *more* time to file opposition briefs, he could have moved the Court for an extension (to which Defendants would not have objected at the time). Alternatively, Mr. Olmo could have reviewed the filings (something Mr. Olmo should have done in any event given Mr. Reyes' *pro hac vice*

status in this case).  Regardless, Mr. Reyes's alleged concurrent trial preparation is no excuse for a violation of Rule 1.1.  *See Maupin* v. *U.S. Dep't of Energy*, 2005 WL 3211883, at *3 (D.D.C. Nov. 18, 2005) (finding a lack of competence and Rule 1.1 violation due to counsel's improper citations and failure to meet deadlines, despite counsel's "excuses that . . . indicate that she had failed to control her workload").

*Third*, Plaintiffs argue that Model Rule 3.3 is limited to a "knowing falsity" standard and, therefore, sanctions cannot be imposed as a result of their purportedly inadvertent use of incorrect citations.  Mem. at 15.  Plaintiffs are wrong.  The First Circuit has made clear that Rule 3.3 obligates counsel not only to not knowingly misstate law or fact to the court, but to "scrupulously review the record" to ensure their briefing is legally and factually accurate.  *See Pomales-Lebron*, 513 F.3d at 270.[4]  And Plaintiffs cite no case supporting their contrary contention.  Instead, Plaintiffs problematically quote *Polyagro Plastics, Inc.* v. *Cincinnati Milacron, Inc.*, 903 F. Supp. 253 (D.P.R. 1995) for the proposition that a court requires "clear and convincing" intent of falsity to sanction counsel under Model Rule 3.3.  Mem. at 15.  But neither the word "clear," nor the word "convincing," nor the word "intent," nor Model Rule 3.3 appear **anywhere** in that case.  That "counsel failed to recognize the severity of this situation or attempt to make amends even after the Order to Show Cause issued" renders Plaintiffs' "response[] nonsensical" and "deeply troubl[ing]."  *Pomales-Lebron*, 513 F. 3d at 270.

*Finally*, Plaintiffs argue that Rule 11 sanctions should not be imposed because such sanctions "are reserved for egregious violations, not minor errors, and require a showing

---

[4] *Pomales-Lebron* concerned counsel's failure to review the docket for a necessary district court filing, rather than counsel's failure to confirm the accuracy of their own filings, but the point remains.

of objective unreasonableness." Mem. at 18. The law on this point is clear: even *without* the use of artificial intelligence, "[t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation is a[n] . . . abuse of the judicial system, that is subject to [Rule 11] sanction." *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990). Indeed, "Rule 11 creates an incentive to stop, think, and investigate more carefully before serving and filing papers." *Id.*; *see also Carrasquillo* v. *De Joy*, 2024 WL 5322462, at *2 (D.P.R. Oct. 4, 2024) ("Rule 11 sanctions may now be imposed due to incompetence as well as willfulness."). And Courts have issued sanctions in connection with fewer filings that had less errors than those at bar. *See e.g.*, *Bunce* v. *Visual Tech. Innovations, Inc.*, 2025 WL 662398, at *1 (E.D. Pa. Feb. 27, 2025) (issuing sanctions for violations of Rule 11(b) where only two citations in two filing "could not be located on any legal research tool, nor was there a reasonably detectable typographical error in the case citations").

## IV.    PLAINTIFFS' EXHIBITS SHOULD BE DISREGARDED

Plaintiffs' Memorandum attaches three exhibits, styled as "Response in Opposition to Defendants' Motion for Leave to File Reply to" the three Opposition briefs. *See* Dkt. Nos. 190-1, -2, -3. The Court granted Defendants' motions for leave to file replies to all three Opposition briefs, and Defendants had already complied with the Court's orders and filed those briefs on the docket, three days before Plaintiffs filed their Memorandum and accompanying exhibits. *See* Dkt. Nos. 182–185. As a result, Plaintiffs' exhibits should be disregarded in their entirety.

Moreover, despite titling Exhibits A–C as "Opposition[s]" to Defendants' motions for leave, the Proposed Sur-Replies primarily focus on relitigating (a) the Memorandum; and (b) Defendants' positions as to disqualification of counsel, the scope of discovery, and

the proposed discovery protocols. *See, e.g.*, 190-1 at 4 (arguing for the first time that a Representation Agreement between Reyes and Olmo and the other Plaintiffs waived conflicts of interest, without presenting said waiver). In other words, Plaintiffs' Exhibits A through C appear to be disguised attempts to file *sur-replies* without leave of Court. *See* L.R. 7(d).

Had Plaintiffs filed a motion for leave to file those sur-replies, Defendants would have opposed it. "Absent highly unusual circumstances, sur-replies are not favored." *See Aero Union Corp.* v. *Aircraft Deconstructors Int'l LLC*, 2012 WL 3679627, at *9 (D. Me. Aug. 24, 2012). Sur-replies are particularly inappropriate here where Plaintiffs had the opportunity to draft fulsome Oppositions and chose to make false statements to the Court in those Oppositions. To the extent Plaintiffs later formally seek leave to file Exhibits A through C as sur-replies, Defendants respectfully request that the Court deny those motions for leave, or otherwise grant Defendants the opportunity to file fulsome oppositions to each of those motions for leave, given that the would-be sur-replies merely seek to relitigate the same issues that could have been (and in many cases were) litigated in the opposition briefs, and appear to contain the same citation issues as the Oppositions. *See Aero Union Corp.*, 2012 WL 3679627, at *9 (denying leave to file a sur-reply because the arguments raised in the original reply were not "truly new" arguments but rather responses to arguments raised by the non-moving party's opposition). As but one example from each exhibit:

