IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP, CORP., et al., **Plaintiffs,** v. FEDERACIÓN PUERTORRIQUEÑA DE FUTBOL, et al., **Defendants.** | CIVIL NO. 23-1203 (RAM) |

<u>**OPINION & ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is co-plaintiffs Puerto Rico Soccer League NFP, Corp.; Maria Larracuente; Jose R. Olmo-Rodriguez; Joseph Marc Seralta-Ives; and Futbol Boricua, Inc.'s (collectively, "Plaintiffs") *Memorandum in Compliance* at Docket No. 190 in response to the Court's *Order to Show Cause* at Docket No. 187. For the reasons below, the Court concludes that Plaintiffs failed to show cause and sanctions are warranted.

## I.    BACKGROUND

In response to various motions by Defendants[1], Plaintiffs submitted four filings on March 9 and 13, 2025, namely: *Plaintiffs' Response in Opposition to Defendants' Joint Motion to Disqualify*

---

[1] "Defendants" include Confederation of North, Central America and Caribbean Association Football, Federacion Puertorriquena de Futbol, Federation Internationale de Football Association, Jose Martinez, Luis Mozo-Canete, Gabriel Ortiz, and Ivan E. Rivera-Gutierrez.

*Plaintiffs' Counsel* (Docket No. 174); *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Protective Order Limiting the Scope of Discovery* (Docket No. 175); *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order* (Docket No. 176); and *Plaintiffs' Supplement to Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order* (Docket No. 177) (collectively, the "*Motions*"). On March 17, 2025, Defendants filed a series of motions seeking leave to reply to Plaintiffs' filings at Docket Nos. 174, 175, and 176. (Docket Nos. 178; 179 and 180). In their arguments, Defendants claimed that Plaintiffs had made multiple citation errors and alleged that they had used generative artificial intelligence to write these motions. *See* <u>id.</u>

On March 18, 2025, this Court issued the *Order to Show Cause*, which was amended the following day. (Docket Nos. 181 and 187). The Court stated that the *Motions* contained "multiple citations that are incorrect, do not contain the quotes or content cited to, and reference cases that cannot be located and thus presumably do not exist." <u>Id.</u> The Court asked Plaintiffs to show cause "as to why sanctions should not be levied against them for violations" of Rules 1.1 and 3.3 of the Model Rules of Professional Conduct and of Fed. R. Civ. P. 11(b)(2). <u>Id.</u>

Plaintiffs filed their *Memorandum in Compliance* on March 21, 2025. (Docket No. 190). Plaintiffs assert that they did not use artificial intelligence when drafting the *Motions*, but instead committed various errors due to "human oversight under significant time constraints." Id. at 2. According to Plaintiffs, their citation errors were immaterial and inadvertent; no cases were fabricated, but instead, were misspelled, miscited, or misremembered during the drafting process. *See* id. at 3-13. Additionally, Plaintiffs argue that there is no evidence of artificial intelligence use as there are no "systematic fabrications" of errors. Id. at 14. Plaintiffs claim they have upheld their duty of candor to the Court under Model Rule 3.3, as their errors were unintentional and did not cause "actual prejudice." Id. at 15, 17-18. Plaintiffs assert that they have complied with Model Rule 1.1 as they have provided competent representation and their arguments are rooted in accurate and controlling caselaw, albeit with some citation errors. *See* id. at 16-17. They argue sanctions would be disproportionate given the lack of prejudice and bad faith as well as relatively minor nature of the errors. *See* id. at 15. Finally, Plaintiffs claim that their legal arguments were sufficiently supported as to not violate the requirements of Fed. R. Civ. P. 11(b)(2). *See* id. at 18-19.

## II.  APPLICABLE LAW

Federal court may levy sanctions under Fed. R. Civ. P. 11, which "requires attorneys to take responsibility for the claims and defenses they represent" and make reasonable inquires to ensure that their representations to the courts are "well-grounded in both law and fact." Cruz v. Savage, 896 F.2d 626, 630 (1st Cir. 1990); Fed. R. Civ. P. 11(b). Arguments within a filing should be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Attorneys who violate Rule 11(b) may face sanctions after being given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(c)(1); *see also* Figueroa-Rodriguez v. Lopez-Rivera, 878 F.2d 1488, 1491 (1st Cir. 1988) (citation omitted) (Rule 11 incentivizes attorneys to act "in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system."). A court may initiate sanctions *sua sponte* or on motion. *See* Fed. R. Civ. P. 11(c)(2)-(3). Sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[I]f imposed on motion and warranted for effective deterrence," sanctions can include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Id. Sanctions for

violations of Rule 11(b)(2) are imposed against a party's counsel, not the party. *See* Fed. R. Civ. P. 11(c)(5)(A).

Federal courts also retain the inherent authority and discretion to manage their own affairs, including the levying of sanctions. *See* Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Appropriate sanctions may include assessing "attorney's fees against counsel." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980). This type of fee award "may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108 (2017) (citation and internal question marks omitted). A properly calibrated fee award "covers the legal bills that the litigation abuse occasioned," requiring the sanctioning court "to establish a causal link" between the misbehavior and legal fees incurred by the opposing party. Id. However, in cases where parties act "in complete bad faith," courts may shift more, if not all, of a party's fees. *See* id. at 110-11 (citing Chambers, 501 U.S. at 51, 57-58).

### III. DISCUSSION

The Court is not persuaded by Plaintiffs' arguments. As shown in the Appendix, Plaintiffs' filings were rife with citations for content that did not exist in the underlying opinion and quotations allegedly summarizing or restating the case law, rather than the

exact text of the opinion. The misuse of quotation marks was so prevalent that it was unusual for the Court to find a quotation provided by Plaintiffs within the case it was attributed to. Plaintiffs claim their actions are acceptable "minor paraphrasing" or "minor interpretive variances." (Docket No. 190 at 7, 9). The Court categorically rejects this assertion. When parties present quotations from other cases to the Court, they are indicating that the quoted content **actually exists** and that the Court can rely on their representations. If Plaintiffs wish to paraphrase content, they may do so without the use of quotation marks. Plaintiffs' refusal to recognize the problem with their "interpretive variances" is concerning. Id. at 9.

