IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO SOCCER LEAGUE NFP CORP., a Puerto Rico for profit corporation, JOSEPH MARC SERRALTA IVES, JUAN M. CORNEJO, MARIA LARRACUENTE, JOSE R. OLMO-RODRIGUEZ, FUTBOL BORICUA (FBNET), Inc., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERACIÓN PUERTORRIQUENA DE FUTBOL, INC., IVAN RIVERA-GUTIERREZ, JOSE "CUKITO" MARTINEZ, GABRIEL ORTIZ, LUIS MOZO CANETE, JOHN DOE 1-18, INSURANCE COMPANIES A, B, C, FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION ("FIFA"), and CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL (CONCACAF), <br><br> Defendants. | CIVIL NO. 23-1203-RAM |

**CONCACAF'S APPLICATION FOR ATTORNEYS' FEES
IN COMPLIANCE WITH ORDER AT DOCKET NO. 206**

**COMES NOW** Defendant Confederation of North, Central America and Caribbean Association Football ("CONCACAF"), by and through its undersigned counsel, and in compliance with the Court's April 10, 2025, order at Docket No. 206, submits this application for attorneys' fees.

**INTRODUCTION**

In one of the seven orders it entered on April 10, 2025, this Honorable Court "conclude[d] that sanctions are appropriate under Rule 11 and the Court's inherent authority," and ordered

Plaintiffs' counsels "to pay the attorneys' fees incurred by Defendants in relation to Plaintiffs' filings at Docket Nos. 174, 175, 176, and 177." Docket No. 206.[1] The order further provided that "Defendants are granted twenty-one days to submit an itemized application for attorney's fees." *Id.* This application seeks to comply with the Court's directive, setting forth the methodology used to calculate the attached fee schedules (Exhibits A and B), and requesting that the Court order Plaintiffs to reimburse CONCACAF for all the costs and expenses reflected there.[2]

## DISCUSSION

### A. Methodology for Calculation of the Attorneys' Fees and Costs

In its order, the Court did not specify the methodology to be used in the application. Still, the instant application does not rely on a fee-shifting statutory provision, but rather on a sanction under Rule 11 and the Court's inherent powers. Generally, awards of fees as sanctions present a different situation from awards pursuant to statute, given that their purpose is as much to penalize improper conduct as it is to compensate the opposing party. Therefore, F. R. Civ. Pro. 54 expressly provides that some of its procedural provisions "do not apply to claims for fees and expenses as sanctions for violating these rules." Fed. R. Civ. P. 54(d)(E).

Still, the methodology used by courts pursuant to fee-shifting statutes can serve as a useful starting point for the Court's determination of the fees it should award as a sanction. That methodology, known as the lodestar method, was described by the U.S. Court of Appeals for the First Circuit two years ago as "the method of choice for calculating fee awards." *Perez-Sosa v.*

---

[1] The Court's order referred to four filings by Plaintiffs submitted on March 9 and 13, 2025, in response to various motions by Defendants: Plaintiffs' Response in Opposition to Defendants' Joint Motion to Disqualify Plaintiffs' Counsel (Docket No. 174); Plaintiffs' Response in Opposition to Defendants' Joint Motion for Protective Order Limiting the Scope of Discovery (Docket No. 175); Plaintiffs' Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order (Docket No. 176); and Plaintiffs' Supplement to Response in Opposition to Defendants' Joint Motion for Entry of a Protective and Confidentiality Order and Rule 502(d) Order (Docket No. 177) (collectively, the "Motions").

[2] This application contains limited redactions protecting certain confidential information. An unredacted version of this application has been filed with restrictions.

*Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (internal citations omitted). And just last year, in *Carrero v. Molina Healthcare of Puerto Rico, Inc.*, 737 F. Supp. 3d 135 (D.P.R. 2024), this Honorable Court cited, discussed, and applied *Pérez-Sosa* and other precedents in an opinion and order calculating a fee award, not under a fee-shifting statute, but rather pursuant to a contractual fee-shifting agreement. In *Pérez-Sosa*, on which this Court relied, the First Circuit described the lodestar method thus:

> The lodestar amount equals the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. . . . Calculating this amount requires two steps (which may be followed by a final corrective gesture). First, the court must calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary. . . . Second, the court must identify a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. . . . Multiplying the results of the first two steps yields the lodestar amount.[3] . . . The lodestar method, properly applied, yields a fee that is presumptively sufficient to achieve" the underlying purposes of fee-shifting. . . . Although this method requires arithmetical calculations, we must bear in mind that the district court's task in fashioning a reasonable fee — and ours, too — is to do rough justice, not to achieve auditing perfection. . . .  Because district judges "need not, and indeed should not, become green-eyeshade accountants, they may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Pérez-Sosa v. Garland*, 22 F.4th 312, 321–22 (1st Cir. 2022) (internal citations omitted); *see also Carrero*, 737 F. Supp. 3d at 142-148 (citing *Pérez-Sosa seriatim*). Further, "[t]he type of services rendered by lawyers, as well as their experience, skill and reputation, varies widely.... Accordingly, the hourly rates of lawyers in private practice also vary widely." *Blum v. Stenson*, 465 U.S. 886,

---

[3] Note that the First Circuit also observed that "[t]he court may then elect to adjust the lodestar amount, either upward or downward, if the specific circumstances of the case warrant such an adjustment. *See Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (stating that court may adjust lodestar amount in accordance with twelve factors); *see also Perdue* [*v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)] (holding that enhancement is permitted only in "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered")."

895 n.11 (1984). The rate for each attorney must consider their qualifications, experience, and specialized competence. *See Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).

### B. Contemporaneous Time Records

Attorneys must keep contemporaneous time records with sufficient detail to allow a reviewing court to discern whether the work was reasonable in the particular context of the case. *See Grendel's Den v. Larkin*, 745 F.2d 945, 949-952 (1st Cir. 1984) (requiring records with separate entries specifying the date, the time, and the specific task accomplished). Compilations of the time records, presented to the court in a more accessible manner, may substitute for presentation of the records themselves, on the attorney's declaration that the compilations accurately reflect the time actually spent on the case. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2002).

Note that it is permissible for time entries to be reasonably redacted for the purpose of avoiding waiver of the attorney-client and work product privileges, as long as the resulting entry "provides enough detail for us to understand the general nature of the legal work performed but omits the specific topic." *Board of Trustees v. ILA Local 1740, AFL-CIO*, Civ. No. 2022 WL 4591843 at *5 (D.P.R. Sept. 30, 2022) (Carreño, J.) (citing *Castañeda-Castillo v. Holder*, 723 F.3d 48, 79 (1st Cir. 2013), for the proposition that time entries were sufficiently specific where "each time entry lists a general description of the task, such as 'Prepared for oral argument before the First Circuit' or 'Drafted motion for expedited bond hearing'").

### C. Reasonable Time Spent on a Case

After examining the time actually spent on the case, the Court must determine whether the time spent on the case was "reasonable." There are no hard and fast rules to guide this determination. Instead, the court must look at a "particular case's nuances and idiosyncrasies" and

determine what was "reasonable and necessary given the nature of the case," in light of its complexities and specific litigation difficulties. *Lipsett*, 975 F.2d at 939. That two or more attorneys worked on the same general task does not lead to the conclusion that their work was duplicative or otherwise unreasonable, since "[c]areful preparation often requires collaboration and rehearsal." *Rodríguez-Hernández v. Miranda-Vélez*, 132 F.3d 848, 860 (1st Cir. 1998). Indeed, given "the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic." *Gay Officers Action League*, 247 F.3d at 297.

### D. Hourly Rates Charged by CONCACAF's Counsel Should be Applied by the Court

The lodestar method requires that the hourly rate applied by the court is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Tejada-Batista v. Fuentes-Agostini*, 263 F.Supp.2d 321, 327 (D.P.R. 2003) (quoting *Blum*, 465 U.S. at 895). In identifying a reasonable hourly rate, "the court may rely upon its own knowledge of attorneys' fees in the community." *Rodríguez v. International College of Business and Technology, Inc.*, 356 F. Supp. 2d 92, 96 (D.P.R. 2005)). The First Circuit has held that while there is "no universal market rate for legal services," which necessarily depend on a variety of factors, "the rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011).

Three attorneys from Sidley Austin LLP worked on the filings related to the Plaintiffs' filings at Docket Nos. 174, 175, 176, and 177. Their work and professional backgrounds are summarized below.

**John J. Kuster:** Mr. Kuster earned his B.A. from Fordham University in 1987, and his J.D. from the New York University Law School in 1991. He has been a partner in the firm's

5

litigation group since 1999. Over the past 30-plus years, Mr. Kuster has represented clients faced with high-stakes commercial litigation and disputes matters in federal and state courts, as well as arbitrations. Mr. Kuster has represented some of the largest financial institutions, real estate investment companies, and private equity firms, as well as manufacturers, energy companies, and sports and entertainment entities, in the United States and throughout the world, in a variety of matters involving antitrust, RICO, bankruptcy, and other complex litigation matters *See* https://www.sidley.com/en/people/k/kuster-john-j. CONCACAF is requesting an hourly rate of ▮ for Mr. Kuster's time worked on this matter in connection with Docket Nos. 174, 175, 176, and 177.