- In Exhibit A, Plaintiffs' sur-reply to the motion to disqualify counsel, Plaintiffs argue that, despite the inaccurate quotations in their opposition, the case *Polyagro Plastics, Inc.* v. *Cincinnati Milacron, Inc.*, 903 F. Supp. 2d 253 (D.P.R. 1995) is "on point" and shows that a court requires "clear and convincing" intent of falsity

in order to sanction counsel under Model Rule 1.1.  Dkt. No. 190-1 at 10.  But the *Polyagro Plastics* decision only deals with disqualification under Model Rule 1.9.

- In Exhibit B, Plaintiffs' sur-reply to the motion for entry of a protective and confidentiality order and Rule 502(d) order, Plaintiffs cite *Gill* v. *Gulfstream Park Racing Ass'n*, 399 F.2d, 401 (1st Cir. 2005) for the principle that the First Circuit "favors efficient case management over protracted motion practice."  Dkt. No. 190-2 at 7.  But the decision does not contain the words "efficient," "case management" or "motion practice."  The only oblique reference to efficiency or a protective order is a sentence indicating that a party may appeal a protective order after refusing to comply with a protective order and being held in contempt.  *See Gill* v. *Gulfstream Park Racing Ass'n., Inc*., 399 F.3d 391, 397 (1st Cir. 2005).

- In Exhibit C, Plaintiffs' sur-reply to the motion for protective order limiting the scope of discovery, Plaintiffs cite "*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litigation*," and claim that their original citation was a "typographical error."  Dkt. No. 190-3 at 3.  However, the new corrected citation they provide, "757 F3d 42" does not refer to any case in the First Circuit.  The language that is quoted in Plaintiffs' sur-reply comes from a District of Massachusetts case by the same name about wrongful death and personal injury.  *See In re New England Compounding Pharmacy, Inc., Prods. Liab. Litig.*, 2014 WL 2040139, at *5 (D. Mass. May 15, 2014).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs have failed to show cause as to why sanctions should not be levied against them, and request that this

Court strike Plaintiffs' new and improper exhibits (Dkt. No. 190-1, 190-2, 190-3), grant

Defendants' motions (Dkt. Nos. 164, 168, 169), and issue any other relief that the Court

deems just and proper.

**RESPECTFULLY SUBMITTED**,

Dated: March 25, 2025

> **ADSUAR MUÑIZ GOYCO**
> **SEDA & PÉREZ-OCHOA, P.S.C.**
> P.O. Box 70294
> San Juan, Puerto Rico 00936-8294
> Tel: 787.756.9000 Fax: 787.756.9010
>
> */s/* Edwin J. Seda-Fernández_____
> Edwin J. Seda-Fernández
> USDC-PR No. 205212
> Email: seda@amgprlaw.com
>
> */s/* Eric Pérez-Ochoa_____
> Eric Pérez-Ochoa
> USDC-PR No. 206314
> Email: epo@amgprlaw.com
>
> */s/* Alexandra Casellas Cabrera_____
> Alexandra Casellas Cabrera
> USDC-PR No. 301010
> Email: acasellas@amgprlaw.com
>
> */s/* Andrés D. Santiago-López_____
> Andrés D. Santiago-López
> USDC-PR No. 309508
> Email: asl@amgprlaw.com
>
> *Counsel for the FPF Defendants*
>
> **FERRAIUOILI, LLC**
> */s/* Roberto A. Camara-Fuertes_____
> Roberto A. Camara-Fuertes
> USDC-PR No. 219002
> Suleicka Tulier-Vazquez
> USDC-PR No. 305111
> P.O. Box 195168
> San Juan, PR 00919-5168

14

Tel: (787) 766-7000
Fax: (787) 766-7001
Email: rcamara@ferraiuoli.com
        stulier@ferraiuoli.com

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
H. Christopher Boehning (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
Email: cboehning@paulweiss.com

*Attorneys for Defendant FIFA*

**O'NEILL & BORGES LLC**
/s/ Salvador J. Antonetti-Stutts____

/s/ Aníbal A. Román -Medina_____
Salvador J. Antonetti-Stutts
USDC-PR No. 215002
Aníbal A. Román -Medina
USDC-PR No. 308410
250 Ave. Muñoz Rivera, Ste. 800
San Juan, P.R. 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: salvador.antonetti@oneillborges.com
        anibal.roman@oneillborges.com

**SIDLEY AUSTIN LLP**
*John J. Kuster (pro hac vice)*
*Jon Muenz (pro hac vice)*
*Amanda M. Blau (pro hac vice)*
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: jkuster@sidley.com
        ablau@sidley.com
        jmuenz@sidley.com

*Attorneys for Defendant CONCACAF*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/Dkt. system which will send notification of such filing to all counsel of record.

Dated: March 25, 2025.
     San Juan, Puerto Rico

/s/Roberto A. Camara-Fuertes
Roberto A. Camara-Fuertes
USDC-PR No. 219002
Ferraiuoli LLC
San Juan, PR 00919-5168
rcamara@ferraiuoli.com
Phone: (787) 766-7000
Fax: (787) 766-7001