The Court could not find many of the proffered quotations or their equivalents within the cases they are attributed to. **On occasion, the text of a case relied on by Plaintiffs expressly contradicted or was unrelated to the content it was cited in support of.** Some cases were completely inapposite to the controversy at hand, so while Plaintiffs may have accurately paraphrased portions of an opinion, the opinion dealt with different matters than those at issue in the Motions. For example, Plaintiffs quote Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993) for the proposition that restricting counsel's access to discovery materials requires a "specific demonstration of need." (Docket No. 176 at 4). However, as noted at citation

fifty in the Appendix, that case dealt with a different issue: whether and how material introduced at trial can be protected from disclosure afterwards. In no less than four instances, Plaintiffs say that discovery should be as broad as possible. Regardless of the cases cited, this is not the state of the law in 2025. Fed. R. Civ. P. 26(b)(1) states that discovery must be "relevant to any party's claim or defense and proportional to the needs of the case," a narrower standard than Plaintiffs erroneously and obstinately state.

Citations were incorrectly formatted with incorrect reporter numbers, attributed to the wrong circuits or districts, or provided incorrect party names. **Whether generative artificial intelligence was used or not is immaterial, what matters is that the Plaintiffs provided the Court with a litany of inaccurate information in support of their claims.** For example, Plaintiffs cite to Sullivan v. Taglianetti, 588 F.2d 1355, 1357 (1st Cir. 1978); United States v. Gannett Co., 835 F.2d 392, 395 (1st Cir. 1987); and Healey v. Gonzalez, 747 F.3d 111, 121 (1st Cir. 2014). (Docket Nos. 175 and 176). As discussed in the Appendix, none of these cases exist as cited. The Court could not locate Sullivan v. Taglianetti. Similarly, while the Court has found two antitrust cases from the District of Columbia with similar citations to United States v. Gannett Co., their contents do not align with Plaintiffs' representations. The same is true for Healey v. Gonzalez; while

Plaintiffs identify the case they meant to cite to, that case has nothing to do with the propositions Plaintiffs cite it in support of. These are hardly minor errors.

The Court cannot agree with Plaintiffs that these errors do not violate the Model Rules or Fed. R. Civ. P. 11(b)(2). Model Rule 1.1 requires a lawyer to provide "competent representation" to clients, which requires the "legal knowledge, skill, thoroughness, and preparation reasonably necessary" for representations. Model Rules of Pro. Conduct R. 1.1 (Am. Bar Ass'n). Plaintiffs' counsel cannot be said to have behaved with the requisite "thoroughness and preparation" given their admitted haste in drafting the *Motions* and dozens of errors that resulted. If, indeed, Plaintiffs' errors were not made knowingly, they did not violate Model Rule 3.3, but the breadth of their errors remains striking. Model Rules of Pro. Conduct R. 1.1 (Am. Bar Ass'n). Plaintiffs claim that their counsel was facing tight deadlines, but Plaintiffs could have requested an extension to file the *Motions* and, in any event, submitted these filings well before the deadline imposed by the Court. (Docket Nos. 164; 168 and 169).

Sanctions are appropriate given the extent of the errors in the *Motions* and the subsequent time and energy required by Defendants and the Court to fact-check Plaintiffs' filings. Rule 11(b)(2) provides additional grounds for sanctions as Plaintiffs' counsel cannot plausibly be understood to have made reasonable

inquiries to ensure their representations are "well-grounded in both law and fact." Cruz, 896 F.2d at 630. A simple Google search would have shown the problems in some of Plaintiffs' citations. In other instances, a quick search of the opinion Plaintiffs cited to would have revealed problems. Levying appropriate sanctions here promotes deterrence without being overly punitive, as contemplated by Rule 11(c)(4).

The Court notes that, rather than showing contrition, the *Memorandum in Compliance* strikes a defiant and deflective tone. (Docket No. 190). It also contains more of the errors that plagued Plaintiffs' previous four filings. For example, in the "Legal Standard" section of the memorandum, Plaintiffs cite to two cases for the proposition that sanctions are an "extreme remedy" appropriate for instances of prejudice or bad faith. One case makes no mention of sanctions and neither contain the proffered quote Id. at 3. The Court finds it problematic that Plaintiffs responded to a show cause order to address the problem of multiple inaccurate citations by providing a response containing more erroneous citations.

Given the amount of problematic content in the *Motions* and time required by both Defendants and the Court to address them, the Court concludes that sanctions are appropriate under Rule 11 and the Court's inherent authority. *See* Chambers, 501 U.S. at 43 (noting that federal courts have the inherent ability to issue

sanctions). Plaintiffs' counsels are therefore **ORDERED** to pay the attorneys' fees incurred by Defendants in relation to Plaintiffs' filings at Docket Nos. 174, 175, 176, and 177. Defendants are granted twenty-one days to submit an itemized application for attorney's fees. The Court warns Plaintiffs that if further problems of this nature or gravity happen again, it will move to revoke Mr. Ibrahim Reyes' *pro hac vice* status and refer any implicated attorneys for disciplinary proceedings.