**Amanda M. Blau:** Ms. Blau earned her B.A. and B.S. from the University of Rhode Island in 2012, and her J.D. from the University of Michigan Law School in 2018. She joined Sidley as an associate in the firm's litigation group in 2018. Ms. Blau has advised and defended companies in complex commercial litigations, including product liability and mass tort, antitrust, and federal RICO conspiracy matters. *See* https://www.sidley.com/en/people/b/blau-amanda-m. CONCACAF is requesting an hourly rate of ▮ for Ms. Blau's time worked on this matter in connection with Docket Nos. 174, 175, 176, and 177.

**Bennett S. Page:** Mr. Page earned his B.A. from Auburn University in 2019, and his J.D. from the George Washington University Law School in 2023. He joined Sidley as an associate in the firm's litigation group in 2023. Mr. Page focuses his practice on commercial litigation and disputes. *See* https://www.sidley.com/en/people/p/page-bennett-s. CONCACAF is requesting an hourly rate of ▮ for Mr. Page's time worked on this matter in connection with Docket Nos. 174, 175, 176, and 177.

Two O'Neill & Borges attorneys worked on the filings related to the Plaintiffs' filings at Docket Nos. 174, 175, 176, and 177, and also on preparing this motion. Their work and professional backgrounds are summarized below.

**Salvador J. Antonetti Stutts**: Mr. Antonetti Stutts earned his Bachelor of Arts from Harvard College in 1991, and his J.D. from the University of Chicago in 1994. From 1994 to 1998, he served as law clerk for the Hon. Antonio S. Negrón García, Associate Justice of the Puerto Rico Supreme Court; the Hon. Daniel R. Domínguez, U.S. District Judge; and the Hon. Juan R. Torruella, then-Chief Judge of the U.S. Court of Appeals for the First Circuit. Since 1998, he has worked as a commercial litigator, currently as a partner in O'Neill & Borges LLC. He has also served as the Solicitor General of Puerto Rico, and previously as the Director of the Federal Litigation Division of the Puerto Rico Department Justice. During the past thirty years, he has handled substantial commercial litigation matters, including antitrust, distribution, and contract disputes in state and federal court, and also significant commercial arbitration proceedings. *See*, https://www.oneillborges.com/attorney/salvador-j-antonetti-stutts/. CONCACAF is requesting an hourly rate of ▮ for Mr. Antonetti Stutts's time worked on this matter in connection with Docket Nos. 174, 175, 176, and 177.

**Aníbal A. Román Medina**: Mr. Román Medina obtained his B.A. from the University of Puerto Rico in 2017, and his J.D. from the University of Puerto Rico School of Law in 2020. He joined O'Neill & Borges in 2020 as an associate in the Litigation Department, where his practice has focused on both state and federal court litigation of commercial matters, as well as representing clients in administrative proceedings. His experience includes participating in disputes related to distribution and franchising, insurance, health law, product liability claims, consumer claims, commercial foreclosures, and general tort and breach of contract disputes. While in law school,

8

Mr. Román-Medina served as a student law clerk at the Puerto Rico Court of Appeals, was a University of Puerto Rico Law Review member, and assisted Dean Vivian I. Neptune Rivera. *See*, https://oneillborges.com/attorney/anibal-a-roman-medina/. CONCACAF is requesting an hourly rate of ▇ for Mr. Román Medina's time worked on this matter in connection with Docket Nos. 174, 175, 176, and 177.

In connection with Docket Nos. 174, 175, 176, and 177, CONCACAF is requesting an award of fees based on a total of ▇ hours spent by counsel, for a total award of ▇, as well as ▇ in costs. *See* Exhibits A and B. The cost and fee request can be broken down for each of CONCACAF's attorneys as follows:

a. From Sidley Austin LLP: (a) Mr. Kuster – ▇ (b) Ms. Blau – ▇ and (c) Mr. Page- ▇. *See generally*, Exhibit A.

b. From O'Neill & Borges LLC: (a) Mr. Antonetti – ▇; and (b) Mr. Román – ▇. *See, generally*, Exhibit B.

c. In connection with Docket Nos. 174, 175, 176, and 177, CONCACAF's counsel also incurred costs in the form of Westlaw Research Service charges totaling ▇. *See* Exhibit A.