     **IT IS SO ORDERED.**

     In San Juan, Puerto Rico, this 10th day of April 2025.

                  s/Raúl M. Arias-Marxuach
                  UNITED STATES DISTRICT JUDGE

| *Plaintiffs' Response in Opposition to Defendants' Joint Motion to Disqualify Plaintiffs' Counsel* (Docket No. 174) | | |
|---|---|---|
| Citation: | Location: | Issue: |
| 1. <u>Fiandaca v. Cunningham</u>, 827 F.2d 825, 829 (1st Cir. 1987). | Pg. 3, ¶ 2 | Plaintiffs quote this case for the proposition that the First Circuit requires "specific instances" of conflict, not "hypothetical scenarios" to warrant an attorney's disqualification.<br><br>These quotes are not in the opinion, and the opinion does not support the proposition this case is cited for. On page 831, <u>Fiandaca</u> rejects a party's argument that has "simply no evidence" to support it. However, rejecting an argument that provides no evidence in support of its assertions is different than requiring "specific instances" of conflict. The opinion does not provide further statements in support of Plaintiffs' assertion here. |
| 2. <u>Id.</u> | Pg. 5, ¶ 1 | Plaintiffs quote <u>Fiandaca</u> to argue that the First Circuit applies Model Rule 3.7 "narrowly" to avoid "tactical misuse."<br><br>These quotes are not in the opinion and the proposition this case is cited for is not supported by language in the opinion. Page 831 contains somewhat similar language: "disqualification motions can be tactical in nature." However, <u>Fiandaca</u> does not mention Model Rule 3.7, and as discussed previously, it only holds that a party's motivation in bringing motions to disqualify are "not irrelevant" because "disqualification motions can be |

Civil No. 23-1203 (RAM)                                              12

| | | tactical in nature, designed to harass opposing counsel." |
|---|---|---|
| 3. <u>Id.</u> at 829. | Pg. 6, ¶ 1 | Plaintiffs quote this case to state that Defendants' Rule 1.7 claim is "wholly speculative" because they "provide no evidence of [Mr. Reyes having] an ongoing financial stake or divergence from co-plaintiffs' goals."<br><br>This quote is not in the opinion. While the Court does not take issue with the content of Plaintiffs' assertion, the Court finds no language in the opinion to support Plaintiffs' argument here. Citing <u>Fiandaca</u> for this proposition is thus incorrect. |
| 4. <u>Id.</u> at 830. | Pg. 6, ¶ 2 | The parenthetical to this citation states that early disqualification is "unduly punitive" without evidence. This quote is not in the opinion. Plaintiffs use the citation to support their claim that the First Circuit's purported preference for delay over preemptive action is controlling.<br><br>That is not supported by the text of the opinion, as the First Circuit only held that otherwise valid motions for disqualification should not be ignored to save time. As explained at pages 830-31 of <u>Fiandaca</u>, the lower court had recognized a "probable existence of conflict" by plaintiffs' counsel, but denied a motion to disqualify on grounds of "necessity" to avoid further delays and proceed to trial. The First Circuit reversed, finding that "absent some evidence of true necessity, we will not permit a meritorious |

| | | |
|---|---|---|
| | | disqualification motion to be denied in the interest of expediency unless it can be shown that the movant strategically sought disqualification in an effort to advance some improper purpose." |
| 5. Id. | Pg. 7, ¶ 3 | Plaintiffs cite to this case for the assertion that disqualification would unduly prejudice Plaintiffs.<br><br>The proposition is not supported by the opinion because the issue in Fiandaca was that the denial of a meritorious motion for disqualification left the moving party at "significant risk of being prejudiced" by the outcome of the litigation. Here, Plaintiffs are seeking to prevent disqualification, not obtain it. |
| 6. Kevlik v. Goldstein, 724 F.2d 844, 850 (1st Cir. 1987). | Pg. 2, ¶ 1 | Plaintiffs cite this case to claim that the First Circuit demands a "high standard" for disqualification.<br><br>This quote is not in the opinion, and the proposition this case is cited for is not supported by the language in the opinion. This case does involve disqualification and pages 850-51 discuss the "substantially related" test for "disqualification cases involving a conflict of interest based on the actual or potential threat of the violation of the attorney-client privilege." However, the Court finds no equivalent wording describing the standard for disqualification as a high one. |
| 7. Id. | Pg. 2, ¶ 2 | Plaintiffs cite this case to claim a party's choice of counsel is a "valued right," particularly in civil cases, and courts must |

| | | balance it against ethical concerns with "scrupulous care." |
| | | |
| | | These quotes are not in the opinion and the proposition this case is cited for is not fully supported by the language in the opinion. While the Court does not dispute that a party's choice to counsel is valuable, page 848 of the opinion clearly states that unlike criminal cases, civil cases lack the "rigorous sixth amendment protection of the right to the choice of counsel....We think it more important that unethical conduct be prevented than that defendant have an unfettered right to counsel of its choice." The second-to-last paragraph of page 850 makes a similar point— that parties in civil actions have less protection in terms of their choice of counsel. |
| 8. <u>Id.</u> | Pg. 4, ¶ 1 | Plaintiffs quote this case in a parenthetical finding that disqualification of counsel is unwarranted without "demonstrable detriment." |
| | | |
| | | The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. The "substantially related" test for disqualification of counsel used on pages 850-51 does not support Plaintiffs' claim that "demonstrable detriment" is needed for disqualification. Instead, the test states that a "former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are |

| | | substantially related to the matters or cause of action wherein the attorney previously represented" the former client now seeking disqualification. Courts "will assume" that during the first representation, the former attorney received confidential information, but "will not inquire into their nature and extent." This implicitly recognizes that both actual and potential threats of violation of attorney-client privilege can cause disqualification. |
|---|---|---|
| 9. Id. | Pg. 5, ¶ 4 | Plaintiffs use this quote to argue that the First Circuit requires a "specific showing" of conflicting interests, not mere affiliation when determining whether an attorney is conflicted under Model Rule 1.7.<br><br>The quote is not in the opinion and the proposition this case is cited for is not fully supported by language in the opinion. As discussed above, Kevlik applied the "substantially related" test at pages 850-51. Courts applying this test can "assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation" and "will not inquire into their nature and extent." This implicitly rebukes Plaintiffs' assertion that specific evidence of conflicting interests is required for an attorney to be disqualified. |
| 10.  Id. at 851. | Pg. 7, ¶ 1 | Plaintiffs quote this case to argue that Model Rule 3.7(a)(3) exempts counsel from disqualification if it causes |