The record in this case shows that the undersigned attorneys diligently litigated CONCACAF's position with respect to the issues raised in Plaintiffs' filings at issue. Given the legal issues at play and the experience of the attorneys involved, the hourly rates requested in this application are reasonable and proper and reflect the efforts to respond to Plaintiffs' filings. *See CH Properties, Inc. v. First Am. Title Ins. Co.*, 204 F. Supp. 3d 416, 421-22 (D.P.R. 2016) (citing *González-Nieves v. Mun. of Aguadilla*, No. 3:13-CV-01132 (JAF), 2016 WL 297432, at *2 (D.P.R.

Jan. 22, 2016) (finding hourly rates of $250-$280 reasonable for an attorney of about thirty years of experience); *Rosario-Urdaz v. Rivera-Hernández*, 451 F. Supp. 2d 305, 310 (D.P.R. 2006) (finding hourly rates of $200-$250 reasonable more than a decade ago)); *Anywhere, Inc. v. Romero*, 344 F. Supp. 2d 345, 348 (D.P.R. 2004) (finding that an hourly rate of $250.00 for the more experienced attorney and of $150.00 for the less experienced attorneys was reasonable 14 years ago). And just last year, this Court found that, in an employment-law matter, "[i]n the District of Puerto Rico, an approximate range of typical rates for highly experienced attorneys is $250-300, for associates $150-200, and for paralegals and law clerks $50-100." *Carrero*, 737 F. Supp. 3d at 146.

Note, further, that, in *Carrero*, the Court authorized higher rates for out-of-state attorneys. *Id.* at 146-147. This is consistent with First Circuit precedent, acknowledging that while there is "no universal market rate for legal services, the rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011). "When a party recruits counsel from outside the vicinage of the forum court, that court may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office… [and] may look to the outside lawyer's actual billing practices to determine the relevant rate." *United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II"*, 546 F.3d 26, 40 (1st Cir. 2008). The rates requested herein for Sidley Austin LLP are significantly lower than the rates actually charged to CONCACAF and to its other clients more generally. Further, in other jurisdictions where Sidley Austin LLP represents CONCACAF, higher rates similar to those actually charged in this case have been deemed reasonable by the courts in those jurisdictions. *See, e.g., An v. Despins*, 2024 WL 1157281, at *2-4 (S.D.N.Y. Mar. 18, 2024) (finding reasonable

9

rates of $1,670 for partners, $1,440 for counsel, and $895 for associates). However, CONCACAF is mindful of the purpose of this application to serve as sanctions to Plaintiff's counsel. Although CONCACAF believes it could make a showing that it is entitled to much higher rates for its outside counsel and thus a recovery of its attorneys' fees on this application, CONCACAF nonetheless has determined that it believes that the rates set forth below for purposes of this application only will provide a significant enough monetary sanction on Plaintiffs' attorneys. CONCACAF expressly reserves its rights to seek higher rates for its attorneys in any future application for attorneys' fees in the future.

In any event, the cases cited above show that the hourly rates of CONCACAF's counsel are reasonable and consistent with those charged by other attorneys in the community. Accordingly, the court should adopt them. But, of course, if the Court were to require additional documentation supporting this application, CONCACAF stands ready to produce it.

## CONCLUSION AND REQUEST FOR RELIEF

**WHEREFORE**, CONCACAF respectfully requests that this Honorable Court grant this application for attorneys' fees in such amount as the Court may deem just.

**WE HEREBY CERTIFY** that this Motion was submitted through the Court's CM-ECF system, which should automatically serve a copy on all counsel of record.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on this 1st day of May, 2025.

BY: */s/Salvador J. Antonetti-Stutts*
   */s/Aníbal A. Román Medina*

O'NEILL & BORGES LLC
Salvador J. Antonetti-Stutts
USDC Bar No. 215002
Aníbal A. Román Medina
USDC Bar No. 308410

By: */s/ John J. Kuster*

SIDLEY AUSTIN LLP
John J. Kuster (*pro hac vice*)
Jon Muenz (*pro hac vice*)
Amanda M. Blau (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019

10

4902-0955-2956v.7

<div style="display: flex;">
<div>

250 Ave. Muñoz Rivera, Ste. 800  
San Juan, P.R. 00918-1813  
Tel:   (787) 764-8181  
Fax:  (787) 753-8944  
Email:  salvador.antonetti@oneillborges.com  
            anibal.roman@oneillborges.com

</div>
<div>

Tel:   (212) 839-5300  
Fax:  (212) 839-5599  
Email:  jkuster@sidley.com  
            jmuenz@sidleu.com  
            ablau@sidley.com

*Attorneys for Defendant CONCACAF*

</div>
</div>

4902-0955-2956v.7