| | | substantial hardship, which the First Circuit interprets broadly to protect clients from "unnecessary disruption."<br><br>The quote and proposition this case is cited for is not supported by language in the opinion. Despite attributing this to <u>Kevlik</u>, the Court finds no mention of Model Rule 3.7 or its "substantial hardship" provision. Model Rule 3.7 relates to ethical issues arising out of a lawyer serving as an advocate at a trial they are likely to be a witness at, but in this case, the counsel for which disqualification was sought was not testifying at trial. Instead, this case dealt with a conflict between a lawyer's current and former clients. Furthermore, footnote 4 of this case explicitly acknowledges that the Model Rules of Professional Conduct were not the controlling reference in <u>Kevlik</u>. The earlier Model Code of Professional Responsibility was used because it was in effect at the time of the disqualification motion. Although either set of rules would have resulted in the same result, the Model Rules did not govern resolution of this issue. |
| 11.  <u>Id.</u> at 850. | Pg. 7, ¶ 3 | Plaintiffs cite this case for the proposition that no "clear and convincing" Model Rule 1.7 conflict exists.<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. As stated above, the Model Rules of Professional Conduct were not the |

| | | controlling authority in <u>Kevlik</u>. There is also no mention of Model Rule 1.7 in the opinion. <u>Kevlik</u> provides no support for this assertion. |
|---|---|---|
| 12.  <u>Culebra Enters. Corp. v. Rivera-Rios</u>, 846 F.2d 94, 97 (1st Cir. 1988). | Pg. 2, ¶ 2 | Plaintiffs quote this case to argue that the First Circuit views disqualification as an "extreme sanction" that "should be employed only after careful consideration."<br><br>The quotes are not in this case and the proposition this case is cited for is not supported by language in the opinion. The opinion does not use language similar to that quoted by Plaintiffs, nor did it make findings on disqualification of counsel. Instead, <u>Culebra Enters. Corp.</u> dealt with the issues of whether it was proper to sanction attorneys, who expected to testify at trial but still provided pretrial legal work for the plaintiffs, by preventing them from recovering legal fees for their work. It also briefly discussed the ethical standard that should apply when determining whether the attorneys' behavior was ethical. |
| 13.  <u>Id.</u> at 99. | Pg. 4, ¶ 1 | Plaintiffs quote this case to say that informed consent cures Model Rule 1.7 conflicts and that ethical rules are "flexible" when there is no systematic harm.<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. While a client's informed consent is required for a lawyer with a concurrent conflict to continue the representation, the text of |

| | | |
|---|---|---|
| | | Model Rule 1.7(b)(1)-(4) establishes there are three other criteria that must be satisfied for the conflict to be cured. Informed consent cannot unilaterally cure a conflict. Additionally, the Court finds nothing in the opinion discussing Model Rule 1.7 or supporting Plaintiffs' claim that ethical rules can be construed flexibly in the absence of systematic harm. As stated above, _Culebra Enters. Corp._ focused on resolving whether attorneys who expected to testify at trial could recover fees for their pretrial legal work on the same matter. The attorneys had faced sanctions for their purportedly unethical conduct and had lost the challenged fees as a result. |
| 14.  _Id._ at 99-100. | Pg. 4, ¶ 2 | Plaintiffs state that the _Culebra Enters. Corp._ court held that a lawyer-witness may continue pretrial representation, with disqualification deferred until "actual necessity" is shown.<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. However, the opinion made narrower findings, observing that Model Rule 3.7 "is limited to situations where the lawyer-witness acts as trial counsel" at page 99, and noting that ethical concerns of retaining a lawyer-witness are ameliorated "when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case." The court went no further than determining that a lawyer could |

| | | be both called as a witness and work on pretrial legal matters for the same case. The Court sees no language requiring that disqualification be deferred until actual necessity of the lawyer serving as a witness is determined. |
|---|---|---|
| 15.  _Id._ at 100. | Pg. 4, ¶ 2 | Plaintiffs say that the necessity of Mr. Olmo's testimony is untested and, in a parenthetical, state necessity is assessed "in light of available alternatives."<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by the opinion. The Court finds no language that supports this assertion, discusses the need for available alternatives, or establishes a broader benchmark for "necessity." |
| 16.  _Id._ at 99. | Pg. 6, ¶ 1 | Plaintiffs quote this case in a parenthetical stating that ethical rules prioritize "practical outcomes" over rigid bans.<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. The court's actual finding on page 99 was narrower, stating that under Model Rule 3.7, "the prohibition against acting as 'advocate at a trial'" should not be read as "broadly prohibiting the rendition of case-related out-of-court services prior to trial." _Culebras Enters. Corp._ did not make a broader finding that ethical rules prioritize practicality over formality, nor does it support such an assertion. |

| 17. | _Id._ at 100. | Pg. 6, ¶ 2 | Plaintiffs quote this case to claim that the First Circuit requires "actual necessity" for Model Rule 3.7 disqualification, not "potential relevance."

The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. Plaintiffs presumably mean that the First Circuit requires counsel to be a necessary witness in a proceeding (not a potential witness who may be relevant) before they can be disqualified under Model Rule 3.7. However, the Court does not find support for this argument in the opinion. _Culebras Enters. Corp._ did not address disqualification of counsel either, as the attorneys in question had not been disqualified (only subject to financial sanctions in the form of lost fees). The opinion does include the text of Model Rule 3.7 in a footnote but does not discuss the interplay between "necessity" and disqualification under Model Rule 3.7 as represented by Plaintiffs. |
| 18. | _Id._ | Pg. 6, ¶ 2 | Plaintiffs use this case to say that disqualification of counsel is deferred until the necessity of the counsel to testify as a witness is "clearly established."

The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. As discussed above, disqualification was not the issue in this case (which dealt with sanctions), and the Court finds nothing in the |

| | | opinion that supports this assertion. |
|---|---|---|
| 19. <u>Id.</u> | Pg. 7, ¶ 1 | Plaintiffs cite to this case with a parenthetical stating that hardship weighs heavily against disqualification.<br><br>This case cites to and discusses Model Rule 3.7, which holds that a lawyer cannot be an "advocate at a trial in which the lawyer is likely to be a necessary witness except where," *inter alia*, the disqualification of the lawyer would cause "substantial hardship on the client." However, Plaintiffs' citation is not supported by the text of the opinion, which does not specifically hold that hardship weighs "heavily" against disqualification. |
| 20. <u>Id.</u> at 99. | Pg. 7, ¶ 3 | Plaintiffs cite to this case for the proposition that applying Model Rule 3.7 to their counsel now is premature.<br><br>While Model Rule 3.7 is cited to in the opinion, the opinion does not determine when it is likely that a lawyer will be a necessary witness in a trial. Plaintiffs' proposition is not supported by the text of the opinion. |
| 21. <u>Estrada v. Cabrera</u>, 632 F.Supp. 1174 (D.P.R. 1986). | Pg. 2, ¶ 2 | **The case does not exist as cited.** Plaintiffs cite to <u>Estrada v. Cabrera</u>, 632 F.2d 1007, 1012 (1st Cir. 1980). The correct citation is presumably <u>Estrada v. Cabrera</u>, 632 F.Supp. 1174 (D.P.R. 1986), which is not a First Circuit case.<br><br>Plaintiffs' citation quotes this case for the proposition that disqualification of a party's counsel is "not lightly granted," |

| | | but this quote is not in the opinion. Similar wording is found on page 1175. For example, <u>Estrada</u> states: "the rule of disqualification should not be mechanically applied," and "[t]o disqualify a party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict." |
|---|---|---|
| 22. <u>Id.</u> | Pg. 3, ¶ 2 | Plaintiffs state that the <u>Estrada</u> court upheld counsel's representation despite alleged conflicts, finding no "actual showing" of divided loyalty.<br><br>The quote is not in the opinion, but similar wording is found on page 1177. For example, <u>Estrada</u> states: "Under the facts of this case we find that there is no basis for the disqualification of the law firm." However, the proposition this case is cited for is not supported by language in the opinion because the alleged violation in <u>Estrada</u> was evaluated under Rules 1.6, 1.9 and 1.16 of the Canons of the American Bar Association, not the Model Rules of Professional Conduct. |
| 23. <u>Id.</u> | Pg. 5, ¶ 2 | Plaintiffs use this case in a parenthetical stating disqualification requires "tangible harm," not "theoretical risks."<br><br>The quotes are not in the opinion and the proposition this case is cited for is contradicted by language in the opinion. On page 1176, the court states "[t]he relevant test in disqualification cases premised on those grounds [at stake in <u>Estrada</u>] and |

| | | involving a conflict of interest based on the actual or potential threat of the violation of the attorney-client privilege is the 'substantially related' test." The recognition of a "potential" threat undercuts Plaintiffs' assertion that "theoretical risks" could not give rise to disqualification of counsel. There was no support elsewhere in the opinion for Plaintiffs' assertion. |
|---|---|---|
| 24.  Id. | Pg. 7, ¶ 2 | Plaintiffs use this case to argue that delays in filing motions to disqualify signals bad faith and claim that late motions to disqualify are "viewed skeptically."<br><br>The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. While page 1175 acknowledges that motions to disqualify should be approached with "cautious scrutiny" and can be used "for purely strategic purposes," there is no language in the opinion indicating that a party's decision to file a motion to disqualify later on in legal proceedings should be viewed with greater scrutiny than similar motions filed earlier. There is no support for the assertion that delays in filing motions to disqualify "signal bad faith," as represented by Plaintiffs. |
| 25.  Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc., 903 F.Supp. 253, | Pg. 2, ¶ 2 | Plaintiffs quote to this case to say that parties moving for disqualification under the Model Rules of Professional Conduct must show a "clear and convincing" violation that threatens judicial integrity. |

| | | |
|---|---|---|
| 256 (D.P.R. 1995). | | The quote is not in the opinion and the proposition this case is cited for is not supported by language in the opinion. Page 256 recognizes "the protection of the integrity of the judicial process" as one of two competing interests when deciding a motion to disqualify. However, the Court found no language about the standard for a movant's burden of proof in a motion to disqualify that mirrors the "clear and convincing" requirement provided by Plaintiffs. |
| 26. In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988). | Pg. 2, ¶ 2 | Plaintiffs attribute quotes to this case to assert that a party seeking to disqualify counsel must show "actual prejudice" instead of "mere possibility." These quotes are not in the opinion. Similar wording is found on page 1026, but it does not support Plaintiffs' proposition. The First Circuit states that they did not find "an actual, or even a serious potential for conflict of interest" in the record, noting that while "the district court stated that it had found an actual conflict of interest, it did not identify any specific conflict, actual or potential." While the court would not rely on "tenuous inferential relationships" to affirm the district court's order, the language in the opinion still indicates that a potential conflict of interest could suffice for disqualification, provided it is specific enough. Furthermore, pages 1023 and 1024 quote Wheat v. United States, 486 U.S. 153 (1988) for the |

| | | proposition that trial courts can disqualify counsel because of potential conflicts. |
|---|---|---|
| 27. <u>Id.</u> | Pg. 4, ¶ 1 | Plaintiffs quote this case to say that the First Circuit does not let parties "second-guess" opposing co-parties' decision to retain joint counsel unless there is clear abuse.<br><br>The quote is not in the opinion. The proposition this case is cited for is contradicted by language in the opinion. In <u>In re Grand Jury Proceedings</u>, the Government challenged the decision of a defendant and immunized witness to have the same lawyer, without presenting evidence of clear abuse. The district court let the challenge proceed, and although the First Circuit was not convinced the Government met its burden to prove disqualification, the Government was able to "second-guess" the parties' choice of joint counsel. |
| 28. <u>Id.</u> | Pg. 5, ¶ 2 | Plaintiffs quote this case as showing that the First Circuit dismisses privilege gamesmanship concerns (here, Defendants' concerns that Mr. Olmo's dual plaintiff-counsel status could create an unfair advantage in litigation) absent "actual prejudice."<br><br>The quote is not in the opinion and the proposition this case is cited for is contradicted by language in the opinion. Despite Plaintiffs' representations, in this opinion, the First Circuit does not require "actual prejudice" to disqualify a party's attorney. Instead, page |

| | | 1024 states that "a showing of a serious potential for conflict" may lead to disqualification and page 1026 indicates that a "serious potential for conflict of interest" could be grounds for disqualification. |
|---|---|---|
| 29. _Id._ at 1025. | Pg. 5, ¶ 2 | Plaintiffs' parenthetical for this case states that privilege issues are resolved on a "case-by-case" basis, not preemptively.<br><br>This quote is not in the opinion. Similar wording is found on page 1024, which quotes _Wheat_, 486 U.S. at 163: ""The evaluation of the facts and circumstances of each case...must be left primarily to the informed judgment of the trial court." The First Circuit then noted that although _Wheat_ was a criminal case that dealt with a Sixth Amendment issue, the standards may also apply to the grand jury context (as this case involved), at least in part. |
| 30. _Id._ | Pg. 6, ¶ 3 | Plaintiffs cite this case to say the First Circuit requires "intentional deceit" for Model Rule 8.4 violations.<br><br>However, this quote is not in the opinion and the proposition is contradicted by the language of the opinion, which makes no mention of Model Rule 8.4, which covers attorney misconduct. The opinion briefly mentions the Model Code of Professional Responsibility— not the Model Rules of Professional Conduct— and in the context of an attorney's duty of loyalty to a client and duty not to disclose to another confidential information received from a |

| Citation: | Location: | Issue: |
|---|---|---|
| | | client. The issue of attorney misconduct is not addressed. |
| 31. <u>Herrera-Venegas v. Sanchez-Rivera</u>, 681 F.2d 41, 42 (1st Cir. 1982). | Pg. 3, ¶ 3 | Plaintiffs quote this case to assert that the First Circuit recognizes 28 U.S.C. § 1654 as protecting a "fundamental" right to self-representation and, in an accompanying parenthetical, quotes <u>Herrera-Venegas</u> as stating § 1654 ensures litigants "may conduct their own cases." <br><br>These quotes are not in the opinion, and the opinion does not support the proposition Plaintiffs use it in support of. The opinion cites § 1654 for the proposition that "[b]y law, an individual may appear in federal courts only pro se or through legal counsel." However, in <u>Herrera-Venegas</u>, the First Circuit held that a prisoner could not obtain third-party lay representation; § 1654 was used to show that an individual could only appeal in federal court via: (i) pro se litigants or (ii) legal counsel. The decision did not single out self-representation as a fundamental right. |

| *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Protective Order Limiting the Scope of Discovery* (Docket No. 175) | | |
|---|---|---|
| Citation: | Location: | Issue: |
| 32. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978). | Pg. 2, ¶ 2 | Plaintiffs quote this case for the proposition that Fed. R. Civ. P. 26(b)(1) "casts a wide net" for discovery and lets parties pursue discovery that "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." |

| | | These quotes are not in the opinion. However, page 351 discusses the boundaries of discovery under Rule 26(b)(1), stating in part that the rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Be that as it may, as of 2025, discovery is subject to a relevance and proportionality requirement. Fed. R. Civ. P. 26(b)(1). |
|---|---|---|
| 33. <u>In re New England Compounding Pharm., Inc. Prods. Liab. Litig.</u>, No. 13-2419, 2013 WL 6058483 (D.Mass. Nov. 13, 2013). | Pg. 2, ¶ 2 | **The case does not exist as cited.** Plaintiffs cite to <u>In re New England Compounding Pharm., Inc. Prods. Liab. Litig.</u>, 752 F.3d 49, 54 (1st Cir. 2014). The right case is presumably <u>In re New England Compounding Pharm., Inc. Prods. Liab. Litig.</u>, No. 13-2419, 2013 WL 6058483 (D.Mass. Nov. 13, 2013).<br><br>This case is quoted as stating Fed. R. Civ. P. 26 has a "broad sweep." This quote is not in the opinion, but page *3 makes multiple statements of this nature, such as noting that "Rule 26(b)(1) generally permits liberal discovery of relevant information." |
| 34. <u>Id.</u> at 54. | Pg. 4, ¶ 1 | Plaintiffs quote this case to state that Defendants' allegedly exclusionary conduct are "inextricably intertwined" with the alleged antitrust conspiracy, and thus discoverable.<br><br>This quote is not in the opinion, however, there is some support for Plaintiffs' assertions on page *3, which states: "As the |

| | | Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" |
|---|---|---|
| 35. Healy v. Spencer, 747 F.3d 1 (1st Cir. 2014). | Pg. 2, ¶ 2 | **The case does not exist as cited.** Plaintiffs cite to Healey v. Gonzalez, 747 F.3d 111, 121 (1st Cir. 2014). They claim they were referring to Healy v. Spencer, 747 F.3d 1 (1st Cir. 2014).<br><br>Plaintiffs quote this case to describe the liberal bounds of discovery, claiming that relevance should be construed "generously," and discovery should not be limited unless the information sought has "no possible bearing" on the claims or defenses.<br><br>Neither the quotes nor the propositions they are used to support are found in this opinion, and the proffered quote is contradicted by the relevance and proportionality standard for discovery in Fed. R. Civ. P. 26(b)(1). This opinion is about a Brady claim and the Court does not see any support for Plaintiffs' assertions within. |
| 36. In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008). | Pg. 2, ¶ 3 through pg. 3, ¶ 1 | Plaintiffs quote this case to argue that a Fed. R. Civ. P. 26(c) protective order is an extraordinary remedy that requires the moving party to demonstrate "good cause" through a "particular and specific demonstration of fact, as |

| | | distinguished from stereotyped and conclusory statements." |
| | | The second quote is not in the opinion and the opinion does not support the propositions raised by Plaintiffs. In re Subpoena to Witzel involved a district court's denial of a motion to compel and grant of a protective order. The First Circuit affirmed the district court's denial of the motion to compel, finding that the district court had not abused its discretion in denying the motion. The opinion did not discuss the requirements for a protective order as represented by Plaintiffs. |
| 37. Id. | Pg. 6, ¶ 1 | Plaintiffs cite this case when stating that Defendants offer no specific evidence, only conclusory assertions, that sixty-eight witnesses would be unmanageable. |
| | | As stated above, this opinion focused on the denial of a motion to compel and did not discuss protective orders in sufficient depth to support Plaintiffs' assertions here. |
| 38. DM Rsch., Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999). | Pg. 4, ¶ 3 | Plaintiffs provide a parenthetical for this case citation stating that antitrust claims often require "exploration of the conspirators' minds and actions." |
| | | This quote is not found in the opinion, nor does the opinion support the proposition provided by Plaintiffs. Although this is an antitrust case, the opinion's discussion of antitrust law at pages 56 and 57 does not make generalized findings that |

| | | antitrust claims require "exploration of the conspirator's minds and actions." Here, the First Circuit affirmed the district court's decision to grant a motion to dismiss on the grounds that the plaintiffs did not plausibly allege specific facts to support an antitrust claim. The court did not go further and discuss the alleged coconspirators' minds and actions. |
|---|---|---|
| 39. <u>Id.</u> | Pg. 6, ¶ 1 | Plaintiff provides a parenthetical for this case stating that antitrust cases often require extensive evidence.<br><br>However, the opinion does not support this proposition because <u>DM Rsch, Inc.</u> involved the First Circuit affirming the grant of a motion to dismiss for an antitrust claim where the complaint relied on speculation and generalized language. This dismissal took place before the discovery stage, so discussions of evidence would be premature. |
| 40. <u>Sullivan v. Taglianetti</u>, 588 F.2d 1355, 1357 (1st Cir. 1978). | Pg. 5, ¶ 2 | **The case does not exist as cited.** The Court could not find the case Plaintiffs were referring to and Plaintiffs acknowledge this may be "misrecalled." (Docket No. 190). The Court cannot evaluate the veracity of this citation. |
| 41. <u>Gill v. Gulfstream Park Racing Ass'n, Inc.</u>, 399 F.3d 391, 401 (1st Cir. 2005). | Pg. 6, ¶ 1 | Plaintiffs cite to this case to argue that the First Circuit warns against "arbitrary numerical limits" on witnesses without a showing of oppression or undue burden.<br><br>While the opinion does deal with Rule 26, the Court finds no language supporting the specific proposition it is quoted and |

| | | cited in support of. Instead, the opinion discusses an informant's privilege and does not discuss limitations on the number of witnesses a party may call. |
|---|---|---|
| 42.  <u>Whittingham v. Amherst Coll.</u>, 163 F.R.D. 170 (D.Mass. 1995). | Pg. 6, ¶ 2 | Plaintiffs characterize this case as one involving a post-discovery ruling, not a preemptive cap on the number of witnesses a party can depose. However, the language of the opinion shows that discovery was ongoing at the time the ruling was issued, not that discovery had already concluded. |

| *Plaintiffs' Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order* (Docket No. 176) | | |
|---|---|---|
| Citation: | Location: | Issue: |
| 43.  <u>Pub. Citizen v. Liggett Grp., Inc.</u>, 858 F.2d 775, 789 (1st Cir. 1988). | Pg. 3, ¶ 1 | This case is quoted as saying that "[t]he party seeking the protective order must demonstrate that confidentiality is warranted with specific facts, not conclusory statements."<br><br>This quote is not found in the opinion nor is the proposition properly supported by the opinion. The opinion discusses the good cause requirement for protective orders baring a party that receives discovery from making it public. Although the existence of a good cause requirement may imply that conclusory allegations are insufficient, there is no language in the opinion to this effect. |
| 44.  <u>Id.</u> | Pg. 3, ¶ 2 | As in the previous instance, Plaintiffs cite this case as claiming a "particularized showing" is required for a protective order. |

| | | The opinion does not contain this quote. Although the opinion discusses "particular documents" it does not establish the requirement of a "particularized showing." |
|---|---|---|
| 45. <u>Anderson v. Cyrovac, Inc.</u>, 805 F.2d 1, 7 (1st Cir. 1986). | Pg. 3, ¶ 2 | This case is cited for the proposition that discovery should be "as broad as possible," but this quote is not in the opinion.<br><br>The case contains somewhat similar language providing that "[i]n discovery, the parties are given broad range" on page 12. Plaintiffs state the wrong standard for discovery under Fed. R. Civ. P. 26(b), which imposes relevance and proportionality requirements on discovery. Rule 26(b)(1) states that parties can conduct discovery "regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case." This standard is not the same as mandating that broad discovery is required. |
| 46. <u>Gill v. Gulfstream Park Racing Ass'n, Inc.</u>, 399 F.3d 391, 401 (1st Cir. 2005). | Pg. 3, ¶ 3 | **<u>The case does not exist as cited.</u>** Plaintiffs cite to <u>Gill v. Gulfstream  Aerospace Corp.</u>, 399 F.3d 391, 401 (1st Cir. 2005). They are presumably referring to <u>Gill v. Gulfstream Park Racing Ass'n, Inc.</u>, 399 F.3d 391, 401 (1st Cir. 2005).<br><br>Plaintiffs cite this case for the proposition that First Circuit policy disfavors "unduly restrict[ing] the flow of discovery," but this quote is not in the opinion. This opinion does discuss how trial courts must balance the burden of proposed discovery against its likely |

| | | benefit, and what constitutes an abuse of discretion in balancing these conflicting interests in discovery. |
|---|---|---|
| 47. <u>Id.</u> | Pg. 6, ¶ 1 | Plaintiffs also use this citation for the principle that including confusing language (here, about the Swiss Penal Code) in a protective order will confuse the discovery process and delay Plaintiffs' access to evidence, contrary to First Circuit efficiency goals. <br><br> This proposition is not supported by language of the opinion. This case dealt with an interlocutory appeal of a discovery order, and discussed informant's privilege, public interest considerations, confidentiality concerns, and privacy interests. The Court found no language in the opinion supporting Plaintiffs' assertion in its motion. The opinion only discussed "efficiency interests" in the context of when a party can seek an interlocutory appeal. |
| 48. <u>In re Grand Jury Subpoena</u>, 274 F.3d 563, 571 (1st Cir. 2001). | Pg. 4, ¶ 2 | Plaintiffs cite this case for the proposition that ethical rules focus on actual conflicts, not hypothetical risks. However, the opinion does not support this argument because this case involved a motion to quash a subpoena and an underlying dispute over attorney-client and work product privileges. It does not align clearly with Plaintiffs' arguments in the instant case. |
| 49. <u>United States v. Gannett Co.</u>, 835 F.2d 392, 395 (1st Cir. 1987). | Pg. 4, ¶ 3 | **The case does not exist as cited.** Plaintiffs are presumably referring to <u>United States v. Gannett Co., Inc.</u>, No. 13-CV-1984, 2014 WL 6844302 (D.D.C. Nov. 18, 2014) or <u>United States</u> |

Civil No. 23-1203 (RAM)                                                      35

| | | *v. Gannett Co., Inc.*, No. 13-CV-1984, 2014 WL 2704109 (D.D.C. Apr. 24, 2014) |
| --- | --- | --- |
| | | Plaintiffs' parenthetical for this citation states that disqualification is not required unless the representation is "materially adverse" to the client. The quotation "materially adverse" is not found in either of the aforementioned opinions nor is it supported by them. While these are antitrust cases, neither case discusses disqualification of counsel. |
| 50. <u>Poliquin v. Garden Way, Inc.</u>, 989 F.2d 527, 532 (1st Cir. 1993). | Pg. 4, ¶ 4 | Plaintiffs cite this case as stating that a "specific demonstration of need" is required for a protective order.<br><br>This quote is not in the opinion. However, the case does provide that more than good cause is required to justify protecting discovery material after it is introduced at trial. |
| 51. <u>In re Grand Jury Subpoena</u>, 646 F.3d 159, 164 (4th Cir. 2011). | Pg. 5, ¶ 4 | **<u>Incorrect citation</u>.** This case is in the Fourth Circuit, not the First Circuit, as represented by Plaintiffs. This case is properly cited as: <u>In re Grand Jury Subpoena</u>, 646 F.3d 159, 164 (4th Cir. 2011).<br><br>The proposition this case is cited for is not supported by language in the opinion. Plaintiffs' parenthetical indicates this case is cited in support of the permissive nature of the Hague Evidence Convention. However, this case makes no mention of this convention, only an unnamed Mutual Legal Assistance Treaty. |

| 52. <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa</u>, 482 U.S. 522, 539-40 (1987). | Pg. 5, ¶ 4 | This citation is used to support that Hague procedures are "permissive."<br><br>This quoted word is not found on pages 539-40, but similar language is found on both pages 535 and 536. |

| *Plaintiffs' Supplement to Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order*<br>(Docket No. 177) | | |
|---|---|---|
| Citation: | Location: | Issue: |
| 53. <u>United States v. Angiulo</u>, 897 F.2d 1169, 1190 (1st Cir. 1990). | Pg. 2, ¶ 2 | Plaintiffs cite this case for the proposition that it condemns "efforts to interfere with witnesses as contrary to fair adjudication."<br><br>The proposition this case is somewhat supported by language in the opinion. Pages 1192 and 1193 discuss witness intimidation, albeit in the context of criminal cases and prosecutorial misconduct. |
| 54. <u>Rozier v. Ford Motor Co.</u>, 573 F.2d 1332, 1346 (5th Cir. 1978). | Pg. 3, ¶ 3 | This case is cited to assert that broad discovery is essential to prevent "trial by ambush," but this quote is not in the opinion.<br><br>Similar language explaining that liberal discovery rules aim to make trail "less of a blind man's bluff and more a fair contest[.]" is found on this page. However, Plaintiffs misstate the state of the law regarding discovery. Fed. R. Civ. P. 26(b)(1) states that parties can conduct discovery "regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the |

| | | case." This is not the same as mandating that broad discovery is essential. |
|---|---|---|
| 55. <u>Anderson v. Cyrovac, Inc.</u>, 805 F.2d 1, 7 (1st Cir. 1986). | Pg. 4, ¶ 1 | This case is cited for the proposition that discovery should be "as broad as possible," but this quote is not in the opinion.<br><br>Rather, on page 12, this case provides that "[i]n discovery, the parties are given broad range." As stated above, Plaintiffs misstate the state of the law regarding discovery by stating that discovery should be "as broad as possible." Fed. R. Civ. P. 26(b)(1) states that parties can conduct discovery "regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional** to the needs of the case." It contradicts Fed. R. Civ. P. 26 to say that discovery is as broad as the parties can make it. |